IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF TEXAS,

Plaintiff,

v.

ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,

Defendant.

ERIC KENNIE, *et al.*,

Defendant-Intervenors,

TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*,

Defendant-Intervenors,

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*,

Defendant-Intervenors,

TEXAS LEGISLATIVE BLACK CAUCUS, *et al.*,

Defendant-Intervenors,

VICTORIA RODRIGUEZ, *et al.*,

Defendant-Intervenors.

CASE NO. 1:12-CV-00128
(RMC-DST-RLW)
Three-Judge Court

**DEFENDANT ERIC H. HOLDER'S RESPONSES AND OBJECTIONS TO THE STATE OF TEXAS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Eric H. Holder, Jr., Attorney General of the United States ("the Attorney General"), hereby answers each of the

interrogatories in the State of Texas' First Set of Interrogatories ("Interrogatories"). In formulating these answers, the Attorney General has relied on the information available to him at this time. Further or different information may be developed in discovery. The Attorney General will furnish any such information to the extent required under Rule 26 of the Federal Rules of Civil Procedure.

**GENERAL OBJECTIONS**

1. The Attorney General objects to the Interrogatories to the extent they purport to impose any obligations different from, or greater than, those established or required by the Federal Rules of Civil Procedure and to the extent that they call for disclosure of information beyond the scope of what is required to be disclosed under Rule 26(a)-(b).

2. The Attorney General also objects to each of the Interrogatories to the extent any or all of them seek to discover internal documents prepared in anticipation of litigation by attorneys of the United States Department of Justice or non-attorney employees of the Department working under the supervision of Department attorneys. Such work is privileged from disclosure under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3). The Attorney General further objects to each of the State of Texas' interrogatories to the extent that any or all of them seek to discover the mental impressions, conclusions, opinions, litigation strategies, or legal theories of attorneys of the United States Department of Justice or non-attorney employees of the Department working under the supervision of Department attorneys. Such information is also protected as attorney work product. *See Hickman v. Taylor*, 329 U.S. 495 (1947). The work product doctrine applies both to work produced by government attorneys in anticipation of litigation, *see Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003), and to the work product of a staff member of a federal agency who works under the supervision of a government

attorney, *see id.* at 76-78; *Sterling Drug Inc. v. Harris*, 488 F. Supp. 1019, 1026-27 (S.D.N.Y. 1980).

3. The Attorney General further objects to the Interrogatories to the extent that they seek to inquire into the grounds for the Attorney General's objection to S.B. 14 under Section 5. The Attorney General's decision-making process is not relevant to a determination in this case; nor is discovery directed toward that process reasonably calculated to lead to the discovery of admissible evidence. *See Morris v. Gressette*, 432 U.S. 491, 505-07 & n.24 (1977); *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 514 (D.D.C. 2005) (three-judge court) (per curiam); *Cofield v. City of LaGrange*, 913 F. Supp. 608, 616-17 (D.D.C. 1996); *see also County Council v. United States*, 555 F. Supp. 694, 706 (D.D.C. 1983) (three-judge court) ("[W]e have no authority either to review, or to preview, decisions of the Attorney General under Section 5. . . . [T]his Court's role under Section 5 of the Act is to examine the change *de novo* as an alternative to the Attorney General's decision regarding preclearance.").

4. The Attorney General also objects to the Interrogatories to the extent that they seek information that is predecisional and deliberative. Such information is protected from disclosure pursuant to the deliberative process privilege. *See, e.g.*, *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998). Application of the deliberative process privilege is necessary to prevent injury to the quality of decisions made by government agencies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *In re Apollo Group, Inc. Sec. Litig.*, 251 F.R.D. 12, 27-28 (D.D.C. 2008); *Trans Union LLC v. Fed. Trade Com'n*, 141 F. Supp. 2d 62, 69-70 (D.D.C. 2001).

5. The Attorney General further objects to the Interrogatories to the extent that they seek to discover internal documents prepared during the course of an investigation. Internal

Department of Justice documents are also covered by recognized investigatory and law enforcement privileges. *See Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999); *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001); *see also In re Micron Technology, Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010).

6. The Attorney General objects to these Interrogatories to the extent they seek information already in the possession, custody, or control, or otherwise equally available to the State of Texas.

7. By answering these interrogatories, the Attorney General does not concede the relevance or materiality of the information requested, nor of the subject matter to which the interrogatory refers. Rather, the responses are made expressly subject to, and without in any way waiving or intending to waive any question or objection as to the competency, relevancy, privilege, or admissibility as evidence, of any of the matters referred to in the responses.

8. These general objections apply to each individual interrogatory unless specifically otherwise stated. Reiteration of any general objection in response to a specific interrogatory shall not be construed to limit the applicability of any other general objection. Moreover, any attempt to answer or respond to any interrogatory to which a general objection is made does not in any way waive the objection.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:**

Please identify each person with whom the Department of Justice communicated regarding S.B. 14, including the organization, if any, with which each individual is affiliated.

**ANSWER**:

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 1 on the grounds that it is overly broad, unduly burdensome, vague, and lacking in particularity. The Attorney General also objects to Interrogatory No. 1 to the extent that it seeks information that is not likely to lead to the discovery of admissible evidence or seeks information protected by the work product doctrine, *see Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981), or the deliberative process privilege, *see Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69-70 (D.D.C. 2001). In addition, to the extent Interrogatory No. 1 seeks information regarding experts who might testify in this case, the Attorney General objects on the ground that the interrogatory seeks disclosure beyond the scope of what is required by Federal Rule of Civil Procedure 26(a)(2) and (b)(4) and the deadline for disclosure of experts set forth in the Initial Scheduling Order (Doc. 43). Without waiving said objections, the Attorney General responds as follows:

Pursuant to Rule 33(d), the identifying information of persons with whom the Department of Justice communicated regarding S.B. 14, including persons who submitted comments to the Department and persons interviewed by the Department, is available in documents provided to the State as US_00000001 through US_00006544. The Department of Justice has also communicated with Representatives Joaquin Castro, Joe Farias, and Scott Hochberg; Senators Rodney Ellis, Letitia Van de Putte, and Judith Zaffirini; and counsel for Defendant-Intervenors.

**INTERROGATORY NO. 2:**

Please state your contention regarding the effect, if any, that turnout plays in determining whether requiring voters to show photo ID will have the effect of diminishing the ability of any citizens of the United States to vote on account of race or color.

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 2 on grounds that it seeks a legal opinion related to Section 5 of the Voting Rights Act, does not request any information that is likely to lead to the discovery of admissible evidence, and is vague, premature, and unclear. Without waiving said objections, the Attorney General responds as follows:

The Attorney General construes this Interrogatory as seeking a legal opinion as to whether voter turnout should be considered "in determining whether requiring voters to show photo ID will have the effect of diminishing the ability of any citizens of the United States to vote on account of race or color." An analysis of the effect of a change in voting on minority voters, for purposes of Section 5, should be undertaken by referring to the text of the statute, related administrative procedures, and pertinent case law. The touchstone of this analysis is as follows: "A change affecting voting is considered to have a discriminatory effect under Section 5 if it will lead to a retrogression in the position of members of a racial or language minority group (*i.e.*, will make members of such a group worse off than they had been before the change) with respect to their effective exercise of the electoral franchise." 28 C.F.R. § 51.54(b) (*citing Beer v. United States*, 425 130, 140, 42 (1976)).

The Attorney General further states that he is not in possession of any facts responsive to Interrogatory No. 2.

**INTERROGATORY NO. 3:**

Please explain the basis for your contention that S.B. 14 will have the effect of "denying or abridging the right to vote *on account of race or color*," or "deny[ing] or abridg[ing] the right of any citizen of the United States to vote *because* he is a member of a language minority group." 42 U.S.C. § 1973c(a) (emphasis added); *id*. § 1973b(f)(2) (emphasis added).

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 3 on grounds that it seeks a legal opinion related to Section 5 of the Voting Rights Act and is premature, as discovery has only recently commenced. Without waiving said objections, the Attorney General responds as follows:

Facially neutral statutes may nonetheless violate Section 5 of the Voting Rights Act. *See, e.g.*, *Georgia v. Ashcroft*, 529 U.S. 461 (2003), *superseded by statute in part*, 42 U.S.C. § 1973c(d); *City of Pleasant Grove v. United States*, 479 U.S. 462 (1987). The burden of proving that a proposed voting change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, under Section 5 of the Voting Rights Act, rests with the State of Texas. *See South Carolina v. Katzenbach*, 383 U.S. 301, 328, 335 (1966). In support of its contention that Texas has failed to meet its burden of showing that S.B. 14 neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, the Attorney General refers to the facts set forth in the United States' Statement in Support of it Request to Depose and Seek Documents from State Legislators and Staff at 4-6 (Doc. 69). Facts produced through discovery may provide additional bases in support of this contention.

**<u>INTERROGATORY NO. 4</u>:**

Please explain the basis for any contention by the Department of Justice in this litigation that S.B. 14 "den[ies] or abridge[s]" the right to vote when the State provides election identification certificates free of charge to anyone who lacks any other form of photographic identification required by the statute.

**<u>ANSWER</u>:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 4 on the ground that it is misleading insofar as it implies that there are no attendant costs associated with obtaining an election identification certificate established under S.B. 14. The Attorney General further objects to Interrogatory No. 4 in that it seeks a legal opinion related to Section 5 of the Voting Rights Act and is premature as discovery has only recently commenced. Without waiving said objections, the Attorney General responds as follows:

Any impediment to voting may deny or abridge the right to vote. *See Perkins v. Matthews*, 400 U.S. 379, 387-88 (1971). The burden of proving that a proposed voting change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, under Section 5 of the Voting Rights Act, rests with the State of Texas. *See South Carolina v. Katzenbach*, 383 U.S. 301, 328, 335 (1966). Based on the facts gathered at this early stage of the litigation, the burden to obtain acceptable identification under S.B. 14 is considerably greater than under current rule. Under S.B. 14, an individual lacking identification must travel to one of approximately 225 operational driver license offices across the state, some of which are open fewer than 15 hours per month and most of which are open only during working hours. There can be additional costs

and burdens attendant to obtaining the information and documentation necessary to obtain an acceptable identification under S.B. 14. By contrast, under the benchmark practice, necessary identification is mailed by the registrar to each registered voter in the form of a voter registration certificate. As a general matter, the Attorney General refers to the facts set forth in the United States' Statement in Support of it Request to Depose and Seek Documents from State Legislators and Staff at 4-6 (Doc. 69). Facts produced through discovery may provide additional bases in support of this contention.

**INTERROGATORY NO. 5:**

Please explain the basis for any contention by the Department of Justice in this litigation that S.B. 14 "den[ies] or abridge[s]" anyone's right to vote when the Supreme Court held in *Crawford v. Marion County Election Bd*., 553 U.S. 181 (2008), that the burdens of acquiring a photo identification do not "even represent a significant increase over the usual burdens of voting." *Id*. at 198 (opinion of Stevens, J.); *id*. at 209 (Scalia, J. concurring in the judgment).

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 5 on grounds that it is legal argument, or seeks a legal opinion, mischaracterizes *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), and misconstrues the legal standard applicable to the statutory claim in this lawsuit. The United States further objects to Interrogatory No. 5 on the ground that it is misleading, insofar as it implies that the legal standards employed in *Crawford* and those to be applied in this lawsuit brought under Section 5 of the Voting Rights Act are the same and insofar as it implies that the Indiana photo identification law at issue in *Crawford* and S.B. 14 are the same. The United States further objects that Interrogatory No. 5 does not request any information that is

likely to lead to the discovery of admissible evidence and is premature. Without waiving said objections, the Attorney General responds as follows:

Any impediment to voting may deny or abridge the right to vote. *See Perkins v. Matthews*, 400 U.S. 379, 387-88 (1971). The burden of proving that a proposed voting change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color or membership in a language minority group, under Section 5 of the Voting Rights Act, rests with the State of Texas. *See South Carolina v. Katzenbach*, 383 U.S. 301, 328, 335 (1966). Based on the facts gathered at this early stage of the litigation, the burden to obtain acceptable identification under S.B. 14 is considerably greater than under current rule. Under S.B. 14, an individual lacking identification must travel to one of approximately 225 operational driver license offices across the state, some of which are open fewer than 15 hours per month and most of which are open only during working hours. There can be additional costs and burdens attendant to obtaining the information and documentation necessary to obtain an acceptable identification under S.B. 14. By contrast, under the benchmark practice, necessary identification is mailed by the registrar to each registered voter in the form of a voter registration certificate. As a general matter, the Attorney General refers to the facts set forth in the United States' Statement in Support of it Request to Depose and Seek Documents from State Legislators and Staff at 4-6 (Doc. 69). Facts produced through discovery may provide additional bases in support of this contention.

**INTERROGATORY NO. 6**:

In his letter denying preclearance to S.B. 14, the Assistant Attorney General for Civil Rights "note[d] that the state's submission did not include evidence of significant in-person voter impersonation not already addressed by the state's existing laws." Please state the precise role, if

any, that the State's alleged failure to provide such evidence played in the Department of Justice's decision to deny preclearance.

**ANSWER**:

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 6 on grounds that it seeks information not likely to lead to the discovery of relevant evidence insofar as, pursuant to Section 5, the District Court for the District of Columbia must engage in a *de novo* review of the State's claim that S.B. 14 was enacted without discriminatory purpose or effect. The Attorney General also objects to Interrogatory No. 6 because it seeks a legal opinion related to Section 5 of the Voting Rights Act and seeks facts protected from disclosure by the deliberative process privilege. Without waiving said objections, the Attorney General responds as follows:

The burden of proving that a proposed voting change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, under Section 5 of the Voting Rights Act, rests with the State of Texas. *See South Carolina v. Katzenbach*, 383 U.S. 301, 328, 335 (1966); 28 C.F.R. § 51.52(a), (c). The Attorney General states that the Department of Justice's March 12, 2012 determination letter speaks for itself and further refers to the facts set forth in the United States' Statement in Support of its Request to Depose and Seek Documents from State Legislators and Staff at 11 n.9 (Doc. 69).

**INTERROGATORY NO. 7:**

Please state the precise role, if any, that S.B. 14's provision of free election identification certificates played or would play in determining whether S.B. 14 was enacted with an impermissible legislative purpose or has impermissible effects.

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 7 on grounds that it seeks information not likely to lead to the discovery of relevant evidence insofar as, pursuant to Section 5, the court must engage in a *de novo* review of the State's claim that S.B. 14 was enacted without discriminatory purpose or effect. The Attorney General also objects to Interrogatory No. 7 because it seeks a legal opinion related to Section 5 of the Voting Rights Act and seeks facts protected from disclosure by the deliberative process privilege. Without waiving said objections, the Attorney General responds as follows:

The Attorney General states that the Department of Justice's March 12, 2012 determination letter speaks for itself and further refers to the facts set forth in the United States' Statement in Support of its Request to Depose and Seek Documents from State Legislators and Staff at 5-6 (Doc. 69).

**INTERROGATORY NO. 8:**

Please explain what steps, if any, the Department of Justice has taken since the Supreme Court issued its opinion in *Northwest Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193 (2009), to insure that the Department's administration of Section 5 addresses the constitutional concerns raised by the Supreme Court in that case.

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 8 on grounds that it seeks discovery that is not relevant to Claim I. *See* Initial Scheduling Order ¶ 1 (Doc. 43). Without waiving said objections, the Attorney General responds as follows:

The Department of Justice published a notice of proposed rulemaking embodying proposed amendments, and a final rule embodying final amendments, to the Attorney General's Procedures for the Administration of Section 5 of the Voting Rights Act of 1965. *See* Revision of Voting Rights Procedures, 76 Fed. Reg. 21,239 (Apr. 15, 2011) (codified at 28 C.F.R. pts. 0 & 51); Revision of the Procedures for the Administration of Section 5 of the Voting Rights Act, 75 Fed. Reg. 33,205 (proposed June 11, 2010) (to be codified at 28 C.F.R. pts. 0 & 51). The Department also published Guidance Concerning Redistricting under Section 5 of the Voting Rights Act, 76 Fed. Reg. 7470 (Feb. 9, 2011). The Attorney General endeavors to conform all determinations to all the requirements of the law, including the Fourteenth and Fifteenth Amendments. *See* 28 C.F.R. §§ 51.52(a), 51.55(a). The Department has also consented to a number of additional bailouts from coverage pursuant to Section 4(a) of the Voting Rights Act by jurisdictions covered by Section 4(b) of the Act, including the first bailouts by covered jurisdictions in Texas. *See* 28 C.F.R. § 51.5; *see also* Consent Judgment and Decree, *Jefferson County Drainage Dist. No. 7 v. Holder*, No. 1:11-cv-461 (D.D.C. June 6, 2011) (Doc. 7); Consent Judgment and Decree, *Nw. Austin Mun. Utility Dist. No. 1 v. Holder*, No. 1:06-cv-1384 (D.D.C. Nov. 3, 2009) (Doc. 171). *See generally Section 4 of the Voting Rights Act*, U.S. Department of Justice, *at* http://www.justice.gov/crt/about/vot/misc/sec_4.php. The Department has vigorously defended the constitutionality of Section 5 in a number of cases, and the D.C. District Court has upheld the provision's constitutionality. *See Shelby County v. Holder*, 811 F. Supp. 2d 424 (D.D.C. 2011), appeal docketed, No. 11-5256 (D.C. Cir. argued Jan. 19, 2012); *LaRoque v. Holder*, ___ F. Supp. 2d ___, 2011 WL 6413850 (D.D.C. Dec. 22, 2011), appeal docketed, No. 11-5349 (D.C. Cir. Dec. 28, 2011).

**INTERROGATORY NO. 9:**

In 2005, the Department of Justice precleared a Georgia Voter-ID law that was similar to S.B. 14. What precedential weight, if any, did the Department of Justice give to this 2005 decision in deciding whether to preclear S.B. 14?

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory No. 9 on grounds that it mischaracterizes Georgia's voter identification law and misstates the extent of any similarity between Georgia's voter identification law and S.B. 14. The Attorney General further objects to Interrogatory No. 9 on grounds that it seeks information not likely to lead to the discovery of relevant evidence insofar as, pursuant to Section 5, the court must engage in a *de novo* review of the State's claim that S.B. 14 was enacted without discriminatory purpose or effect. The Attorney General also objects to Interrogatory No. 9 because it seeks a legal opinion related to Section 5 of the Voting Rights Act and seeks facts protected from disclosure by the deliberative process privilege. Without waiving said objections, the Attorney General responds as follows:

Each administrative submission to the Attorney General requesting preclearance under Section 5 of the Voting Rights Act is assessed individually according to the facts of that submission and standard set out in 28 C.F.R. § 51.54, as explained and illustrated by 28 C.F.R. §§ 51.51-.61.

**INTERROGATORY NO. 10:**

For all registered Texas voters who you contend lack a driver's license, a personal identification card, or a concealed handgun license, please identify each individual who has a

United States passport or passport card, a United States military identification card, or a United States citizenship certificate with a photograph.

**ANSWER:**

The Attorney General's general objections are incorporated by reference herein. The Attorney General further objects to Interrogatory 10 insofar as it requests information outside of the custody or control of the Attorney General and is premature, as discovery has only recently commenced. Without waiving said objections, the Attorney General responds as follows:

The burden of proving that a proposed voting change neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, under Section 5 of the Voting Rights Act, rests with the State of Texas. *See South Carolina* v. *Katzenbach*, 383 U.S. 301, 328, 335 (1966). Facts produced through discovery and subject to complex analysis may provide additional information responsive to this interrogatory. Moreover, the Attorney General is not in possession of facts responsive to Interrogatory No. 10.

Date: April 20, 2012

Respectfully submitted,

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
DANIEL J. FREEMAN
Attorneys
Voting Section, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2012, I served a true and correct copy of the foregoing via email on the following counsel of record:

Jonathan Franklin Mitchell
Adam W. Aston
Matthew Hamilton Frederick
Office of the Attorney General of Texas
jonathan.mitchell@oag.state.tx.us
adam.aston@oag.state.tx.us
matthew.frederick@oag.state.tx.us

*Counsel for Plaintiff*

J. Gerald Hebert
hebert@voterlaw.com

Chad W. Dunn
Brazil & Dunn
chad@brazilanddunn.com

*Counsel for Kennie Intervenors*

Ryan Haygood
NAACP Legal Defense and Education Fund
rhaygood@naacpldf.org

*Counsel for Texas League of Young Voters Intervenors*

Mark A. Posner
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org

Ezra David Rosenberg
Dechert LLP
ezra.rosenberg@dechert.com

*Counsel for NAACP Intervenors*

John Tanner
john.k.tanner@gmail.com

*Counsel Texas Legislative Black Caucus Proposed Intervenors*

Nina Perales
Mexican American Legal Defense & Educational Fund, Inc.
nperales@maldef.org

*Counsel for Rodriguez Proposed Intervenors*

*/s/ Elizabeth S. Westfall*
ELIZABETH S. WESTFALL
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
elizabeth.westfall@usdoj.gov