# EXHIBIT 2

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF TEXAS,                    )
                                   )
        Plaintiff,                 )
                                   )
VS.                                )
                                   )
ERIC H. HOLDER, JR. in his         )
official capacity as Attorney )
General of the United States, )
                                   )
        Defendant,                 )
                                   )
ERIC KENNIE, et al,                )
                                   )
    Defendant-Intervenors,         )
                                   )
TEXAS STATE CONFERENCE OF          )   CASE NO. 1:12-CV-00128
NAACP BRANCHES,                    )   (RMC-DST-RLW)
                                   )   Three-Judge Court
    Defendant-Intervenors,         )
                                   )
TEXAS LEAGUE OF YOUNG VOTERS )
EDUCATION FUND, et al,             )
                                   )
    Defendant-Intervenors,         )
                                   )
TEXAS LEGISLATIVE BLACK            )
CAUCUS, et al,                     )
                                   )
    Defendant-Intervenors,         )
                                   )
VICTORIA RODRIGUEZ, et al.,        )
                                   )
    Defendant-Intervenors.         )

**************************************************
ORAL DEPOSITION OF
SENATOR TROY FRASER
MAY 17, 2012
**************************************************



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

2

1           ORAL DEPOSITION OF SENATOR TROY FRASER, produced as

2      a witness at the instance of the Defendant, was duly

3      sworn, was taken in the above-styled and numbered cause

4      on the MAY 17, 2012, from 9:43 a.m. to 6:29 p.m., before

5      Chris Carpenter, CSR, in and for the State of Texas,

6      reported by machine shorthand, at the offices of The

7      United States Attorney's Office, 816 Congress Avenue,

8      Suite 1000, Austin, Texas 78701, pursuant to the Federal

9      Rules of Civil Procedure and the provisions stated on

10     the record or attached hereto.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

```
                                                              3
 1
 2
 3                      A P P E A R A N C E S
 4       FOR THE PLAINTIFF, STATE OF TEXAS:
 5             Patrick K. Sweeten
               Matthew Frederick
 6             OFFICE OF THE ATTORNEY GENERAL OF TEXAS
               P.O. Box 12548
 7             Austin, TX  78711-2548
 8             209 West 14th Street
               8th Floor
 9             Austin, TX  78701
               (512) 936-1307
10             patrick.sweeten@texasattorneygeneral.gov
               matthew.frederick@texasattorneygeneral.gov
11
         FOR THE DEFENDANT, HOLDER, ET AL:
12
               Elizabeth S. Westfall
13             Bruce Gear
               U.S. DEPARTMENT OF JUSTICE
14             950 Pennsylvania Avenue, NW
               NWB - Room 7202
15             Washington, DC  20530
               (202) 305-7766
16             elizabeth.westfall@usdoj.gov
17       FOR THE DEFENDANT-INTERVENOR TEXAS STATE CONFERENCE OF
         NAACP BRANCHES AND THE MEXICAN AMERICAN LEGISLATIVE
18       CAUCUS:
19             Ezra D. Rosenberg
               DECHERT, LLP
20             Suite 500
               902 Carnegie Center
21             Princeton, NJ  08540-6531
               (609) 955-3200
22             ezra.rosenberg@dechert.com
23
24
25
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     FOR THE KENNIE INTERVENORS:

2          Chad W. Dunn

           BRAZIL & DUNN, LLP

3          4201 Cypress Creek Parkway

           Suite 530

4          Houston, TX  77068

           (281) 580-6310

5          chad@brazilanddunn.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

5

1                          INDEX
2   Appearances,,.......................................2
3   SENATOR TROY FRASER
4           Examination by Ms. Westfall.................6
            Examination by Mr. Rosenberg..............295
5
    Signature and Changes............................318
6
    Reporter's Certificate...........................320
7
8                         EXHIBITS

9   NO. DESCRIPTION                        PAGE MARKED

10   43    Deposition Notice                      16

11   44    HB No. 1706                            62

12   45    Declaration of Carlos Uresti          117

13   46    Excerpt of proceedings of the Committee of    207
          the Whole Senate on Tuesday, March 10
          2009
14
15   47    Senate Journal of the fifth day,            283
          Wednesday, January the 26th
16   48    Texas Tribune article                 289
17   49    Excerpt of Senate Record              311
18
19
20
21
22
23
24
25



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

6

1                        SENATOR TROY FRASER,

2       having been first duly sworn to testify the truth, the

3       whole truth, and nothing but the truth, testified as

4       follows:

5                          EXAMINATION

6       BY MS. WESTFALL:

7            Q.   Good morning, Senator Fraser.  Could you state

8       and spell your name for the record, please?

9            A.   Troy Fraser, F-r-a-s-e-r.

10           Q.   Have you had your deposition taken before?

11           A.   Not to my knowledge.

12           Q.   Okay.  I'm going to tell you some ground rules

13      so you can understand what will be happening

14      today.  You're here to testify truthfully, accurately

15      and completely.

16                     The court reporter here will be preparing

17      a transcript of that everything is said today, so it is

18      important to wait for me to ask my question before you

19      answer.  And also to make verbal responses to my

20      questions.  In other words, please do not shake your

21      head or say "uh-huh" or "nuh-uh," because you can't see

22      that in the transcript.

23                     Please wait for me to finish my question.

24      If you have any questions about my question or don't

25      understand my question, please feel free to ask.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

7

1            If you would like to take a break for any

2    reason, just let me know, and we can take a break.  We

3    will take breaks probably several times today and also

4    break for lunch.  But if I have a question pending and

5    you would like to take a break, if you could go ahead

6    and answer that question first before we take a break,

7    I'd appreciate it.  Is that clear?

8        A.   Yes.

9        Q.   You understand that you've been sworn in and

10   you're under oath and you may be subject to penalty of

11   perjury for giving false or misleading testimony just

12   like a trial, okay?

13       A.   Yes.

14       Q.   Do you understand these instructions?

15       A.   Yes, I do.

16       Q.   Do you have any questions about these

17   instructions?

18       A.   No.

19       Q.   Are you on any medication today that would have

20   any impact on your ability to testify truthfully at this

21   deposition?

22       A.   No.  I should qualify:  I've had knee surgery a

23   month ago, and at some point, about every five minutes,

24   I will stand up and stretch my leg.  So if I stand up,

25   I'm not leaving.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

8

1      Q.   Very good.  I will not take offense.  Thank you

2    for letting me know, and I hope you're recovering

3    swiftly.

4            I may use the terms "voter ID" and "photo

5    ID" interchangeably throughout this deposition, and I

6    want you to interpret those terms as broadly as you can

7    to mean a requirement that a voter present a form of

8    identification, whether it has a photo or otherwise,

9    when voting in person, before being permitted to vote

10   with a regular ballot.  Do you understand?

11     A.   Yes.

12     Q.   If I refer to "you," I'm asking you a question

13   about you in your capacity as a member of the Texas

14   State Senate, and not in any other capacity.  Do you

15   understand?

16     A.   Yes.

17     Q.   And if I refer to "you," I also mean to include

18   anyone in your office or acting on your behalf, okay?

19     A.   Could I address my attorney?

20     Q.   Certainly.

21          THE WITNESS:  Why, my staff?

22          MR. SWEETEN:  Yeah.  I think, you know,

23   with respect to that instruction, I think that that

24   could be very difficult for him, if you're asking

25   Senator Fraser something, I mean, it depends on the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

9

1    context.  But if you're asking him, "Did you do this,"

2    he could be answering that he personally did something

3    or -- under your definition, you would be requiring him

4    to say that, you know, to speak for, you know, a group

5    of people.

6              I think we would have -- we would ask that

7    when you -- we can't agree to that instruction the way

8    it's phrased, because I think that that could be

9    problematic for him.  And certainly, he's raised that

10   that would be potentially an issue.

11             So we would ask that we -- that "you" be

12   giving its normal meaning.  If there's a circumstance

13   you're asking for "you" to mean his office, then I think

14   that if you would just specify that, we'd appreciate

15   that.

16             MS. WESTFALL:  Thank you, Mr. Sweeten.  I

17   will do my best to make sure that my questions are

18   accurate.  And when I intend to refer to "you" and "your

19   office," I'll try to make sure the question encompasses

20   both of those terms.

21        Q.   (By Ms. Westfall)  Finally, I would like to

22   instruct you that when I state the term "minority

23   voters," I mean voters who are not white or not Anglo.

24   Do you understand that definition?

25             MR. SWEETEN:  So she's saying for purposes



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    of this deposition, as she's asking you the questions,

2    when she using the term "minority voters," that she

3    means people that are not white or nonAnglo.  Okay.

4    Just as she says it in the deposition, that that's what

5    that term will mean.

6             THE WITNESS:  Is that a term of art used?

7             MR. SWEETEN:  Well.

8    Q.   (By Ms. Westfall)  Sir, I'm using the term for

9    purpose of this definition -- deposition, and I want to

10   make sure that we have a mutually agreed upon

11   understanding of terms so that when I ask you a

12   question, you can know the question that I'm asking.

13          Otherwise, I could ask -- I could ask you

14   many, many questions about persons of different races,

15   but I don't want to burden you with those number of

16   questions today at this deposition.  So I'm hoping we

17   can agree that you will understand what I mean when I

18   say "minority voter."

19          Do you have any questions about that, sir?

20   A.   No.

21   Q.   Thank you.  Are you represented by counsel

22   today?

23   A.   Yes.

24   Q.   Who is your lawyer?

25   A.   Patrick.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      Q.    And Patrick is Patrick Sweeten?

2      A.    Yes.

3      Q.    And I think I asked you whether you've been

4    deposed before, and you said no?

5      A.    No.

6      Q.    That's correct?

7      A.    I'm sorry.  I do not remember being deposed

8    before.

9      Q.    Thank you.  Have you testified in court before?

10     A.    No.  Again, not to my -- I don't remember

11    testifying in court.

12     Q.    Have you ever been personally a party to a

13    lawsuit, either as a plaintiff or a defendant?

14     A.    Not to my knowledge that I -- not that I

15    remember.

16     Q.    Thank you.  What did you do to prepare for

17    today's deposition?

18     A.    Read the -- all the -- you know, the '09 and

19    '011 hearings data.  Reread the bill that was passed and

20    met with Counsel prior to.

21     Q.    And by "Counsel," you mean Mr. Sweeten?

22     A.    Yes.

23     Q.    Did you read anything else in advance of this

24    deposition other than the things you just testified

25    about today?


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

12

1      A.    That's a very broad question.

2      Q.    Did you read anything other than the 2009, 2011

3  hearings and the bill to prepare for the deposition?

4      A.    Yes.

5      Q.    What else did you read?

6      A.    Anything that I had in my file that had been

7  delivered to you that, you know, we had released, I read

8  that data.

9      Q.    Okay.  Very good.  And did that include

10  information about Senate Bill 14?

11      A.    Yes.

12      Q.    Did that include information and documents

13  related to previous photo ID bills that had been enacted

14  or considered by the Texas legislature?

15      A.    Yes.

16      Q.    Are there any other categories of documents

17  that I did not mention in that list that you read from

18  your file?

19      A.    No.

20      Q.    When you met with your attorney, Mr. Sweeten,

21  was anyone else present?

22      A.    Yes.

23      Q.    Who else was present?

24      A.    Other counsel that would be working with

25  Mr. Sweeten.


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

13

1          Q.    Anyone else besides other attorneys in the

2    room?

3          A.    No.

4          Q.    Other than your attorneys, did you speak with

5    anyone in advance of this deposition about your

6    deposition?

7          A.    No.

8          Q.    Did you speak to Janice McCoy about her

9    deposition?

10         A.    No.

11         Q.    Did you bring any notes or documents with you

12   today?

13         A.    No.

14         Q.    Is it your understanding that as a -- that you

15   as a state legislator may invoke legislative privilege?

16         A.    Yes.

17         Q.    Are you invoking that privilege today?

18         A.    Yes.

19         Q.    Are there any other privileges that you are

20   asserting today other than attorney-client privilege

21   with your attorneys and legislative privilege?

22              MR. SWEETEN:   Those are the two categories

23   that we intend to assert.   Obviously, if something were

24   to come up that we're not expecting in the examination,

25   if you asked about his physician discussions or



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

14

1    something like that, that could be implicated, but I

2    think those are the two, I think, coming in that we

3    expect to assert.

4        Q.    (By Ms. Westfall)  Do you agree with what your

5    attorney just said, Senator?

6        A.    Yes.

7        Q.    Have you asserted legislative privilege over

8    documents and other materials within your possession or

9    in the possession of your staff members that relate to

10   Senate Bill 14?

11       A.    I would like to address Counsel.  I believe we

12   have.

13            MR. SWEETEN:  That's correct.  Correct.

14       A.    The answer is yes.

15       Q.    (By Ms. Westfall)  Do you understand that as a

16   result of asserting this privilege, the office of the

17   Attorney General for the State of Texas has withheld

18   certain documents in your position that relate to Senate

19   Bill 14?

20       A.    Yes.

21       Q.    And do you further understand that the offices

22   of the Attorney General has not produced those documents

23   to counsel for the US Attorney General in this

24   litigation; is that right?

25       A.    Yes.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

15

1          Q.   Do you continue today to assert legislative

2     privilege over documents related to Senate Bill 14?

3          A.   Yes.

4          Q.   Will you be invoking today legislative

5     privilege over your deposition testimony that you

6     provide today in this litigation?

7          A.   Yes.

8          Q.   Will you be invoking legislative privilege with

9     regard to your deposition testimony today that relates

10    to other photo ID bills that have been considered by the

11    Texas legislature in past sessions?

12         A.   Yes.

13         Q.   Why are you asserting a legislative privilege?

14              MR. SWEETEN:   You don't have to answer why

15    you're asserting that.

16              We revealed communications that I've had

17    with him, discussions about legal matters, he doesn't

18    have to provide you with why, as to why he's asserting

19    the privilege.

20         A.   I think that's protected.

21         Q.   (By Ms. Westfall)  Are you adhering to your

22    attorney's instruction?

23         A.   Yes.

24         Q.   If you would -- and you realize that you

25    yourself personally hold this privilege; is that right?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

                                                           16

1        A.   Yes.

2        Q.   And you may decide if you want to assert it or

3    not; is that correct?

4        A.   Yes.

5        Q.   If you would like to waive the privilege in

6    response to any particular question that I ask today

7    during the deposition, will you let me know?

8        A.   Yes.

9        Q.   Thank you.

10            MS. WESTFALL:   Court Reporter, can you

11   mark this, please?

12            (Exhibit 43 marked for identification.)

13       Q.   (By Ms. Westfall)   Senator, I don't think this

14   is in very small font, but I want you to have your

15   proper glasses because I want to ask you about this

16   stuff.

17            You've been handed by the court reporter

18   what's been marked as US Exhibit 43.   Do you recognize

19   this document?

20       A.   No, I do not.

21       Q.   Okay.   Could you look at the second page, sir?

22   Does taking a look at the second page of Exhibit 43

23   refresh your recollection about what this document is?

24       A.   No.

25            MS. WESTFALL:   I'll note for the record



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

17

1    that Counsel is assisting the witness in reviewing the

2    document.

3         Q.   (By Ms. Westfall)  Does it remain your

4    testimony that you've never seen this document before?

5         A.   (Looking through other pages.)  I have not seen

6    this document.

7         Q.   Thank you.  You need not refer to it right now,

8    but I'm going to ask you some questions about documents

9    that were collected pursuant to US Exhibit 43.

10             Did anyone to your knowledge search in

11   your office for documents and communications related to

12   calculations, reports, audits, estimates, projections,

13   assessments and other analyses of the effect of Senate

14   Bill 14 on minority voters?

15             MR. SWEETEN:  Can you direct him to where

16   you're reading?

17             MS. WESTFALL:  I certainly can.  It's

18   Number 5 in the list of documents.  It's not a paginated

19   document, but Mr. Sweeten could you assist him in

20   looking at Number 5 on this?

21             MR. SWEETEN:  So counsel is asking me to

22   assist him reviewing the document.  Sure.  I can do

23   that.

24             MS. WESTFALL:  Well, if you want me to

25   refer to it, otherwise, I can read, Mr. Sweeten.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

18

1    Q.   (By Ms. Westfall)  And Number 5 on the next

2    page, sir.

3    A.   Clarify.  You want all through 1 through 5?

4    Q.   No.  Just -- I'm directing your attention to

5    Number 5 in the document.  If you could look at that

6    Number 5, and let me know when you've had a chance to

7    review that.

8    A.   (Witness complies.)

9    Q.   Do you know whether -- you've had a chance to

10   look at Number 5; is that correct, sir?

11   A.   Uh-huh.

12   Q.   Do you know -- is that a "yes"?

13   A.   Yes.

14   Q.   Thank you.  Just so the court reporter can hear

15   you.  Thank you.

16        Do you know whether anyone in your office

17   has searched for documents in response to the documents

18   requested in Number 5 of Exhibit 43?

19        MR. SWEETEN:  She's asking you, do you

20   know if anybody in your office has done a search for

21   these documents?

22   A.   It's my understanding that Janice McCoy did the

23   search for the documents.

24   Q.   (By Ms. Westfall)  Okay.  And did Ms. McCoy, to

25   the best of your recollection, handle all document



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    19

1        searches in response to the documents listed here --

2        A.    Yes.

3        Q.    -- in Exhibit 43?

4              So you don't have any further information

5        about looking for those records, is that your testimony?

6        A.    Yes.

7              MR. SWEETEN:  Were you asking just as to

8        5, when you said "as to this document" --

9              MS. WESTFALL:  No.  I meant --

10             MR. SWEETEN:  -- or are you asking as to

11       any on the list?

12             MS. WESTFALL:  Thank you for the

13       clarification, Mr. Sweeten.

14       Q.    (By Ms. Westfall)  You've testified you've

15       never seen Exhibit 43?

16       A.    No.

17       Q.    Is that correct?

18       A.    Yes.

19       Q.    It -- Exhibit 43 has a list of documents

20       numbered 1 through 12, does it not?

21       A.    Yes.

22       Q.    And to the best of your knowledge, did

23       Ms. McCoy in response to this request for documents

24       search for documents?

25       A.    I have no knowledge that she did.  I think it



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    was requested of her, but no, I have no knowledge.

2         Q.   Thank you.  And are there any documents related

3    to Senate Bill 14 or previous voter ID bills that you

4    keep in your possession that Ms. McCoy would not have

5    had access to?

6         A.   No.

7         Q.   Can you describe your educational background,

8    please, starting with college?

9         A.   College, three total years of college.  One

10   year of junior college.  And then I attended three other

11   colleges.

12        Q.   Did you eventually get a degree?

13        A.   No.

14        Q.   Did you do any studies after that?

15        A.   In at least one, maybe two occasions, took a

16   course through a university.

17        Q.   Did any of those courses involve election law?

18        A.   No.

19        Q.   Did any of them involve voter ID?

20        A.   No.

21        Q.   How long have you served in the Senate, sir?

22        A.   I was elected in 1996, sworn in January '97.

23        Q.   Before that time, were you a member of the

24   Texas House of Representatives?

25        A.   Yes, I was.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                        May 17, 2012

21

1      Q.   And when did you start that service?

2      A.   I was elected in 1988, and served until '93.

3      Q.   Could you describe the areas within your Senate

4  district currently?

5      A.   Could you clarify?

6      Q.   Certainly.  Just could you describe where your

7  Senate district is?

8      A.   The Senate district is the geographic center of

9  the State of Texas encompassing 21 counties.

10     Q.   And is it Senate District 24?

11     A.   Yes, it is.

12     Q.   What is the total population of your district?

13     A.   The last census, we subdivided the state, and

14  it's approximately 820,000 people.

15     Q.   Could you describe the racial demographics of

16  your district?

17     A.   Racial demographics are in keeping with the

18  rest of the state, probably -- no, probably a pretty

19  good reflection of the percentages within the rest of

20  the state.

21     Q.   Could you tell me approximately how that breaks

22  down, to the best of your knowledge?

23     A.   I'm sorry.  I cannot.

24     Q.   Do you currently serve on any committees in the

25  Senate?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

22

1        A.   Yes.

2        Q.   What are those committees?

3        A.   The chair of Natural Resources.  I serve on the

4   State Affairs.  I serve on International Relations and

5   something.  I'm sorry.  I'm missing one.

6        Q.   Do you also serve on Nominations?

7        A.   No.

8        Q.   No?

9        A.   No.

10       Q.   My apologies.

11       A.   Well, hold on a second.  I'm sorry, I can't

12   answer that question.  I don't.

13       Q.   That's okay.

14            Is State Affairs committee the sole

15   committee that has considered voter ID bills since

16   you've served in the Senate?

17       A.   Again, I'm not sure I can answer that.  The

18   answer is it has not been the sole committee.

19       Q.   Has the other committee been the Committee of

20   the Whole?

21       A.   Yes.

22       Q.   Are there any other committees you're aware of

23   that have considered voter ID in the Senate since you've

24   served in the Senate?

25       A.   No.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      Q.    And putting aside for a moment the photo ID
2    bills that you have sponsored and had involvement in,
3    how many election-related bills have you sponsored, or
4    voter-related bills?
5      A.    Again, I don't have a clear recollection.  I
6    think I probably carried two very minor bills six or
7    eight years ago, but I don't -- I don't have
8    recollection of those.
9      Q.    Do you know generally what they were about?
10     A.    No.
11     Q.    Did they relate to voter registration?
12     A.    No.
13     Q.    Did they relate to voting?
14     A.    If they were a voter bill, they related to
15   voting.
16     Q.    I just wanted to know if they related to
17   campaign finance or some other election-related matter.
18   But to the best of your recollection, they related to
19   voting; is that correct?
20     A.    I don't have a clear recollection, so no, I
21   can't answer that affirmatively.
22     Q.    Do you know whether those bills were enacted?
23     A.    A.  No.
24     Q.    You don't know?
25     A.    No.  I do not know.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                     May 17, 2012

24

1          Q.   Have you cosponsored any voting bills other

2     than the photo ID bills?

3          A.   I believe the answer is no, not to my

4     knowledge.

5          Q.   What has your primary focus in the legislature

6     been in the Senate?

7          A.   I have chaired, prior to Natural Resources,

8     chaired Business and Commerce and worked on business-

9     related issues.

10          Q.   Could you describe those issues?

11          A.   I heard about 2,000 bills per year for 15

12     years, so it would be a long list of description.

13          Q.   Okay.  Did you have any signature initiatives

14     in that committee?

15          A.   Qualify "signature."

16          Q.   Did you have any area of focus?

17          A.   I focused on the entire committee.

18          Q.   Have you served in any leadership roles in the

19     Senate?

20          A.   We are not divided to leadership positions.

21     There are no leadership positions.

22          Q.   Have you ever served as president pro tem?

23          A.   Yes, I have.

24          Q.   When was that?

25          A.   The -- starting in June of '09 through January



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

25

1   of '11.

2        Q.   What did that role entail as president pro tem?

3        A.   It is an honorary position that is rotated by

4   seniority.  It's not mandated, but it is custom that we

5   transfer it by seniority.  And it becomes your term and

6   you serve.  The responsibilities would be entailed that

7   if the Governor and the Lieutenant Governor are out of

8   the state, then you would be the acting governor in

9   their absence.

10       Q.   I see.  What is the role of the Lieutenant

11  Governor in the Senate?

12       A.   The Lieutenant Governor is a state-wide elected

13  official.  He presides over the Senate at the will of

14  the Senate.  He has no constitutional right to serve.

15  He's given his power by rule from the senators.

16       Q.   Is that in the Senate rules?

17       A.   Yes.

18       Q.   Does the Lieutenant Governor vote as a member

19  of the Senate?

20       A.   He is allowed to be a tiebreaker.  He -- yes,

21  he is allowed to vote.

22       Q.   Is that the sole circumstance under which he

23  may vote?

24       A.   No.  He can vote any time he chooses.

25       Q.   Does the Lieutenant Governor set the agenda for



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

26

1      what the Senate hears on the Floor?

2          A.   Yes.

3          Q.   Does the Lieutenant Governor --

4          A.   I'm sorry.  I need to reanswer that

5      question.  The -- the Senate sets the order of their

6      agenda based on an order of business by rule that is

7      established by the senators themselves.  In the absence

8      of a -- following the order of business, the Lieutenant

9      Governor will establish what bills are eligible to be

10     heard that day.

11         Q.   Was -- was it true that the Lieutenant Governor

12     played a role in insuring that Senate Bill 14 would be

13     heard by the Senate when it was?

14         A.   Yes.

15         Q.   And describe the role he played.

16              MR. SWEETEN:  At this point, I'm going to

17     instruct you with respect to the legislative privilege,

18     and I want you to not reveal the thoughts, mental

19     impressions, opinions about legislation, including

20     Senate Bill 14.  Don't reveal the communications that

21     you've had with legislators, with legislative staff,

22     with any state agency, including the Lieutenant

23     Governor's Office, the Governor's Office, or the Texas

24     Legislative Council or constituents.

25         A.   I will assert privilege on that question.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

27

1          Q.    (By Ms. Westfall)  And outside of any

2     conversations for which your counsel is asserting

3     privilege, as a matter of procedure, did the Lieutenant

4     Governor -- could you describe the role that the

5     Lieutenant Governor played with regard to Senate Bill 14

6     and its placement on the Senate calendar or agenda?

7          A.    I would again assert privilege.

8          Q.    Thank you, sir.  Is the Lieutenant Governor in

9     effect the leader of the Senate?

10         A.    No.

11         Q.    Who is?

12         A.    The senators.

13         Q.    Collectively?

14         A.    Yes.

15         Q.    Are you familiar with an organization called

16    the American Legislative Exchange Council, otherwise

17    known as ALEC?

18         A.    Yes.

19         Q.    Where is that organization based physically, do

20    you know?

21         A.    No.

22         Q.    Is it based in Washington, D.C.?

23         A.    I just answered.  I don't know where it's

24    located.

25         Q.    Thank you.  Do you have any affiliation with



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

28

1    ALEC?

2         A.    Clarify "affiliation."

3         Q.    Are you a member of ALEC?

4         A.    My understanding of ALEC is that there's not a

5    constant membership, that if you choose to attend a

6    conference, part of the registration fee includes your

7    dues for that year.

8         Q.    What is ALEC?  Could you describe it, please?

9         A.    It's an American legislative something

10   exchange.

11        Q.    We'll call it ALEC for the purposes of this

12   deposition to make things easier, sir.

13        A.    Oh.

14        Q.    Could you describe the type of services it

15   provides or what it does generally?

16        A.    They have a conference once a year and enables

17   legislators to get together to intermingle.

18        Q.    Is it for state legislators solely?

19        A.    I believe it is.

20        Q.    How long have you had any dealings -- for how

21   many years have you had membership or attended the

22   conferences or otherwise participated in ALEC events?

23        A.    In 1991, my first dealing with them in 1991, I

24   was chosen as one of their legislators of the year.

25        Q.    How did you get that honor?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          A.    I have no idea.

2          Q.    Do you know if there are other members of the

3    Texas legislature who are members of ALEC?

4          A.    Again, to my knowledge, there is no membership

5    to ALEC.  There's a competing group that is a -- you

6    know, the state pays the membership to a competing

7    group.  To ALEC, the only membership is if someone goes

8    to a conference, part of their conference dues includes,

9    I'm assuming, a membership for that year.  So I don't

10   know who's a member.

11         Q.    Have you attended meetings of ALEC with other

12   members of the Texas legislature?

13         A.    Yes.

14         Q.    Who are those members?

15         A.    I would not -- wouldn't recall who they were.

16         Q.    Was it -- did you attend -- have you attended

17   ALEC meetings with 10 other senators from the Texas

18   Senate?

19         A.    Again, I don't remember who was there.

20         Q.    Are there agendas for the meetings of ALEC?

21         A.    You have general meetings, where you have

22   speakers, and you have breakout meetings that address

23   topics.

24         Q.    And I believe you testified you attend, you

25   have attended ALEC conferences once a year; is that



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    correct?

2         A.    I didn't say that.

3         Q.    Please tell me how often you attend meetings?

4         A.    Whenever there's a meeting that I want to

5    attend.

6         Q.    So could be once a year, could be less than

7    once a year, could be more than once a year; is that

8    correct?

9         A.    Oh, you're asking how many times a year?

10        Q.    Yes, sir.

11        A.    To my knowledge, I've never attended more than

12   one per year.

13        Q.    Do you generally take notes when you go to

14   those meetings?

15        A.    No.

16        Q.    Do you serve on any task forces or other

17   subcommittees that have been convened by ALEC?

18        A.    To my knowledge, none through ALEC.

19        Q.    Have you ever received any documents, materials

20   or communications from ALEC related to voter ID?

21        A.    No.

22        Q.    Has ALEC ever offered any technical assistance

23   on voter ID?

24        A.    No --

25             MR. SWEETEN:  Hold on a minute.  I just



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

31

```
 1      want to make sure that we're -- with respect to
 2      legislative privilege, when she's asking you these
 3      questions, I don't want you to reveal thoughts, mental
 4      impressions, opinions about legislation, including
 5      Senate Bill 14.  And don't reveal communications that
 6      you've had with other legislators, legislative staff,
 7      state agencies and Texas Legislative Council or
 8      constituents.  Okay?
 9                  THE WITNESS:  All right.
10                  MR. SWEETEN:  All right.
11          Q.  (By Ms. Westfall)  Have you ever asked ALEC for
12      assistance with any legislation you've been drafting?
13                  MR. SWEETEN:  Any legislation at all?
14                  MS. WESTFALL:  Yes.
15                  MR. SWEETEN:  I think that would still ask
16      him to reveal thoughts, mental impressions, opinions
17      about legislation, so I don't think you should answer,
18      and I instruct you not to answer that.
19          Q.  (By Ms. Westfall)  Are you following your
20      counsel's advice?
21          A.   Yes.
22          Q.   Have you ever attended -- strike that.
23                  Are you a member of the National
24      Conference of State Legislators?
25          A.   To my knowledge, yes.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    32

1        Q.    Do you attend their meetings?

2        A.    Yes.

3        Q.    Where are their meetings held?

4        A.    Always different cities.

5        Q.    How often do you attend those meetings?

6        A.    Never more than once a year and not every year.

7        Q.    Have you attended any of those -- any meetings

8   other than the National Conference of State Legislators

9   where voter ID has been discussed?

10       A.    How do I answer that?

11             MR. SWEETEN:   I'm going to let you answer

12   to the extent you've attended.   She can ask you about

13   whether you've attended a conference.   And just the

14   subject matter of voter ID, I'm going to let you answer

15   as to just yes or no.

16       A.    The answer is no.

17       Q.    (By Ms. Westfall)  Could you identify your

18   staff members by name and title who work for you?

19       A.    Probably not.

20       Q.    Could you name one of them?

21       A.    Janice McCoy is my chief of staff.

22       Q.    Could you name each and every person on your

23   staff who worked on Senate Bill 14?

24       A.    Janice McCoy.

25       Q.    Was she the sole person?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

33

1          A.    (Witness nods head yes.)

2          Q.    Do you have a schedule in your -- scheduler in

3    your office?

4          A.    Yes.

5          Q.    And what's the name of that scheduler?

6          A.    Terri Mathis.

7          Q.    Did Terri play any role in scheduling any

8    witnesses for hearings related to SB 14?

9          A.    Not to my knowledge.

10          Q.    Did she schedule any meetings with any

11    constituents, groups or other legislators regarding SB

12    14?

13          A.    That's not privileged, is it?

14                MR. SWEETEN:  She's just asking if someone

15    scheduled anything related to you.  You can answer that.

16          A.    The answer would be yes.

17          Q.    (By Ms. Westfall)  And I'm sorry, Terri's last

18    name is?

19          A.    Mathis.

20          Q.    Is she still employed with you today?

21          A.    Yes, she is.

22          Q.    How long has she been employed with you?

23          A.    15 years.

24          Q.    How did she generally schedule meetings with

25    constituents for you?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

34

1          A.   I feel sure they called and asked for a

2     meeting, and she asked if I wanted to take the meeting,

3     and then they arrange it.

4          Q.   Does she maintain a calendar for you?

5          A.   Yes, she does.

6          Q.   Is that calendar maintained on a computer

7     system or is it a paper calendar?

8          A.   It's a computer.

9          Q.   How often do you communicate with your staff

10    when you're in session?

11         A.   When I'm in session?  Constantly.

12         Q.   Do you use e-mail?

13         A.   No.

14         Q.   No e-mail, personal or business?

15         A.   I have a personal e-mail account that -- and I

16    estimate that I've probably have sent less than 10

17    e-mails in my lifetime.  I don't know how to

18    e-mail.  The answer is I don't know how to e-mail, and

19    when I send one, I have to ask staff how to do it.

20         Q.   Thank you.

21         A.   So I don't e-mail.

22         Q.   Do you have a BlackBerry?

23         A.   No.

24         Q.   How do you communicate with your staff?

25         A.   Yell into the other office.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

35

1      Q.   How do you communicate with your staff on

2    nonlegislative matters?

3      A.   Clarify, please.

4      Q.   I guess scheduling issues, personnel issues, is

5    there a distinction between how you communicate

6    regarding legislation with your staff and other matters?

7      A.   My staff are generally not involved in

8    nonlegislative.  If I have something that I'm going to

9    do, I will just -- I'll say "Don't arrange something on

10    this day.  Block this day."

11      Q.   How often in session do you communicate with

12    other members of the legislature?

13      A.   In session, constantly.

14      Q.   How do you communicate with other legislators?

15      A.   Open my mouth and words come out.

16      Q.   Face-to-face meetings?

17      A.   Yes.

18      Q.   Chiefly?

19      A.   Well, the answer is a combination of face-to-

20    face, and obviously, there are some phone communication

21    that we touch on.  But we generally more face-to-face

22    because we're around each other constantly.

23      Q.   And do you communicate with the Lieutenant

24    Governor's Office and the Lieutenant Governor?

25      A.   You know, limited.  Once in a while.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

36

1        Q.    Do you communicate with the Governor's Office?

2        A.    Very limited.

3        Q.    How do you communicate with the Governor's

4   Office?

5        A.    If it's involving a staffer question, probably

6   would be a phone call.  If it's the Governor, you'd have

7   to ask to get on his calendar to see him.

8        Q.    But are these chiefly in-person meetings that

9   you have with the Governor's Office?

10       A.    90 percent of the time.  Occasionally, it will

11  be a phone call.

12       Q.    And does the same hold true for the Lieutenant

13  Governor's Office?

14       A.    Yes.

15       Q.    Turning back to ALEC, can you describe the

16  issues that ALEC has highlighted in the last five years

17  in terms of issue priorities for ALEC?

18       A.    They've highlighted a lot of issues.

19       Q.    Could you name some of them?

20       A.    No.

21       Q.    Could you describe ALEC's key issues and goals?

22       A.    No.

23       Q.    Has ALEC highlighted or provided technical

24  advice on immigration-related issues?

25             MR. SWEETEN:  Don't reveal any sort of





Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

37

1      thoughts, mental impressions or opinions about

2      legislation or your process in considering legislation.

3      And then I think that that would include, you know, any

4      sort of discussions that she's asking you for, so I'm

5      going to ask --

6               MS. WESTFALL:  Mr. Sweeten, I have not

7      posed any question about any legislation.  I'm asking

8      about a policy organization and its issues.  I'm going

9      to ask you to withdraw that objection.

10               MR. SWEETEN:  Well, I heard your question

11      to ask technical assistance, which I believe in the way

12      I'm understanding your question would reveal, and you

13      said as to any legislation, so it would potentially

14      reveal any sort of process that he had in formulating

15      legislation.  So I think that that potentially is

16      legislatively privileged what you've asked him.

17      Q.    (By Ms. Westfall)  Let me try another way.

18            Has ALEC highlighted in its work as a

19      policy organization any immigration-related issues?

20      A.    Not to my knowledge.

21      Q.    Has ALEC highlighted any election-related

22      issues?

23      A.    Again, not to my knowledge.

24      Q.    Have you had any communications with ALEC

25      related to the subject matter of photo ID?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

38

1       A.   No.

2       Q.   Never, not one?

3       A.   Not to my knowledge.  You're clarifying here

4    that is me as an individual Senator.  I have not had

5    communication that I know of.

6       Q.   Have you had any communications with ALEC in

7    any other capacity, other than being a Texas senator?

8       A.   The answer is no.  I'm just saying that --

9            MR. SWEETEN:  We've defined you as --

10      A.   I want to clarify it's me.  I have -- I have

11   not had communication.

12      Q.   (By Ms. Westfall)  Are you aware of whether

13   Ms. McCoy has had any communications?

14      A.   I'm not aware.

15      Q.   Are you employed in the capacity other than

16   serving in the Texas State Senate?

17           MR. SWEETEN:  Is he employed?  I'm sorry.

18      Q.   (By Ms. Westfall)  In another capacity other

19   than being in the Texas Senate?

20      A.   I have no job other than my $600 a month I'm

21   making as a legislator.

22      Q.   When you last renewed your driver's license,

23   where did you have to go to do that?

24      A.   Marble Falls, Texas.

25      Q.   How far was that from your home --





Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                      May 17, 2012

                                                                    39

     1          A.   I'm sorry.  I renewed my driver's license in

     2     Austin, Texas.

     3          Q.   Where was that office?

     4          A.   North end of town.

     5          Q.   How far was that from your office?

     6          A.   Probably 25 minutes.

     7          Q.   How far was that from your home, to the extent

     8     you have a home in Austin?

     9          A.   It's an hour and a half from my home.

    10          Q.   When did you go there?

    11          A.   I'm sorry.  I don't know.

    12          Q.   Do you know approximately how many years ago?

    13          A.   Three years.

    14          Q.   Do you know the hours of operations of that

    15     office?

    16          A.   No.

    17          Q.   What time of day did you go, do you recall?

    18          A.   No.

    19          Q.   Did you go during business hours, to the best

    20     of your recollection?

    21          A.   Yes.

    22          Q.   How did you get to the driver's license office?

    23          A.   I drove myself.

    24          Q.   Do you remember waiting in line?

    25          A.   Yes.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              40

1        Q.   How long did you wait?

2        A.   I don't remember.

3        Q.   How would you have gotten to that office if you

4    hadn't had a car?

5        A.   Public transportation in Austin.

6        Q.   Could you remind me again, what office was this

7    that you went to, the driver's license office?

8        A.   I'm sorry.  I don't know the name of the

9    office.

10       Q.   Do you know approximately where it's located or

11   what street it's on?

12       A.   Approximately Burnet Road.

13       Q.   Is it your testimony that there's public

14   transportation to that office?

15       A.   No.  I can't testify that there is public.  You

16   asked me what if, and I don't know for sure that there

17   is.

18       Q.   Thank you for your testimony.  Do you have a

19   copy of your birth certificate?

20       A.   Yes.

21       Q.   If you lost it, do you know how you'd get

22   another one?

23       A.   Yes.

24       Q.   How?

25       A.   To request the town that I was born.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          Q.    Were you born in Texas?

2          A.    Yes.

3          Q.    Do you know how much it would cost?

4          A.    No.

5          Q.    And how would you go about getting a

6     replacement of your birth certificate?

7          A.    Place a phone call to the -- I'm assuming its

8     county clerk and ask for a replacement.

9          Q.    Do you think you could do that by phone, or

10    would you have to go in person?

11         A.    I believe you can do it by phone.

12         Q.    Would there be some cost associated with

13    obtaining that document?

14         A.    I'm not advised.  I don't know.

15         Q.    When -- do you generally vote in elections?

16         A.    Yes.

17         Q.    Do you vote in person or by mail?

18         A.    In person.

19         Q.    When was the last time you voted?

20         A.    Three days ago.

21         Q.    How far is your polling place from your house?

22         A.    15 minutes.

23         Q.    Is that by car?

24         A.    Uh-huh.

25         Q.    Do you ever vote early, early vote, or do you



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

42

1      vote on election day?
2           A.   More often, early.
3           Q.   Do you have any experience outside of your work
4      in the Texas State Senate on any election law-related
5      matters?
6           A.   Please clarify.
7           Q.   Do you have any -- strike that.
8                Do you have any experience related to
9      election administration?
10          A.   Clarify.
11          Q.   Have you ever volunteered as or worked as a
12     poll worker?
13          A.   No.
14          Q.   Have you ever worked as a poll watcher?
15          A.   No.
16          Q.   Have you ever participated in any other
17     capacity in serving any polling location on election day
18     or during early voting?
19          A.   No.
20          Q.   As a voter, have you witnessed any problems in
21     the polls firsthand?
22          A.   Would that not be privileged?
23               MR. SWEETEN:   I think she can ask you if
24     in your personal, in your life, if you've witnessed any
25     what was the problem with the -- with the -- she can ask



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

43

1      you that.  That's -- I'm not asserting privileges to

2      that issue.

3            A.    Ask it again, please.

4                  MS. WESTFALL:   Could you read back the

5      question, sir?

6                  (Requested portion read back by the court

7      reporter.)

8            A.    Again, I would ask you to narrow that question

9      down.  "Problems" is a very broad word.  Could be

10     parking.

11           Q.    (By Ms. Westfall)  I'm directing attention to

12     within a polling place, have you seen any voters having

13     problems in voting?

14           A.    Yes.

15           Q.    Could you describe the first problem that you

16     saw in a polling place?

17           A.    Someone showing up at the wrong location to

18     vote.

19           Q.    What happened to that individual?

20           A.    They were instructed where to go to -- to vote.

21           Q.    Have you ever witnessed anyone who was not

22     supposed to be in the polling location appearing to

23     vote?

24           A.    Yes.

25           Q.    Tell me about the first time you saw that.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

44

1        A.    The question I just answered before.  They were

2   in the wrong location, and they were sent to another

3   location.

4        Q.    Have you ever witnessed anyone who was trying

5   to impersonate another voter in a polling place?

6        A.    No.

7        Q.    Have you ever seen -- have you ever witnessed a

8   person who was not a US citizen attempting to vote?

9        A.    No.

10       Q.    Have you ever seen anyone challenging someone's

11  voter eligibility in a polling place?

12       A.    Clarification, again.  First answer I gave, the

13  answer is yes, because they were in the wrong location.

14       Q.    Are you aware that -- that voters may be

15  challenged at the polls as not properly registered to

16  vote or otherwise eligible?

17       A.    Please clarify.

18       Q.    I'll strike that question.

19             Have you ever, when you've been in a

20  polling location, challenged a voter's eligibility to

21  vote?

22       A.    No.

23       Q.    Are you familiar with Section 5 of the Voting

24  Rights Act?

25       A.    Yes.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

45

1        Q.    What is your understanding of Section 5

2     requirements as a general matter?

3        A.    As per the 1965 Voter Rights Act, there were

4     certain states, mostly in the south, that were placed

5     under Section 5.  And placed -- given different

6     requirements than everyone else in the nation.

7        Q.    And I understand that you've testified that

8     you're not a lawyer, but can you tell me, to the best of

9     your ability, what the requirements are of Section 5,

10    sir?

11       A.    Currently, are you asking for currently or in

12    1965?

13       Q.    Currently today.

14       A.    Any election activity that happens in a Section

15    5 state, of which Texas is one, that all data pertaining

16    to that has to be cleared by the Justice Department

17    prior to the election, and there's obviously a cost,

18    administrative cost associated with that.

19       Q.    Is there anything else that you want to testify

20    about your understanding of Section 5 requirements, or

21    that is the sum total?

22       A.    That's it.

23       Q.    Do you believe that compliance with the Voting

24    Rights Act is important?

25              MR. SWEETEN:  Objection.  Relevance.  Go



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

46

1    ahead and answer.

2         Q.    (By Ms. Westfall)  You may answer.

3         A.    I believe when the Act was passed in '65, it

4    was important.  I believe today the Voting Rights Act

5    has outlived its useful life.

6         Q.    When do you believe -- first of all, what do

7    you mean by that, "outlived its useful life"?

8         A.    Should I?  Privilege on that?

9              MR. SWEETEN:  Well, here's how we'll --

10   let me instruct you as to that.  I don't want you to

11   reveal any sort of thoughts or mental impressions or

12   opinions about legislation or matters in furtherance of

13   the legislative process as it relates to bills.  And I

14   don't want you to reveal communications between you and

15   legislators or legislative staff, state agencies, Texas

16   Legislative Council or constituents.  If you can answer

17   that question without revealing those, then you can go

18   ahead and do so.  And you can at all times --

19        A.    I believe it's outlived its useful life.

20             MR. SWEETEN:  Okay.  Let me also just

21   finish.  You can at all times include matters of the

22   public record.  You can discuss matters on the public

23   record, including committee hearings, proceedings,

24   debates, that sort of thing.

25             MS. WESTFALL:  Mr. Sweeten, I'm not asking



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

47

 1    about any legislative act right now.  So I think your

 2    instruction is inappropriate.  I would ask you to

 3    withdraw it with regard to the question I asked.

 4              MR. SWEETEN:  Well, I think he's answered

 5    the question.  I think it's important that he not reveal

 6    matters that would be legislatively privileged in

 7    answering the question.  If he can answer it without

 8    doing so, which I think he may have just done, then I'm

 9    letting him do so.  So it's just as to matters that

10    could be legislatively privileged.  That's my

11    instruction.

12        Q.   (By Ms. Westfall)  Could you explain what you

13    mean by Section 5 having outlived its useful life?

14        A.   I believe it's outlived its useful life.

15        Q.   Could you explain what you mean by that?

16              MR. SWEETEN:  Same instruction.  Go ahead.

17        A.   I believe it's outlived its useful life.

18        Q.   (By Ms. Westfall)  And that's the sum total of

19    your response to my question?

20        A.   Yes.

21        Q.   When did that occur that it became -- that

22    Section 5 became no longer useful?

23        A.   I wouldn't attach a date to that time.

24        Q.   And what is the basis for your opinion?

25              MR. SWEETEN:  Same instruction.  Go ahead.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

48

1      A.   I believe it has outlived its useful life.

2      Q.   (By Ms. Westfall)  Do you have any facts to

3  support that statement that you want to testify about

4  today?

5           MR. SWEETEN:  Same instruction.

6      A.   I believe it has outlived its useful life.

7      Q.   (By Ms. Westfall)  Do you receive any legal

8  advice on election-related legislation to ensure

9  compliance with Section 5?  And I'm just asking about

10  the fact of legal advice.  I'm not asking you to testify

11  about any conversations you've had with your attorneys

12  about Section 5.

13           MR. SWEETEN:  Okay.  And so -- so it's

14  clear.  She's not asking you about the substance of

15  communications.  She's simply asking you, do you receive

16  legal advice on that issue?

17      A.   I would claim privilege on that because any

18  advice I'm getting would be involving legislation.

19      Q.   (By Ms. Westfall)  Sir, your counsel has

20  instructed you not to reveal any -- the substance of

21  those conversations, but I'm sure your counsel would not

22  disagree with my assertion that I'm allowed to ask

23  whether you have received advice on compliance with

24  Section 5 of the Voting Rights Act.

25      A.   The answer is yes.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

49

1          Q.    Thank you.  And from whom?

2          A.    Counsel.

3          Q.    Mr. Sweeten?

4          A.    Not like -- well, Mr. Sweeten, obviously, we

5     have had conversations recently.

6          Q.    Do you have counsel for the -- that you -- that

7     you rely upon within your capacity as a Texas State

8     Senator for advice about Section 5?

9          A.    I do not have specific counsel that I rely on,

10    on Section 5.

11         Q.    Are there any attorneys at all that you relied

12    upon in drafting Senate Bill 14 pertaining to compliance

13    with Section 5?

14                MR. SWEETEN:  Okay.  If you're asking has

15    he communicated and did he have communications with

16    individuals?

17                MS. WESTFALL:  That's not my question,

18    Mr. Sweeten.

19                Court Reporter, would you read back the

20    question?

21                MR. SWEETEN:  Yeah.  Read back the

22    question.

23                (Requested portion read back by the court

24    reporter.)

25         A.    In the drafting of Senate Bill 14.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

50

1       Q.   (By Ms. Westfall)  Consideration or anything

2    involving Senate Bill 14, did you -- I'm just asking

3    whether you relied upon the advice of counsel.

4       A.   Yes.

5       Q.   Who was that person?

6       A.   I couldn't give you specific counsel.

7       Q.   Was there an office that person was employed

8    with?  What entity housed the lawyer that you relied

9    upon for advice for Section 5?

10      A.   The counsel for the State of Texas generally is

11   the Attorney General's office.  We do have in-house

12   counsel that drafts legislation, the lawyers there that

13   obviously are involved in the drafting.

14      Q.   Who -- what office is that within --

15      A.   There's two groups in Texas.  One is the Texas

16   Legislative Council.  The second group, I'm sorry, I

17   can't pull up the name of it, but there is a second

18   group that does -- does secondary work.

19      Q.   Is that Engrossing and Enrolling, is it that

20   group?

21      A.   Yes, but that's not what it's called.

22      Q.   If you remember later today, will you tell me?

23      A.   Sure.  Yeah.

24      Q.   Doing my best to figure out the various

25   entities of the Texas State Senate, but I'll have to



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

51

1      rely upon your help.

2                    So it is your testimony that you solely

3      relied upon advice from the Texas Legislative Council

4      for advice pertaining to compliance with Section 5 in

5      regards to Senate Bill 14; is that right?

6          A.   Yes.

7          Q.   Did you rely upon advice from the office of the

8      Attorney General as well in that regard?

9          A.   Yes.

10         Q.   What is Texas's current system for determining

11     how to verify the identity of a voter before section --

12     before SB 14 was enacted?

13         A.    The only requirement Texas has that if you show

14     your -- your voter registration card that is sent by --

15     in the mail to people, and whoever has that card in

16     their possession can walk up and vote.

17         Q.   Has this system failed to prevent voter fraud

18     in your view?

19         A.   No.

20         Q.   Are there any problems you can identify today

21     with the current system in identifying voter fraud?

22                    MR. SWEETEN:  When you're answering this

23     question, I don't want you to reveal thoughts, mental

24     impressions or opinions about legislation or in

25     furtherance of the legislative process, or



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

52

1   communications that you've had among the entities that

2   we've talked about.

3        A.    It has been testified in the hearings on the

4   bill that there's been numerous occasions where a card

5   was either stolen out of a mailbox or given to someone

6   else and that person voted with that card.

7        Q.    (By Ms. Westfall)  Could you tell me when that

8   testimony occurred?

9        A.    When the bill was heard in 2009 and when the

10  bill was heard in 2011.

11       Q.    How many voters did that occur with, to the

12  best of your recollection?

13       A.    I don't recall that number.

14       Q.    Was it more than 10?

15       A.    Yes.

16       Q.    Was it 20?

17       A.    I don't have a number.

18       Q.    Do you know the witness who testified about

19  that activity that you just described?

20       A.    The one witness that comes to mind is Senator

21  Williams' father -- he was deceased and had been voting

22  for multiple elections.  Someone had his card and was

23  taking the card and voting.

24       Q.    Did that result in a conviction of that

25  individual?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

53

1        A.    To my knowledge, no.

2        Q.    Are you aware of any convictions on the basis

3    of -- related to the activity that you described?

4              MR. SWEETEN:  Can you reread the question

5    back?

6              MS. WESTFALL:  Mr. Sweeten, it's a matter

7    of public record, convictions.

8              MR. SWEETEN:  Okay.  I'm -- I didn't ask

9    that.  I'm asking for him to read the question back, if

10   he would, please.

11             MS. WESTFALL:  You may do so, sir.

12             (Requested portion read back by the court

13   reporter.)

14             MR. SWEETEN:  And when you say activity

15   described, he's talking about Williams's testimony on

16   the Senate.  So do you know?  You can answer that

17   question.

18       A.    I'm sorry.  I do not remember.  There has been

19   testimony on that, but I do not remember specific

20   convictions.

21       Q.    (By Ms. Westfall)  So sitting here today,

22   you're unaware, just to -- so I understand your

23   testimony, you're unaware of any convictions related to

24   the fraud that you described, which is stealing

25   someone's voter registration card.  Is that -- am I



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

54

1      correctly stating your testimony?

2          A.   You asked me to list specific ones, and I

3      cannot list specific ones.

4          Q.   Thank you, sir.  Other than that issue that you

5      just flagged as a potential problem under the current

6      law, are you aware of any other problems with the

7      current system for verifying a voter's identity under

8      Texas law?

9                MR. SWEETEN:  Again, don't reveal your

10     thoughts, mental impressions or opinions in furtherance

11     or about legislation.  Don't reveal communications that

12     you've had between legislators, legislative staff, state

13     agencies, Texas Legislative Council or constituents in

14     answering this question.  You can refer to matters in

15     the public record.

16         A.   Texas law is insufficient for making a person

17     identify who they are.

18         Q.   (By Ms. Westfall)  And thank you for your

19     testimony.  And what is the basis for that opinion,

20     other than what you've just testified about, which is

21     testimony regarding stolen voter registration cards?

22               MR. SWEETEN:  Okay.  In answering this

23     question, do not reveal mental impressions, thoughts or

24     opinions about legislation, okay, including Senate Bill

25     14.  And don't reveal communications that you've had



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

55

1    with any of the individuals or entities that we've

2    talked about in answering this question.  You can refer

3    to matters of the public record.

4         A.   In Texas, if someone has in their possession a

5    voter registration card and they go to the proper voting

6    location, they are allowed to vote.

7         Q.   (By Ms. Westfall)  And --

8         A.   Without identifying they are who they say they

9    are.

10        Q.   And it's -- it's your opinion that that creates

11   problems or are there any -- what I'm trying to ask you

12   is whether there are any facts that you haven't already

13   testified to that support your opinion.

14             MR. SWEETEN:  In answering this question,

15   do not reveal thoughts, mental impressions or opinions

16   about legislation or in furtherance of the legislative

17   process.  Okay?  Don't reveal the communications that

18   we've talked about with individuals or entities that are

19   protected under the privilege.

20        A.   It's been testified in testimony that it is

21   possible in Texas for someone to go to and present a

22   voter registration card that is not theirs, and if they

23   are on the list, they're allowed to vote and not asked

24   for identification.

25        Q.   (By Ms. Westfall)  So is it your testimony that



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    the problem with the current system is the potential for

2    in-person voter fraud, as you just described, is that

3    your testimony?

4         MR. SWEETEN:  In answering this question,

5    do not reveal thoughts, mental impressions, opinions

6    about legislation, including Senate Bill 14, and do not

7    reveal communications that you've had with legislators,

8    legislative staff, Texas Ledge Council, constituents or

9    state agencies.

10        A.   I claim the privilege on this question.

11        MS. WESTFALL:  Mr. Sweeten, it will be

12   possible that you could you shorten, shorthand your

13   objections so we don't have to spend much of the day

14   listening to the same objection over and over, and you

15   could have a shorthand understanding.  Is that something

16   I could ask for you to work out with your client?

17        MR. SWEETEN:  We can do that.  Why don't

18   we -- we can discuss that at a break.

19        MS. WESTFALL:  Okay.

20        MR. SWEETEN:  I know you don't want to

21   hear me sit here and go through this exercise.  At the

22   same time, I think it's important that I will

23   occasionally, you know, interject that.  But let's

24   continue as we are.  We will discuss sort of something

25   we can work out at the break.  Okay?  But I'll work with



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      you.

2                    MS. WESTFALL:  I would like --

3                    MR. SWEETEN:  I know you don't want to

4      hear me all day.

5                    MS. WESTFALL:  I would like to remind you,

6      Senator, that -- and it's going to be very difficult

7      within a complicated deposition with your counsel

8      asserting privilege on your behalf and a lot of

9      interruptions, and we found in the last few days that

10     it's sometimes difficult to remember the question that

11     was posed.  But the way we're going to get through this

12     deposition in as quick a process as possible is if you

13     listen carefully to my question and answer it to the

14     best of your ability, if you decide to listen to the

15     advice of your counsel, taking that into account.  But

16     I'm now going to go back and ask that question again so

17     I can get an answer on the record.

18                    Could you read the question back, Court

19     Reporter?

20                    (Requested portion read back by the court

21     reporter.)

22          A.   I'll claim privilege.

23          Q.   (By Ms. Westfall)  When was Senate Bill 14

24     signed into law?  To refresh your recollection, was it

25     approximately May 2011?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                            58

1        A.    That sounds correct.

2        Q.    Had there been elections held in Texas since

3    that time?

4        A.    Yes.

5        Q.    Approximately how many?

6        A.    I'm sorry.  I don't have that number.

7        Q.    To your knowledge, has the Secretary of State

8    or any county officials enforced Senate Bill 14 since it

9    was signed into law?

10       A.    No.

11       Q.    Have there been any -- and so you've been

12   operating under the current system before Senate Bill 14

13   is enforced; is that correct?

14       A.    Yes.

15       Q.    And have there been any problems related to

16   in-person voter impersonation, fraud, other problems

17   that you're aware of that occurred between May 2011 and

18   the present?

19       A.    I don't have that information.

20       Q.    So is the answer you're not aware of any

21   problems, sitting here today?

22       A.    My answer is I don't have that information.

23       Q.    When did you first hear any support for

24   enacting photo voter identification requirements in

25   Texas?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

59

1            MR. SWEETEN:  In answering this question,

2    don't reveal your thoughts, mental impressions, opinions

3    about legislation or in furtherance of the legislative

4    process.  Don't reveal communications between the

5    entities or individuals that we've named.

6       A.   Ask the question again, please.

7            MS. WESTFALL:  Court Reporter, could you

8    read it back?

9            (Requested portion read back by the court

10   reporter.)

11      A.   2007.  No, late 2006.

12      Q.   (By Ms. Westfall)  Could you describe the

13   circumstances under which you heard about interest in

14   them -- in that issue?

15           MR. SWEETEN:  Same instruction.

16      A.   Privilege.

17      Q.   (By Ms. Westfall)  Could you tell me the --

18   could you identify the persons who expressed support for

19   such a law?

20      A.   No.

21      Q.   No, you don't know?

22      A.   Privilege.

23      Q.   I'm sure your counsel will agree that the

24   privilege doesn't extend to identifying the persons who

25   expressed support.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

60

1      A.   Okay.  The answer is no, I don't have a

2    specific person.

3      Q.   So you don't recall at this time, or you do

4    recall?

5      A.   You're asking for the name of a specific

6    person.  The answer is no, I don't have a specific

7    person.

8      Q.   Was there a group of people who were supporting

9    it?

10     A.   No.

11     Q.   Not that you recall?

12     A.   There was not a group that brought the

13   legislation to me.

14     Q.   So you first heard the support in late 2006.

15   It's your testimony you can't remember individuals.

16   It's your testimony you can't remember any groups.  How

17   did you come to learn about the interest in photo ID?

18     A.   I believe my first contact of looking at it was

19   the Baker-Carter commission report that came out in '05,

20   and I believe I read documentation of that and the

21   recommendation of that group.

22          MR. SWEETEN:  Okay.  She can ask you, and

23   the court will allow her to ask you if you had

24   conversations with someone, who was present in the

25   conversations.  She can ask you the approximate date of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

61

1    that.  Do not, though, go beyond that and reveal the

2    substance of the communication or -- when she's asking

3    these questions.  I'm just going to instruct you.

4        Q.   (By Ms. Westfall)  Do you know why there was

5    support for photo ID in 2005?

6             MR. SWEETEN:  Don't answer.  Legislative

7    privilege.

8        A.   Privilege.

9        Q.   (By Ms. Westfall)  Are you not asking on the

10   basis of your counsel's advice?

11       A.   Yes.

12       Q.   Was there a time when photo -- voter ID law was

13   first introduced in the Texas legislature?

14       A.   Clarify.

15       Q.   In 2005, was there a bill?

16       A.   To my knowledge, I do not remember a bill in

17   2005.

18       Q.   Was there a bill in the House?

19       A.   Again, I don't remember.

20            MS. WESTFALL:  Could you mark this as

21   US --

22            MS. MARANZANO:  Has it been marked before?

23            MS. WESTFALL:  It hasn't been.  So what's

24   the next number?

25            MS. MARANZANO:  44.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

62

1           MS. WESTFALL:  Could you mark this as U.S.
2      44, please?
3           Q.   (By Ms. Westfall)  You've been handed what's
4      been marked US 44.  Do you recognize this?
5           A.   I recognize it as a bill, but I don't -- has
6      this got a date on it?
7           Q.   I'll give you a moment to take a look.  I don't
8      believe it does have a date.  Oh, it does.
9           A.   The bill is set to have made -- to take effect
10     on September 1, 2009, so it would imply --
11          Q.   Of 2005?
12          A.   It's Senate Bill 362.
13          Q.   Oh, my apologies.
14          MR. SWEETEN:  You've got 362.  She's was
15     trying to get you 1706 here.  So let's change that out.
16          MS. WESTFALL:  Yeah.  Sorry.  So would you
17     mark this Exhibit 44.
18          (Exhibit 44 remarked for identification.)
19          Q.   (By Ms. Westfall)  You've been handed the
20     corrected copy of US 44.  Do you recognize this?
21     Have you had a chance to look at US 44?
22          A.   Yes.
23          Q.   Do you recognize this?
24          A.   Yes.
25          Q.   What is it?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

63

1        A.    It appears to be legislation that was filed,
2    and again, it doesn't have a date on it for the
3    enactment.
4        Q.    Directing your attention to Page 10, which is
5    the last page of US 44.  Do you see a date on that, sir?
6        A.    Okay.  Okay.  Yes.
7        Q.    Does that refresh your recollection as to when
8    this bill was introduced?
9        A.    No.
10       Q.    Did you have any involvement -- and just for
11   the record's purposes, this is House Bill 1706, correct?
12       A.    Yes.
13       Q.    And does it appear that it was introduced in
14   2005?
15       A.    Yes.
16       Q.    Did you have any involvement whatsoever in this
17   bill?
18       A.    No.
19       Q.    Can you hand the witness what's been previously
20   marked as Exhibit 28?
21            MR. SWEETEN:  You can put that other one
22   aside, Senator Fraser.  And let's start with the stack
23   here so we don't lose any of these.
24       Q.    (By Ms. Westfall)  You've been handed what's
25   been previously marked as US 28.  Do you recognize this



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

64

1      document?

2                  MR. SWEETEN:  Caution the witness to take

3      your time in reviewing the document before you answer

4      any questions on it.

5          Q.   (By Ms. Westfall)  Sir, have you had a chance

6      to look at this Exhibit 28, or do you need some more

7      time?

8          A.   No.  I've looked at it.

9          Q.   Do you recognize it?

10         A.   Yes.

11         Q.   What is it?

12         A.   It was a bill filed in the Texas House of

13     Representatives in 2007.

14         Q.   Do you recall who authored it?

15         A.   I recall because I can read the author's name

16     on the top of the -- the coauthors.

17         Q.   And who authored it?

18         A.   Brown of Kaufman, Berman, Bohac, Riddle, et al.

19         Q.   Did you or your staff play any role in

20     development of House Bill 218?

21         A.   Not to my knowledge.

22         Q.   Are you familiar with the provisions of House

23     Bill 218?

24         A.   Yes.

25         Q.   Could you tell me -- could you describe it,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

65

1     House Bill 218 for me?

2               MR. SWEETEN:  In answering this, don't

3     reveal thoughts, mental impressions or opinions about

4     legislation or in furtherance of the legislative

5     process, or any conversations that we've talked about.

6               MS. WESTFALL:  I would ask you to withdraw

7     that objection.  I'm asking him questions about the

8     bill, which couldn't be more public.  Do you agree,

9     Mr. Sweeten?

10              MR. SWEETEN:  I think -- I'm not sure that

11    the way you just phrased it is what the question asked,

12    but go ahead and you can -- we'll ask the court reporter

13    to read it back.

14              (Requested portion read back by the court

15    reporter.)

16              MR. SWEETEN:  Okay.  He can describe the

17    bill that's in front of him.

18              MS. WESTFALL:  Would you withdraw your

19    objection, Mr. Sweeten?

20              MR. SWEETEN:  If you're asking him to

21    describe the document in front of him, yeah, I'll

22    withdraw the objection.  Go ahead.

23              MS. WESTFALL:  Thank you.

24         Q.   (By Ms. Westfall)  Could you answer the

25    question?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

66

1      A.   Could you repeat the question?

2      Q.   Certainly.  Could you describe House Bill 218

3  for me?

4      A.   No.

5      Q.   I believe you just testified you were familiar

6  with this bill, did you not?

7      A.   You asked me if I recognized the bill.

8      Q.   Are you unable to describe House Bill 218 for

9  me, sir?

10     A.   This is with a House Bill filed in part of the

11 House.

12     Q.   Can I turn your attention to the part of the

13 bill that may refresh your recollection?  Could you turn

14 your attention to Page 9 of Exhibit 28, House Bill 218?

15 Do you see on Page 9 it lists forms of acceptable

16 documentary proof of ID?

17     A.   What's that number?  I'm sorry.

18     Q.   Certainly.

19          MR. SWEETEN:  She's asking about Page 9,

20 Senator Fraser, I think.

21     A.   I know.  I'm thinking about something else.

22          MR. SWEETEN:  Okay.

23     A.   I'm trying to recall.  It's been a long time

24 ago.

25          What was your question?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

67

1          Q.    (By Ms. Westfall)  I was directing you to the

2     list of IDs on Page 9.  Are you there?

3          A.    9?

4          Q.    On Page 9, Section 63.

5          A.    Yes.

6          Q.    So just to clarify, you testified earlier that

7     you were unfamiliar with House Bill 1706, is that right,

8     that was introduced in 2005?

9          A.    I didn't say that I was unfamiliar.

10         Q.    Could you clarify your testimony?

11         A.    You asked if I could describe.

12         Q.    Okay.  Are you able to describe any differences

13    between House Bill 1706 enacted in -- or introduced in

14    2005 and the bill that you have before you, Exhibit 28,

15    House Bill 218?  I just want to know if you're able to

16    do so.

17         A.    I am not able to do so.

18         Q.    Thank you.  Were you present at any meetings

19    during the development of House Bill 218?

20         A.    No.

21         Q.    Was any of your staff?

22         A.    I don't know.

23         Q.    Are you aware of any concerns that were raised

24    during the development of House Bill 218 about the

25    impact of House Bill 218 on Hispanic voters?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

68

1        A.   Privilege.

2              MR. SWEETEN:  Don't -- yeah, that's

3    privileged.

4        Q.   (By Ms. Westfall)  Are you aware of purposes,

5    the purpose or purposes for House Bill 218?  And I'm

6    just looking for a "yes" or "no" answer.  Are you aware

7    of the purposes, and then we'll talk about what they

8    are?

9        A.   When the bill was filed?

10       Q.   Yes.

11       A.   No.

12       Q.   Are you aware of whether part of the purpose of

13   218 was to prevent noncitizens from voting?

14             MR. SWEETEN:  Objection, legislative

15   privilege.

16       A.   Privilege.

17             MS. WESTFALL:  I hand you what's been --

18   well, could you remark this as -- it's previously

19   marked.  Can you just remark this as 3?

20       Q.   (By Ms. Westfall)  I'm handing you what's been

21   previously marked as Exhibit 3.  Have you seen this

22   document before?

23       A.   As the date of this publication -- it says 4-12

24   on the printing.  Is that the date?

25       Q.   I would turn your attention to the top line of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                          May 17, 2012

69

1      Exhibit 3, where it says Volume 23, Issue 46.  Does that
2      tell you, give you any indication about the date of this
3      document?
4          A.   No.
5          Q.   Have you ever seen this document before?
6          A.   I don't know whether I have or not.
7          Q.   Do you want to take a moment to take a look at
8      it and see if it rings a bell?
9          A.   Sure. (Witness reading.)
10         Q.   Have you had a chance review Exhibit 3?
11         A.   I have.
12         Q.   Do you remember seeing the letter referenced in
13     Exhibit 3 from -- that was drafted from Lieutenant
14     Governor Dewhurst on voter ID?
15         A.   The answer is no, I don't remember seeing it.
16         Q.   And does it appear from this article that it
17     was -- that letter was written around the time of
18     consideration of House Bill 218?
19         A.   The attempt to consider?
20         Q.   Yes.  Does it appear that the letter was
21     written in conjunction with that --
22         A.   Yes.
23         Q.   -- particular piece of legislation?
24         A.   Yes.
25         Q.   Thank you, sir.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

70

1          And do you see that this article refers to

2     two versions of a letter from Lieutenant Governor

3     Dewhurst; is that correct?

4          A.   No.  I don't see there's two letters.

5          Q.   All right.  Well, turning your attention to

6     Exhibit 3, does it -- does it appear that -- strike

7     that.

8          Do you know who would have written this

9     letter for Mr. Dewhurst and his staff?

10          MR. SWEETEN:  Objection, calls for

11     speculation.

12          Q.   (By Ms. Westfall)  Would it have been

13     Mr. Hebert?

14          A.   Privilege.

15          Q.   I don't believe that that's a proper response,

16     and your counsel will not -- will advise you.

17          MR. SWEETEN:  I'll instruct you.  On that,

18     I think her question is:  Do you know who wrote this?

19          A.   No.

20          MR. SWEETEN:  Okay.

21          Q.   (By Ms. Westfall)  Do you see in that letter

22     that is referred to in the Texas Weekly article,

23     Exhibit 3, that it urges support for House Bill 218 in

24     order to stop voting by people who are not US citizens?

25     At Paragraph 2 of the Texas Weekly article?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

71

1      A.   Would you rephrase your question?

2      Q.   Yes.

3      A.   Or re-ask your question?

4      Q.   Yes.  Turning your attention to the second

5    paragraph of the Texas Weekly article, Exhibit 3, does

6    it indicate that Mr. Dewhurst's support for 218 because

7    it will prevent noncitizens, people who are not US

8    citizens, from voting at the polls?  Do you see that?

9      A.   No.

10     Q.   You don't?  Does it indicate in the letter that

11   you, Senator Fraser, brought up in the Senate for

12   consideration, and I'm reading from Paragraph 2, "House

13   Bill 218 by Representative Betty Brown, which simply

14   requires voters to present a driver's license or some

15   other common form of identification at the election

16   polls to prove who they say they are, US citizens."  Do

17   you see that paragraph?

18     A.   I do see that paragraph.

19     Q.   And do you see down at Paragraph 4, that it

20   refers to testimony from Mr. Paul Bettencourt regarding

21   foreign nationals both applying for and receiving voter

22   registration cards?

23     A.   Would you show me where you're referencing?

24     Q.   Certainly.  The first sentence at Paragraph 4

25   of the Texas Weekly article starting with, "On June 22,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                      72

1      2006, Harris County Tax Assessor-Collector and Voter

2      Registrar Paul Bettencourt testified before the US House

3      Administration Committee that both foreign nationals are

4      both applying for and receiving voter registration

5      cards."  Do you see that sentence?

6          A.    I do.

7          Q.    Was that -- was preventing noncitizens from

8      voting part of the purpose of House Bill 218?

9          A.    Privilege.

10               MR. SWEETEN:  Yeah.

11               MS. WESTFALL:  You may answer.

12               MR. SWEETEN:  You can -- she's asking you

13     -- hold on a minute.  She's asking you about this

14     document.  Okay?  You can answer questions about, you

15     know, any public statements that you've made regarding

16     it.  But you don't have to reveal information, opinions,

17     mental impressions or thoughts about legislation.

18         A.    I didn't write this article.  I didn't make

19     that statement.  And I -- whoever Paul Bettencourt is,

20     obviously, he testified before the US House

21     Committee.  He didn't testify before my Senate

22     committee.

23         Q.    And Mr. -- this article refers to a letter

24     written by Lieutenant Governor Dewhurst in which he

25     expressed the views that I just read into the record,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

73

1    did he not?

2         A.   You're representing that this is a letter from

3    him.  I couldn't -- I can't validate that.

4         Q.   Let me ask you directly:  Was part of the

5    purpose of House Bill 218 to prevent noncitizens from

6    voting?

7              MR. SWEETEN:  I'm going to object to

8    legislative privilege.

9         Q.   (By Ms. Westfall)  Mr. Dewhurst -- well, strike

10   that.

11             Who would be the best -- strike that.

12             Would Mr. Dewhurst know about this letter?

13             MR. SWEETEN:  Objection, calls for

14   speculation.

15        Q.   (By Ms. Westfall)  You may answer.

16        A.   Privilege.  I don't know.  I'm not, you know, I

17   don't know.  I -- I don't know about this letter.

18        Q.   Do you think that if the Texas Weekly published

19   an open letter from Lieutenant Governor Dewhurst, and

20   sitting here today, you are unable to answer questions

21   about this, that Mr. Dewhurst would be the best person

22   that we could ask about this letter and the contents

23   thereof?

24        A.   Speculation.

25        Q.   Is there anybody --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

74

1          A.    I do not -- you're asking me do I know.  I do
2     not know.
3          Q.    Who would know about this letter and about the
4     purposes expressed about House Bill 218?
5          A.    You'll have to ask them.  I do not know.
6          Q.    And by "them," you mean Mr. Dewhurst?
7          A.    Anyone you want to ask would be appropriate.  I
8     don't -- I don't know.
9          Q.    And I believe when I asked you whether
10    preventing US -- non-US citizens from voting was the
11    purpose of House Bill 218 you asserted privilege.  If
12    that is with regard to any private conversations over
13    which your counsel is asserting privilege, could you
14    identify the person with whom you had a conversation
15    about noncitizens voting and House Bill 218?
16         A.    Is that privilege?
17                MR. SWEETEN:  She's asking you and the
18    court will allow them to ask you questions that reveal
19    the name or legislator or staff involved in a
20    communication, the name of a constituent involved in a
21    communication, whether any individuals were privy to the
22    communication, the date on which the communication
23    occurred, or the form or medium of the communication or
24    the nature of general subject matter.
25                So you can identify those sort of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

75

1    particulars about a contact or conversation.  Do not

2    reveal the specific content of contacts?

3        A.   Ask the question again.

4        Q.   Certainly.  Let me strike the question and ask

5    another one.

6             Did you ever have any conversations with

7    anyone about House Bill 218 and its purpose as it

8    pertained to preventing non-US citizens from voting?

9        A.   No.

10       Q.   Was part of the purpose of House Bill 218 to

11   prevent foreign nationals from applying for and

12   receiving voter registration cards?

13       A.   Privilege.  Privilege.

14       Q.   Did you ever have any conversations about the

15   purpose of House Bill 218 as it pertained to stopping

16   foreign nationals from applying for and receiving voter

17   registration cards?

18            MR. SWEETEN:  Same objection, legislative

19   privilege.

20       A.   Privilege.

21       Q.   (By Ms. Westfall)  Did you have any

22   conversations?  I'm sure your counsel will instruct you

23   that you can answer that question.

24       A.   Privilege.

25            MS. WESTFALL:  Mr. Sweeten.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

76

1          MR. SWEETEN:  You can identify whether or

2     not you had a conversation with anyone and you can -- if

3     she's asking you the general subject matter, you can

4     answer about the date or time or who was involved in the

5     conversation.  Don't reveal the substance of the

6     conversation or communication.

7          A.   Ask the question again, please.

8          Q.   (By Ms. Westfall)  Senator Fraser, did you ever

9     have any conversations with anyone about House Bill 218

10    and part of its purpose being to prevent foreign

11    nationals from applying for or receiving voter

12    registration cards?

13          MR. SWEETEN:  I'm going --

14          A.   Not to my knowledge.

15          MR. SWEETEN:  And I'm also going to

16    interpose an objection, assumes facts not in

17    evidence.  But go ahead.  You've answered it, so we're

18    on to the next question.

19          Q.   (By Ms. Westfall)  Would, in your view, House

20    Bill 218 stop noncitizens from voting?

21          MR. SWEETEN:  I'm going to object --

22          A.   Privilege.

23          MR. SWEETEN:  -- yeah, as to legislative

24    privilege on that issue.

25          Q.   (By Ms. Westfall)  Would it stop foreign



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    nationals from receiving voter registration cards?

2              MR. SWEETEN:  Same objection.  Same

3    instruction.  Legislative privilege.

4        A.    Privilege.

5        Q.    (By Ms. Westfall)  Don't people indicate their

6    citizenship when they register to vote?

7              MR. SWEETEN:  Time frame, are you asking

8    currently now?  Are you asking in 2007?

9              MS. WESTFALL:  I'm asking currently now.

10             MR. SWEETEN:  Okay.

11             MS. WESTFALL:  And then.

12             MR. SWEETEN:  Do you understand the

13   question?

14       A.    To my knowledge, no.

15       Q.    (By Ms. Westfall)  Do people affirm or indicate

16   their citizenship on voter registration applications in

17   Texas?

18       A.    Clarify "affirm."  Is there a question

19   "asked"?  Is that what you're asking?

20       Q.    I'm asking whether when you apply to register

21   to vote and submit a voter registration form in the

22   state of Texas today, do you swear or affirm or indicate

23   under penalty of perjury that you are a US citizen?

24       A.    To my knowledge, yes, you do.

25       Q.    Thank you for your testimony.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

78

1          As you sit here today, do you believe that

2     part of the purpose of House Bill 218 was to prevent

3     noncitizens from voting?

4               MR. SWEETEN:  Objection, legislative

5     privilege.

6          A.   Privilege.

7               MS. WESTFALL:  I'm asking him as he sits

8     here today --

9          A.   Privilege.

10              MS. WESTFALL:  -- his opinion, not based

11     upon a legislative act.  Mr. Sweeten, will you

12     reconsider your objection?

13              MR. SWEETEN:  Well, I think he wants a

14     break, and so let's -- we'll discuss it at the break.

15              MS. WESTFALL:  No.  Can we finish the

16     question?

17              MR. SWEETEN:  Okay.  Can you read the

18     question back, please?

19              (Requested portion read back by the court

20     reporter.)

21              MR. SWEETEN:  Objection, asked and

22     answered.

23         Q.   (By Ms. Westfall)  You may answer.

24         A.   The purpose of the bill was to protect the

25     integrity of the voting box.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

                                                              79

1              MR. SWEETEN:  Okay.  We're going to take a

2      break.

3              MS. WESTFALL:  Thank you.  Why don't we

4      take a break for a few minutes and we can get some

5      coffee and come back in a few minutes.

6              (Lunch recess from 11:24 a.m. to

7      12:39 p.m.)

8         Q.   (By Ms. Westfall) Okay.

9         A.   Could I possibly go back and readdress an issue

10     that we had talked about earlier?

11        Q.   Certainly.

12        A.   The -- on Exhibit 28 that you handed me, which

13     is House Bill 218.

14        Q.   Yes.

15        A.   I answered that I was not familiar and had not

16     seen it because I thought this was the filed version

17     that had been filed in the House, and was not the

18     amended -- it was amended on the Floor, engrossed in the

19     House, sent to the Senate, and I picked the bill up.  I

20     had not been following 218 as filed, which I assume it

21     is.  I've since looked at the language and there's an

22     amendment that I recognize in this that was placed, I

23     believe, in the bill that came over.  So I believe my

24     answer to your question you asked, is it 218 as you

25     handed it to me, yes, I am familiar with it because it



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    was the version that was sent to the House and I picked

2    up as to carry.

3         Q.   Thank you for that.

4         A.   So this -- this -- and I want to correct that.

5         Q.   Thank you for that clarification.  Just to be

6    clear:  Exhibit 28, House Bill Number 218, is that the

7    -- do you believe it is the version that was received in

8    the Senate and engrossed in the House?  Is that your

9    testimony?

10        A.   I do believe this is the engrossed version as

11   amended in the House that came to the Senate and was the

12   bill that I picked up and took to the Floor.

13        Q.   Thank you for that clarification.  I appreciate

14   that.

15             MS. WESTFALL:  Before we proceed,

16   Mr. Sweeten, will you, as we discussed during the break,

17   agree -- that we can have an agreement, that you can

18   assert legislative privilege and that will be an

19   objection that reflects objections that you've made more

20   fully previously during this deposition?

21             MR. SWEETEN:  Right.  And Counsel will

22   allow me to, in asserting the legislative privilege,

23   that that preserves the full objection that I had been

24   making throughout this deposition.  Okay.  That's fine.

25             MS. WESTFALL:  Thank you.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

81

1          Q.   (By Ms. Westfall) Senator, we had been

2     discussing House Bill 218 before the break.  I'd like to

3     refer you to that bill again and ask you whether this

4     bill, House Bill 218, would prevent non-citizens from

5     voting?

6          A.   The --

7               MR. SWEETEN.  I'm going to object based on

8     legislative privilege.  I think that goes to effect.

9               THE WITNESS:  Do you think that's

10    privileged?

11              MR. SWEETEN:  Yeah.  I think it --

12              MS. WESTFALL:  Mr. Sweeten, I'm asking

13    about the effect of the bill, so outside of

14    conversations that you've -- that are -- I'm not asking

15    you to testify about anything -- personal conversations,

16    private things that you're alleging to be privileged, in

17    terms of conversations with other legislators, but to

18    the extent you can just testify about whether you

19    believe the bill on its face.

20         A.   And, again, if you get into belief, what I

21    believed, I would've claim privilege.

22         Q.   (By Ms. Westfall) Okay.  So you -- your

23    testimony is you cannot answer the question about

24    whether HB 218 --

25         A.   I'm saying it is privileged the way you asked



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

82

1       the question.

2           Q.    Okay.   And I'm going to counsel you, just

3       because we're having a back and forth, not to talk over

4       each other because the record will be very difficult to

5       read.   So I will try to wait for you answer, and if you

6       wait for me to interpose my question, I'd be grateful.

7                 Let me ask it a different way:   Was HB 218

8       enacted, to the best of your recollection?

9           A.    I'm sorry?

10          Q.    Was it enacted and signed by the Governor in to

11      law?

12          A.    218?

13          Q.    Yes?

14          A.    No.

15          Q.    And if it had been and was precleared by the

16      Justice Department or otherwise approved under Section 5

17      through the courts and was enforced in Texas, is it --

18      do you believe that it would prevent non-citizens from

19      voting?

20                MR. SWEETEN:   I'm going to object to the

21      question as legislatively privileged.   It goes into his

22      beliefs.   I think, to help us, if you want to ask if a

23      specific provision as written in the text that you're

24      seeing would prohibit something, I think that would be

25      fine, but I think you're asking his overall believe, his



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    mental impressions, about the legislation.  So that's my

2    direction.

3         Q.   (By Ms. Westfall) Directing your attention to

4    Page 9 of Exhibit 28, Section 63.0101, on Page 9; do you

5    see that?

6              MS. WESTFALL:  Let the record reflect

7    witness is reviewing Exhibit 28.

8         Q.   (By Ms. Westfall) Do you see where it lists

9    documentation of proof of identification?

10        A.   Yes.

11        Q.   Would this section of the bill have the effect

12   of preventing non-citizens from voting?

13        A.   No.

14        Q.   Is it true as you understand it, sitting here

15   today, that non-citizens in Texas may obtain a Texas

16   driver's license?

17        A.   Yes.

18        Q.   Are you aware that in 2007, Royal Masset --

19   actually, strike that.

20              Who is Royal Masset?

21              MR. SWEETEN:  You can answer who he is.

22        A.   Royal Masset had been affiliated through party

23   politics off and on through the last ten years.

24        Q.   (By Ms. Westfall) And by party politics, do you

25   mean the Republican party of Texas?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

84

1        A.    Yes.

2        Q.    Was he the former political director?

3        A.    I don't know.

4        Q.    Are you aware that he said something to the

5    effect of -- in -- that he said in 2007, "They're just

6    basically using sheer racism to pump up their own

7    political points; they're just trying to exploit public

8    fear of illegal aliens."  Are you familiar with that

9    quote?

10       A.    No.

11       Q.    Are you familiar with that sentiment?

12       A.    No.

13       Q.    You never heard Royal Masset make any

14   indication of that in the public or in the press?

15       A.    No.

16       Q.    What's your reaction to that quote?

17       A.    Privileged.

18       Q.    Could you identify -- did you have a

19   communication that you're referring to in asserting

20   privilege over?

21            MR. SWEETEN:  I think what she's asking

22   you is are you basing the privilege claim on -- on a

23   communication or on the fact that it would reveal

24   thoughts, mental impressions, opinions about

25   legislation?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

85

1        A.    I think I have to answer this in that the only

2    knowledge I have of this was an assertion made during

3    testimony in 2009.  That's the only time I've ever heard

4    of this issue and had any other knowledge other than it

5    was asserted by a member during testimony.

6        Q.    (By Ms. Westfall) In 2009, your -- could you

7    tell me about the testimony, on the record, that you're

8    referring to?

9        A.    I don't remember the member, but a member of

10    the legislature, and it was a Democrat member, made the

11    assertion that Royal Masset had made this quote.

12        Q.    And what is your reaction to the quote?

13             MR. SWEETEN:  Reaction would be asking for

14    -- objection, legislative privilege.

15        Q.    (By Ms. Westfall) Are you following the advice

16    of counsel?

17        A.    Yes, privilege.

18        Q.    Were there any other bills introduced in the

19    2007 legislative session that you recall related to

20    combatting issues pertaining to undocumented aliens?

21        A.    There was a legislation that was -- I'm sorry,

22    2007?

23        Q.    2007.

24        A.    I have no knowledge that I remember.

25        Q.    And yesterday, your chief of staff, Janice



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

86

1      McCoy, testified in deposition that you advised the

2      Lieutenant Governor's Office that you wanted to sponsor

3      House Bill 218 in the Senate; is that correct?

4          A.   That is correct.

5          Q.   Why did you want to sponsor House Bill 218?

6               MR. SWEETEN:  Objection, calls for

7      legislative privilege.

8          Q.   (By Ms. Westfall) Are you following the advice

9      of counsel?

10         A.   I am.  Privilege.

11         Q.   Is there any conversation that you had with

12     anyone in the Governor's Office concerning your desire

13     to sponsor H Bill -- HB 218?

14              MR. SWEETEN:  Objection.  I think you're

15     -- you're asking the specifics of the conversation.  He

16     can definitely identify whether a conversation occurred

17     with the Governor, but the subject matter is assumed in

18     your question.

19              MR. ROSENBERG:  But the subject, if I may

20     point to the order, we're allowed to get on the record

21     what the subject matter of the conversation was.

22              MS. WESTFALL:  Further, Mr. Sweeten, the

23     witness just confirmed that the testimony of Ms. McCoy,

24     that he indeed made that request to sponsor that

25     legislation.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

87

1        A.    And did you --

2              MR. SWEETEN:  Hold on.  No, no, no.  No,

3        no, no.  Let me talk.

4              Would -- the subject matter, it was a

5        general subject matter, is what the court's order says.

6        The subject matter does not relate to -- he's not going

7        to identify the specific subject matter.  He can answer

8        the question as to whether or not he had conversations

9        with the Governor's Office.  You can ask about the

10       time.  You can ask about the subject, the general

11       subject matter, but the specifics, I think, are assumed

12       in the question is sort of the issue we're having.

13             MS. WESTFALL:  I'm not going to withdraw

14       my question.  I'm going to try another way.

15       Q.    (By ms. Westfall) Did you have any

16       conversations with anyone in the Lieutenant Governor's

17       Office about sponsoring HB 218 in the Senate?

18             MR. SWEETEN:  I'm going to let you answer

19       that question as phrased.  Do not reveal any additional

20       substance of any conversations other than yes or no.

21       A.    I would first ask for clarification.  You have

22       used Governor in one question and Lieutenant Governor in

23       the other question.  What is the question you're asking?

24       Q.    (By Ms. Westfall) Let's start with the

25       Lieutenant Governor.  Did you have any conversations --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     did you or your staff have any conversations with

2     Lieutenant Governor or anyone in his office concerning

3     your sponsorship of HB 218?

4               MR. SWEETEN:   You can answer as phrased,

5     yes or no.

6          A.   Yes.

7          Q.   (By Ms. Westfall) Did you personally

8     participate in that meeting?

9          A.   You're inferring it was a meeting.

10         Q.   Did you personally participate in that

11    communication with the Lieutenant Governor's Office?

12         A.   No.

13         Q.   Did Ms. McCoy?

14         A.   My assumption --

15              MR. SWEETEN:   Answer if you know.

16         A.   My assumption is yes, that she would be the one

17    to do it.

18         Q.   (By Ms. Westfall) Do you know who else was in

19    that part of that communication?  And I'm sure your

20    counsel --

21         A.   No.

22         Q.   Okay.  How many conversations were there about

23    your sponsorship of HB 218 with the Lieutenant

24    Governor's Office?

25         A.   I -- I don't know that because I didn't have



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

89

1     one, so.

2         Q.    Do you know approximately when --

3         A.    Zero.  I had zero conversations.

4         Q.    Do you know approximately when this

5     conversation between Ms. McCoy and the Lieutenant

6     Governor's Office occurred?

7         A.    No.

8         Q.    Why did you want to sponsor HB 218?

9         A.    Privilege.

10             MR. SWEETEN:  Objection privilege.

11        Q.    (By Ms. Westfall) Did you have communications

12    with any election officials, either county or state,

13    concerning your sponsorship of HB 218?

14             MR. SWEETEN:  Objection, that's

15    legislatively privileged.

16        A.    Privilege.

17        Q.    (By Ms. Westfall) Yes or no answer for

18    establishing a privilege log.

19             MR. SWEETEN:  Okay.  You can answer if you

20    had a specific conversation with any election official?

21        A.    No.

22        Q.    (By Ms. Westfall) Are you familiar with

23    Secretary of State Roger Williams?

24        A.    Clarify "familiar."

25        Q.    Do you know him?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

1          A.    Yes.

2          Q.    Do you know who he is?

3          A.    Yes.

4          Q.    Are you aware that Secretary of State Roger

5     Williams said something to the effect of he wasn't sure

6     a photo ID would improve turnout?

7          A.    Is the question am I aware that he said that?

8     No.

9          Q.    Are you aware of Secretary of State Roger

10    Williams having that sentiment and believing that in

11    2007?

12              MR. SWEETEN:  Don't reveal any

13    conversations that you had on this issue.

14         A.    No.

15              MR. SWEETEN:  Legislative privilege.

16              MS. WESTFALL:  He just testified he hasn't

17    had any conversations with Secretary of State Williams.

18    I'm not sure what -- this is about whether he's aware.

19              MR. SWEETEN:  Okay.  But if he's aware

20    because he heard from a staffer, because he heard from a

21    legislator or someone else, then that would be

22    privilege.  If he heard from public media sources,

23    public statements, that sort of thing, I think that that

24    would be not be.  So that -- it wasn't clear to me the

25    line you were drawing there.  But if it invaded the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      conversations, that needed to be -- we needed to make an

2      objection.

3          Q.   (By Ms. Westfall) Do you think it's important,

4      when you're drafting election-related legislation, to

5      consult with the Secretary of State to obtain the

6      Secretary of State's view on potential legislation?

7               MR. SWEETEN:   Objection, privilege.

8          A.   Privilege.

9          Q.   (By Ms. Westfall) As a general matter?  Not as

10     regarding any particular legislation.  My question

11     stands.  Are you going to claim privilege again?

12         A.   Restate the question, please.

13         Q.   Do you think as a -- as a general matter, it is

14     advisable to consult with the Secretary of State of

15     Texas in crafting election-related legislation?

16               MR. SWEETEN:   I'm going to assert

17     privilege.  Objection, privilege.

18         Q.   (By Ms. Westfall) Are you following his advice?

19         A.   Privilege.

20         Q.   (By Ms. Westfall) Could you -- do you know the

21     party affiliation of Secretary of State Roger Williams?

22               MR. SWEETEN:   You can answer.

23         A.   Today or when he was Secretary of State?

24         Q.   (By Ms. Westfall) In 2007.

25         A.   No.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1       Q.   Do you know what his party affiliation is

2    today?

3       A.   Yes.

4       Q.   What is it?

5       A.   Republican.

6       Q.   Did you or your office conduct any analyses

7    prior to carrying House Bill 218 in the Senate?

8                MR. SWEETEN:   Objection.

9       A.   Privilege.

10               MR. SWEETEN:   Privilege.

11      Q.   (By Ms. Westfall) Did you have any

12   conversations about conducting any analyses prior to

13   carrying House Bill 218 in the Senate?

14      A.   Privilege.

15      Q.   (By Ms. Westfall) It's a yes or no answer.

16               MS. WESTFALL:   Mr. Sweeten?

17               MR. SWEETEN:   Well, in the question,

18   you're asking about conversations about analyses.  So

19   first, I think I'm going to object to the question as

20   vague and unclear as to what that would mean.  Secondly,

21   I think the question assumes -- I think that the

22   question does invade privilege to some degree.  He can

23   reveal conversations he's had if you want to ask him

24   about what specific state agencies, with legislators,

25   we're going to give the facts of the actual



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      communication.  But when you're asking him, "What

2      conversations you've had in the course of your

3      analysis," I think that is overly broad, I think it's

4      vague, and I think it invades the legislative privilege.

5                    MS. WESTFALL:  Could you reread the

6      question, Court Reporter.

7                    (The requested portion was read by the

8      court reporter.)

9                    MR SWEETEN:  Same objection.

10     Q.    (By Ms. Westfall) Are you following his

11     instruction?

12     A.    Yes.

13     Q.    Yesterday, Ms. McCoy testified that your office

14     did not conduct any analysis of House Bill 218; is that

15     correct?

16                   MR. SWEETEN:  I'm sorry, can you reread

17     the question, please?

18                   (The requested portion was read by the

19     court reporter.)

20                   MR. SWEETEN:  First of all, I'm going to

21     object based upon legislative privilege.

22                   You do not have to reveal any analysis

23     that -- that was conducted by or not conducted by your

24     office.  So you don't have to answer that question.

25                   Privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

94

1          MS. WESTFALL:  Mr. Sweeten, Ms. McCoy has

2     waived the privilege as -- as pertaining to that

3     question and I would ask you reconsider that objection.

4          MR. SWEETEN:  It's Senators Fraser's

5     privilege to assert.  He is asserting the privilege and

6     we are so asserting it.

7          MS. WESTFALL:  She testified about it

8     yesterday.

9          MR. SWEETEN:  Okay.

10         MS. WESTFALL:  And you did not make any

11    effort to claim that that was privilege or otherwise

12    prohibit that examination on that topic today.  It's

13    been waived.

14         MR. SWEETEN:  Well, I'm currently

15    objecting to it based upon legislative privilege.  So I

16    am making an effort today for him not to disclose that

17    matter which would be privileged.  Analysis, it relates

18    to his mental impressions, thoughts, or opinions about

19    legislation.  I'm going to instruct him accordingly.

20         Q.   (By Ms. Westfall) Ms. McCoy is a long-term

21    staff person of yours, isn't she?

22         A.   Yes.

23         Q.   She's been working for you since 1992; isn't

24    that correct?

25         A.   No.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

95

1          Q.    How long has she been working for you?

2          A.    I wasn't elected until '97.

3          Q.    My apologies.   How long has she been working

4     for you?

5          A.    I think since 1999.   I think she started two

6     years after I got in the Senate, I believe.

7          Q.    Would you describe her as a trusted advisor?

8                MR. SWEETEN:   You can answer.

9          A.    Yes.

10         Q.    (By Ms. Westfall) She wouldn't tell you

11    anything that was untruthful, would she?

12               MR. SWEETEN:   Objection, argumentative,

13    calls for --

14         Q.    (By Ms. Westfall) You may answer.

15         A.    Is it privilege?   That's a judgment.

16               MR. SWEETEN:   Objection, argumentative.

17    Objection, calls for speculation.   Objection, vague.

18               With that you can answer the question to

19    the extent --

20         A.    I trust her judgment.

21         Q.    (By Ms. Westfall) Thank you.   Ms. McCoy also

22    testified yesterday that you and your office did not

23    conduct an analysis of the impact of HB 218 on minority

24    voters; is that correct?

25               MR. SWEETEN:   Do not discuss the analysis



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

96

1    that was performed or not performed.

2                 So I'm going to object as to legislative

3    privilege?

4         A.    Privilege.

5         Q.    (By Ms. Westfall) Did you conduct any analysis

6    of the impact of HB 218 on minority voters?

7                 MR. SWEETEN:  Objection, privilege.

8         Q.    (By Ms. Westfall) Are you following the

9    instruction?

10        A.    Privilege.

11        Q.    Thanks.  And we'll have to be careful because

12   we're going to make a mess of the transcript.  But I

13   realize --

14        A.    All right.  Okay.

15        Q.    (By Ms. Westfall) Okay.  We need to make our

16   records, both of us.

17                Why didn't you -- strike that.

18                Could you describe the procedural history

19   of House Bill 218 after it was introduced in the House?

20                MR. SWEETEN:  By procedural history, you

21   mean how -- how it went through the different committees

22   and legislative process, the public record, it's --

23        Q.    (By Ms. Westfall) Do you -- do you understand

24   the question, Senator Fraser?

25        A.    I do.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          Q.    Thank you.   Could you answer?

2          A.    I don't have that information.

3          Q.    Do you know whether it was passed in the House?

4          A.    Yes.

5          Q.    And then what happened after that?

6          A.    In the legislative process, when a bill leaves

7    the House, it is delivered to the Senate, and the bill

8    is referred to a committee, and a member can request

9    picking the bill up, or it -- or it is assigned to

10   someone.

11         Q.    And I believe you testified earlier that you

12   had -- there were conversations about your interest in

13   carrying the bill; is that correct?

14         A.    No.   There -- that wasn't the conversation at

15   all.

16         Q.    Go ahead and clarify your testimony.

17         A.    Did you ask me a question?

18         Q.    Do you have an answer to that?   Is the answer

19   no?

20              MR. SWEETEN:   Is -- is -- I think he's

21   asking.

22         A.    There is no question.   You didn't ask a

23   question.

24         Q.    I said, I believe you testified earlier that

25   you had indicated interest in carrying HB 218 in the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

98

1    Senate; is that correct?

2              MR. SWEETEN:  I'm going to object to the

3    extent it misstates any prior testimony.

4        Q.  (By Ms. Westfall)  You may answer.

5        A.   It's -- if you want -- if you want to pull up

6    -- I'll -- testament of what I've said, you can, but the

7    way you're stating the question, no, it is not correct.

8        Q.   How did HB 218 come to be carried by you in

9    the Senate?

10       A.   The conversations --

11             THE WITNESS:  Is that spec -- is

12   conversation within the office?

13             MR. SWEETEN:  If it -- if this relates to

14   conversations you've had with legislators --

15             THE WITNESS:  And/or staff?

16             MR. SWEETEN:  Staff, et cetera, then

17   that's legislatively privileged.

18       A.   Privilege.

19             MR. SWEETEN:  You can reveal basic

20   information about the conversations, date, time, but not

21   the substance of the conversation.

22       Q.  (By Ms. Westfall) Let's move on.  Did you

23   monitor consideration of HB 218 in the House?

24       A.   No.

25       Q.   Did you learn of any concerns raised about HB



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    218 when it was being considered in the House?

2             MR. SWEETEN:  Objection, privilege.

3    Privilege.

4        Q.   (By Ms. Westfall) Are you aware of any

5    conversations that were had with anybody involving you

6    or your staff concerning concerns raised about HB 218 in

7    the House?

8             MR. SWEETEN:  You can answer to the extent

9    that you can reveal conversations or people involved in

10   those conversations.  Do not reveal the substance of

11   those conversations.

12       A.   Reread the question, please.

13            (Requested portion was read back by the

14   court reporter.)

15       Q.   Are you -- can you answer the question?

16       A.   No.

17       Q.   I believe you just testified that you carried

18   HB 218 in the Senate, correct?

19       A.   Yes.

20       Q.   Was there a reason for your interest in voter

21   ID?

22            MR. SWEETEN:  Objection, privilege.

23       Q.   (By Ms. Westfall) Did you have a conversation

24   with anyone about your interest in voter ID in 2007?

25            MR. SWEETEN:  You can answer whether or



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     not you had a conversation.  Don't reveal the contents
2     of the conversation.
3          A.    Ask the question again, please.
4          Q.    (By Ms. Westfall) Did you have any
5     conversations in 2007 related to your interest in voter
6     ID?
7          A.    I believe that's privileged because of nature
8     of the conversation.
9               MR. SWEETEN:  She can -- she can get a
10    general subject matter.  I do think interest in the bill
11    is getting a little towards general.  But I'm going to
12    let you answer the question as phrased.  So you can
13    answer whether conversations were held.
14         A.    What was the question again?
15         Q.    Were there conversations -- were you involved
16    in conversations regarding your interest in voter ID in
17    2007?
18         A.    Yes.
19         Q.    Who were the other parties to that
20    conversation?
21         A.    Privileged.
22              MR. SWEETEN:  You can testify as to who
23    you had conversations with regarding the issue,
24    regarding the subject matter that she's raised.
25         A.    Janice McCoy.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

101

1       Q.   (By Ms. Westfall) Anyone else?

2       A.   No.

3       Q.   Did you have more than one conversation?

4       A.   Yes.

5       Q.   With -- with Janice McCoy?

6       A.   Yes.

7       Q.   Were these conversations in writing at all?

8       A.   No.

9       Q.   Did an interest in preventing voter

10   impersonation prompt your interest in sponsoring --

11             MR. SWEETEN:  Objection.  Sorry.

12             MS. WESTFALL:  Let me finish my question.

13             MR. SWEETEN:  I'm going to.

14       Q.   (By Ms. Westfall) -- HB 218?

15             MR. SWEETEN:  Objection, privilege.

16       Q.   (By Ms. Westfall) And was HB 218 referred to

17   the State Affairs Committee?

18             MR. SWEETEN:  You can answer.

19       A.   I believe it was.  That, you know, to my

20   knowledge that's where it went.

21       Q.   (By Ms. Westfall) Did the committee hold a

22   hearing on HB 218?

23       A.   Again, to my knowledge, yes, that's normal

24   procedure.

25       Q.   What was your role in the committee in 2007?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    102

1      Were you a member or were you the chair?

2          A.    A member.

3          Q.    Do you recall the hearing that was held on HB

4      218?

5          A.    I'm sorry, no, not in detail.

6          Q.    And Ms. McCoy testified yesterday that there

7      was a hearing on HB 218.  And it's correct, it's your

8      testimony, that there was one hearing?

9          A.    Again, I just testified, I don't -- I don't

10     remember the hearing, but I'm assuming there was.

11         Q.    Do you recall that -- do you recall the

12     identity of any witnesses at that hearing?

13         A.    No.

14         Q.    Janice McCoy testified yesterday that the

15     Republican party testified at the committee hearing on

16     HB 218; do you believe that to be correct?

17         A.    I -- I can't verify or not verify.

18         Q.    And Ms. McCoy testified yesterday that she made

19     Skipper Wallace aware that the committee was having a

20     hearing on HB 218; do you think that's correct?

21         A.    You're subjective.  You're asking what I think.

22         Q.    I'm asking whether --

23         A.    Privilege.

24         Q.    -- Ms. McCoy's statement is correct about

25     something that happened on the public record, and I'm



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

103

1    sure your counsel will instruct you that it's acceptable

2    as to the identity of witnesses at a hearing.

3              MR. SWEETEN:  Well, I'm -- you -- you can

4    answer this question as phrased.

5         A.   Ask the question again.

6              MS. WESTFALL:  Okay.  Could you repeat

7    that question, Court Reporter?

8              COURT REPORTER:  I'm going to have to go

9    back about two questions.

10             MS. WESTFALL:  You know what, why don't I

11   just save you the trouble.

12        Q.   (By Ms. Westfall)  Ms. McCoy testified that she

13   made Skipper Wallace aware that the committee was having

14   a hearing about HB 218, and that Mr. Wallace testified;

15   is that correct?

16             MR. SWEETEN:  Objection, compound.

17             Go ahead.

18        A.   There's no reason for me to assume that she

19   didn't.

20        Q.   (By Ms. Westfall) Who is Skipper Wallace?

21        A.   He was a county Republican chair from a county

22   in my district.

23        Q.   And what county was that?

24        A.   Lampasas.

25        Q.   Is he still in that position?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

                                                              104

1        A.   Yes.

2        Q.   How long has he held that position?

3        A.   I'm sorry, I don't know.

4        Q.   Do you know why Mr. Wallace has an interest in

5   voter ID?

6             MR. SWEETEN:  Objection, calls for

7   speculation.

8        Q.   (By Ms. Westfall)  You may answer.

9        A.   Privilege.

10            MS. WESTFALL:  I'm not sure that is

11   privilege, Mr. Sweeten.  Could you think about directing

12   your witness to answer the question?

13            MR. SWEETEN:  Well, I mean, the question

14   very clearly calls for speculation.  You're asking why

15   Skipper Wallace believes -- or has an interest in, and

16   so it assumes facts not in evidence, it calls for

17   speculation.

18            With that, you can answer if you're able.

19       A.   I have no idea.

20       Q.   (By Ms. Westfall) Have you ever had

21   conversations about Mr. Wallace with photo ID in 2007?

22            MR. SWEETEN:  Did he have conversation

23   with Mr. Wallace?

24            MS. WESTFALL:  Yes.

25            MR. SWEETEN:  Okay.  You can testify as to



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                     May 17, 2012

105

1       the facts of the conversation, whether they occurred.

2       But don't reveal the substance.

3            A.   I don't remember conversations with Skipper

4       Wallace.

5            Q.   (By Ms. Westfall) Do you know whether Ms. McCoy

6       had conversations with Mr. Wallace about voter ID?

7            A.   I have no way of knowing.

8            Q.   Do you generally know whether Ms. McCoy has

9       conversations with groups or individuals?

10                MR. SWEETEN:  Objection, vague.

11           Q.   (By Ms. Westfall)  You may answer.

12           A.   I don't always know who she's talking to.

13           Q.   Do you predominantly know who she's talking to?

14           A.   I don't always know --

15                MR. SWEETEN:  Objection, calls for

16      speculation.

17           Q.   (By Ms. Westfall) But listening very carefully

18      to my question, does she mostly let you know when she's

19      meeting with individuals or groups?

20                MR. SWEETEN:  Objection, calls for

21      speculation.

22           Q.   (By Ms. Westfall) You may answer.

23                MR. SWEETEN:  If you -- if you can, answer

24      the question, please.

25           A.   The answer is still the same.  She, you know,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              106

1    she doesn't always tell me who she meets with, and I

2    don't always ask.

3         Q.   (By Ms. Westfall) And you're her direct

4    supervisor; is that right.

5         A.   Yes.

6         Q.   Do you recall, at the hearing on HB 218 before

7    the State Affairs Committee, whether there was any

8    concerns raised about the impact of HB 218 on minority

9    voters?

10              MR. SWEETEN:  At the hearing, you said?

11              MS. WESTFALL:  Right.

12              MR. SWEETEN:  Okay.  No -- no objection.

13              Go ahead.  You can answer.

14        A.   I'm sorry, I do not remember the hearing in

15   2007.

16        Q.   (By Ms. Westfall) Was the bill amended in the

17   State Affairs Committee?

18        A.   I don't remember whether it was or not.

19        Q.   After committee consideration, was it voted out

20   of committee?

21        A.   It had to be voted out of the committee to get

22   to the Floor.

23        Q.   Thank you.  Was it voted out of committee on

24   party lines?

25        A.   Again, I don't -- I don't remember the vote.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                      May 17, 2012

107

1        Q.   Do you remember any member of the Republican

2   party who voted against the bill?

3        A.   No.  I don't remember the vote.

4        Q.   Did you, after Committee voted it out, did you

5   bring it to the Senate Floor?

6        A.   You're -- the answer is no.  I did not bring

7   the bill to the Senate Floor.

8        Q.   Was HB 218 brought to the Senate Floor?

9        A.   It was recognized to be brought forward.

10        Q.   And who recognized it to be brought forward?

11        A.   I don't remember who was in the chair at the

12   time.

13        Q.   Was it Lieutenant Governor Dewhurst?

14        A.   I don't remember who was in the chair at the

15   time.

16        Q.   As a general matter, is the Chair of the Senate

17   would bring a bill, or how would it move from committee

18   to Floor?

19        A.   Whoever is sitting in the chair acting as

20   presiding officer would recognize the member.

21        Q.   Is there a way that it got on to the list of

22   bills to be considered for Floor consideration?

23        A.   When a bill comes out of committee, it is sent

24   to the Floor, and is put in the regular order of

25   business.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      Q.   Did HB 218 jump the line, so to speak, from the

2   regular order of business, to be heard before other

3   bills that would ordinarily have come before it?

4      A.   I'm going to need to give an explanation.

5              MR. SWEETEN:   Okay.  You --

6              MS. WESTFALL:   I'm sure it would be

7   helpful to me.

8              MR. SWEETEN:   Well, I mean, you can

9   testify about matters of public record.  Okay?  You can

10  you do that.  Don't reveal conversations that you've had

11  surrounding the bill, the substance of those

12  conversations.

13     A.   In 2007, there was a bill put in place that

14  acted as a blocker bill and it was the number one bill

15  on the agenda.  All bills, after that, in order to be

16  brought up, had to jump over that bill in order to be

17  heard.  So every bill heard was heard -- held -- heard

18  out of order.

19     Q.   (By Ms. Westfall) I see.  And was the blocker

20  bill a procedural requirement that required two-thirds

21  of senators to vote in favor of bringing a bill to the

22  Floor?

23     A.   It wasn't a procedural requirement.  It was a

24  Senate rule, an agreement, that that bill was placed

25  there.  And in order to bring up a bill, you had to jump



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

109

1    over the blocker bill.

2         Q.   I see.  And is it an ordinary practice for a

3    blocker bill to be put into place at the beginning of

4    session, in the Texas Senate in your experience?

5         A.   Not ordinary.

6         Q.   How did that arise in 2007?

7              MR. SWEETEN:  You can answer to the extent

8    that this doesn't invade privilege.  You can talk about

9    matters of the public record.

10        A.   In the 2007, the chairman of Administration

11   filed a bill, and that bill remained in place.

12        Q.   (By Ms. Westfall) What was the substance of the

13   bill?  What was the blocker bill?

14        A.   I'm sorry --

15        Q.   Can you describe it?

16        A.   It's usually something having to do with the

17   gardening of the state lawn.  It's...

18        Q.   I see.

19        A.   It was a -- administrative bill.

20        Q.   Did HB 218 require the support of two-thirds

21   Senators to be brought to the Floor for a vote?

22        A.   Yes.

23        Q.   Could you describe the two-thirds procedure,

24   for the record; how does it work?

25             MR. SWEETEN:  As a general matter?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

 1              MS. WESTFALL:  As a general matter.

 2        A.    As a general matter, if I had a bill that I

 3   wanted to get in front of the blocker bill, the Floor

 4   would recognize me, let's say you're recognized for a

 5   motion on House Bill 218.  I would say, "I now move to

 6   suspend all necessary rules to take up and consider

 7   Senate Bill 218.

 8        Q.    I see --

 9        A.    Or House Bill 218.

10        Q.    Sir, how many other sessions are you aware of

11   and served in, in which there has been a blocker bill

12   introduced?

13        A.    Well, I've only been in the Senate since '95 --

14   '97.

15        Q.    That's seems like a long time to me.  Could you

16   tell me how many times a blocker bill has been

17   interposed?

18        A.    During those sessions, at some point in every

19   session, there was a blocker bill that was put in place.

20        Q.    And so the blocker bill requires a two-thirds

21   vote to overcome?

22        A.    Yes.

23        Q.    Were you involved in bringing HB 218 to the

24   Senate Floor for a vote?

25              MR. SWEETEN:  You can reveal matters of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

111

1    public record.  Don't reveal matters that are

2    legislatively privileged.  Involved could include

3    either.

4        A.   Clarify "involved."

5        Q.   (By Ms. Westfall) Were you're involved,

6    procedurally, in bringing HB 218 to the Senate for a

7    vote in terms of what you just testified to overcoming a

8    blocker bill.

9             MR. SWEETEN:  Same instruction, go ahead.

10       Q.   (By Ms. Westfall) You may answer.

11       A.   My involvement was that it was announced that

12   "Senator Fraser, you are recognized for a motion on

13   House Bill 218."

14       Q.   And I believe you testified earlier you didn't

15   know who was chairing the Senate at that time; is that

16   right?

17       A.   No.

18       Q.   Please proceed and describe the rest of the

19   procedure.

20             MR. SWEETEN:  Again, legislatively

21   privilege.

22             Information, don't provide.  Anything

23   public record, you're free to talk about.

24       A.   When I was recognized, I said, "I now move to

25   suspend all necessary rules to take up and consider



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

112

1     House Bill 218.

2         Q.   (By Ms. Westfall) When that exchange occurred

3     on the Senate Floor, how many Senators were present?

4         A.   Again, I don't know.

5         Q.   Do you recall if anyone was not present?

6         A.   No, I do not recall.

7         Q.   Was Senator Uresti not on the Floor at that

8     time?

9         A.   Again, I don't -- I don't recall.

10        Q.   Are you aware of Senator Uresti's vote on HB

11    218?

12        A.   I believe the record will reflect that Senator

13    Uresti voted not to suspend -- not to suspend.

14        Q.   Does that mean, in lay persons terms and

15    outside of Senate procedure, does that mean he was for

16    or against the bill?

17        A.   It is not a vote for or against.

18        Q.   It is a procedural prerequisite to voting on

19    the bill; is it not?

20        A.   I think your question is not correct.  It's

21    neither one.

22        Q.   Well, could you clarify your testimony or

23    explain to us?

24        A.   If you ask the correct question, I'll be glad

25    to.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

113

1        Q.    Is it a vote against considering the bill?

2        A.    It would be a vote against consideration of the

3    bill.

4        Q.    Thank you.  Was there a conversation, that

5    you're aware of, involving the timing of when HB 218 was

6    brought to the Floor?  It's a yes or no.  Was there --

7    was there a conversation?

8        A.    Between me?

9        Q.    I'm going to ask you about your knowledge of

10   the existence of a conversation.

11       A.    Privilege.

12       Q.    The existence.

13             MR. SWEETEN:  It's okay.

14             What she's saying is:  Was there a

15   conversation about that issue?  You can identify if a

16   conversation occurred, with whom it occurred, the date

17   it occurred, if you know.  But don't reveal the

18   substance of it otherwise.

19       A.    I have no knowledge of the conversation.

20       Q.    (By Ms. Westfall) So is it your testimony that

21   you just appeared on the Senate one day and you were

22   recognized?

23             MR. SWEETEN:  Objection.  I think that

24   misstates his testimony.

25             MS. WESTFALL:  You may answer.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

114

1                MR. SWEETEN:  Argumentative.

2        A.   My testimony is that I was on the Senate Floor

3    and the chair said, "Senator Fraser, you are now

4    recognized for a motion on House Bill 218.

5        Q.   (By Ms. Westfall) How did you react to that;

6    were you surprised?

7                MR. SWEETEN:  Objection.  I think that

8    definitely asks for him to reveal thoughts, mental

9    impressions, opinions about legislation, in furtherance

10   of the legislative process, and therefore is

11   legislatively privileged.

12               MS. WESTFALL:  His human emotion and

13   reaction is part of the legislative process?

14               MR. SWEETEN:  It would be his mental

15   impressions or opinions about legislation.

16       Q.   (By Ms. Westfall) Are you not answering the

17   question?

18       A.   Privilege.

19       Q.   Was a vote held when Senator Uresti was not on

20   the Floor?

21       A.   I'm sorry?

22       Q.   Was this -- was a vote held on HB 218 when

23   Senator Uresti was not on -- on the Floor?

24       A.   The final vote --

25       Q.   I'm not asking you about the first vote.  Was



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    115

1     there a vote when he was not on the Floor?

2          A.   On a bill, there's only one vote.  The vote is

3     the vote that is in the record.  And my only

4     recollection is looking at the vote.  The vote failed to

5     suspend, there wasn't sufficient votes, so I'm assuming

6     that he was on the Floor and voted.

7          Q.   Was there a time in Floor consideration on HB

8     218 when Mr. Uresti did not -- was not on the Floor?

9          A.   I'm sorry, I don't -- I don't know the answer

10    to that.

11         Q.   Was Mr. Uresti sick that day?

12         A.   That would be subjective on my part.  I would

13    say privilege.

14              MR. SWEETEN:  Well --

15         A.   I --

16              MR. SWEETEN:  You -- if you don't know the

17    answer, then that's the answer.  She's asking the fact

18    of whether or not he was sick or not, or whether you

19    knew he was sick or not.  So you can just answer that

20    question.  That's -- that's -- we're not claiming

21    privilege as to that question.

22         A.   I don't -- I don't know whether he was sick or

23    not.

24              MR. SWEETEN:  Okay.

25         Q.   (By Ms. Westfall) Was there a verification of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    the vote on HB 218 on the Floor?

2         A.    Every vote is a verification.

3         Q.    Were there, in essence, two votes on HB 218;

4    one when Mr. Uresti was not on the Floor, and one when

5    he was on the Floor to verify the vote?

6         A.    I -- I'm sorry, I don't remember.

7         Q.    And just so that we can have a -- in order to

8    facilitate our conversation, as you're an expert in the

9    Texas Senate rules and I'm not, if you could testify

10   about procedure, and grant me some latitude in my

11   questioning, it would make things go along faster.

12   Because I'm -- I -- there's a lot more, many more

13   sessions to cover in today's examination and --

14              MR. SWEETEN:   I'm not sure what you're

15   asking him to do --

16              MS. WESTFALL:   -- I don't want to delay

17   you --

18              MR. SWEETEN:   -- but my instruction to him

19   will be to just answer the question that's posed to him.

20   So that's what --

21              MS. WESTFALL:   Sure.

22              MR. SWEETEN:   -- he's going to do.

23              MS. WESTFALL:   And if we want to play

24   these games, we'll be here for a long, long time,

25   Mr. Sweeten.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

117

1              MR. SWEETEN:  It is not -- Counsel --

2              MS. WESTFALL:  And I'm going to have that

3      on the record.

4              MR. SWEETEN:  It is not a game, I assure

5      you.  I mean, I'm not sure if you're asking him to make

6      a speech on issues.  He's certainly not going to do

7      that.

8              MS. WESTFALL:  No, I --

9              MR. SWEETEN:  The way it works is, you ask

10     a question, he gets to answer.  He trying to do that.

11             MS. WESTFALL:  And I'm asking for

12     assistance as he is an expert in the procedures of Texas

13     State Senate and I am not.  To make sure that --

14             MR. SWEETEN:  I'm not even sure what the

15     -- what you're even asking him.  I mean, he -- he will

16     answer the question that's posed to him.  He will do the

17     best he can to answer that, to the extent it's not

18     privileged.  He's trying do that, will continue to do

19     that.

20             MS. WESTFALL:  Thank you, Mr. Sweeten.

21             Could you mark this as Exhibit 45.

22             (Exhibit 45 marked for identification.)

23     Q.   (By Ms. Westfall) You've been handed what's

24     been marked as Exhibit 45.  If you can take a look at

25     this document and let me know when you've had a chance



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

118

1    to review.

2         A.   (Reading.)

3         Q.   You know what, for the time being, Senator,

4    unless you have interest, I'm going to direct your

5    attention to the first page of the numbered paragraphs

6    so you need not read this entire declaration, which is

7    lengthy.

8              Senator, have you seen this declaration

9    before?

10        A.   No.

11        Q.   Turning your attention to Paragraph 6 and 7,

12   concerning the 2007 legislative session, do you have any

13   different view of the facts that Senator Uresti has set

14   forth in Paragraph 6 and 7?

15             MR. SWEETEN:   Okay.   To some degree, what

16   is contained in Paragraph 6 or 7 reveals conversations

17   that could have occurred within the Senate.   When you're

18   answering her question, make sure that -- that you're

19   not doing -- doing so.   And so I'm going to assert a

20   legislative privilege as to that.

21             To the extent you can answer her question

22   without revealing legislative privilege, because I think

23   some of this does not implicate it, that you can feel

24   free to do so.

25        A.   Privilege.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

119

1       Q.    (By Ms. Westfall) This declaration pertains to

2    matters that some of which occurred on the Senate Floor,

3    does it not?

4       A.    Show me what happened on the Senate Floor.

5       Q.    Mr. Uresti appeared on the Senate Floor, on

6    Paragraph 7.

7       A.    And I will agree that that happened.

8       Q.    And also turning your attention to Paragraph 9,

9    do you have any different recollections than what

10   Senator Uresti has put forth in Paragraph 9?

11      A.    The -- no, that is not correct.

12      Q.    Could you -- could you indicate what you

13   disagree with in Paragraph 9?

14      A.    If a bill passes and the bill is suspended,

15   then you would move to the next step, which would be to

16   hear the bill.  There was never a final resolution of

17   the vote to vote to suspend.

18      Q.    Was that --

19      A.    And the vote was kept open.  So what -- the way

20   he's describing it here is -- is partially correct, but

21   not in its entirety.

22      Q.    Were you involved in any conversations

23   concerning keeping the vote open on HB 218?

24      A.    No.

25      Q.    What is Senator Uresti race or ethnicity?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                120

1        A.   I don't know that I've ever asked him.  I have
2   an opinion, is that --
3             MR. SWEETEN:  You can answer to the extent
4   you know.
5        A.   I -- I believe that Senator Uresti is Hispanic.
6        Q.   Do you know what part of the state he
7   represents?
8        A.   San Antonio.
9        Q.   Does he represent a large area of the state
10  bordering the U.S. Mexico border, in part?
11       A.   He -- his district touches the Mexico boarder.
12       Q.   Did you have any concerns about holding a vote
13  on HB 218 given Senator Uresti illness?
14            MR. SWEETEN:  Objection, privilege.
15       Q.   (By Ms. Westfall) Are you following your --
16       A.   Privilege.
17       Q.   Did you have any concerns about holding a vote
18  on HB 218 given the constituency that Senator Uresti
19  represents?
20            MR. SWEETEN:  Same objection.
21       A.   Privilege.
22       Q.   (By Ms. Westfall) Was a request made to verify
23  the vote on 218?
24            MR. SWEETEN:  Are you asking on the Floor?
25            If it's public record, you can testify to



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

121

1      it.  If she's asking if there was a request made and it

2      involved internal communications, then that would be

3      privileged.

4           A.    The answer is no.  There was not a verification

5      of the vote.

6           Q.    (By Ms. Westfall) Did House Bill 218, was there

7      a failure to suspend regular order of business with

8      two-thirds of the vote?

9           A.    Yes.

10          Q.    What -- and could you tell me the purpose of

11     the two-thirds rule that you testified about earlier, as

12     a general matter, and, of course, procedurally?

13          A.    Well, that's privilege.  There's, you know,

14     everyone has a different opinion.

15               MR. SWEETEN:  Privilege.

16          Q.    (By Ms. Westfall) Well, I'm -- Mr. Sweeten, I

17     don't think it -- I'm not asking about a particular

18     legislative act, I'm asking about Senator Fraser's deep

19     knowledge of Senate procedures given his long history in

20     the Senate.

21               MR. SWEETEN:  Okay.

22               I -- we're going to let you answer as to

23     the general purpose of the rule.

24          A.    There is no purpose for the two-thirds rule.

25          Q.    (By Ms. Westfall) It's just a rule that's in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    place for absolutely no reason?

2         A.    You're asking me.  And my response is there is

3    no...

4         Q.    And Ms. McCoy testified yesterday in her

5    deposition the purpose of the rule is to reach general

6    consensus on the bills.  Do you agree with her view of

7    the purpose of the two-thirds rule?

8         A.    No.

9         Q.    How do you -- why do you disagree?

10        A.    Privilege.

11        Q.    Ms. McCoy also testified that most bills are

12   brought under the two-thirds rule.  Do you agree with

13   that testimony?

14             MR. SWEETEN:  You can answer.

15        A.    I would not agree with the word "most."

16        Q.    How would you characterize it?

17        A.    Meaning?

18             MS. WESTFALL:  Mr. Sweeten, Senator Fraser

19   just refused to answer my question about the purpose,

20   whether the purpose of the two-thirds rule was general

21   consensus on bills.  And I believe that was an improper

22   refusal to answer my question.  Will you advice your

23   client to answer the question?

24             MR. SWEETEN:  I thought he answered.

25             MS. WESTFALL:  I said, "Ms. McCoy



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

123

1     testified the purpose of the rule is general consensus

2     on the bills," and he said, "privilege" and didn't

3     answer.  Would you --

4              MR. SWEETEN:  Okay.  Well, I mean, the

5     preceeding question was, you asked him, well, is there a

6     purpose.  And he said there's no purpose. So he's

7     answered what he thinks the purpose is.  And now you're

8     coming back with "she says this, is she -- is she

9     right?"  I mean, by its own --

10             MS. WESTFALL:  It's a different question.

11             MR. SWEETEN:  Okay.

12             MS. WESTFALL:  About the purpose.

13             MR. SWEETEN:  So is the question, "Is

14    Ms. McCoy right about that"?  I think he's already

15    answered it, but if you --

16             MS. WESTFALL:  He said, "privileged."  We

17    can read back the record, Mr. Sweeten.

18             MR. SWEETEN:  You can answer that he

19    question.

20        A.   Privilege to waive the question when asked.

21             MR. SWEETEN:  Okay.

22        Q.   (By Ms. Westfall) I'll reask it:  Ms. McCoy

23    testified yesterday that the purpose of the two-thirds

24    rule is general consensus on bills.  Do you agree with

25    that?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

124

1      A.   No.

2      Q.   Did the Senate take any further action on House

3    Bill 218?

4           MR. SWEETEN:  Don't reveal privilege.  You

5    can reveal matters of public record.

6      A.   To my knowledge, there was no other action

7    taken on 218 in that session.

8      Q.   Were there any conversations about 218 after it

9    failed to pass the Senate?

10     A.   Privilege.

11     Q.   And that's a yes-no question about whether

12   conversations --

13          MR. SWEETEN:  She -- just say if a

14   conversation existed.  Don't say what the conversation

15   entailed.  So, were there conversations, is her

16   question.

17     A.   Yes.

18     Q.   (By Ms. Westfall) How many?

19     A.   One that I can remember.

20     Q.   Were you directly involved or did you hear

21   about the conversation?

22     A.   I was directly involved.

23     Q.   And who else was in the conversation?

24          MR. SWEETEN:  You can identify who was a

25   party to the conversation.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

125

1        A.    I don't remember the specific person.

2        Q.    (By Ms. Westfall) You were in a conversation

3   and you don't know who else was -- I mean, do you have a

4   general sense of whether it was a staff person or was it

5   a legislator?

6        A.    Yes.  I have a general sense.

7        Q.    Was it legislator?

8        A.    No.

9        Q.    Was it a staff person?

10       A.    I believe it was.

11       Q.    Was it a staff person in the Senate?

12             THE WITNESS:  How do I answer this?

13             MR. SWEETEN:  You can answer if -- who --

14   the identity of person to the best of your knowledge.

15       A.    I believe the conversation was with the

16   Lieutenant Governor's Office and I believe it was a

17   staffer.

18       Q.    (By Ms. Westfall) Was it Mr. Hebert?

19       A.    Not likely.

20       Q.    Was it Ms. Rathgeber?

21       A.    Possibly.

22       Q.    Was this in person or by phone?

23             MR. SWEETEN:  You can answer.

24       A.    In person.

25       Q.    (By Ms. Westfall) How soon after the vote on HB



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

126

1    218 did this occur?

2         A.   Not immediately.

3         Q.   A few weeks?

4         A.   A week.

5         Q.   Were there any other conversations, you recall,

6    about HB 218 after it didn't pass in the Senate?

7         A.   No.

8         Q.   Thank you.  Did you talk to -- actually do you

9    recall any conversations with anyone in the Governor's

10   Office after HB 218 failed?

11        A.   You're -- you're -- Governor Governor?

12        Q.   Governor Governor.

13        A.   No.

14        Q.   Do you recall any conversations about HB 218

15   after it failed in the Senate with anyone in the

16   Secretary of State's Office?

17        A.   No.

18        Q.   Or in -- with the Department of Public Safety?

19        A.   No.

20        Q.   Or with anyone, staff person or legislator, in

21   the House?

22        A.   No.

23        Q.   Did you file a photo ID bill in 2009 in the

24   Texas State Senate?

25        A.   Yes.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                127

1          Q.   Do you remember the bill number?

2          A.   362, SB 362.

3               MS. WESTFALL:  Could you hand the witness

4     29, please.

5          Q.   (By Ms. Westfall) You've been handed what's

6     been previously marked as U.S. 29.  Do you recognize

7     this document?

8               MR. SWEETEN:  I'll tidy this up a little

9     bit here.  Which one do you need?  Are you done with

10    this?

11              Okay, you're asking about 29 right now, is

12    that right?

13              THE WITNESS:  362.

14              MR. SWEETEN:  Exhibit 29 though?

15              MS. WESTFALL:  Yes, yes.

16              MR. SWEETEN:  Okay.  Gotcha.

17              MS. WESTFALL:  They all look alike.

18              MR. SWEETEN:  Yes, they do.

19         Q.   (By Ms. Westfall) And do you recognize this

20    bill?

21         A.   Yes.

22         Q.   And what is it?

23         A.   Senate Bill 362.

24         Q.   This is as filed in the Senate or did this --

25         A.   I believe this is the bill that was -- we



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

128

```
 1    filed.
 2         Q.    Did you also file a bill SB 363?
 3         A.    Yes.
 4         Q.    And could you tell us about that bill and what
 5    did it do?
 6         A.    My only knowledge of that bill is seeing -- I
 7    read in a press release last night of that bill, the
 8    bill was filed of what we call a "shell," and to my
 9    knowledge, the bill never moved and never had a hearing.
10         Q.    What does "shell" mean?
11         A.    It was a caption for a bill, if needed, to --
12    for a bill to, you know, to address an issue, but it
13    never -- it was never -- to my -- I don't remember
14    having a hearing on the bill.
15         Q.    Was it a placeholder in effect?
16         A.    Yes.
17         Q.    And did SB 362 and SB 363 kind of go hand-in-
18    hand with one another?
19         A.    No.
20         Q.    And why not?
21               MR. SWEETEN:  I'm going object to the
22    extent that calls for matters of his mental impressions,
23    opinions about legislation, and furtherance of the
24    legislative process.
25         Q.    (By Ms. Westfall) SB 363 pertained to voter
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

1    registration, did it not?

2         A.   I don't remember 363.

3              MS. WESTFALL:   Court Reporter, would you

4    hand him what's been previously marked as Exhibit 36.

5    Thank you, sir.

6         Q.   (By Ms. Westfall) I'm going to hand you what's

7    been previously marked as Exhibit 36.  Do you recognize

8    this document?

9         A.   What was the question?

10        Q.   Do you recognize this document?

11        A.   I recognize it is represented this is Senate

12   Bill 363.

13        Q.   Yes.  And do you see your name is at the top

14   left --

15        A.   I do.

16        Q.   -- as the person who introduced it; is that

17   right?

18             Is this -- does this bill require persons

19   to present documentary proof of citizenship when

20   registering?

21        A.   The bill, if passed, had a provision in it as

22   filed that would provide for proof of citizenship.

23        Q.   And these -- these bills were filed around the

24   same time, SB 362 and SB 363; is that right?

25        A.   It's implied if it's this next number, it



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    was --

2         Q.    That's what I was thinking too.  Thank you.

3               And turning your attention to Exhibit 29.

4    Can you identify the forms of identification that were

5    allowable in this bill?  And I would like to turn your

6    attention to Page 5, if that will help.

7         A.    And what would you like to know?

8         Q.    Could you just provide a general overview of

9    the -- not each and every one maybe, but just an

10   overview.

11        A.    An expired driver's license, a military ID card

12   that contains a photograph, a United States citizenship

13   certificate that contains a photograph, a license to

14   carry concealed handgun, an identification card that has

15   a persons photograph issued by a federal government

16   agency or a political subdivision of the state, and,

17   looks like, a typical proof of identification as a

18   voter's registration card.

19        Q.    And some other items that do not require a

20   photo; is that correct?

21        A.    That's true.

22        Q.    And the balance of Section 10; is that correct?

23        A.    You said the balance of section?

24        Q.    Well, you were at -- you were at Subsection B

25   -- I'm sorry, of -- Section 63.0101.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

131

1        A.   The balance from B down.

2        Q.   Right.

3        A.   It lists 11 other pieces of identification.

4        Q.   Thank you.  Were you involved in the

5   development of Senate Bill 362?

6        A.   No.

7        Q.   You filed 362, didn't you?

8        A.   Yes.

9        Q.   Who developed it if you didn't?

10        A.   This is the bill that was passed -- this was

11   the bill that -- 218 that was passed by the House.  We

12   started with the House version that had passed the House

13   the year before.

14        Q.   So you just simply --

15        A.   Picked up.

16        Q.   -- refiled the --

17        A.   Refiled the Bill 218 that came over.  And I

18   want to clarify, that was my understanding.  It might

19   not be exactly word-for-word, but the intention was to

20   file --

21             MR. SWEETEN:  Don't talk about intention,

22   okay?  You're not talking about -- we're not here to

23   talk about our mental impression, opinions about

24   legislation.

25             THE WITNESS:  Okay.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

132

1      Q.   (By Ms. Westfall) Are you following your

2   counsel's advice --

3      A.   Yes.

4      Q.   -- as to not further testify on the development

5   of the bill?

6      A.   Yes.

7      Q.   Okay.  When did you start developing Senate

8   Bill -- what became Senate Bill 362?

9      A.   I didn't develope 362.

10     Q.   Is your testimony you simply took House Bill

11  218 and filed it the following session?  In essence?

12     A.   In essence.

13     Q.   Did you, just to confirm, is that -- strike

14  that.

15          Did you look at legislation in any other

16  states.

17          MR. SWEETEN:  Don't reveal your thoughts,

18  mental impressions, opinions about legislation or

19  furtherance of the legislative process.  Answer that

20  question if you can reference matters of public record

21  or -- you can discuss public matters.

22          So objection, privilege.

23     A.   Privilege.

24     Q.   (By Ms. Westfall) Just -- and did you look at

25  any models of bills from any interest groups in drafting



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    Senate Bill 362?

2            MR. SWEETEN:   Same objection.   Objection,

3    privilege.

4            Don't -- don't reveal thoughts, mental

5    impressions, opinions about legislation or in

6    furtherance of the legislative process.

7        A.   Privilege.

8        Q.   (By Ms. Westfall) Did you look to any other

9    sources other than HB 218 in developing and drafting and

10   filing Senate Bill 362?

11       A.   No.

12           MR. SWEETEN:   Same objection.

13       Q.   (By Ms. Westfall) Did you have any

14   communications about Senate Bill 362 with other current

15   or former legislators who'd offered past photo ID bills,

16   before filing the bill?

17       A.   Privilege.

18           MR. SWEETEN:   You can answer as to the

19   fact of a communication, okay?  So you can say if -- if

20   you -- if conversations occurred, but you do not reveal

21   the substance of those.

22       A.   And this is the 362 in '09?  Ask the question

23   again.

24       Q.   (By Ms. Westfall) Did you have any

25   communications about Senate Bill 362 with other current



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    or former legislators who had offered past photo ID

2    bills, or their staff?

3        A.   No.

4        Q.   Did you have any communications with the

5    Lieutenant Governor's Office staff, Governor's Office

6    staff, or anyone in an executive agency about Senate

7    Bill 362 before filing it?

8             MR. SWEETEN:  You can answer.

9        A.   Yes.

10       Q.   (By Ms. Westfall) Could you identify the staff

11   person with whom you had the conversation -- or the

12   person, the individual, with whom you had the

13   conversation?

14            MR. SWEETEN:  You can identify the person.

15       A.   I can't identify the person.  We just gave

16   notice that we were filing the bill to the Lieutenant

17   Governor's Office and --

18       Q.   (By Ms. Westfall) Was there a person in the

19   office to whom you gave that notice?

20            MR. SWEETEN:  You can answer as to the

21   identity of the person.

22       A.   I don't know for sure.  I assume it was Julia

23   Rathgeber.

24       Q.   (By Ms. Westfall) Did you personally make that

25   communication, or did Ms. McCoy on your behalf, or both



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                      May 17, 2012

                                                              135

1    of you?

2         A.   I don't know for sure, but I believe it was

3    likely Ms. McCoy.

4         Q.   Was that -- was there one conversation with the

5    Lieutenant Governor's Office about the filing of 362?

6         A.   Yes.  It's all it would be.

7         Q.   Did you have any communications with officials

8    or legislators from other states including but not

9    limited to Georgia and Indiana concerning the drafting

10   of HB 362 before it was filed?

11        A.   No.

12        Q.   Did you have any conversation about Senate Bill

13   362 with any interest groups before it was filed?

14             MR. SWEETEN:  You can answer as to whether

15   or not a conversation occurred.  Do not discuss the

16   substance of the conversation.

17        A.   No.

18        Q.   (By Ms. Westfall) Did you have any

19   communications about Senate Bill 362 with any

20   individuals including constituents in Texas before you

21   filed it?

22        A.   Yes.

23        Q.   And who was the -- who was the person with whom

24   you had the conversation?

25             MR. SWEETEN:  You can reveal who the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

                                                              136

1        conversation was with.  Do not reveal the substance of

2        the conversation.

3              A.    Skipper Wallace.

4              Q.    (By Ms. Westfall) Did you have one conversation

5        with Skipper Wallace?

6              A.    Yes.

7              Q.    Was it you personally, Ms. McCoy, both of you?

8              A.    Me personally.

9              Q.    And how far in advance did you advise

10       Mr. Wallace -- or had this conversation, pardon me,

11       about 326?

12                   MR. SWEETEN:  I'm sorry, how far in

13       advance of what?

14                   MS. WESTFALL:  Of the filing of the bill.

15                   MR. SWEETEN:  Of the filing.

16                   You can answer if you know.

17             A.    Fall of '08.

18             Q.    (By Ms. Westfall) Did he come into your office,

19       or where did this conversation take place?

20             A.    I don't remember the specifics.

21             Q.    Was it a phone call?

22             A.    Likely a phone call.  It was not in my office.

23             Q.    Do you regularly have communications with

24       Mr. Wallace?

25             A.    Yes.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                 137

1          Q.    About once a week, once a month?

2          A.    Once a month.

3          Q.    Did you have one conversation with Mr. Wallace

4     about 362 before it was filed?

5          A.    Yes.

6          Q.    Did you have more than one?

7          A.    Not to my knowledge.

8          Q.    Did you have any communications with any other

9     constituents or individuals besides Mr. Wallace about

10    362 before it was filed?

11         A.    No.

12         Q.    I believe you testified earlier about the forms

13    of ID that are listed that are allowable in Senate Bill

14    362.  I want to turn your attention to those.

15               Why did you include the forms of allowable

16    photo ID that you included in 362 that you did?

17               MR. SWEETEN:  Why did you include those,

18    that's legislatively privileged.  Do not provide an

19    answer to that question.

20         A.    That's privileged.

21               MR. SWEETEN:  That's privileged.  Do not

22    answer that question.

23         A.    Yes, privileged.

24         Q.    (By Ms. Westfall) Let me ask you a question

25    about one of the forms of ID.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                May 17, 2012

                                                              138

1                    Do you need a minute?

2         A.   No.  I'm good.

3              MS. WESTFALL:   Okay.

4         Q.   (By Ms. Westfall) Turning your attention to

5    Senate Bill 362, do you see where it lists United States

6    military identification cards?

7              MR. SWEETEN:   What page?  I'll help him.

8              MS. WESTFALL:   It's page -- top of Page 6.

9              MR. SWEETEN:   Here.

10        Q.   (By Ms. Westfall) Could you -- do you see that?

11        A.   Uh-huh.

12        Q.   Could you describe what types of cards would

13   fall under this category?

14        A.   A United States military identification card

15   that contains the person's photograph.

16        Q.   Do you have any other information about the

17   types of cards that this would specify?

18        A.   It would cover United States military

19   identification cards that contains the person's

20   photograph.

21        Q.   Is it -- is it your testimony that -- that the

22   definition of military identification card is -- is

23   clear from the face of the statute?

24        A.   It is my testimony that this bill recognizes

25   that a United States military identification card that


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

139

1     contains the person's photograph is acceptable.

2          Q.    Do you know what federal agency would issue

3     such a card or agencies?

4          A.    I do not know that.

5          Q.    Was that discussed at all in -- in the drafting

6     or filing process for Senate Bill 362?

7               MR. SWEETEN:   Objection, privilege.

8          A.    Privilege.

9          Q.    (By Ms. Westfall) Turning your attention to a

10    little lower down on the page where it indicates it

11    would include valid ID cards containing a person's

12    photograph from an agency or institution of federal

13    government or agency or institution or political

14    subdivision of the state, do you see that?

15         A.    Uh-huh.

16         Q.    Would that include student IDs from state

17    colleges and universities to the best of your knowledge?

18         A.    I don't know the answer.

19         Q.    Did you have any communications with anyone

20    about the forms of ID to included in Senate Bill 362?

21              MR. SWEETEN:   You can reveal whether or

22    not a communication occurred.  Do not reveal the

23    substance of any such communication?

24         A.    No communication.

25         Q.    (By Ms. Westfall) You had no communications?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

                                                             140

1        I'm sorry, I didn't hear you?

2             A.    No communication.

3             Q.    Thank you.  Do you know who would know the

4        answer to my previous question about whether student IDs

5        would be included in the passage of 362 we just

6        described?

7                   MR. SWEETEN:  I mean, you're asking who

8        might know?

9             A.    Anyone that could clarify that if a university

10       -- state university is a political subdivision.

11            Q.    Right.  Who would -- who -- or for purposes of

12       this statute, is there any -- any person who would --

13       who you can -- sitting here today, who would know the

14       answer to that question?

15            A.    There's lot of people.

16            Q.    Pardon?

17            A.    Almost anyone but me.

18            Q.    So can you specify anyone?

19            A.    Sure.  Someone working for state government

20       could -- could verify that.  I could verify that with

21       time, but I can't answer -- answer it right now.

22            Q.    Did you analyze or direct anyone to analyze

23       which registered voters did not possess one of the photo

24       IDs identified in Senate Bill 362?

25                  MR. SWEETEN:  Don't answer.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

141

1           Legislative privilege.

2      A.    Privilege.

3      Q.    (By Ms. Westfall) Did you read any research

4   about voter ID to assist you in drafting Senate Bill

5   362?

6      A.    Privilege.

7           MR. SWEETEN:  Same objection, legislative

8   privilege.

9      Q.    (By Ms. Westfall) Did you conduct or instruct

10  anyone to conduct an analysis of the impact of Senate

11  Bill 362 on minority voters?

12          MR. SWEETEN:  Same objection, privilege.

13     A.    Privilege.

14     Q.    (By Ms. Westfall) If 362 had been passed, would

15  it have been subject to the requirements of Section 5 of

16  the Voting Rights Act?

17     A.    Ask the question again.

18     Q.    If Senate Bill 362 had been passed, would it

19  have been subject to the requirements of Section 5 of

20  the Voting Rights Act?

21     A.    All voting legislation in a Section 5 state is

22  subject to the Voting Rights Act.

23     Q.    So is your answer that yes, it would have been?

24     A.    Yes.

25     Q.    Turning your attention back to Senate Bill 362,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

142

1    I believe you testified earlier that it would allow a

2    voter to present forms of nonphoto ID; is that correct?

3    A long list on Page -- starting on Page 6 and continuing

4    into 7?

5         A.   Yes.

6         Q.   Why did you -- why did you include that

7    provision in the bill?

8              MR. SWEETEN:  Objection, legislative

9    privilege.

10             Do not reveal thoughts, mental

11   impressions, opinions about legislation.

12        A.   Privilege.

13        Q.   What was the purpose -- what is the purpose of

14   the nonphoto ID allowable in Senate Bill 362?

15        A.   Privilege.

16             MS. WESTFALL:  Mr. Sweeten?

17             MR. SWEETEN:  As the court has said, he

18   can provide -- let's read from the Court's Order:

19   "Privilege does not protect testimony with respect to

20   the general purpose or the purpose of a legislature as a

21   whole in enacting Senate Bill 14 as opposed to the

22   subjective intent of the legislator."  So, I think he

23   could testify as to the purpose of the bill, and I will

24   allow him testify as to the purpose of the overall bill.

25             MS. WESTFALL:  The purpose of this



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

143

1    provision is what I'm asking about, Mr. Sweeten.  I'm

2    going to restate my question.  You can decide how you

3    want to respond to this order.

4         Q.   (By Ms. Westfall) Could you read back -- well,

5    you know what, it's probably way back.  I'll -- just let

6    me redo the question.

7              As to Senate Bill 362, what was the

8    purpose of the provision allowing voters to use nonphoto

9    ID at the polls on election day?

10        A.   To protect the integrity of the ballot box.

11             MR. ROSENBERG:  Could you repeat that

12   back?  I didn't hear it.

13             MR. SWEETEN:  "To protect the integrity of

14   the ballot box."

15        Q.   (By Ms. Westfall) Okay.  And how would

16   including and allowing those forms of photo ID further

17   that purpose?

18        A.   To protect the integrity of the ballot box.

19        Q.   So is it your testimony that a voter -- it

20   would be acceptable under this bill and would further

21   that purpose to allow voters to present either photo or

22   nonphoto ID; is that correct?

23        A.   I would assert privilege on that.

24             MS. WESTFALL:  I will allow your counsel

25   to confer and then.... Let the record reflect there is a



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

144

1    colloquy between the state's counsel right now about the

2    privilege issues.

3              MR. SWEETEN:  Yeah.  We're all -- of

4    course there is.  We're considering the Court's Order

5    and its application to the facts of the case --

6              MS. WESTFALL:  Very good.

7              MR. SWEETEN:  -- which is not at all

8    times --

9              MS. WESTFALL:  I'm grateful.  I'm

10   grateful.

11             MR. SWEETEN:  Good.  I'm glad you are.

12   We're certainly going to follow the Court's Order.

13             I'm going to go on ahead and go on the

14   record.

15             The Court has, with respect to this

16   matter, the Court has -- has ordered that Texas will --

17   that the witness can testify as to the general purpose

18   or the purpose of a legislature as a whole, and in this

19   case it says enacting Senate Bill 14.

20             So he can testify about the general

21   purpose.  But for you to parse and to take specific

22   provisions out and then ask him each purpose is -- is

23   not, I think, in accordance with what the Court's Order

24   is.  We are going to, as he's sitting here, he can

25   testify as to the general purpose of the bill.  So we'll



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

145

```
 1    allow that testimony.
 2               MS. WESTFALL:  In other words, you're
 3    directing him not to answer the last question on the on
 4    the basis of privilege?
 5               MR. SWEETEN:  Well, can we hear the last
 6    question again?
 7               MS. WESTFALL:  Can you search for my last
 8    question, sir.
 9               (Requested portion was read back by the
10    court reporter.)
11               MR. SWEETEN:  You're -- you're asking if
12    it would be acceptable under the bill.  I think you've
13    gone beyond what is the purpose of the bill.  He can
14    testify about the purpose of the bill.  I -- I think
15    you're going beyond what -- what he has to do.  He
16    obviously, you know, the Court has said that he doesn't
17    have to provide his subjective intent of the legislator
18    or other legislators.  He can testify about the purpose
19    of the bill.  He's done so.
20               So I think that's -- we're going instruct
21    as to privilege as to that issue.
22               MS. WESTFALL:  Okay.
23       Q.   (By Ms. Westfall) Did you have any
24    conversations with anyone about allowing nonphoto ID in
25    HB -- SB 362?
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

146

1          MR. SWEETEN:  You can testify as to

2     whether or not you had conversations on that issue.  You

3     can identify with whom the conversation was.

4          A.    Repeat the question.

5          Q.    Did you have conversations with anyone about

6     allowing nonphoto ID in Senate Bill 362?

7          A.    Yes.

8          Q.    Did you personally have a conversation or was

9     it Ms. McCoy on your behalf?

10         A.    I personally had a conversation.

11         Q.    And with whom did you have that conversation?

12         A.    Ms. McCoy.

13         Q.    Did you have that conversation with anyone else

14    other than Ms. McCoy?

15         A.    Yes.

16         Q.    Who else was in the meeting?

17         MR. SWEETEN:  Who was in the meeting is

18    all she's asking, just who was there?

19         A.    Senator Williams.

20         Q.    Was his staff or was he himself in the meeting?

21         A.    Only him.

22         Q.    When did that meeting take place?

23         A.    Prior to the bill coming to the Floor.

24         Q.    Did you have any other meetings you can recall

25    concerning the inclusion of nonphoto ID forms in Senate


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

147

1     Bill 362?

2          A.   Yes.

3          Q.   Who was that conversation with?

4          A.   Lieutenant Governor Dewhurst.

5          Q.   And when did that conversation occur?

6          A.   Prior to the bill coming to the Floor.

7          Q.   And was anyone else in that meeting beside you

8     and Mr. Dewhurst?

9          A.   I don't remember.

10         Q.   Was that in-person conversation?

11         A.   Yes.

12         Q.   Was that in his office or yours?

13         A.   His.

14         Q.   Do you recall any other conversations about

15    including nonphoto ID in Senate Bill 362?

16         A.   No.

17         Q.   Thank you.

18              Were there any -- are you aware of any

19    e-mails or other written communications concerning any

20    of the meetings you just testified about including

21    nonphoto ID in Senate Bill 362?

22         A.   No knowledge of any.

23         Q.   Are you familiar with the concept of Spanish

24    surnamed voter registration?

25         A.   No.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

148

1          Q.    What was the purpose or purposes of Senate Bill

2     362?

3          A.    To protect the integrity of the ballot box.

4          Q.    Could you describe -- you just testified about

5     conversations between you and Lieutenant Governor

6     Dewhurst concerning nonphoto ID in Senate Bill

7     362.  Could you describe that conversation?

8          A.    Privileged.

9               MR. SWEETEN:  Yeah, don't reveal the

10     substance of the conversation.

11          Q.    (By Ms. Westfall) You just testified that you

12     had conversation with Senator Williams and Ms. McCoy

13     about including nonphoto ID in Senate Bill 362; is that

14     correct?  Could you describe that conversation?

15          A.    Privileged.

16               MR. SWEETEN:  Objection, privilege.

17          Q.    (By Ms. Westfall) So I believe you were

18     testifying about the purposes of Senate Bill 362; is

19     that correct?

20               MR. SWEETEN:  He did answer that question.

21          Q.    (By Ms. Westfall) And I -- and you said it was

22     -- I'm sorry, I -- I was talking about the

23     conversations.  Could you testify about -- strike that.

24               What were the purposes of Senate Bill 362?

25          A.    To preserve the -- the integrity of the ballot



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

149

1    box.

2        Q.    Anything else?

3        A.    No.

4        Q.    Is that the sole purpose of 362?

5        A.    Yes.

6        Q.    Is that why you introduced 362?

7              MR. SWEETEN:   Now, wait a minute.  Now

8    you're asking for his subjective intent of the -- as

9    opposed to the subjective intent of the legislator.  So

10   he's testifying as to purpose, and the Court has very

11   specifically said that this is not his subjective

12   intent.

13             I'm going to instruct you not to answer in

14   accordance with the Court's Order.

15       A.    Privilege.

16             MR. SWEETEN:   Which I hope you recognize

17   as well.

18             MS. WESTFALL:   I certainly do.  I have it

19   right in front of me, Mr. Sweeten.

20             MR. SWEETEN:   Right.  So do I.

21       Q.    (By Ms. Westfall) Did anyone ask you to

22   introduce Senate Bill 362?

23       A.    No.

24       Q.    Did you promise anyone that you would introduce

25   Senate Bill 362.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

150

1              MR. SWEETEN:  I'm going to object.  I

2     think that you're asking for a specific content of a

3     communication and asking was he -- did he promise

4     someone.  If you want to ask if he had constituent

5     communications --

6              MS. WESTFALL:  We take the position that

7     falls outside the privilege.  That's outside the scope.

8              MR. FREDERICK:  Can we have just a moment

9     to confer.

10             MS. WESTFALL:  Certainly.

11             MR. SWEETEN:  Yeah, I'm going to go ahead

12    and assert privilege on -- on did he promise anyone to

13    -- with respect to the bill.  So I'm going to go ahead

14    and assert privilege as to that issue.

15       Q.   (By Ms. Westfall) Senator, did anything occur

16    between 2007 when HB 218 was introduced in 2009 when

17    Senate Bill 362 was introduced that caused you to

18    conclude there was a continued need for voter ID?

19             MR. SWEETEN:  I'm going to object.  That

20    calls for legislative privilege.

21       A.   Privilege.

22             MS. WESTFALL:  Thanks.  If you can make

23    sure the court reporter can hear you.

24       Q.   (By Ms. Westfall) Are you aware of any

25    in-person voter impersonation that caused you to believe



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

1       a voter ID bill was still needed in Texas.

2                    MR. SWEETEN:  Objection, privilege.

3            A.   Privilege.

4            Q.   (By Ms. Westfall) You just testified that the

5       purpose of 362 was to preserve the integrity of the

6       ballot box.  What does that mean?

7            A.   To preserve the integrity of the ballot box.

8            Q.   Correct.  Could you explain a bit -- elaborate

9       a bit on that purpose?

10           A.   To preserve the integrity of the ballot box.

11           Q.   Does that mean that -- why does it need

12      preserving?

13           A.   We need to preserve the integrity the ballot

14      box.

15                   MR. SWEETEN:  Yeah, I'm going to assert

16      privilege.  He said what he thought the purpose is.  And

17      he's answered the question.

18           Q.   (By Ms. Westfall) Was a there a lack of

19      integrity in the ballot box in 2009?

20                   MR. SWEETEN:  I think that's privileged.

21           A.   Privilege.

22           Q.   (By Ms. Westfall) Had you had any conversations

23      with election officials about the integrity the ballot

24      box in 2009?

25                   MR. SWEETEN:  You're asking him if he had



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

152

1    conversations about the integrity of the ballot box.  I

2    think we're getting a little more in a subjective -- I

3    mean, we're getting a fairly substantive description in

4    the preface of your question.  I think if you would

5    re-ask it and just ask about whether he's had contact

6    with the election officials, we won't have any objection

7    whatsoever as to that.

8                    MS. WESTFALL:  Okay.  I'm going to keep my

9    question on the record and not withdraw it.

10       Q.    (By ms. Westfall) But did you have any

11   conversations with election officials in advance of

12   filing Senate Bill 362?

13       A.    Yes.

14       Q.    Which election officials?

15       A.    Those that testified on the bill in 2007.

16       Q.    And who were those?

17       A.    I don't remember the names.

18       Q.    Were they county officials?

19       A.    Yes.

20       Q.    Did they include any state officials?

21       A.    No.

22       Q.    Did it include Mr. Paul Bettencourt?

23       A.    I can't verify it was Mr. Bettencourt.

24       Q.    Do you recall which counties?

25       A.    I believe it was Houston.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

153

1      Q.   Did you have any conversations with any other

2  election officials outside of those public proceedings

3  in 2007 prior to filing SB 362?

4      A.   No.

5      Q.   What was -- are there any bases or facts that

6  you can identify related to the purpose of SB 362, which

7  you just testified was to preserve the integrity of the

8  ballot box?

9      A.   Privilege.

10          MR. SWEETEN:  Objection, privilege.

11     Q.   (By Ms. Westfall) Can you tell me how 362

12  preserves the integrity of the ballot box?

13          MR. SWEETEN:  Objection, privilege.

14     A.   Privilege.

15     Q.   (By Ms. Westfall) Did you become aware of any

16  convictions on -- for in-person voter impersonation

17  between 2007 and 2009?

18     A.   Rephrase the question.

19     Q.   I'm here to ask you --

20     A.   Not rephrase -- repeat the question, not

21  rephrase.  Repeat.

22     Q.   Okay.  Good.  I liked my question.

23          MR. SWEETEN:  I'm going to object on

24  privilege anyway so go ahead and ask it.

25          MS. WESTFALL:  Well, let's let it be.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

154

1       A.    Privilege.

2       Q.    (By Ms. Westfall) Very good.

3             How does Senate Bill 362 -- how is it more

4   effective in preventing in-person voter impersonation

5   than -- than current law?

6             MR. SWEETEN:  Objection, privilege.

7       Q.    (By Ms. Westfall) Under current law, voters

8   must verify their identity by bringing their voter

9   registration certificate, correct?

10      A.    Repeat the question, please.

11      Q.    Under current law voters must verify their

12  identity by bringing their voter registration

13  certificate to the polls on election day; is that

14  correct?

15      A.    No.

16      Q.    Tell me how I'm not correct?

17            MR. SWEETEN:  She's asking you under

18  current law, the requirement.

19      A.    There are multiple options of which one of

20  those is to show your voter identification card.

21      Q.    (By Ms. Westfall) So how is Senate Bill 362

22  more effective than current law under which one -- a

23  voter may show a voter registration certificate or other

24  forms of ID --

25            MR. SWEETEN:  Objection --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

155

1        Q.    (By Ms. Westfall) -- to be verified at the

2    poll.

3                    MR. SWEETEN:   Objection, privilege.

4        A.    Privilege.

5        Q.    (By Ms. Westfall) Does Senate Bill 362 address

6    issues of non-citizens voting?

7                    MR. SWEETEN:   Objection, privilege.

8        A.    Privilege.

9        Q.    (By Ms. Westfall) Can you identify any

10   non-citizen who has voted in any election in Texas?

11                   MR. SWEETEN:   Objection to the extent that

12   this would require you to reveal thoughts, mental

13   impressions, opinions about legislation in furtherance

14   of the legislative process.  However, if it's not under

15   that category or relates to communications you've had,

16   you can answer outside of those.

17       A.    Privilege.

18       Q.    (By Ms. Westfall) Have you ever had any

19   conversations with anyone concerning the identity of any

20   non-citizen who has voted in any election in Texas?

21                   MR. SWEETEN:   Don't reveal legislatively

22   privileged information.

23       A.    Privilege.

24       Q.    (By Ms. Westfall) It was concerning

25   conversations, the existence thereof.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

156

1              MR. SWEETEN:  Okay.  Can you say it again?

2              MS. WESTFALL:  Certainly.

3      Q.   (By Ms. Westfall) Have you ever had a

4  conversation with anyone concerning the identity of any

5  non-citizen who has voted in any Texas election?

6              MR. SWEETEN:  There's a lot of substance

7  in that question as to what the conversation was

8  about.  If you want to narrow that down, I'll let him

9  answer whether conversations occurred and facts about

10 the conversation.

11             MS. WESTFALL:  I don't.  I want that on

12 the record.

13             MR. SWEETEN:  Okay.  On that we'll object.

14             MS. WESTFALL:  On the basis --

15     A.   The question is?  Repeat the question, please.

16     Q.   (By Ms. Westfall) Have you -- can you -- have

17 you had any conversations concerning the identity of any

18 non-citizen who has voted in any election in Texas?

19             MR. SWEETEN:  I've got to object on

20 privilege.

21     Q.   (By Ms. Westfall) Are you following your

22 counsel's advice?

23     A.   Privilege.

24             MR. SWEETEN:  Elizabeth, let me offer that

25 if -- if we've objected to that question, if you're



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    trying to seek similar information that is not as

2    descriptive as his conversation, we're more than happy

3    to work with you to try to have an answer to the

4    question you're seeking.

5         Q.   (By Ms. Westfall) Have you -- are you aware of

6    any conversations related to non-citizen voting in

7    Texas?

8              MR. SWEETEN:  Yeah, yeah.  I'm going to

9    let you answer that whether or not you had any

10   conversations.

11        A.   I'm not aware of conversations.

12        Q.   (By Ms. Westfall) I'm going to hand you what's

13   been previously marked as or I'm going to have the court

14   reporter hand you what's been previously marked as

15   Exhibit 31.

16             MS. WESTFALL:  Or maybe I can.  Here you

17   go, sir.

18             MR. ROSENBERG:  31?

19             MS. WESTFALL:  Yes.

20        Q.   (By Ms. Westfall) Do you recognize this

21   document?

22        A.   Yes.

23        Q.   And what is it?

24        A.   Press release from my office December 15, 2008.

25        Q.   And do you see it concerns the Senate Bill 362



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    and 363 about which you just testified today?

2        A.   Yes.

3        Q.   Have you ever heard of any registered voter

4    indicating that the voter was not going to vote because

5    he or she was concerned their vote would be diluted by

6    illegitimate votes?

7        A.   Privilege.

8             MR. SWEETEN:  To the extent, I mean,

9    here's the distinction here:  You don't have to reveal

10   thoughts, mental impressions, or opinions about

11   legislation in furtherance of the legislative process or

12   communications that we've outlined before.  She can ask

13   you about public statements that are made and matters of

14   public record.  And so if it is -- falls in one of the

15   areas of privilege, you don't have to reveal that, if

16   there is.  She can ask you about the public statement

17   though.

18       A.   Privilege.

19       Q.   (By Ms. Westfall) And this press release, when

20   was it dated?

21       A.   December 15, 2008.

22       Q.   Did Ms. McCoy draft it?

23       A.   Yes.

24       Q.   And it, as to Senate Bill 363, it expresses

25   concern about ensuring that only legal citizens can cast



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    a ballot, does it not?

2        A.    Repeat the question.

3        Q.    Senate Bill 363, well, this press release

4    Exhibit 31, indicates that the purpose of 363 is to

5    ensure that only legal citizens cast a ballot, does it

6    not?

7        A.    Our current laws state that only legal citizens

8    can cast a ballot.

9        Q.    Do you agree with that, that that statement is

10    included and you're quoted in your press release; is

11    that right?

12        A.    The statements is -- our current laws state

13    that only legal citizens can cast a ballot.

14        Q.    And Senate Bill 363, as explained in this press

15    release, would require voter applicants to prove that he

16    or she is a United States citizen by furnishing a birth

17    certificate or a naturalization oath; is that right?

18              MR. SWEETEN:   Are you reading from this?

19              MS. WESTFALL:   I am.   I'm asking him to

20    just confirm that what's in the document is in the

21    document.

22        A.    It's require a voter to prove he or she is a

23    United States citizen by furnishing a birth certificate

24    or, if it's a naturalized citizen, the city, state and

25    year of taking the naturalized oath.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

```
 1         Q.   (By Ms. Westfall) Did you have any concern that
 2    Senate Bill 363 would be burdensome to people trying to
 3    register to vote?
 4         A.   Privilege.
 5              MR. SWEETEN:  Don't reveal privileged
 6    information.
 7         Q.   (By Ms. Westfall) Do you know of any other
 8    states that are -- require producing a birth certificate
 9    or naturalization oath to register to vote?
10              MR. SWEETEN:  Don't reveal privileged
11    information.
12         A.   Privilege.
13         Q.   (By Ms. Westfall) Are you aware that the state
14    of Arizona requires documents of proof of citizenship to
15    vote?
16              MR. SWEETEN:  Objection, privilege.
17         A.   Privileged.
18         Q.   (By Ms. Westfall) And are you aware that
19    Arizona has been involved in fiercely fought voter
20    rights litigation over that issue for years?
21              MR. SWEETEN:  Objection to the extent it
22    calls for privilege.
23         A.   Privileged.
24         Q.   (By Ms. Westfall) And what did you mean,
25    Senator Fraser, when you said in Paragraph 4, voting is
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

161

1    one of our most important rights as Americans but it's

2    also a responsibility.

3        A.    I meant that voting is one of our most

4    important rights as Americans but it is also a

5    responsibility.

6        Q.    (By Ms. Westfall) What did you mean by the word

7    "responsibility?"

8        A.    I meant that voting is a one of our most

9    important rights as Americans but it also is a

10   responsibility.

11       Q.    Do you think -- you have to be responsibile to

12   vote, is that what mean?

13       A.    I meant that voting is one of our most

14   important rights as Americans but it also is a

15   responsibility.

16       Q.    I -- it sounds to me I've asked the question

17   three times and is it -- is it your testimony today that

18   you do not have further explanation of the words on the

19   face of this press release and you're not going to

20   answer my question?

21       A.    I believe that voting is one our most important

22   rights as Americans, but it's also a responsibility.

23       Q.    Did you have communications -- are you aware of

24   any communications with legislators or staff who opposed

25   Senate Bill 362?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

162

1      A.   Privilege.

2      Q.   Did you have any communications with

3    legislators who opposed Senate Bill 362 regarding the

4    purpose of Senate Bill 362?

5              MR. SWEETEN:  Objection, privilege.

6      A.   Privilege.

7      Q.   (By Ms. Westfall) Who, besides you, were the

8    main proponents of Senate Bill 362?

9              MR. SWEETEN:  To the extent you can refer

10    the matters of public record?

11      A.   Its co-sponsors.

12              MR. SWEETEN:  Matters that are privilege,

13    you can --

14      A.   Co-sponsors of the bill were Senator Estes,

15    Senator Nelson, Senator Nichols.

16      Q.   (By Ms. Westfall) Was this legislation a

17    priority for other people in the Texas government

18    besides the sponsors of the bill?

19              MR. SWEETEN:  Don't reveal privileged

20    information.

21      A.   Privilege.

22      Q.   (By Ms. Westfall) Was this legislation a

23    priority for Lieutenant Governor?

24      A.   Privilege.

25              MR. SWEETEN:  Objection, privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

163

1        Q.   (By Ms. Westfall) Was this legislation a

2   priority for the Governor?

3            MR. SWEETEN:   Same objection.

4        A.   Privilege.

5        Q.   (By Ms. Westfall) Was Senate Bill 362 a

6   priority for anyone outside the Texas government, such

7   as interest groups, other states, people outside of the

8   state?

9            MR. SWEETEN:   To the extent this would

10  require you to reveal thoughts, mental impressions,

11  opinions about legislation in furtherance of the

12  legislative process, don't answer that.  Or

13  communications with any of the individuals or entities

14  named, then don't answer it answer it.  To the extent it

15  does not do so, you're free to answer.

16       A.   Privilege.

17       Q.   (By Ms. Westfall) Did any groups representing

18  minority voters support Senate Bill 362?

19           MR. SWEETEN:   Same objection, same

20  instruction.

21       A.   Privilege.

22       Q.   (By Ms. Westfall) Did you have any

23  communications with anyone supporting Senate Bill 362?

24           MR. SWEETEN:   You can answer whether or

25  not you've had communications and facts about those



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

164

1    communications.  Other than -- but don't reveal the

2    substance.

3         A.    Ask the question again.

4         Q.    (By Ms. Westfall) Did you have any

5    communications with any individuals or groups supporting

6    Senate Bill 362?

7         A.    Yes.

8         Q.    Could you name each and every one of those

9    individuals or groups?

10        A.    Skipper Wallace.

11        Q.    Who else?

12        A.    The only one, Skipper Wallace.

13        Q.    That's the sum total of the supporters you

14   talked to other than legislators and their staff who

15   were supporting the bill; is that correct?

16        A.    Yes.  That was a nod -- that was nod-head yes.

17        Q.    You're getting in the swing of things here in

18   terms of the transcript.  Thank you.

19              Who were the main opponents of Senate Bill

20   362?

21              MR. SWEETEN:  Objection, calls for

22   legislative privilege.

23        A.    Privilege.

24        Q.    Do you know you why -- do you know why

25   opponents oppose Senate Bill 362?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1              MR. SWEETEN:  Objection, privilege.

2        A.   Privilege.

3        Q.   (By Ms. Westfall) Did you have any

4    conversations with any bill opponents?

5        A.   Privilege.

6        Q.   Conversations?

7              MR. SWEETEN:  You can testify about the

8    facts of conversations.  Who you talked to, what day,

9    and how long, the duration of them, but don't reveal the

10   substance of the conversation.

11             THE WITNESS:  You said I --

12             MR. SWEETEN:  You can testify as to

13   whether you had conversations with -- with opponents as

14   long as they're not privileged.  I mean, for example, if

15   you talked to a legislator about it, it would be a

16   privilege.  You can talk to -- you can say whether or

17   not you had a conversation with an opponent.  You can

18   list the name of the person on the --

19             THE WITNESS:  But if it's a legislator,

20   would it be privileged?

21             MR. SWEETEN:  You can identify whether or

22   not you had a conversation.  Don't reveal any of the

23   substance whatsoever.

24        A.   I had a -- had a conversation with an -- an

25   opponent.


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1       Q.   (By Ms. Westfall) And what -- who was that
2   opponent?
3       A.   John Whitmire.
4       Q.   When was that conversation?
5       A.   I don't remember.
6       Q.   Did you have conversations -- was that the only
7   bill opponent you had a conversation with about SB 362?
8       A.   Likely that I had more.  I believe I had a
9   conversation with Rodney Ellis, Senator Ellis.
10      Q.   Was Ms. McCoy at either one of those meetings?
11      A.   No.
12      Q.   Was this a one-on-one meeting with the member?
13      A.   Yes.
14      Q.   Did you have any other conversations with any
15  other bill opponents, legislators or staff?
16      A.   I don't remember having a conversation.
17      Q.   Do you recall when you had a conversation with
18  Mr. Whitmire?
19      A.   Whitmire probably was in the fall before Ellis,
20  would probably have been during the session.
21      Q.   Can -- can you describe the general issue, I
22  mean, the general purpose, or the general discussion
23  that you had with Mr. Whitmire?
24      A.   Privilege.
25           MR. SWEETEN:  No, don't -- don't reveal --



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                              May 17, 2012

                                                                167

1          A.    Privilege.

2               MR. SWEETEN:  I mean, well, general.  I

3     think you've already done so when you said has he had --

4     has he had conversations with opponents of the bill.  I

5     think he's testified as to the fact of the conversation

6     and he's revealed that he's had discussions with the

7     opponents.

8          Q.    (By Ms. Westfall) And you had one conversation

9     with Senator Whitmire?

10         A.    Likely more than one.

11         Q.    Did, after that, just temporally -- actually,

12    that was before you filed Senate Bill 362; is that

13    right?

14         A.    Yes.

15         Q.    And you also had a conversation with Senator

16    Ellis; is that correct?

17         A.    Yes.

18         Q.    Could you tell me the general nature of that

19    conversation?

20         A.    Privileged.

21         Q.    When was -- did that conversation occur?

22         A.    Likely, after session started.

23         Q.    Was it after you filed the bill?

24         A.    Yes.

25         Q.    Was there any change made to the bill



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

168

```
1     temporally after that time?
2          A.   No.
3          Q.   I'm -- I'm -- we're going break in one
4     second.  Let me just finish.
5               Did you take any steps with regard to the
6     Senate Bill 362, to try to address any concerns raised
7     by bill opponents?
8          A.   Privilege.
9               MR. SWEETEN:  Objection, privileged.
10              MS. WESTFALL:  Okay.  Why don't we take
11    ten minute break.
12              MR. SWEETEN:  Okay.
13              (Recess from 2:31 to 2:47 p.m.)
14              MS. WESTFALL:  Back on the record.
15    Q.  (By Ms. Westfall) Senator, what was your role in
16    trying to get Senate Bill 362 passed in the Senate?
17              MR. SWEETEN:  Objection, legislative
18    privilege.
19         A.   Privilege.
20         Q.   (By Ms. Westfall)  What procedures did you use
21    to try to ensure that SB 362 would pass the Senate?
22              MR. SWEETEN:  Objection, privilege.
23         A.   Privilege.
24              MS. WESTFALL:  Will you allow him to
25    testify about publicly known procedures?
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

169

1              MR. SWEETEN:  I will let him testify --

2     well, I'm not going to let him reveal his thoughts,

3     mental impressions or opinions about legislation or in

4     furtherance of the legislative process.  That's covered.

5     So I'm -- I think the way it's phrased, I can't allow

6     him to answer that, so no, I'm going to object on

7     privilege grounds.

8         Q.   (By Ms. Westfall)  Are there any publicly known

9     and publicly available procedures that you used to get

10    Senate Bill 362 passed through the Senate?

11             MR. SWEETEN:  I think it still -- I think

12    that's implying a purpose, and therefore, is

13    legislatively privileged.  I mean, I think you could ask

14    the general what procedures occurred on a factual basis

15    with respect to the bill.  I don't think that that would

16    -- I would have an objection to that.

17        Q.   (By Ms. Westfall)  Okay.  What procedures were

18    employed to -- in conjunction with consideration of

19    Senate Bill 362 in the Senate?

20             MR. SWEETEN:  I think that's still -- it's

21    still infirm.  I object, privilege.

22        Q.   (By Ms. Westfall)  What was your strategy for

23    getting Senate Bill 362 passed?

24             MR. SWEETEN:  Same objection, privilege.

25        A.    Privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

170

```
 1        Q.   (By Ms. Westfall)  When you introduced Senate
 2   Bill 362, did you know how many senators would support
 3   it?
 4             MR. SWEETEN:  Objection, privilege.
 5        A.   Privilege.
 6        Q.   (By Ms. Westfall)  Did you try to make any
 7   determination about the number of senators who would
 8   support Senate Bill 362 prior to bringing it to the
 9   Floor?
10             MR. SWEETEN:  Objection, privilege.
11        Q.   (By Ms. Westfall)  Sir, are you relying upon
12   advice of counsel?
13        A.   Privilege.
14        Q.   Thank you.  Did you know how many senators
15   would support 362 prior to your bringing it to the
16   Floor.
17             MR. SWEETEN:  Objection, privilege.
18        A.   Privilege.
19        Q.   (By Ms. Westfall)  Did you have any
20   conversations about how much support 362 had prior to
21   bringing it to the Floor?
22             MR. SWEETEN:  Objection, privilege.
23             MS. WESTFALL:  The existence of
24   conversations?
25             MR. SWEETEN:  He can talk about -- well,
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    let me think, about the privilege of your questioning

2    again.

3                     Court reporter, can you reread that

4    question, please?

5                     (Requested portion read back by the court

6    reporter.)

7                     MR. SWEETEN:  That reveals his thoughts,

8    I'm afraid.  I'm going to object on privilege.

9                     If you want to rephrase the preface of the

10   question.  You know, general subject matter is one

11   thing.  That is more than general subject matter.  So if

12   you want to change the question, we may allow him to

13   answer.

14       Q.   (By Ms. Westfall)  Did you have any

15   conversations prior to bringing 362 to the Floor

16   concerning counting votes?

17                     MR. SWEETEN:  Okay.  I'm going to let you

18   answer as to if you had conversations about counting

19   votes.

20       A.   Yes.

21       Q.   (By Ms. Westfall)  And who did you have a

22   conversation with?

23       A.   Likely had a conversation with all 31 senators,

24   all 30 other senators.

25       Q.   All 30 senators in the Republican caucus?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

172

1     A.   There's not 30 Republican senators.

2     Q.   Who were those 30 senators?

3     A.   There are 31 members of the Texas Senate; not

4 counting me, there are 30.

5     Q.   So you had a conversation with all the senators

6 about counting votes on 362?

7     A.   I would believe that I had a conversation with

8 every senator.

9     Q.   Do you mean individual conversations?

10          MR. SWEETEN:  You can answer that.

11     A.   Yes.

12          MR. SWEETEN:  Okay.  Let me just make sure

13 that we're clear, though, other than just revealing the

14 fact that the conversation happened, you are not to

15 reveal the substance of those conversations.

16     Q.   (By Ms. Westfall)  Did you have a conversation

17 with each and every individual senator prior to bringing

18 362 to the Floor?

19     A.   To my knowledge, yes, I talked to everyone.

20     Q.   Were these one-on-one conversations?

21     A.   For the most part.

22     Q.   Did Ms. McCoy have any conversations on your

23 behalf with any staff members for senators?

24          MR. SWEETEN:  You can answer if you know

25 about the existence of the conversations.  Don't reveal



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1   the substance.

2       A.   I don't know.

3       Q.   (By Ms. Westfall)  Did you learn as a result of

4   these conversations that you did not have the support of

5   two-thirds of senators for 362?

6            MR. SWEETEN:  Objection.  Calls for

7   matters that are subject to the legislative privilege.

8       A.   Privilege.

9       Q.   (By Ms. Westfall)  During these conversations,

10  did you solicit the view of the members as to whether he

11  or she supported 362?

12           MR. SWEETEN:  I'm going to object.  You're

13  asking for the substance of the conversations.  Don't

14  answer based on legislative privilege.

15      Q.   (By Ms. Westfall)  During these individual

16  conversations, did you discuss support or opposition

17  against 362?

18           MR. SWEETEN:  Same objection.

19      A.   Privilege.

20      Q.   (By Ms. Westfall)  Did you try to persuade any

21  member who was opposed to Senate Bill 362 to vote for

22  it?

23           MR. SWEETEN:  Same objection.

24      A.   Privilege.

25      Q.   (By Ms. Westfall)  I hand you what's been


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

174

1     previously marked as Exhibit 32.  Do you recognize this

2     document?

3          A.   Would you like me to read it back to you?

4          Q.   Not the whole entire thing.  I won't do that to

5     you today.  But could you tell me, do you recognize this

6     document?

7          A.   I do recognize this document.

8          Q.   And what is it?

9          A.   I think it is --

10              MR. SWEETEN:  If you don't mind me

11    scooting in here.  I need to be able to see this.  Do

12    you have a copy?

13              MS. WESTFALL:  No, I don't.  We --

14              MR. SWEETEN:  I don't have one either.

15              MS. WESTFALL:  -- lost our others.

16         Q.   (By Ms. Westfall)  Do you recognize what this

17    document is?

18         A.   I do.

19         Q.   What is it?

20         A.   I believe it is the hearing that was held

21    January 14, 2009.

22         Q.   Directing your attention to the first page,

23    does it say "Senate Rules," sir?

24              MR. SWEETEN:  She said the first page.

25         A.   Senate Rules.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

175

1      Q.   (By Ms. Westfall)  And what year were these

2    rules adopted?

3      A.   Just a second.  I'm sorry.  I need to retract

4    the last of -- okay.  I'm sorry.  The answer I gave you

5    was incorrect.  It was not the hearing.  This is the

6    Senate rules that were adopted.

7      Q.   Thank you.

8      A.   January 14th.

9      Q.   Thank you.

10            And was this in 2009?

11     A.   Yes.

12     Q.   Were these rules operable during consideration

13   of Senate Bill 362?

14     A.   Yes.

15     Q.   And turning your attention to Rule 5.11 on Page

16   24 of this document, Exhibit 32, could you direct your

17   attention to that?

18     A.   Page 24?

19     Q.   24, yes.  Could you take a look at Rule 5.11?

20     A.   Uh-huh.

21     Q.   Could you describe this rule?

22     A.   I'm sorry?

23     Q.   Could you describe this rule?

24     A.   Could you be more specific?

25     Q.   Could you describe what this rule provides for



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

176

1    based on your knowledge of serving in the Senate for

2    many years?

3         A.    Senate Rule 5.11 refers to special orders.

4         Q.    Could you describe the provision in Section A

5    of Rule 11, 5.11?

6         A.    It says "Any bill, resolution, or other measure

7    may be on any day be made a special order for future

8    time of the session by affirmative vote of two-thirds of

9    the members present."

10        Q.    Turning your attention to Subsection D of Rule

11   5.11, what does that subsection provide for?

12        A.    "Notwithstanding Subsection A of this bill, a

13   bill or resolution relating to voter identification

14   requirements reported favorably from the Committee of

15   the Whole may be set as a special order for a time at

16   least 24 hours after the motion is adopted by a majority

17   of the members of the Senate."

18        Q.    Could you explain the effect of Rule 5.11D?

19        A.    I think it's self-explanatory as I just read

20   it.

21        Q.    So you have no further testimony in answer to

22   my question about the effect?

23        A.    The effect is as it reads, that would be the

24   effect.

25        Q.    What is the purpose of Rule 5.11D as it



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                          May 17, 2012

177

1    pertains to voter ID requirements?

2         A.    The purpose is to not --

3              MR. SWEETEN:  Hold on. Hold on.  I think

4    as it pertains to voter ID requirements, I'm going to

5    object.  I think that that calls for him to reveal

6    matters of legislative privilege.  He's also already

7    answered in previous questioning questions about this

8    rule.

9              MS. WESTFALL:  Are you preventing me from

10   examining the witness about this exhibit, the rules in

11   2009 pertaining to voter ID?

12             MR. SWEETEN:  I'm not prohibiting you from

13   examining about the exhibit.  You can do that.  And you

14   have done that.

15             MS. WESTFALL:  I would direct you also to

16   the Court's Order of today concerning purpose.  And the

17   purpose of a rule governing consideration of voter ID in

18   2009, are you prohibiting me from examining the witness?

19             MR. SWEETEN:  Counsel, you've already

20   asked him very specifically earlier about this rule and

21   what he felt the purpose of it was and what Janice McCoy

22   thought the purpose of it was.  You've already asked

23   this question.

24             MS. WESTFALL:  I can ask a different

25   question.  But I'm going to keep my question on the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                May 17, 2012

178

1    record.  I'm not withdrawing it.

2         Q.   (By Ms. Westfall)  What was purpose in Rule

3    5.11D of specifying voter ID requirements?

4              MR. SWEETEN:  Okay.  I'm going to let him

5    answer as to your previous question, what is the purpose

6    of that rule.  He can answer that.

7         A.   The purpose of number -- of Subsection C (sic)

8    is to establish a special order, that notwithstanding

9    the section's rule, a bill or resolution relating to the

10   voter identification requirements reported favorably by

11   the committee can be set as a special order.

12        Q.   (By Ms. Westfall)  And are you reading from

13   Subsection D of Rule 5.11?

14        A.   D, yes, I am.

15        Q.   What -- I'm going to ask the question I asked

16   previously, which is what was the purpose of specifying

17   voter ID requirements by name in Rule 5.11D and setting

18   specific procedures for those requirements?

19        A.   It was to specify a special order relating to

20   what is mentioned in Subsection D.

21        Q.   And what was the purpose of that special order?

22        A.   To establish a special order.

23        Q.   Okay.  So what I'm hearing is roundy, roundy

24   circle.  Do you have any further testimony on the

25   subject --



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

179

1           MR. SWEETEN:  Objection to the sidebar.

2    Objection to the sidebar.

3        A.   No.

4        Q.   (By Ms. Westfall)  Were there any conversations

5    about establishing Rule 5.11D that you're aware of?

6        A.   Yes.

7        Q.   When did that conversation occur?

8        A.   In the Committee of the Whole meeting with all

9    31 senators.

10       Q.   When was that meeting?

11       A.   Prior to the passage of this.  It was likely

12   the first week of the session.

13       Q.   Is there a Senate rules committee that adopts

14   rules at the beginning of every session?

15       A.   Not a specified rules committee, no.

16       Q.   Does the Committee of the Whole Senate

17   establish its own rules?

18       A.   Yes.

19       Q.   Who is the chair of that committee in 2009?

20       A.   It would have to be John Whitmire, because he's

21   the Dean of the Senate, and he runs the meeting that

22   establishes -- that calls for the vote on the rules.

23       Q.   Did you have any conversations with Senator

24   Williams concerning Rule 5.11D or the concept embodied

25   therein?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

180

1              MR. SWEETEN:  You can answer as to whether
2      a conversation occurred, otherwise it's legislatively
3      privileged.
4          A.   Yes.  There was a conversation.
5          Q.   When did that conversation occur?
6          A.   Immediately prior to this meeting.
7          Q.   I believe you testified this meeting would have
8      been the first week of session in January; is that
9      correct, of 2009?
10         A.   It looks like it was January 14, and the
11     session I think probably started on the 10th, so the
12     first week of the session.
13         Q.   What was your conversation with Senator
14     Williams about?
15             MR. SWEETEN:  Do not reveal, based on
16     legislative privilege.
17         A.   Privilege.
18         Q.   (By Ms. Westfall)  Was anyone else at that
19     meeting?
20         A.   No.
21         Q.   Who requested that meeting, you or Senator
22     Williams?
23             MR. SWEETEN:  Objection.
24         A.   Privileged.
25             MR. SWEETEN:  Yeah, it's privileged.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          Q.   (By Ms. Westfall)  What was your strategy for

2     gaining two-thirds support of all senators in 2009 to

3     support SB 362?

4               MR. SWEETEN:  Objection, legislative

5     privilege.

6          Q.   (By Ms. Westfall)  Did you request that the

7     two-thirds rule be suspended for Senate Bill 362?

8               MR. SWEETEN:  Objection, legislative

9     privilege.

10         Q.   (By Ms. Westfall)  Do you know of anyone in the

11    Senate or otherwise who requested the two-thirds rule be

12    suspended for consideration of Senate Bill 362?

13              MR. SWEETEN:  Objection, calls for

14    legislative privilege.

15         Q.   (By Ms. Westfall)  Are you aware of any other

16    conversations, other than the one that you just

17    described with Senator Williams, or the meeting of the

18    Committee of the Whole, concerning suspending the

19    two-thirds rule for consideration of Senate Bill 362?

20              MR. SWEETEN:  Is he aware of any

21    conversations about the two-thirds rule?

22              MS. WESTFALL:  Correct.

23              MR. SWEETEN:  Okay.  You can answer as to

24    whether or not there were conversations.  Do not reveal

25    any substance other than that.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

182

1       A.   This is -- you know, these two are not

2    connected.  This is not a conversation about the

3    two-thirds rule.

4              MR. SWEETEN:  Okay.  Then if you don't --

5    if you're not aware of conversations --

6       A.   There is no conversation about the two-thirds

7    rules.

8       Q.   (By Ms. Westfall)  Was there a conversation

9    about Rule 5.11A, B, C, D or any combination therein

10   that you're aware of?

11      A.   I'm sorry?

12      Q.   Was there a conversation about Rule 5.11 in

13   Exhibit 32 that you're aware of, other than the one that

14   you described between you and Senator Williams?

15      A.   No.

16      Q.   Did you speak to Mr. Dewhurst about Rule 5.11?

17      A.   No.

18      Q.   Or his staff?

19      A.   No.

20      Q.   Do you know whether Janice McCoy spoke to

21   Mr. Dewhurst or his staff about Rule 5.11?

22      A.   I have no idea.

23      Q.   You served in the Senate since 1996; is that

24   right?

25      A.   '97.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

183

1       Q.   I mean, '97, you started your service.  To the

2   best of your knowledge, have you seen any other rule

3   that was similar to Rule 5.11D during your service in

4   the Texas Senate?

5       A.   You're asking -- ask the question again,

6   please.

7       Q.   Certainly.  During your time in the Senate,

8   since 1997, have you ever seen a rule in the rules that

9   was similar to Rule 5.11D?

10      A.   Yes.

11      Q.   Tell me about each and every time you've seen a

12  rule like that.

13      A.   It would be impossible for me to tell you

14  because every session, there are multiple rule changes

15  in a revision of the rules.  The rules are set by the

16  senators prior to the session, and we change the rules

17  often.

18      Q.   Have you ever seen a subject matter like voter

19  ID requirements listed in Rule 5.11?

20      A.   As a special order?

21      Q.   Yes.

22      A.   Yes.

23      Q.   Tell me each and every time that's happened.

24      A.   I can't, you know, tell you the exact

25  amount.  You asked, had it been done, and I've answered



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

184

1    yes.  I can't give you specifics.

2        Q.    Prior to 2009 when Rule 5.11 was changed to

3    include this carve-out -- to include this provision

4    concerning voter ID requirements in Subsection D, had

5    there been an area of legislation categorically carved

6    out of Rule 5.11 that you're aware of?

7        A.    The answer to your first question is yes, but

8    adding the word "that I'm aware of" would make it a no.

9        Q.    Are you -- do you familiarize yourself with the

10   rules every time a Senate session starts?

11       A.    Ask that again, please.

12       Q.    Do you familiarize yourself with the Senate

13   rules at the beginning of Senate session?

14       A.    Yes.

15       Q.    Could you clarify your testimony that you --

16   that you just gave concerning whether you're aware of

17   any particular time that a subject matter area has been

18   specified in Rule 5.11 during your service in the

19   Senate?

20            MR. SWEETEN:  Objection to the question as

21   vague.

22            Could you ask him, I mean, in another

23   way?  I'm not sure what you're asking to clarify.  I

24   think he's tried to answer your questions.

25       Q.    (By Ms. Westfall)  Could you identify a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     particular year or session in which Rule 5.11 referenced

2     a particular subject matter area as being set for

3     special order for a time at least 24 hours after the

4     motion, et cetera?

5          A.   I would believe most years.

6          Q.   Most years.  Okay.  Are you familiar with the

7     two-thirds rule?  You testified about that earlier

8     today, did you not?

9          A.   There's no such thing as a two-thirds rule.

10         Q.   Is there a two-thirds tradition?

11         A.   No.

12         Q.   Is there a two-thirds procedure?

13         A.   Yes.

14         Q.   Do most measures and bills require the support

15    of two-thirds of senators in the Texas Senate?

16         A.   I would not say most.

17         Q.   Ms. McCoy testified yesterday that she was

18    unaware --

19         A.   I'm sorry.  I need to back up.

20         Q.   Certainly.

21         A.   No bills require a two-thirds majority.

22         Q.   Is that because it is two-thirds of senators to

23    bring the bill to the Floor for a vote on the substance

24    of the bill, generally speaking?

25         A.   That's because of the regular order of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

186

1    business.  You follow the regular order of business.

2         Q.   Okay.

3         A.   Everything is a majority vote.

4         Q.   But to, ordinarily, to get a bill to be brought

5    out of the calendar and onto the Floor for consideration

6    on the merits of the bill, you need to have a two-thirds

7    vote --

8         A.   No.

9         Q.   As a procedural matter?

10        A.   No.

11        Q.   And there's a tradition, is there not?

12        A.   No.

13        Q.   How would you describe it?

14        A.   Incorrect that you -- you're describing it

15   incorrectly.

16        Q.   Could you describe what -- what is the

17   procedure that ordinarily requires two-thirds votes of

18   senators?  What is that vote?

19        A.   A bill that is filed in the legislature to be

20   brought up in the regular order of business requires

21   majority vote.

22        Q.   What are the circumstances under which it

23   requires two-thirds?

24        A.   Clarify.

25        Q.   I believe you testified earlier that there is



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

187

1      ordinarily a blocker bill put in place and you need

2      two-thirds of a vote to get around the blocker bill; is

3      that right?

4          A.   To bring up the blocker bill is a majority.  If

5      you follow the regular order of business, it is a

6      majority vote.

7          Q.   Once a blocker bill is in place, you need

8      two-thirds to overcome that; is that correct?  And to go

9      out of order; is that correct?

10              MR. SWEETEN:  Objection, compound.

11         A.   You asked two questions.

12         Q.   (By Ms. Westfall)  Why don't you take the first

13     one first, and then we'll do the second one?

14              Does it require two-thirds vote to

15     overcome a blocker bill and go out of order?

16         A.   There's no such thing as overcoming the blocker

17     bill.

18         Q.   I'm using the wrong terms, because I am not

19     familiar with the Texas Senate rules, but I would like

20     you to interpret my terms as broadly as you are able to

21     understand them to answer the question.

22         A.   If you ask that question correctly, I'll be

23     glad to answer it.

24         Q.   Okay.  Well, Ms. McCoy testified yesterday she

25     was unaware of any other bills, except voter ID, that


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1  have been accepted under Rule 5.11D.  Are you surprised

2  by her testimony?

3           MR. SWEETEN:  Objection, assumes facts not

4  in evidence.  You can go ahead and answer.

5      A.   Am I surprised by her answer?

6      Q.   (By Ms. Westfall)  Correct.  Yes.

7      A.   That's her recollection.  I'm a member.  She's

8  a staffer.

9      Q.   I see.  Okay.  So did you have any concerns

10 about rule -- all right.  What is the vote for a special

11 order?

12     A.   I'm sorry?

13     Q.   What is the vote required for a special order?

14     A.   Majority.

15     Q.   Majority.  Okay.  And that's indeed what Rule

16 5.11D indicates that it is a special -- that voter ID

17 requirements may be set as a special order; is that

18 right?  And that they will be considered 24 hours after

19 that motion for -- is adopted by a majority; is that

20 correct?

21     A.   (Witness nods head yes.)

22     Q.   OKay.  Did you have any concerns about Rule

23 5.11D?

24          MR. FREDERICK:  Objection, privileged.

25          MR. SWEETEN:  Yeah, objection, calls for



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

189

```
 1    legislative privilege.

 2                MS. WESTFALL:  Mr. Frederick, Mr. Sweeten

 3    is the one defending this deposition.  You may counsel

 4    him but not object on the record.

 5                MR. FREDERICK:  I thought I had to counsel

 6    him a little louder that time.  I apologize.

 7                MS. WESTFALL:  He wasn't awake?  He wasn't

 8    listening to you?  That's between the two of you.

 9                MR. SWEETEN:  Thanks for all this on the

10    record. (Laughing.)

11        Q.   (By Ms. Westfall)  Were you concerned that Rule

12    5.11D --

13        A.   I believe Mr. Sweeten was talking to me and

14    counseling the witness, and the other lawyer heard the

15    response, and I believe -- I don't believe he was

16    asleep, for the record.

17        Q.   It's very good that you're defending his honor

18    in this deposition.

19                Senator, did you have any concern that

20    Rule 5.11D would make Senate Bill 362 appear very

21    partisan?

22                MR. SWEETEN:  Objection.

23        A.   Privilege.

24                MR. SWEETEN:  Privilege.

25        Q.   (by Ms. Westfall)  Was there -- was 362 in any
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

190

1    part designed for partisan purposes?

2                MR. SWEETEN:  Objection, privilege.

3        A.    Privilege.

4                MS. WESTFALL:  Purpose?

5        A.    Privileged.

6                MR. SWEETEN:  You said was it designed for

7    partisan purposes.

8        Q.    (By Ms. Westfall)  Well, did it have any

9    partisan purpose?  Did Senate Bill 362 have any partisan

10   purpose?

11               MR. SWEETEN:  He's already answered what

12   he felt the purpose was.  You've asked him repeatedly.

13               MS. WESTFALL:  Are you instructing him not

14   to answer?

15               MR. SWEETEN:  You're now asking him, did

16   it have a partisan purpose?

17               MS. WESTFALL:  Correct.  That's my

18   question.

19               MR. SWEETEN:  I think he's already

20   testified to what he thought the purpose was -- all

21   right.

22               If you want to answer her question, you

23   can go ahead and do so.

24       A.    The purpose of Senate Bill 362 was to protect

25   the integrity of the ballot box.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

191

1      Q.   (By Ms. Westfall)  Was the purpose of 362 in

2   part for partisan reasons?

3      A.   The purpose of the bill was as I just answered

4   the prior question.

5      Q.   Therefore, is your answer no?

6      A.   The purpose of the bill is what I answered

7   previously.

8           MS. WESTFALL:  If I don't get responses

9   from your witness, I'm going to move to compel responses

10  based on nonresponsive, Mr. Sweeney.  You may want to

11  step outside and have a counsel, have a conference with

12  him.

13          MR. SWEETEN:  Okay.  He's answered what he

14  thinks is the purpose of the bill is.

15          MS. WESTFALL:  He hasn't answered my

16  question.

17          MR. SWEETEN:  I think he's attempting to

18  do so, and he's tried to tell you what the purpose is.

19  That's what he's done.

20          MS. WESTFALL:  We can take it up.  We can

21  take it up.

22          MR. SWEETEN:  Okay.  Well, I'll tell you

23  what, we'll talk about it at a break, and --

24          MS. WESTFALL:  Okay.

25          MR. SWEETEN:  How many more questions are



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                May 17, 2012

192

1    you going to have about the purpose of?  Because we keep

2    going over the same thing on 362.  I assume we've got

3    2011 to go to.  Go ahead.

4         Q.   (By Ms. Westfall)  Would Senate Bill 362 have

5    passed the Senate if it had not -- if it were not for

6    Rule 5.11D?

7              MR. SWEETEN:  I'm going to object.

8    Legislative privilege.

9         Q.   (By Ms. Westfall)  You following counsel's

10   advice?

11        A.   Privilege.

12        Q.   Did Senate Bill 362 have the support of

13   two-thirds of the Senate?

14             MR. SWEETEN:  Same objection.

15        Q.   (By Ms. Westfall)  Just for the court reporter,

16   could you --

17        A.   Privilege.

18        Q.   What was your -- what was the reaction from

19   other senators to the resolution to suspend -- strike

20   that.

21             What was the reaction from other senators

22   to Rule 5.11D?

23        A.   Privilege.

24             MR. SWEETEN:  Objection, privilege.

25        Q.   (By Ms. Westfall)  Was there opposition?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

193

1        A.   Privilege.
2             MR. SWEETEN:  Don't reveal privileged
3    information.
4        Q.   (By Ms. Westfall)  Was there any consideration
5    of modifications of any other Senate rules in 2009 in
6    addition to Rule 5.11D associated with consideration of
7    Senate Bill 362 or voter identification requirements
8    generally?
9             MR. SWEETEN:  Objection, calls for
10   legislative privilege.
11       A.   Privilege.
12       Q.   (By Ms. Westfall)  Was Senate Bill 362
13   considered by any Senate committees?
14            MR. SWEETEN:  I think that's a matter of
15   public record, so you can --
16       A.   The Committee of the Whole is a Senate
17   committee.
18       Q.   (By Ms. Westfall)  When a bill comes from the
19   house, is it usually referred to a Senate committee
20   other than the Committee of the Whole?
21            MR. SWEETEN:  You can answer about the
22   general procedures.
23       A.   You have the option of doing either.
24       Q.   (By Ms. Westfall)  And what -- how does that
25   break down in terms of percentage in your experience in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

194

1    the Senate?  In other words, how many go to the

2    Committee of the Whole, and how many go to a committee

3    that's not the Committee of the Whole?

4         A.   I don't have that percentage.

5         Q.   You can't recall sitting here today?

6         A.   No.  I don't have that percentage.

7         Q.   Okay.  How about in 2009 session, how many

8    bills came from the House, originated in the Senate, and

9    went directly to the Committee of the Whole other than

10   362?

11        A.   Well, you've asked an incorrect question.

12        Q.   How many bills that were filed with the Senate

13   in 2009 went -- were assigned directly to the Committee

14   of the Whole that you're aware of?

15        A.   I don't remember.

16        Q.   How many were assigned to other committees in

17   2009?

18        A.   I don't have access to that information,

19   because not every bill is referred.

20        Q.   How many bills were filed in 2009 in the

21   Senate?

22        A.   I don't know the answer to that.

23        Q.   Do you have a ballpark figure?

24        A.   Several thousand.

25        Q.   Of those several thousand, how many went to --


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

195

1    were assigned directly to the Committee of the Whole?

2        A.    I don't have that information.

3        Q.    Janice McCoy yesterday testified it was unusual

4    for a bill to go straight to the Committee of the

5    Whole.  Do you agree with that?

6              MR. SWEETEN:  Assumes facts not in

7    evidence.  You can go ahead and answer to the extent --

8        A.    Unusual is not the correct word.

9        Q.    (By Ms. Westfall)  What words would you use

10   instead of unusual?

11       A.    It is, you know, they are referred to the

12   Committee of the Whole when there's an interest in all

13   senators hearing the activity on the bill.

14       Q.    What was your role during consideration of the

15   Senate Bill 362 before the Committee of the Whole?  What

16   was your role?  Were you presiding?  Were you in the

17   chair?  Were you managing?  What's the correct verb?

18             MR. SWEETEN:  Hold on one second.  To the

19   extent that that asks matters that are subjective to the

20   legislative privilege, do not answer the question.  To

21   the extent that her question calls for information

22   that's a matter of public record, you can answer.

23             MS. WESTFALL:  This was in the Committee

24   of the Whole.  How much more public could it be?

25       A.    I was standing -- sitting at my desk



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    initially.  I was recognized to lay out the bill, and I
2    stood and stood for 27 hours.  I'm sorry.  Not 27 hours
3    straight, but I -- I answered questions about the bill,
4    and the hearing took 27 hours.
5        Q.   (By Ms. Westfall)  Is it ordinarily the rule of
6    the bill author to be the one to answer questions about
7    the bill when it is considered by the Committee of the
8    Whole?
9        A.   The -- generally, the author of the bill lays
10   out the bill and as a courtesy to other members will
11   answer their questions that they can answer.  But if
12   there's questions asked that someone better could answer
13   it, they say if you will hold that question until the
14   expert witness comes, they will answer your question.
15       Q.   So you answered questions for 27 hours; is that
16   correct?
17       A.   I didn't answer questions for 27 hours, but I
18   was -- the bill was before the committee, and I had to
19   be in the neighborhood.
20       Q.   Why did you -- why was the decision to consider
21   the bill for 27 hours?
22            MR. SWEETEN:  Objection, calls for
23   legislative privilege.
24       A.   Privilege.
25       Q.   (By Ms. Westfall)  Was there an urgency in



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

197

1    considering Senate Bill 362?

2              MR. SWEETEN:  Same objection, privilege.

3         Q.   (By Ms. Westfall)  In your -- I believe you

4    testified earlier that to prepare for this deposition

5    you reviewed the transcripts from 2009 and 2011

6    regarding voter ID; is that right?

7         A.   Uh-huh.  Yes.

8         Q.   Do you remember that you, in 2009, in the

9    Committee of the Whole, made numerous references to the

10   purpose of the bill relating to voter fraud; is that

11   right?

12        A.   No.  I do not agree with that, and if you'd

13   like to reference something, I'd be glad to.

14        Q.   Okay.  We will do that in one moment.  Do you

15   remember also during 2009 hearing, that you mentioned

16   that Indiana's voter ID law had withstood legal

17   challenge and had been upheld by the Supreme Court; is

18   that correct?

19             MR. SWEETEN:  She's asking you matters of

20   public record.  You can answer as to that.

21        A.   Yes.

22        Q.   (By Ms. Westfall)  And do you recall that you

23   were pointing to the Indiana voter ID law as support for

24   Senate Bill 362; is that correct?

25        A.   I was supporting a fact that the Indiana law



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

198

1    had been approved by the US Supreme Court in a 6-3 vote.

2         Q.   And do you also recall that on the Senate floor

3    in the Committee of the Whole proceedings of 362, that

4    you advocated for Senate Bill 362 based in part on the

5    fact that it offered alternatives of two nonphoto IDs;

6    is that right?

7              MR. SWEETEN:  You can testify about

8    matters of the public record.

9         A.   Advocate is not correct.  I explained that the

10   bill, as filed, had those parameters.

11        Q.   (By Ms. Westfall)  And also on the Senate floor

12   during consideration of Senate Bill 362, did you mention

13   that 1.5 percent of registered voters appeared not to

14   have driver's licenses and that you perceived this as a

15   small segment of the voting registered voters; is that

16   correct?

17        A.   I referenced data that had been released, I

18   believe, through the Baker-Carter court that referenced

19   in the states that had passed packed the bill, that 98.5

20   percent of people in those states had a driver's

21   license.

22        Q.   During the Floor debate on the Senate Bill 362,

23   did anyone raise concerns about the impact of the bill

24   on minority voters?

25             MR. SWEETEN:  Since this is a matter of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              199

1      public record, you can discuss the vote record.

2          A.    Questions were asked and concerns were raised.

3          Q.    (By Ms. Westfall)  And did legislators raise

4      concerns on that topic --

5                MR. SWEETEN:  You're asking in hearings?

6                MS. WESTFALL:  Yes.  I'm confining my

7      questions to the public hearing.

8          A.    Yes.

9          Q.    (By Ms. Westfall)  Who were those legislators?

10         A.    I can't give you specific names, but they were

11     people that were opposed to the bill.

12         Q.    Was there public testimony, members of the

13     public came during the committee consideration of SB

14     362?

15         A.    Yes.

16         Q.    And did some members of the public express

17     concerns about the impact of the bill on minority

18     voters?

19         A.    Yes.

20         Q.    And on the Floor during the committee

21     consideration, what was your response to these concerns?

22               MR. SWEETEN:  Confine your answer to the

23     matters of the public record.

24         A.    I would have to have more of a specific

25     question from a specific member, and they would have to



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

200

1    reference the, you know, the records.  I can't remember

2    that far back.

3       Q.   (By Ms. Westfall)  Do you recall any changes

4    that were made to Senate Bill 362 in response to

5    concerns from any of these concerns that you just

6    testified about, about the bill's impact on minority

7    voters?

8            MR. SWEETEN:  Objection, legislative

9    privilege.

10      A.   Privilege.

11           MS. WESTFALL:  To the extent that the

12   changes were in iterations of the bill, are you still

13   maintaining that objection?

14           MR. SWEETEN:  Yes.  That is a matter of

15   legislative privilege.  You just asked ask him what

16   changes were made in response to statements made by

17   other legislators, so you don't have to answer that.

18           MS. WESTFALL:  Let me put it this way.

19   I'm going to keep my question for purposes of subsequent

20   motions to compel.  But after these concerns were raised

21   on the -- in the Committee of the Whole in 2009, were

22   any changes made to 362?

23           MR. SWEETEN:  Same objection.  Think that

24   calls for his mental impressions process.

25      Q.   (By Ms. Westfall)  Do you recall that there was



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

201

1    a letter signed by all of the racial or ethnic minority

2    members of the Senate expressing opposition to Senate

3    Bill 362?

4        A.   I don't remember.

5        Q.   You don't.  Okay.  I hand you what's been

6    previously marked as Exhibit 33.

7        A.   It's a lot of paper.

8             MR. SWEETEN:  Yes.  And if you need any of

9    these to refer to, let me know, and I'll get them back

10   for you.

11       Q.   (By Ms. Westfall)  Have you had a chance to

12   look at Exhibit 33?

13       A.   Yes.  What are you referencing?

14       Q.   Could you first off tell me what you're looking

15   at?  Could you identify it?

16       A.   It's Senate Journal for the 23rd day of the

17   session, Wednesday, March 18.

18       Q.   And does this -- is this journal pertaining to

19   the Committee of the Whole consideration of Senate Bill

20   362?

21       A.   This is the journal of the regular session.

22       Q.   Okay.  You mean the Floor consideration of the

23   bill?  What do you mean by "regular session"?

24       A.   We go into session every day, and we're gabled

25   into regular session.  And then if -- you know, you have



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    202

1     different sections of the session.  This is the journal

2     of the regular session.  You will see the part about

3     81st legislature regular session, and this was the

4     proceedings on the regular session on the 23rd day.

5          Q.   I see.  Thank you for your testimony on that

6     point.

7                    So this was not the Committee of the

8     Whole, in other words?

9          A.   No.

10         Q.   Thank you.

11                   Directing your attention to Page 591 of

12    the Senate Journal of the Exhibit 33, could you take a

13    look at that?

14         A.   Yes.

15         Q.   And do you see that in the middle of the page

16    there is a statement regarding votes cast on Senate Bill

17    362 submitted by Senator West?

18         A.   I see a statement submitted by Senator West.

19         Q.   Do you recall seeing this statement before

20    today?

21         A.   No.

22         Q.   You never looked at it until this deposition

23    today; is that right?

24         A.   That wasn't what I said.  I said I don't

25    recall.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                    203

1          Q.   I see.  Looking at the letter today, in your

2     deposition, does it refresh your recollection as to when

3     you first saw this?

4          A.   It refreshes my -- my recollection that

5     something was submitted, but it doesn't, no.

6          Q.   Could you indicate to me your interpretation of

7     what this statement says?

8          A.   Privilege.

9               MR. SWEETEN:  Legislative privilege.

10              MS. WESTFALL:  This is a matter of public

11    record.

12              MR. SWEETEN:  You're asking him to

13    interpret for you.  He can refer to matters of the

14    public record, but you're asking him matters that relate

15    to his thoughts, mental impressions or opinions about

16    legislation or in furtherance of legislation, in this

17    case, Senate Bill 362.

18         A.   Yeah.  362.

19              MR. SWEETEN:  Yes.

20              MS. WESTFALL:  So therefore --

21              MR. SWEETEN:  You can answer to the extent

22    you can -- if you want to discuss matters of public

23    record, but otherwise --

24         A.   I recognize that a statement was submitted.

25         Q.   (By Ms. Westfall)  What does the statement say?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

204

1      A.   Would you like for me to read the statement to

2   you?

3      Q.   I would not.  I'll represent to you, this is a

4   letter from senators noting that all ethnic and racial

5   minorities voted against Senate Bill 362 and have

6   consistently opposed the voter ID bills.  Am I

7   misrepresenting the statement?

8      A.   You're representing that these people -- the

9   answer is no, your -- your statement is incorrect.

10      Q.   How is it incorrect?

11      A.   Can you restate the statement -- you know, the

12   question?  It's incorrect.

13      Q.   Could you -- do you have anything further to

14   say about why my -- why the summary that I just provided

15   you of this statement is incorrect, or is that the sum

16   total of your testimony on that point?  Do you have

17   further testimony or no?

18           MR. SWEETEN:  I think her question is how

19   was she incorrect?

20           THE WITNESS:  You want me to answer that?

21           MR. SWEETEN:  Well, to the extent it's a

22   matter of the public record, you can say that.  You

23   can't reveal thoughts and impressions.

24      A.   These people are not -- they're not minorities.

25           MR. SWEETEN:  Okay.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

205

1      Q.    (By Ms. Westfall)  Okay.  Do you have any

2   further corrections to my summary of the statement?  Or

3   is that -- is that your testimony?

4      A.    You asked me the question, if they were all the

5   -- you know, all these listed were racial minorities,

6   and they're not.

7      Q.    I believe what I said, and which is why I

8   originally asked you if you would like to summarize your

9   read of the letter so we could move things along, was

10   that the letter was from senators noting that all ethnic

11   and racial minorities had voted against this Senate Bill

12   362 and have consistently opposed voter ID bills, not

13   that the signatories were, but the fact that voter ID

14   bills have been consistently opposed by members of

15   racial and ethnic minorities.  That was the summary that

16   I provided.  Do you agree with that summary?

17      A.    In the Senate.

18      Q.    I'm talking about this statement, not the --

19   whether you agree with the merits.  I'm asking you

20   whether you agree with my summary of the statement,

21   which is why we're at loggerheads.

22      A.    I don't disagree that this was filed and it was

23   their statement.

24      Q.    Thank you.

25            Why do you think these senators felt the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

206

1    need to submit for the record this statement about

2    racial and ethnic minorities voting against voter ID

3    legislation?

4              MR. SWEETEN:  Objection, legislative

5    privilege.

6         Q.   (By Ms. Westfall)  Are you following the advice

7    of counsel?

8         A.   Privilege.

9         Q.   Did you place any significance on the unified

10   opposition of all minority members of the Senate?  And

11   by "minority," I mean racial and ethnic minorities.

12             MR. SWEETEN:  Objection.

13        A.   Privilege.

14             MR. SWEETEN:  It calls for matters covered

15   by the legislative privilege.

16        Q.   (By Ms. Westfall)  Did you believe that their

17   concerns about the impact of the bill on minority voters

18   were genuine?

19        A.   Privilege.

20             MR. SWEETEN:  Objection, calls for matters

21   that are subject to the legislative privilege.

22        Q.   (By Ms. Westfall)  Do you believe that senators

23   who are opposing the bill and had concerns about the

24   impact of the bill on minority voters were acting in

25   good faith in raising those concerns?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

207

1          A.    Privilege.

2                MR. SWEETEN:  Objection, privilege.

3          Q.   (By Ms. Westfall)  Was it true that some

4     legislators and members of the public stayed up all

5     night during consideration of Senate Bill 362?

6          A.    Yes.

7          Q.    Why do you think there was such strong

8     opposition to the bill?

9                MR. SWEETEN:  Objection, privilege.

10         A.    Privilege.

11         Q.   (By Ms. Westfall)  During consideration of 362,

12    did you indicate that you had done more research and

13    reading on the bill than you've ever done on any other

14    legislation?

15               MR. SWEETEN:  You're asking on the public

16    record?

17               MS. WESTFALL:  Correct.

18               MR. SWEETEN:  You can answer.

19         Q.   (By Ms. Westfall)  Do you recall saying that?

20         A.    No, I do not recall it.

21         Q.    Okay.

22               MS. WESTFALL:  Could you mark this as 46?

23               (Exhibit 46 marked for identification.)

24         Q.   (By Ms. Westfall)  You've been handed --

25               MS. WESTFALL:  Patrick, we have one for



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1       you.

2              MR. SWEETEN:  Ah, that's great.

3         Q.   (By Ms. Westfall)  You've been handed what's

4    been marked as Exhibit 46.  Have you seen this before?

5         A.   Looks awful small.  This looks like a subset of

6    the transcript.

7         Q.   Yes.  I'll represent to you, and I'm sure your

8    counsel will not disagree, this is an excerpt of

9    proceedings of the Committee of the Whole Senate on

10   Tuesday, March 10, 2009.

11              I'm going to turn your attention to -- I'm

12   going to ask you to turn your attention to what's been

13   marked -- there's various paginations on this exhibit,

14   but 72 in the upper right-hand corner of the page of the

15   transcript, it's Bates Number TX3939.  Do you see that

16   page?

17        A.   Yes.

18        Q.   It's an exchange between you and Senator

19   Watson.

20        A.   Yes.

21        Q.   And do you see that you reference 12 percent of

22   persons in other states without proper photo ID?

23        A.   Show me where I reference that.

24        Q.   Actually, you know what, let's look at the

25   beginning of this exchange on Page 70.  That's the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

209

1    beginning of your statement, Senator Fraser, on Page 70,

2    where you talk about records of numbers of people in the

3    voter registration records who do not have appropriate

4    ID, and you indicate that it's around 800,000 or 12

5    percent.  Do you see that?

6         A.   No.

7              MR. SWEETEN:  I caution the witness to

8    make sure that you're taking the time you need to read.

9         A.   I do not see that.  Show me.

10        Q.   (By Ms. Westfall)  I'm sorry.  Page 70, 71 and

11   72.  You discuss the numbers.

12        A.   What is your question?

13        Q.   So here you're discussing the numbers of people

14   who appear not to have a photo ID, and you're discussing

15   that with Senator Watson; is that correct?

16        A.   Yes.

17        Q.   And you indicate the number roughly 809,000

18   people; is that correct?

19        A.   What about the 809?

20        Q.   I'm just asking whether the record reflects

21   that you refer to about 809,000 people who did not have

22   photo ID in your exchange with Senator Watson.

23        A.   No.

24        Q.   What was it?

25        A.   I didn't say that.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

                                                                  210

1          Q.    You -- oh, you said no, you don't see it?

2          A.    I said I did not say that.

3          Q.    Tell me what you said.

4          A.    You want me to read you the transcript?

5          Q.    Certainly.  Tell me what you're talking about

6     so we can be on the same page for the questions.  What

7     did you say?

8          A.    The ones that neither number show up, either a

9     Social Security number or voter ID, 809,000.  That --

10         Q.    Okay.

11         A.    There's 5 million that gave their driver's

12    license.  The others did not use their driver's license.

13         Q.    Correct.  So these are -- these are voter

14    applicants who did not indicate a Social Security number

15    or driver's license?

16         A.    They didn't use their driver's license.

17         Q.    When they -- when they registered to vote; is

18    that correct?

19         A.    Yes.  Because there are other options.

20         Q.    Thank you for clarifying your testimony.

21               But you had an exchange with Senator

22    Watson concerning this number of 800,000 people; is that

23    correct?

24         A.    Yes.

25         Q.    How was that analysis conducted?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

211

1               MR. SWEETEN:  I'm going to object.  Don't

2     reveal thoughts, mental impressions, opinions about

3     legislation or in furtherance of the legislative

4     process.  If you want to, you can reference matters of

5     the public record in answer to that question, but don't

6     reveal the other based on the legislative privilege

7     objection.

8          Q.   (By Ms. Westfall)  Did you have any

9     conversations, are you aware of any communications with

10    the Secretary of State during consideration of Senate

11    Bill 362, concerning the number of registered voters

12    without a driver's license or Social Security number?

13               MR. SWEETEN:  Objection, compound.

14    Objection, I think you're seeking the substance of

15    conversations.  If you want to ask about whether he's

16    had conversations with the Secretary of State, I think

17    that would be fine.  Under the court's order, I think a

18    general subject matter description would also be fine.

19    But I think the way it's asked, it's compound, multiple;

20    it also has the substance of the conversation in it.  We

21    object.

22               MS. WESTFALL:  Specifically, you're not

23    instructing the witness not to answer because it's a

24    compound question; is that right?

25               MR. SWEETEN:  I think my objection has



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

212

1    been clear, but let me just say that I think I will let

2    him answer questions about whether he's had

3    conversations with the Secretary of State.  I'll let him

4    answer about the date, time and a general subject matter

5    description as provided in the court's order.

6         Q.   (By Ms. Westfall)  Senator Fraser, are you

7    aware of any conversations during or before the

8    Committee of the Whole consideration of Senate Bill 362

9    with the Secretary of State's Office?

10             MR. SWEETEN:  You can answer.

11        A.   No.

12        Q.   (By Ms. Westfall)  Did you try to do any

13   analysis of the racial composition or ethnic composition

14   of persons, these 809-approximately-thousand people who

15   did not register to vote with either a Social Security

16   number or driver's license number?

17             MR. SWEETEN:  Objection, legislative

18   privilege.

19        A.   Privilege.

20        Q.   (By Ms. Westfall)  Did Senator Watson raise

21   this as a concern as to the racial composition of these

22   800,000 persons?

23             MR. SWEETEN:  Don't reveal private

24   conversations, but you certainly can bring up matters of

25   public record.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

213

1          Q.    (By Ms. Westfall)  I'll direct you to Page 72,

2     at the bottom of the page, at Line 21.  Did Senator

3     Watson ask about the racial composition of the 800,000

4     persons?

5          A.    I think my answer speaks for itself.

6          Q.    And your answer was that you were not advised

7     and you hadn't done that analysis?

8          A.    I didn't say that.  I said I don't remember if

9     the driver's license had that information, the racial

10    breakdown of the license.

11         Q.    And in response to Senator Watson's questions

12    to whether any statistical analysis had been done

13    regarding potential impact of SB 362 on African-

14    Americans, which is on Page 73, your response was it had

15    been implemented in Indiana and Georgia; is that right?

16         A.    I made reference to the fact that we're going

17    to have someone from Indiana and Georgia, two states

18    that had implemented it, where they would give their

19    testimony and they can give reaction to what happened in

20    their states.

21         Q.    Was there any analysis on the racial

22    composition or ethnic composition of those 800,000

23    voters that was conducted with regard to Texas voters?

24              MR. SWEETEN:  Do not reveal based upon --

25    objection, legislative privilege.  Go ahead.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                               May 17, 2012

214

1        A.    Privilege.

2        Q.    (By Ms. Westfall)  Is there any -- are there

3   any conversations about analysis of the racial

4   composition or ethnic composition of those 800,000

5   voters, that you're aware of?

6              MR. SWEETEN:  Objection, privilege.

7        A.    Privilege.

8              MS. WESTFALL:  The existence of

9   conversations?

10             MR. SWEETEN:  Were there conversations

11  about --

12             MS. WESTFALL:  -- the racial composition

13  or ethnic composition of the 800,000 voter registration

14  applicants referenced in this testimony.

15             MR. SWEETEN:  Okay.  That is way more than

16  a general subject matter description that would be on a

17  privilege log, and so I think that's beyond what we --

18  what I'll let him answer.  I'll work with you, though,

19  if you want to talk about conversations, he will do

20  that.  He'll identify the specifics of the conversation,

21  even a general subject matter description, but that is

22  not a general subject matter description.

23       Q.    (By Ms. Westfall)  Are you aware of any

24  analysis, conversation -- strike that.

25             Are you aware of any conversations of any



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

215

1     analysis of the racial or ethnic composition of voters

2     who did not have the forms of allowable ID under Senate

3     Bill 362?

4              MR. SWEETEN:  I think you're -- I think

5     there's subject matter within that question is beyond a

6     general description of subject matter that he would have

7     to provide under a privilege log.  So I'm going to

8     object to the question.

9        Q.   (By Ms. Westfall)  Do you think 800,000 is a

10    small number?

11             MR. SWEETEN:  Don't reveal your thoughts,

12    mental impressions about the legislation.  Objection,

13    legislative privilege.

14       A.   Privilege.

15       Q.   (By Ms. Westfall)  Did these numbers concern

16    you at all?

17             MR. SWEETEN:  Same objection.

18       A.   Privilege.

19       Q.   (By Ms. Westfall)  Do you agree that the key to

20    effective implementation of Senate Bill 362 is adequate

21    poll worker training?

22             MR. SWEETEN:  Same objection, legislative

23    privilege.

24       Q.   (By Ms. Westfall)  Do you recall that in 2009,

25    during the Committee of the Whole consideration of


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

216

1    Senate Bill 362, when you were asked about training for

2    poll workers to determine whether an ID was proper, you

3    deferred to the Secretary of State at that time on the

4    public record?

5              MR. SWEETEN:  You can answer to matters of

6    the public record.

7         A.   Yes.  I did refer, yes.

8         Q.   (By Ms. Westfall)  Why didn't Senate Bill 362

9    address more clearly and have more guidance for the

10   Secretary of State concerning poll worker training?

11             MR. SWEETEN:  Same objection, legislative

12   privilege.

13        A.   Privilege.

14        Q.   (By Ms. Westfall)  You're asserting the

15   privilege with regard to that question?

16        A.   (Witness nods head yes.)

17        Q.   You agree that poll worker training is very

18   important, isn't it, in implementing photo ID law?

19             MR. SWEETEN:  Objection, privilege.

20        Q.   (By Ms. Westfall)  As a general policy matter,

21   not with regard to legislation?

22             THE WITNESS:  Isn't that privilege?

23             MR. SWEETEN:  Well, she's now saying -- so

24   logically divorcing this from any pending legislation, I

25   think is what you're doing.  If there were any



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

217

1      consideration of specific legislation, you're asking as

2      a general matter, whether he thinks considerations of

3      poll worker training are important; is that what you're

4      saying?

5              MS. WESTFALL:  My question stands.

6      A.    That's privileged information because I would

7      give my opinion about any legislation.

8              MR. SWEETEN:  Yeah, I think that's --

9      we're going to object to privilege on that.

10             MS. WESTFALL:  Your opinion just --

11     opinions about the necessity of poll worker training is

12     off limits?

13             MR. SWEETEN:  If you're asking him to

14     reveal thoughts, mental impressions or opinions about

15     legislation or in furtherance of the legislative process

16     in doing that, then that is subject to the well-

17     recognized legislative privilege.

18     Q.    (By Ms. Westfall)  I believe you testified

19     earlier that the purpose of 362 was to ensure integrity

20     of the ballot box; is that right?

21     A.    Yes.

22     Q.    Isn't that connected and furthered by how

23     effectively a poll worker can verify a voter's

24     identity?

25             MR. SWEETEN:  Objection, that's



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

218

1    legislative privilege.

2         A.    Privilege.

3         Q.    (By Ms. Westfall)   Why didn't you include a

4    provision on poll worker training in Senate Bill 362?

5                   MR. SWEETEN:   Same objection, privilege.

6         Q.    (By Ms. Westfall)   Why did you leave it to the

7    Secretary of State?

8                   MR. SWEETEN:   Same objection, privilege.

9         Q.    (By Ms. Westfall)   So did 362 pass in the

10   Senate?

11                  MR. SWEETEN:   You can answer.

12        A.    Yes.

13        Q.    (By Ms. Westfall)   And was it referred to the

14   House?

15        A.    Yes.

16                  MR. SWEETEN:   You can answer.

17        Q.    (By Ms. Westfall)   Did you have any role in

18   furthering the advancement of Senate Bill 362 once it

19   was referred to the House?

20        A.    No.

21        Q.    Did you talk to any members of the House about

22   362 after passage in the Senate?

23                  MR. SWEETEN:   You can reveal

24   conversations -- I mean, don't reveal substance of them,

25   but you can reveal whether conversations occurred.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

219

```
 1        A.   Yes, there were conversations.
 2        Q.   (By Ms. Westfall)  Was it with members of the
 3   House or their staff?
 4        A.   Members of the House.
 5        Q.   And who are those members?
 6        A.   I can't give you specifics.
 7        Q.   Who was carrying the bill in the house?
 8        A.   Todd Smith.
 9        Q.   Did you have conversations with Mr. Smith?
10        A.   Yes.
11        Q.   Did you have more than one?
12        A.   Yes.
13        Q.   Did you have conversations with his staff?
14        A.   No.
15        Q.   Just the two of you?
16        A.   Yes.
17        Q.   How many conversations?
18        A.   More than five.
19        Q.   When did 362 pass in the Senate approximately?
20        A.   January the 20th -- I'm sorry, I don't know.
21        Q.   362, was that March?
22        A.   362?
23        Q.   Yes.
24        A.   Oh, I don't know.  I'm sorry.  I don't know.
25        Q.   Do you know when you had these conversations
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

220

1    with Representative Smith about 362?

2        A.   After the bill was sent to the House.

3        Q.   What was the general nature of the

4    conversations with Mr. Smith?

5              MR. SWEETEN:  You can provide a very

6    general subject matter description.

7        A.   Status of the bill.

8        Q.   (By Ms. Westfall)  Did you have any

9    conversations with any other members of the House about

10   362?

11             MR. SWEETEN:  You can reveal

12   the conversation -- whether a conversation occurred.

13       A.   Yes, there were other members.

14       Q.   (By Ms. Westfall)  Where you had individual

15   one-on-one conversations with other members about 362?

16             MR. SWEETEN:  Of the House.

17       Q.   (By Ms. Westfall)  Of the House?

18       A.   Yes.

19       Q.   Who were those members?

20       A.   I can't tell you specifically who they were.

21       Q.   What happened to Senate Bill 362 in the House?

22       A.   It was never voted out.

23       Q.   Did it get assigned to a committee?

24       A.   Yes.

25       Q.   What was the committee?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

221

1          A.    I don't know.

2          Q.    Was it the House Elections Committee?

3          A.    I'm -- I don't know.  I'm not a House member.

4          Q.    Was Mr. Smith the chair of the Elections

5     Committee in 2009?

6          A.    I believe he was.

7          Q.    Have you spoken in any public settings,

8     meetings, or groups about the subject of voter ID ever?

9          A.    Yes.

10         Q.    Besides the Floor of the Senate?

11         A.    Yes.

12         Q.    When was the first time you talked about voter

13    ID in a public setting?

14         A.    I don't remember.  I don't remember exactly

15    when it was.

16         Q.    Can you remember any time you've spoken in

17    public about voter ID, not on the Senate Floor?

18         A.    One -- yes.  The answer is yes.

19         Q.    Tell me when that was.

20         A.    In Brownwood recently.

21         Q.    What group were you addressing?

22         A.    Chamber of Commerce.

23         Q.    What did you tell the Chamber of Commerce?

24         A.    That the Justice Department had failed to

25    preclear the bill.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              222

1        Q.    How long were your remarks about voter ID?

2        A.    Ten minutes.

3        Q.    Was it in the answer to a question about the

4    status of the bill?

5        A.    No.

6        Q.    Or were you there with prepared remarks about

7    voter ID?

8        A.    I was prepared -- it was prepared remarks about

9    the status of the, you know, things in the state.

10       Q.    Who prepared those remarks?

11       A.    I did.

12       Q.    Where are those remarks retained?

13       A.    I need to back up.  My staff always give me

14   guidelines of things that I've  either talked about or I

15   generally talk about in an outline or a sketch form.  I

16   never use that.  I always wing it.

17       Q.    So did Ms. McCoy prepare remarks for you?

18       A.    Yes.

19       Q.    Did you retain those remarks?

20       A.    Retain the remarks?

21       Q.    Did you keep a copy --

22       A.    No.

23       Q.    -- of the hard copy of the remarks?

24       A.    No.

25       Q.    Have you been asked by your lawyers to retain



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

223

1    all documents concerning Senate Bill 14 as a result of

2    this litigation?

3              MR. SWEETEN:  Don't reveal communications

4    between you and your attorneys.

5         Q.   (By Ms. Westfall)  Let me rephrase.  Let me

6    rephrase.

7              Was there a time when you started

8    retaining documents related to Senate Bill 14?

9         A.   You're using the word "you," and the answer

10   would be no.

11        Q.   Was there a time that your office took any

12   steps, that you can identify sitting here today, to

13   retain documents?

14        A.   Yes.

15        Q.   When did that occur?

16        A.   I don't know.

17        Q.   Who would know?

18        A.   When we were asked.

19        Q.   I see.  Would Ms. McCoy know?

20        A.   Yes.

21        Q.   Are you familiar with a federal law called the

22   "Help America Vote Act"?

23        A.   I'm assuming that's HAVA.  Yes.

24        Q.   What does HAVA do generally?  Could you tell

25   me?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

224

1        A.   No.

2        Q.   You testified earlier that you had introduced

3   Senate Bill 363 in 2009.   Remember we talked about that

4   earlier today?

5        A.   Yes.

6        Q.   And that would require documentary proof of

7   citizenship upon registration of voting; is that

8   correct?

9             MR. SWEETEN:   You can refer to matters of

10   the public record.

11        Q.   (By Ms. Westfall)   This is within your bill.

12   I'm summarizing it.

13        A.   We discussed whatever we read on the bill.

14        Q.   Yes.

15        A.   Yes.

16        Q.   Does HAVA implement identification requirements

17   for certain voter registration applicants --

18        A.   Sorry.

19        Q.   -- to your knowledge?

20        A.   I don't know.

21        Q.   Do you know what ethnic group makes up the

22   largest the percentage of the noncitizen population in

23   the state of Texas?

24        A.   I'm sorry.  I -- you know.  Is that --

25             MR. SWEETEN:   She's just asking you



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

225

1    whether you know a fact or whether you know.  So you can

2    answer just as to --

3         A.   No, I do not know.

4         Q.   (By Ms. Westfall)  Is it Hispanics?

5              MR. SWEETEN:  Objection.

6         A.   I just said I didn't know.

7         Q.   (By Ms. Westfall)  I'm trying to refresh your

8    recollection.

9              Was there a time that you introduced a

10   voter ID bill in the 2011 session?  I guess it would be

11   the 82nd session.

12        A.   Yes.

13        Q.   And was that bill called Senate Bill 14?

14        A.   Yes.

15        Q.   Did anyone ask you to introduce this bill?

16             MR. SWEETEN:  Objection, requires him to

17   reveal matters of legislative privilege, so don't

18   answer.

19        Q.   (By Ms. Westfall)  When did you decide to

20   introduce Senate Bill 14?

21        A.   As soon as 362 didn't pass.

22        Q.   So that was 2009 sometime, you started working

23   on it right away?

24        A.   May 31st, 2009.

25        Q.   But when did you file Senate Bill 14?


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

226

1           A.   By law, you cannot file -- you can file one

2      month before.  So in the one month filing period, I

3      filed it prior to session start.

4           Q.   Did you start -- did you start drafting it

5      immediately following the defeat of Senate Bill 362?

6           A.   No.

7           Q.   When did you start drafting or working on

8      concepts for the bill?

9           A.   I did not start drafting.

10          Q.   I understand you didn't draft, but when did you

11     start thinking about what you wanted the bill to look

12     like?

13                    MR. SWEETEN:  You're asking him to reveal

14     thoughts, mental impressions, opinions in furtherance of

15     legislation, including Senate Bill 14, so that would be

16     privileged.

17          A.   Privileged.

18          Q.   (By Ms. Westfall)  Did anyone ask you to file

19     Senate Bill 14?

20                    MR. SWEETEN:  Same -- I think he's already

21     answered that, but objection, legislative privilege.

22          A.   Privilege.

23          Q.   (By Ms. Westfall)  Did you make any promises to

24     anyone to file Senate Bill 14?

25                    MR. SWEETEN:  Same objection, legislative



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

227

1    privilege.

2              MS. WESTFALL:  Did you -- I mean, for the

3    record, I think what you're instructing him not to

4    answer falls outside any conceivably assertible

5    privilege.  I want to just make that known for the

6    record.  We'll brief that later.

7              MR. SWEETEN:  Okay.  Why don't you go

8    ahead and read the question back, and I will consider it

9    again.  If you think I'm way off base, let's hear it

10   again.

11             MS. WESTFALL:  You've made the same

12   objection earlier today, but my question was whether the

13   Senator promised anyone to file Senate Bill 14.

14             MR. SWEETEN:  Okay.  That is a matter --

15   you're asking about a specific communication whether

16   he's promised someone regarding Senate Bill 14.  I think

17   that is privileged.

18      Q.   (By Ms. Westfall)  Did you promise Mr. Skipper

19   Wallace that you would file Senate Bill 14?

20             MR. SWEETEN:  Objection.  I think this has

21   been asked and answered, questions about Skipper

22   Wallace.  If you want to ask him --

23             MS. WESTFALL:  It's Skipper Wallace but

24   we're in a new year.

25             MR. SWEETEN:  And I've heard that name a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

228

1    lot today, Counsel.  What I want to say is, I -- he can

2    reveal whether or not there's a communication that

3    existed.  He's not going to reveal the substance of the

4    communication.  So you're free to ask him that.

5       Q.   (By Ms. Westfall)  Did you have any

6    conversations with anyone -- strike that.

7             Was Senate Bill 14 given a designation by

8    the Governor or in his office -- Governor -- let me

9    strike that again.

10            Was Senate Bill 14 designated by the

11   Governor to be emergency legislation?

12      A.   Yes.

13      Q.   What are the -- what happens?  Describe what

14   happens when the Governor designates a bill as emergency

15   legislation.

16      A.   The Governor declares it an emergency

17   legislation.

18      Q.   What's the consequences for its consideration

19   in the Texas State Senate?

20      A.   No consequences.

21      Q.   Is it automatically considered within the first

22   60 days of session?

23      A.   No.

24      Q.   There are no consequences to this designation?

25   Is it purposeless; is that your testimony?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

229

```
 1        A.    No.
 2        Q.    What is the purpose of designation by the
 3   Governor of emergency legislation?
 4        A.    You would have to ask the Governor that.
 5        Q.    I'm asking as a general -- I'm asking as a
 6   general matter, when -- strike that.
 7              As a result of the designation of SB 14 as
 8   emergency legislation, was it considered within the
 9   first 60 days of the Senate session in 2011?
10        A.    She asked me two questions.
11        Q.    Well, you know what --
12              MR. SWEETEN:  Hold on.
13        Q.    -- I'm asking the questions.  If you don't like
14   the questions and you need clarification, you can ask
15   me, as I instructed you at the beginning of this
16   deposition.
17              MR. SWEETEN:  Okay.  Okay.  Let's -- let
18   me -- I want to hear the question read back, please.
19              (Question read back.)
20              MR. SWEETEN:  Objection, legislative
21   privilege.
22              MS. WESTFALL:  Can you further explain
23   your assertion of privilege?  This is a procedural
24   matter and a timing matter and a matter of public
25   record.
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

230

1          MR. SWEETEN:  He can answer -- the

2    legislative privilege objection relates to matters of

3    nonpublic record.  He is free to answer based upon the

4    public record, if it is as you claim it is.  So he can

5    answer if there are matters of the public record that

6    addresses this, but -- I mean, I'm asserting privilege

7    as to matters not of the public record.

8         Q.   (By Ms. Westfall)  Can you answer the question?

9         A.   Privilege.

10        Q.   When a governor designates legislation as

11   emergency legislation, is it always considered within

12   the first 60 days of the session?

13         MR. SWEETEN:  You can answer as a general

14   matter.

15        A.   No.

16        Q.   (By Ms. Westfall)  Is it sometimes considered

17   within the first 60 days of a session?

18        A.   Yes.

19        Q.   And this designation is done by the Governor;

20   is that right?

21        A.   Yes.

22        Q.   How did Senate Bill 14 come to receive this

23   emergency designation?

24         MR. SWEETEN:  Objection, calls

25   for legislative privilege.  Also calls for speculation.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

231

1        Q.   (By Ms. Westfall)  Were there any conversations

2    about the designation of Senate Bill 14 as emergency

3    legislation, that you're aware of?

4                MR. SWEETEN:  The question --

5        A.   No.

6                MR. SWEETEN:  -- is were there any

7    conversations?

8        A.   No.

9                MR. SWEETEN:  Okay.  You answered it.

10   Okay.

11       Q.   (By Ms. Westfall)  There were no conversations

12   you're aware of?

13       A.   No.

14       Q.   Did you request this designation of the

15   Governor's Office?

16       A.   No.

17       Q.   When did you first learn that Senate Bill 14

18   had been designated as emergency legislation?

19                MR. SWEETEN:  You can answer.

20       A.   Read about it in the paper.

21       Q.   (By Ms. Westfall)  Do you know why Senate Bill

22   14 had to be considered within the first 60 days of the

23   legislature in 2011?

24       A.   Privilege.

25                MR. SWEETEN:  Yeah, objection, privilege.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

232

1        Q.   (By Ms. Westfall)  Are you aware of any

2     conversations regarding the timing of consideration of

3     Senate Bill 14 in the Senate?

4               MR. SWEETEN:  Objection, that requires him

5     to reveal his mental impressions, opinions about the

6     legislation.

7        A.   Privilege.

8               MR. SWEETEN:  It's legislative privilege.

9        Q.   (By Ms. Westfall)  Do you know what other bills

10    were designated emergency legislation by the Governor in

11    2011?

12              MR. SWEETEN:  You can answer.

13       A.   He had multiple bills that he declared

14    emergency.

15       Q.   (By Ms. Westfall)  Do you recall any of them

16    sitting here today?

17       A.   The sonogram bill.

18       Q.   Any others?

19       A.   No, I'm sorry, I don't.

20       Q.   Was there any urgency, in your mind, about

21    getting this Senate Bill 14 passed quickly, promptly,

22    and expeditiously, in 2011?

23              MR. SWEETEN:  Objection, it requires him

24    to reveal thoughts, mental impressions, opinions about

25    legislation.  It's legislatively privileged.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

233

1      A.   Privilege.

2      Q.   (By Ms. Westfall)  Was there any -- were there

3  immediate elections that were going to be held for which

4  there was a need for the legislation?

5           MR. SWEETEN:  Same objection.  If you want

6  to ask if there were elections, you know, that's

7  different.

8           MS. WESTFALL:  This was previously marked

9  as 5.  Here's a copy.  We have many.

10          (Discussion off the record.)

11     Q.   (By Ms. Westfall)  You've been handed what's

12  been previously marked as Exhibit 5.  Senator, do you

13  recognize this document?

14     A.   I believe this is probably Senate Bill 14, I'm

15  assuming as filed.  The answer is:  No, I do not

16  recognize it, because I'd have to go through it and

17  verify if this is the bill as filed or the engrossed

18  voted version that was --

19     Q.   Sir, if I could refer you to Page 17 of the

20  exhibit, maybe that will clarify for you what version of

21  the bill it is.

22     A.   This is the version that was signed by the

23  Governor.

24     Q.   Thank you.  Is this a copy of the legislation

25  as signed by the Governor that you introduced in 2011



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

234

1    related to voter ID?

2         A.   Yes.   Appears to be.

3         Q.   And turning your attention to Page 9, Section

4    63.0101, do you see it lists Proof of ID?   And could you

5    describe the forms of identification permitted under

6    Senate Bill 14?

7         A.   A driver's license, a US military

8    identification card that contains a person's photograph,

9    a US citizenship certificate that contains a photograph,

10   a passport that's not expired, a concealed-carry handgun

11   license.

12        Q.   Thank you.

13             And does it also provide, on Page 11 at

14   Section 16, for increasing the criminal penalties for

15   persons who impersonate a voter in an attempt to vote as

16   that voter?   Is that right?   At Section 16 of the bill?

17        A.   Yes.

18        Q.   Thank you.

19             Were you involved in the development of

20   Senate Bill 14?

21        A.   Yes.

22        Q.   What was your involvement?

23             MR. SWEETEN:   Don't reveal --

24        A.   Legislative privilege.

25             MR. SWEETEN:   Yeah.   Objection,



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

235

1    legislative privilege.

2        Q.   (By Ms. Westfall)  Can you describe the process

3    by which Senate Bill 14 was developed?

4        A.   Privilege.

5             MR. SWEETEN:  Objection, legislative

6    privilege.

7        Q.   (By Ms. Westfall)  When was Senate Bill 14 --

8    when was it -- when did the development of Senate Bill

9    14 start?

10       A.   May 31st of 2009.

11       Q.   Were you aware of any communications concerning

12   the drafting of the bill?

13       A.   Say it again.  Repeat.

14       Q.   Are you aware of any communications concerning

15   the drafting of the bill?

16            MR. SWEETEN:  I think that's been asked

17   and answered.  Also, I think objection, vague, as far as

18   considerations of drafting the bill.  Or did you say

19   conversations drafting the bill?

20            MS. WESTFALL:  Conversations.

21       Q.   (By Ms. Westfall)  You may answer.

22       A.   Were there conversations?

23       Q.   Yes.

24       A.   Yes.

25       Q.   And was it -- I believe you testified you had a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              236

1       conversation with Mr. Wallace.  Were there other

2       conversations you were aware of concerning the drafting

3       of Senate Bill 14?

4            A.   With Ms. McCoy.

5            Q.   With Ms. McCoy.  How many conversations did you

6       have with Ms. McCoy?

7            A.   Hundreds.

8            Q.   Hundreds.  Did you have conversations with

9       anyone outside of conversations with your chief of

10      staff, Ms. McCoy?

11           A.   Only in terms of advising people that I was

12      filing the bill.

13           Q.   And who were those people?

14           A.   Skipper Wallace.

15           Q.   Any legislators in the Senate?

16           A.   I don't know specifics.

17           Q.   You don't recall?  Or you can't identify the

18      people?  Or --

19           A.   I can't give you a specific instance, but the

20      bill was talked about in the interim.

21           Q.   I see.  Did you have any conversations with the

22      Lieutenant Governor or his office concerning your

23      intention to file Senate Bill 14?

24           A.   Not that I can recall.

25           Q.   Did you look at past legislation on voter ID in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

 1   developing Senate Bill 14?

 2             MR. SWEETEN:  Do not reveal your thoughts,

 3   mental impressions, opinions about legislation, or

 4   matters of furtherance of the legislative process.

 5   Objection, legislative privilege.

 6        A.   Privilege.

 7        Q.   (By Ms. Westfall)  Did you look to other

 8   states' photo ID in drafting Senate Bill 14?

 9        A.   Privilege.

10             MR. SWEETEN:  Same objection.

11        Q.   (By Ms. Westfall)  Did you look to any models

12   from any interest groups in developing Senate Bill 14?

13             MR. SWEETEN:  Same objection.

14        A.   Privilege.

15        Q.   (By Ms. Westfall)  Did you have any

16   communications about Senate Bill 14 with other current

17   or former legislators who had offered past photo ID

18   bills?

19             MR. SWEETEN:  You can answer as to whether

20   a conversation occurred.

21        A.   No -- I'm sorry, ask that question again.

22        Q.   (By Ms. Westfall)  Did you have any

23   communications about Senate Bill 14 with other current

24   or former legislators who had offered past photo ID

25   bills?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

238

1          A.    Define "legislators".

2          Q.    People who sit in the legislature past or

3    current.

4          A.    Texas legislators?

5          Q.    Correct.

6          A.    No.

7          Q.    How about outside of Texas?

8          A.    Yes.

9          Q.    And could you identify that person or persons?

10          A.    President of the Senate of Illinois -- I mean,

11    Indiana.  The president of the Senate in

12    Georgia.  President of the Senate in Illinois.

13          Q.    Illinois?

14          A.    Actually, the list is probably 40 of the 50

15    state senate presidents.

16          Q.    Was there a conference call, or did you have

17    individual conversations with these folks?

18          A.    I meet four times a year with the senate

19    presidents.

20          Q.    I see.  So there was a meeting with senate

21    presidents.  When was that meeting?

22          A.    We meet four times a year every year.

23          Q.    When was the meeting that you referred to

24    concerning your development of Senate Bill 14?

25          A.    I don't recall.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

239

1          Q.    Where was that meeting?

2          A.    I don't recall.

3          Q.    Could you describe the general nature of that

4    meeting?

5          A.    The senate presidents get together to discuss

6    state issues.

7          Q.    And was there at that meeting a general

8    discussion of interest amongst many states in enacting

9    photo ID laws?

10         A.    Status of legislation involving voter ID in

11   Texas, specific questions.

12         Q.    Was there -- oh, it was a meeting held on that

13   topic solo?

14         A.    No.

15         Q.    I'm sorry.  Could you verify your testimony?

16         A.    There was a question asked about the status of

17   legislation.

18         Q.    And this convening of presidents of state

19   senates, is there an umbrella organization that

20   organized that meeting?

21         A.    Called the Senate Presidents Forum.

22         Q.    I see.  And did -- at that forum, were there

23   discussed other bills pending in other states concerning

24   photo ID?

25         A.    No.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     Q.   After that meeting, did you make any changes in

2     the draft of Senate Bill 14?

3     A.   Privilege.

4          MR. SWEETEN:   Objection, legislative

5     privilege.

6     Q.   (By Ms. Westfall)   Did you have communications

7     with legislators in Georgia about photo ID as you were

8     drafting Senate Bill 14 or developing it?

9     A.   Yes.

10    Q.   What officials in Georgia?

11    A.   I'm sorry, I need to backtrack on that.  You're

12    asking in the drafting of the bill?

13    Q.   Yes.

14    A.   No.

15    Q.   In the development of the concepts for Senate

16    Bill 14, which I believe you just testified started

17    around May 31st, 2009?

18    A.   Privilege.

19         MR. SWEETEN:   You can identify if you have

20    conversations from May 2009 --

21         MS. WESTFALL:   31st, 2009.

22         MR. SWEETEN:   May 31st, 2009, until the

23    bill was --

24    A.   With --

25         MR. SWEETEN:   With anyone from Georgia,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

241

1      you can testify about that.

2          A.   No.

3          Q.   (By Ms. Westfall)  Did you have communications

4      with any officials or legislators in Indiana concerning

5      about their photo ID law after May 31st, 2009?

6          A.   Yes.

7          Q.   When did you have that conversation?

8          A.   Four times a year.

9          Q.   Are you referring to the same convening of the

10     senate presidents?

11         A.   Yes.

12         Q.   Were there -- was there any agenda for that

13     meeting that was circulated?

14         A.   Every meeting has an agenda.

15         Q.   Was there an agenda for the meeting you just

16     testified about at which you answered the question about

17     the status of Texas photo ID?

18         A.   Yes.

19         Q.   Who has that agenda?

20         A.   Senate Presidents Forum.

21         Q.   Where is that headquartered?

22         A.   Washington, D.C.

23         Q.   Who's the staff person who you usually deal

24     with at the forum?

25         A.   That I -- I don't deal with anyone.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

242

1          Q.   Is there any administrative person who

2     maintains records and organizes the meetings for the

3     forum?

4          A.   Yes.

5          Q.   And who is that person?

6          A.   I don't have that name.

7          Q.   And this meeting that you're testifying about

8     where you talked about Texas photo ID, was this -- did

9     this occur in the year of 2009 or 2010?

10          A.   I don't know.

11          Q.   Did you keep any notes from that meeting --

12          A.   No.

13          Q.   -- yourself?

14          A.   (Witness shakes head no.)

15          Q.   You testified earlier about Exhibit 5, Senate

16     Bill 14, and a number of forms of ID; is that correct?

17     You testified about the particular types of ID that are

18     allowable under Senate Bill 14; is that right?

19          A.   I testified?

20          Q.   You testified in this deposition just minutes

21     ago, don't you remember doing that?

22          A.   I don't --

23          Q.   I just -- I asked you a question about the

24     forms of --

25          A.   And I read the forms that are in the bill.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                              May 17, 2012

243

1      Q.   Correct.  That's what I'm referring to when I
2    said you testified.
3                Have you reviewed the photo ID laws in
4    both Indiana and Georgia?
5      A.   Yes.
6                MR. SWEETEN:  Don't reveal your thoughts
7    or mental impressions or opinions about legislation or
8    matters in furtherance of the legislative process when
9    you're answering these questions here.
10     Q.   (By Ms. Westfall)  Do you know whether under
11   Senate Bill 14 there are fewer forms of allowable ID
12   than under Georgia photo ID law?
13     A.   I don't know that.
14     Q.   Do you know whether there are fewer forms of
15   allowable ID in Senate Bill 14 than in the Indiana voter
16   ID law?
17     A.   Don't know that.
18     Q.   Have you reviewed -- I know you testified
19   earlier that you're not an attorney, but have you
20   reviewed those laws or a summary of those laws?
21                MR. SWEETEN:  Objection, that's been asked
22   and answered.  It's legislative privilege.  It goes to
23   his process, thoughts, mental impressions, opinions
24   about legislature or furtherance of legislation.
25                But you are free to refer to matters of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                        May 17, 2012

244

 1    the public record.

 2         Q.    (By Ms. Westfall)  Do you have any answer --

 3         A.    Privilege.

 4         Q.    Thank you.

 5              Have you had any -- did you have any

 6    communications in developing or conceptualizing Senate

 7    Bill 14 with any groups representing minority voters?

 8              MR. SWEETEN:  Objection, legislative

 9    privilege.

10         A.    Privilege.

11         Q.    (By Ms. Westfall)  Did you have any

12    communications with any groups representing minority

13    voters in 2009?

14              MR. SWEETEN:  Communications you're

15    asking?

16              MS. WESTFALL:  Correct.

17              MR. SWEETEN:  Okay.  You can ask -- you

18    can answer as to whether a communication occurred or did

19    not occur.

20         A.    Not to my knowledge.

21         Q.    (By Ms. Westfall)  Did you have any such

22    communications with any such groups in 2010?

23         A.    Not to my knowledge.

24         Q.    Did you have any communications about Senate

25    Bill 14 with any officials in the executive branch in



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                         May 17, 2012

245

1    Texas?

2         A.    No.

3         Q.    Did you have any communications about Senate

4    Bill 14 with any member of the Lieutenant Governor's

5    Office or the Lieutenant Governor?

6              MR. SWEETEN:  I think that's been asked

7    and answered, but you may answer.

8         Q.    (By Ms. Westfall)  You may answer.  You may

9    answer.

10             MR. SWEETEN:  I'll instruct him as to

11   whether or not he can answer.  I said, "You can answer."

12        A.    And give me the time frame.

13        Q.    (By Ms. Westfall)  2009 or 2010.

14        A.    I don't remember.  Could I add that, if there

15   was a communication, it was advising them that I was

16   filing the bill again?  That would be the extent.

17             MR. SWEETEN:  Okay.

18             MS. WESTFALL:  Thank you.

19             MR. SWEETEN:  And that's fine.  Just don't

20   reveal the specifics of communications you've had.  Her

21   question was:  Was there a communication?  So just limit

22   it to that, but that's general.

23        Q.    (By Ms. Westfall)  Did you or your office or

24   Ms. McCoy exchange drafts of Senate Bill 14 with

25   anybody?


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

246

1          A.   No.

2          Q.   Did Senate Bill 14 change during the drafting

3     profess before it was filed?

4          A.   Privilege.

5               MR. SWEETEN:  I'm going to object based on

6     legislative privilege.  I think we're getting into the

7     thoughts, mental processes, impressions in furtherance

8     of legislation.

9          Q.   (By Ms. Westfall)  In drafting Senate Bill 14,

10    did you, Ms. McCoy, or anyone associated with the

11    drafting review any reports or studies?

12         A.   Privilege.

13              MR. SWEETEN:  That's -- that's subject to

14    the legislative privilege.  Objection.

15         Q.   (By Ms. Westfall)  When drafting Senate Bill 14

16    or developing the concepts for Senate Bill 14, did you

17    or Ms. McCoy conduct any analysis of how it impacted

18    voters?

19              MR. SWEETEN:  Same objection, privilege.

20         A.   Privilege.

21         Q.   (By Ms. Westfall)  Did you consider including

22    any additional forms of ID in the version of Senate Bill

23    14 that you filed?

24              MR. SWEETEN:  Objection, calls for him to

25    reveal thoughts, mental impressions, opinions about



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    legislation.  Legislative privilege.

2         Q.   (By Ms. Westfall)  Are you following the advice

3    of counsel on that?

4         A.   Why don't you ask that again?

5         Q.   Sure.  Did you consider including any

6    additional forms of ID in Senate Bill 14?

7              MR. SWEETEN:  Objection, privilege.

8         A.   Privilege.

9         Q.   (By Ms. Westfall)  In -- was this the least

10   restrictive set of forms of ID that you could include in

11   Senate Bill 14 that would achieve your objective?

12             MR. SWEETEN:  Objection, privilege.

13        A.   Privilege.

14        Q.   (By Ms. Westfall)  Did you consider allowing

15   expired forms of ID as allowable ID?

16             MR. SWEETEN:  Objection, privilege.

17   You're asking about his mental impressions and

18   considerations.

19        A.   Privilege.

20        Q.   (By Ms. Westfall)  Did you consider allowing

21   forms of ID that have expired two years prior to the

22   election rather than 60 days?

23             MR. SWEETEN:  Objection, privilege.

24        A.   Privilege.

25        Q.   (By Ms. Westfall)  If a photo ID is expired but



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

248

1    was validly issued, doesn't that prove the person is the

2    same person on the ID?

3         A.    Privilege.

4               MR. SWEETEN:  Objection, you're asking

5    about his considerations of the Senate Bill 14.  That

6    would be legislatively privileged.

7         Q.    (By Ms. Westfall)  I'm asking, as a general

8    matter, if a photo ID is expired but was validly issued,

9    doesn't that prove the person is the same person on the

10   ID, notwithstanding that it's expired?

11              MR. SWEETEN:  Objection, argumentative.

12   You can answer.  She's asking not in relation to

13   legislation, she's just asking you as a general matter.

14        A.    Why don't you ask the question again slowly?

15        Q.    (By Ms. Westfall)  Sure.  If a photo ID is

16   expired but was validly issued, why doesn't that prove

17   the person was the same person on the ID?

18        A.    The logic would be that if it's expired, it is

19   not a valid form of identification.

20        Q.    But nevertheless, when you see the person's

21   picture and you see the person next to the picture,

22   notwithstanding that it's expired, you can make a visual

23   -- a poll worker could make a visual check to affirm an

24   individual's identity; isn't that true?

25        A.    I've given my answer to the question.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              249

1          Q.    You have no further testimony on that issue?

2          A.    I've given my answer to the question.

3          Q.    How often in Texas do you have to go appear to

4    get your picture retaken for a driver's license?  Do you

5    know?

6          A.    Ask the question again.  How often --

7          Q.    -- do you have to have your picture taken for

8    your driver's license?

9          A.    I'm sorry, I don't know that.

10         Q.    Can you renew your driver's license by mail in

11   Texas in certain circumstances?

12         A.    I don't believe so.  I don't know the answer.

13         Q.    How long are driver's licenses in Texas valid

14   for?

15         A.    I don't know the answer to that.

16         Q.    Did you conduct any analysis as to how many

17   registered voters possess the required forms of ID under

18   Senate Bill 14?

19              MR. SWEETEN:  Objection, legislative

20   privilege.

21         Q.    (By Ms. Westfall)  Did you conduct any analysis

22   to determine if minority voters would be

23   disproportionately less likely to possess the forms of

24   ID required by Senate Bill 14?

25              MR. SWEETEN:  Objection, legislative



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

250

1    privilege.

2         A.    Privilege.

3         Q.    (By Ms. Westfall)  And Janice McCoy yesterday

4    testified that there were no studies at all with any

5    analysis of who has an ID for purposes of Senate Bill

6    14, either public or private.  Do you agree with that

7    testimony?

8              MR. SWEETEN:  Objection, calls for matters

9    that are legislatively privileged.

10        A.    Privilege.

11             MS. WESTFALL:  Ms. McCoy has testified

12   about this matter and waived the privilege.  Are you

13   going to let the witness testify on this?

14             MR. SWEETEN:  He is asserting legislative

15   privilege as to any considerations, analysis related to

16   the bill.

17        Q.    (By Ms. Westfall)  Are you surprised Ms. McCoy

18   had that testimony yesterday?

19             MR. SWEETEN:  Objection.  You're asking

20   the same question in another form.  It calls for matters

21   of legislative privilege.  It's also relevant whether

22   he's surprised.  Don't answer.

23        Q.    (By Ms. Westfall)  Are you following the advice

24   of counsel?

25        A.    Privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

251

1      Q.    What is a military ID?

2            MR. SWEETEN:  Asked and answered --

3      Q.   (By Ms. Westfall)  Do you know how many --

4            MR. SWEETEN:   -- objection.

5      Q.   (By Ms. Westfall)  Do you know how many --

6            THE WITNESS:  Did you --

7      Q.   (By Ms. Westfall) -- different forms of

8  military ID --

9            MR. SWEETEN:  Yes.

10     Q.   (By Ms. Westfall) -- are accepted --

11           (Reporter cautions everyone not to talk at

12  the same time.)

13           MS. WESTFALL:  Let's break.

14           (Recess 4:29 to 4:46 p.m.)

15     Q.   (By Ms. Westfall) Okay.  Senator, do you know

16  what a citizenship certificate is?

17     A.    No.

18     Q.    Is it a form of ID in Senate Bill 14?

19     A.    Yes.

20     Q.    Do you have any idea how much it costs to

21  obtain a citizenship certificate?

22     A.    No.

23     Q.    Do you know how much it costs to obtain a U.S.

24  passport?

25     A.    No.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

252

 1        Q.   Do you know what documents you would have to
 2   provide to get a U.S. passport?
 3        A.   I believe a birth certificate.
 4        Q.   And anything else besides a birth certificate?
 5        A.   Not to my knowledge.
 6        Q.   Do you know how long it takes to obtain a
 7   passport?
 8        A.   No.
 9        Q.   Can you tell me what the purpose was of --
10   well, strike that.
11             I believe you testified earlier that
12   Senate Bill 362 allows for nonphoto ID; is that right?
13        A.   Rephrase -- re-read the question, please.
14        Q.   I believe I -- that you testified earlier that
15   Senate Bill 362 allows for the use of nonphoto ID; is
16   that right?
17        A.   The -- the legislation, as filed, had that
18   provision.
19        Q.   And Senate Bill 14 does not; is that right?
20        A.   That is correct.
21        Q.   And what was the purpose of not including in
22   Senate Bill 14 the option for a voter to show nonphoto
23   ID?
24             MR. SWEETEN:   Objection, you're asking him
25   to reveal thoughts, mental impressions, opinions about



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

253

1    legislation, including Senate Bill 14.

2        A.    Privilege.

3              MS. WESTFALL:  Are you instructing him not

4    to answer?

5              MR. SWEETEN:  I'm instructing him not to

6    answer that specific question as to the differences

7    between the two bills and the why's and wherefore's.  He

8    can answer if you're going to ask him as to what is the

9    purpose of Senate Bill 14.  I will allow him to answer

10   that question.

11       Q.    (By Ms. Westfall) Are you aware of any

12   conversations regarding the non-inclusion of photo ID in

13   Senate Bill 14?

14             MR. SWEETEN:  You're asking about the

15   substance of conversations, and so I think that that

16   would be -- that would be privileged.  He can discuss

17   specifics of whether he had a conversation or general

18   subject matter, but I think that the way you're asking

19   it, I think you're asking for the specific subject

20   matter.

21       A.    Privilege.

22       Q.    (By Ms. Westfall) Who made the decision not to

23   include non-photo forms of ID in Senate Bill 14?

24             MR. SWEETEN:  Objection, legislative

25   privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

254

1        A.    Privilege.

2        Q.    (By Ms. Westfall) What changed between 2009 and

3    2011 that made two forms the non-photo ID an acceptable

4    option in 2009 but not in 2011?

5              MR. SWEETEN:  Objection, legislative

6    privilege.

7        Q.    (By Ms. Westfall) In response to a similar

8    question posed to Ms. McCoy yesterday in her deposition,

9    she testified that what happened between 2009 and 2011

10   was that things have worked out well in Indiana and

11   Georgia.  Do you agree with that statement?

12             MR. SWEETEN:  Don't reveal your thoughts,

13   mental impressions or opinions about legislation or

14   between the difference in the 2009 and 2011.  That is

15   legislatively privileged.  Do not answer.

16       A.    Privilege.

17       Q.    (By Ms. Westfall) We talked about this earlier

18   with regard to Senate Bill 362, but under Senate Bill

19   14, who is responsible for verifying the identity of the

20   voter?  Who checks the ID of the voter in Senate Bill

21   14?

22       A.    When they're voting?

23       Q.    Yes.

24       A.    That is determined by the training that is done

25   by the Secretary of State, and I think it would be



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

255

1    improper for me to speculate what that is.

2        Q.   What are the standards governing how a poll

3    worker administers the -- the photo ID requirement under

4    Senate Bill 14?

5        A.   Those standards are set by the Secretary of

6    State.

7        Q.   And would you agree that those standards are

8    very important for the success and fulfillment of the

9    purpose of Senate Bill 14 you earlier testified about?

10           MR. SWEETEN:  I'm going to object to the

11   extent you're asking for him to reveal thoughts, mental

12   impressions, or opinions about legislation or

13   furtherance of the legislative process.

14       A.   Privilege.

15       Q.   (By Ms. Westfall) There are no standards

16   governing how the ID requirement is administered in

17   Senate Bill 14; isn't that right?

18           MR. SWEETEN:  Objection, privilege.  Are

19   you asking about the text of the bill, Counsel?

20           MS. WESTFALL:  I'm asking about the face

21   of the statute.

22           MR. SWEETEN:  Okay, if you're asking about

23   the face of the statute, he can answer the question.

24       A.   We gave that authority to set that to the

25   Secretary of State.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1     Q.   (By Ms. Westfall) So, in other words, it's not

2   -- it's not in the face of the statute; is that correct?

3   Would you agree with that?

4     A.   We -- we did not set to micro-manage.  We said

5   to ask the Secretary of State to determine that.

6     Q.   I want to answer.  I know it's late in the day,

7   but I want you to listen carefully to my question.  Is

8   there anything in Senate Bill 14 that -- that sets the

9   standards for how poll workers are to administer the

10   photo ID requirement in the this -- in this law?

11     A.   No.

12     Q.   Thank you.

13          What was the purpose of removing, and not

14   including from Senate Bill 14, the option for a voter to

15   show a state or federal issued photo ID, as you did

16   include in Senate Bill 362?

17          MR. SWEETEN:  You're asking him to compare

18   and contrast bills from 2009 and 2011 which would

19   necessarily reveal his thoughts, mental impressions, and

20   opinions about legislation or furtherance of the

21   legislative process and is therefore privileged.

22   Objection.

23     A.   Privilege.

24     Q.   (By Ms. Westfall) Are there any circumstances

25   in election administration, problems with the election



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                      May 17, 2012

257

1    administration, et cetera, between 2009 and 2011, that

2    caused to you make this change?

3              MR. SWEETEN:  I'm going to object, you're

4    asking for his thoughts and mental impressions,

5    privilege.

6         A.   Privilege.

7         Q.   (By Ms. Westfall) How would allowing the use of

8    state or federal issued photo ID prevent the goal in

9    Senate Bill 14 of ensuring election integrity?

10             MR. SWEETEN:  Objection, legislative

11   privilege.

12        A.   Privilege.

13        Q.   (By Ms. Westfall) Are you aware that the

14   Indiana photo ID law allowed for the use of state issued

15   photo ID?

16             MR. SWEETEN:  Objection, you're asking him

17   to reveal his thoughts, mental impressions, opinions

18   about legislation and furtherance of the process;

19   therefore, it would be privilege.

20        Q.   (By Ms. Westfall) What was the purpose of not

21   including in Senate Bill 14 the option for a voter to

22   show a valid employee ID as was included in the Senate

23   Bill 362?

24             MR. SWEETEN:  Objection, you're asking him

25   to compare 2009 to 2011.  He will answer the question of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    what is the purpose of Senate Bill 14, but to ask him to

2    compare and contrast provisions that were or were not in

3    those two statutes is asking him to reveal the thoughts,

4    mental impressions, and opinions about the legislation.

5         Q.   (By Ms. Westfall) Is there a provision included

6    in Senate Bill 14 related to an election identification

7    certificate?

8              MR. SWEETEN:  You can answer.

9         A.   Would you restate the question?

10        Q.   (By Ms. Westfall) Certainly.  Is there a

11   provision in Senate Bill 14 that would allow for the use

12   of an election identification certificate for persons

13   who do not have allowable forms of ID under Senate Bill

14   14?

15        A.   SB 14 provides that an elections identification

16   certificate may not be used or accepted as a personal

17   identification certificate.

18        Q.   Did any legislators -- strike that.

19             Did you -- are you aware of any

20   conversations with anyone about concerns about the

21   ability to obtain an election identification

22   certificate?

23        A.   No.

24        Q.   Did anyone express concern about their

25   constituents having difficulty obtaining an election



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      identification certificate?

2           A.    Not to my knowledge.

3           Q.    Not on the Floor?

4           A.    Again, I -- not to my recollection.

5           Q.    Did you conduct any analysis of the process for

6      obtaining election identification certificate?

7                 MR. SWEETEN:  Do not reveal your thoughts,

8      mental impressions, or opinions or -- about legislation

9      or furtherance of the legislation process --

10          A.    Privilege.

11                MR. SWEETEN:  -- legislative privilege.

12          Q.    (By Ms. Westfall) What were the circumstances

13     under which a license to carry a concealed handgun were

14     included in Senate Bill 14?

15                MR. SWEETEN:  Do not answer, it's asking a

16     legislative privilege.

17          A.    Privilege.

18          Q.    (By Ms. Westfall) Do you know the racial

19     composition of license to carry license holders?

20                MR. SWEETEN:  Objection, you're asking for

21     matters covered by the legislative privilege.

22                MS. WESTFALL:  I'm asking him as a matter

23     of general knowledge, not -- not related to a

24     legislative act.

25                MR. SWEETEN:  Okay.  So this is not in



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

260

1        relation to his analysis or review of legislation.

2        You're asking him, now as he sits here, is he aware of

3        this -- of this piece of information.

4                    You can answer that question.

5        A.    I'm not aware.

6        Q.    (By Ms. Westfall) Is it -- is the racial

7        composition of license to carry license holders

8        disproportionately white relative to Texas registered

9        voters?

10       A.    I'm not -- I'm not aware of the percentage.

11       Q.    Are you aware of any conversations about the

12       racial composition of licensed to carry holders?

13       A.    No.

14       Q.    How did the exception for individuals with

15       disabilities come to be included in Senate Bill 14?

16                   MR. SWEETEN:   Objection, legislative

17       privilege.

18       A.    Privilege.

19       Q.    (By Ms. Westfall) How did the exception for

20       individuals with religious objections to being

21       photographed come in -- come to be included in Senate

22       Bill 14?

23                   MR. SWEETEN:   Objection, legislative

24       privilege.

25       Q.    (By Ms. Westfall) Why is it that some changes



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

261

1    in response to some concerns were taken into account and

2    others were not?

3                MR. SWEETEN:  Objection, legislative

4    privilege.

5        Q.   (By Ms. Westfall) The legislature made

6    modifications to Senate Bill 14 for persons with

7    disabilities, is that right, on the face of the bill?

8                MR. SWEETEN:  You can answer.

9        A.   Reread.

10       Q.   (By Ms. Westfall) The legislation made

11   modifications to Senate Bill 14 to accommodate the

12   interests of persons with disabilities; isn't that

13   right?

14               MR. SWEETEN:  Well, now you threw in

15   "accommodate people with disabilities."  I think if you

16   want to ask him a question about the text of the bill,

17   you can you ask him whether it's there or not, but not

18   -- you're starting to get into thoughts, mental

19   impressions, opinions with that question.

20               MS. WESTFALL:  Are you invoking privilege?

21               MR. SWEETEN:  I don't think I objected to

22   the first question, but then the second, the way you

23   worded it, I think you --

24       Q.   (By Ms. Westfall)  Why didn't you answer the

25   first question then, since your counsel is --



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          A.    Would you repeat the first question?

2          Q.    The legislature made modifications to Senate

3    Bill 14 for persons with disabilities, did they not?

4          A.    Would you reference the part of the bill that

5    does that?

6          Q.    Certainly.

7                MR. SWEETEN:   Okay.  You're saying "for

8    individuals."  If you're asking him does the text say

9    this, I'm fine with him answering that question, but if

10   you're asking him why was it made, I think that's

11   objectionable, legislative privilege.

12         Q.    (By Ms. Westfall) I refer you to Exhibit 5 at

13   Section 1, Senator.

14               MR. SWEETEN:   This is 5. -- yeah, that's

15   5.

16         Q.    (By Ms. Westfall) Where it indicates --

17         A.    5, Section 1?

18         Q.    Exhibit 5, Senate Bill 14, at -- at Section 1

19   on Page 1.  There is, is there not, an exemption for

20   persons with disabilities that provide certain written

21   documentation from federal agencies; is that correct?

22         A.    Yes.

23         Q.    And this is a provision, wouldn't you agree,

24   that is helpful for certain persons that have

25   disabilities in having an exemption from the bill, isn't



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

263

1    that correct, on the face of the statute?

2         A.   Yes.

3         Q.   Likewise, turning to your attention to the

4    provisional ballot section of Senate Bill 14 which is on

5    Page 11 at Section 17 of the bill, do you see that?

6    There is a provision related to persons who have

7    religious objections to being photographed; isn't that

8    correct?

9         A.   On Page 11?

10        Q.   On Page 12, sorry.  It starts on Page 11.  Do

11   you see that?

12        A.   Yes.

13        Q.   And -- and this provision indicates that if a

14   person casts a provisional ballot and is eligible to

15   vote in the election but doesn't have ID because a

16   person -- and consequently casts a provisional ballot,

17   that the ballot will be counted if the voter signs an

18   affidavit indicating a religious objection to being

19   photographed, isn't that correct, on the face of the

20   statute?

21             MR. SWEETEN:  You can answer.

22        A.   Yes.

23        Q.   (By Ms. Westfall) And this is a helpful

24   provision for people who have religious beliefs and

25   objections to being photographed; isn't that right?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

264

1              THE WITNESS:  She's asking my opinion?

2              MR. SWEETEN:  Yeah.

3         Q.   (By Ms. Westfall)  On the face of the statute.

4         A.   The statute states very clearly what it -- it

5    does.

6         Q.   Did the legislature make any modifications to

7    Senate Bill 14 based on concerns pertaining to racial

8    and ethnic minorities?

9              MR. SWEETEN:  Objection, legislative

10   privilege.

11        A.   Privilege.

12        Q.   Could you -- strike that.

13             During the drafting or legislature's

14   consideration of Senate Bill 14, was there any analysis

15   of the costs or steps that a voter would need to take to

16   obtain an election identification certificate?

17             MR. SWEETEN:  I'm going to object based

18   upon privilege.  You're free to refer to matters of the

19   public record.

20        A.   Privilege.

21        Q.   (By Ms. Westfall) Do you know -- do you know

22   what documents are needed under Senate Bill 14 on the

23   face of the statute to obtain an election identification

24   certificate?  Directing your attention to Section 20 on

25   Page 13.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

265

1        A.    That they -- they must state that they're --

2    the person must sign a certificate for the purpose of

3    satisfying Section 63.001(b) of the election code and

4    does not have another form of identification.

5        Q.    Is it -- is it your recollection that, and

6    based on public record, based on the code, based on the

7    regulations, that the Secretary of State was responsible

8    for identifying the documents needed to obtain an

9    election identification certificate?

10       A.    It says the department may develop -- may

11   cooperate with Secretary of State in developing the form

12   and appearance of an election identification

13   certificate.

14       Q.    So you agree that it's a responsibility of the

15   Secretary of State; is that what the statute says?

16       A.    No.  It says the department may cooperate with

17   the Secretary of State in developing the form and

18   appearance of an election certificate.

19       Q.    Okay.  Thank you.

20             Do you know how much it costs to obtain

21   the documents necessary to get an election

22   identification certificate under Senate Bill 14 and

23   associated regulations?

24       A.    No.

25       Q.    And if the documents needed to get the election



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                                266

1        identification certificate are not themselves free, is

2        there a cost associated with obtaining election

3        identification certificates?

4             A.   I don't know.

5             Q.   Where does one obtain an election

6        identification certificate?

7             A.   I don't know.

8             Q.   And when are those offices open?

9             A.   I don't know.

10            Q.   Does one obtain them at the driver's license

11       office in Texas?

12                 MR. SWEETEN:   Objection.  He's indicated

13       that he doesn't know the answer, so asked and answered.

14            Q.   (By Ms. Westfall) What was the -- I know we've

15       -- you've testified about the purpose of previous voter

16       ID bills that you've introduced, but what was the

17       purpose, each and every purpose, of Senate Bill 14?

18            A.   The purpose of Senate Bill 14 was to ensure the

19       integrity of the ballot box.

20            Q.   Anything else?

21            A.   No.

22            Q.   Pardon?

23            A.   (Witness shakes head no.)

24            Q.   What is the basis for your assertion that the

25       purpose was to ensure integrity of the ballot box?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

```
 1        A.   Privilege.

 2             MR. SWEETEN:  That's -- that's -- now

 3   you're asking him, beyond what the purpose is, you're

 4   asking him to reveal his thoughts, mental impressions or

 5   opinions and his subjective intent in that question.  So

 6   he's answered what the purpose is.  I think that you're

 7   now going in to matters that are matters protected by

 8   the legislative privilege.

 9        Q.   (By Ms. Westfall) How would Senate Bill 14

10   ensure integrity of the ballot box?

11             MR. SWEETEN:  Same objection.

12        Q.   For the record, are you asserting privilege?

13        A.   Privilege.

14             MR. SWEETEN:  Objection, privilege.

15        Q.   (By Ms. Westfall) Is there a need in Texas to

16   take measures legislatively to ensure integrity at the

17   ballot box?

18             MR. SWEETEN:  Same objection.

19        A.   Privilege.

20        Q.   Are there any facts, that you're aware of

21   sitting here today, that -- that there's a lack of

22   integrity at the ballot box in Texas?

23             MR. SWEETEN:  Same objection, calls for

24   matters that are covered by the legislative privilege.

25        A.   Privilege.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1      Q.   (By Ms. Westfall) Yesterday your chief of

2   staff, when asked this question, testified that the

3   purpose of Senate Bill 14 was both election integrity

4   and to prevent in-person voter fraud.  Today, when I

5   asked you the similar question, you did not mention

6   in-person voter fraud.  Is it your testimony that

7   preventing in-person voter fraud is not a purpose of

8   Senate Bill 14, as you sit here today?

9           MR. SWEETEN:  This has been asked, this

10   has been answered.  He has -- he has answered the

11   question, but -- and also objection, assumes facts not

12   in evidence.  Nevertheless, if you want to go ahead and

13   answer, you can.

14      A.   Ask the question again.

15      Q.   (By Ms. Westfall) Is the purpose of Senate Bill

16   14 also to prevent in-person voter fraud and

17   impersonation?

18      A.   The purpose of the bill is to protect the

19   integrity of the ballot box.

20      Q.   (By Mr. Westfall) So is your answer no?

21      A.   The purpose of the bill is to protect the

22   integrity the ballot box.

23           MS. WESTFALL:  Mr. Sweeten, did you have

24   chance during the break to counsel your client about

25   answering the question?  Otherwise, unless it is a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    privileged question, that for which you are asserting

2    privilege, instructing your client not to answer, your

3    client could be -- if we prevail in a motion to compel,

4    could be brought back and asked the same question again.

5    Did you do that, sir?

6                    MR. SWEETEN:  Well, I mean, number one,

7    I'm not going tell you what I told my client.  So I'm

8    not going to reveal that.

9                    MS. WESTFALL:  Okay, fair point.

10                   MR. SWEETEN:  No, no.  But nevertheless,

11   if you can answer that question, just, I mean -- or we

12   can talk about for it second.  But as to what is the

13   purpose of the legislation, I think you've answered what

14   it is, but if you can just answer that second question.

15       Q.    (By Ms. Westfall) Is -- Ms. McCoy testified

16   yesterday that part of the purpose of Senate Bill 14 was

17   to prevent in-person voter fraud.  Is that -- are you --

18   is preventing in-person voter fraud part of the purpose

19   of Senate Bill 14, in your mind?

20       A.    Yes.

21       Q.    Is any part the purpose of Senate Bill 14,

22   private or public, to decrease the number of Hispanic

23   voters?

24                   THE WITNESS:  Answer that?

25                   MR. SWEETEN:  You can answer what the



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

                                                              270

1       purpose of the bill is.

2            A.   No.

3            Q.   (By Ms. Westfall) Are you aware of any

4       conversations about the purpose of Senate Bill 14 being

5       to decrease the number of Hispanic voters?

6                 MR. SWEETEN:  Okay, he's not going to

7       answer that question.  You're asking for matters that

8       are covered by the legislative privilege.

9                 I'm instructing you not to answer that

10      question.

11                MS. WESTFALL:  Mr. Sweeten, I believe I'm

12      allowed to ask foundational questions about any

13      conversations related to that purpose, pursuant to

14      Paragraph 2 of the order entered today by the Court.  Do

15      you disagree?

16                MR. SWEETEN:  Do you want to cite for me

17      where you -- where you think that that would allow that

18      question?

19                MS. WESTFALL:  The final -- the final

20      sentence of the Order.

21                MR. SWEETEN:  Okay.  Let's go to -- I need

22      Paragraph 1.

23                Actually, Counsel, your -- your question,

24      as I have said on several occasions, and I think we've

25      on most occasions you've been able to move beyond that,



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1        your questions suggests more than a general subject

2        matter of a communication.  You're talking about very

3        specific information in a conversation, which would

4        require him to reveal legislative privilege.  If you

5        want to ask it in another way, you know, that -- that

6        adheres to the Court's Order, which is the nature or

7        general subject matter of the communication, I won't

8        have any objection.  And all day -- let me also say for

9        the record, that all day I have allowed you to ask all

10       of this information about communications.  I think would

11       you agree with that.  And I -- and I -- so I will allow

12       you to do that, but I think the way you phrased that

13       question, it's too specific, it's too -- it's too much

14       into the substance of a potential conversation for him

15       to be able to answer that question.

16                MS. WESTFALL:  Okay.  Well, as to my

17       original question as to whether any part the purpose of

18       Senate Bill 14 was to decrease the number of Hispanic

19       voters, this Order indicates that I'm allowed to examine

20       witnesses as to the purpose, as the witness understands

21       it today, including public information and private

22       information.  So could you make sure that -- or

23       information outside of the public record.  So could --

24       could you make sure that -- that your client is fully

25       answering the question about whether -- and I'll pose it



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

272

1    again, was there any part of the purpose of Senate Bill

2    14 that was to decrease the number the Hispanic voters.

3                MR. SWEETEN:  Okay.  You can -- you can

4    answer that based upon, as she said, based on the public

5    -- or public record or based upon your view of the

6    purpose of the bill, you can tell her what the purpose

7    of Senate Bill 14 was.

8        A.    The purpose of the bill was to preserve the

9    integrity of the ballot box.

10       Q.    (By Ms. Westfall) So in answer to my question,

11   are you answering no, that no part of the purpose of

12   Senate Bill 14 was to decrease the number of Hispanic

13   voters?  Is that your testimony today?

14               MR. SWEETEN:  You can answer that.

15       A.    I'm answering that the purpose of the bill was

16   to preserve the integrity of the ballot box.

17               MS. WESTFALL:  Okay, Mr. Sweeten --

18               MR. SWEETEN:  You can ask -- you can

19   answer the converse of that, as she's asking it:  Was --

20       A.    Ask the question again.

21       Q.    (By Ms. Westfall) Was any part of the purpose

22   of Senate Bill 14 to decrease the number of Hispanic

23   voters?

24       A.    No.

25       Q.    Was any part of the purpose of Senate Bill 14



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

273

1    to decrease the number of any other group of minority

2    voters?

3         A.   No.

4         Q.   Was any part of the purpose of Senate Bill 14

5    to discriminate in any way against any group or groups

6    of minority voters?

7         A.   No.

8         Q.   And I want to -- do you understand that the

9    last three questions that I've asked pertained to the

10   purpose, as you understand it, both from the public

11   record of the consideration of Senate Bill 14 and

12   outside of the public record?  Do you understand that?

13        A.   No.

14        Q.   You don't understand that?

15             MR. SWEETEN:  I -- I think, when you

16   prefaced the question, I told him both.

17             And so I think that -- I mean, she's --

18   she's just asking what is the purpose of the bill based

19   on matters of -- based on your understanding of the bill

20   and based on matters of the public record, both, what is

21   the purpose of the bill.  So in answering --

22             THE WITNESS:  I responded to --

23             MR. SWEETEN:  She's -- she's now answering

24   -- she's now asking you, in those three questions where

25   you said, "no," on all three of those, was that part of



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

274

1      the -- are you using both your understanding of the bill

2      as well as the matters of the public record in answering

3      the question?

4          A.   Yes.

5          Q.   (By Ms. Westfall) That is correct?

6          A.   Yes.

7          Q.   Thank you.  Was any part of the purpose of

8      Senate Bill 14, either on the public record or outside

9      the public record, for partisan purposes?

10         A.   No.

11         Q.   Was any part of the purpose of Senate Bill 14

12     to depress the participation of registered Democrats in

13     elections?

14         A.   No.

15         Q.   How do you know that?

16             MR. SWEETEN:  Objection, that asks for him

17     to go in to his -- or reveal his thoughts, mental

18     impressions, opinions as well as communications that

19     he's had regarding the issue.

20         Q.   (By Ms. Westfall) Did the purposes of photo ID

21     in Texas from 2005 to 2007 to 2009 to 2011, evolve over

22     time and between legislative sessions?

23             MR. SWEETEN:  I'm going to object.  I

24     think that calls for matters -- you're asking the

25     differences between bills.  I think that calls for



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

275

1    matters that would reveal his thoughts, mental

2    impressions, opinions about the legislation.  We have,

3    for the record, let you ask as to the purpose of each of

4    those bills and the answer has been consistent on that

5    issue, so --

6                    MS. WESTFALL:  I appreciate --

7                    MR. SWEETEN:  -- we're not going to let

8    him --

9                    MS. WESTFALL:  I appreciate your

10   testimony, but we're here to --

11                   MR. SWEETEN:  Elizabeth, I'm trying to

12   make sure the record is clear.  We've got complicated

13   privilege issues, we've got court orders that we're --

14   we're both trying to give the utmost consideration to,

15   and I have at all times done so today.  And I'm trying

16   to make sure that the record here is clear about what

17   we're discussing.

18       A.    Privilege.

19       Q.    (By Ms. Westfall) Was one of the purposes of

20   Senate Bill 14 -- strike that.

21                   Was one of the purposes of previous photo

22   bill -- ID bills before Senate Bill 14 to prevent

23   non-citizens from voting?

24                   MR. SWEETEN:  I think these questions have

25   been asked and answered all throughout the day.  I think



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

276

1    he has told you on each singular bill what the purpose

2    of it was.  So if you're now asking him as a whole, as a

3    group, I think the very same question, I'm going allow

4    you to answer it, but we're not going to keep -- we're

5    not going to keep, you know, there's no point in

6    continuing to go back and do this.  You're starting --

7    this is starting to be harassing of this witness.

8              So I'm going let you go ahead and answer

9    her question.  I'm going ask the court reporter could

10   read it back.

11       A.   And I'm going to claim privilege on that

12   question.

13             MR. SWEETEN:  Well, let -- I'm going to

14   have a discussion with -- with him regarding the issue

15   of privilege and we'll --

16             Can you read the question back?

17             (The requested portion was read by the

18   reporter.)

19             MR. SWEETEN:  Okay.  Now, I -- I think I

20   see what the problem is.  You're asking about bills that

21   other people filed.  You're asking about bills that --

22   that were never passed.  You're asking all of these in

23   one loaded question.  And some of this would reveal his

24   mental impressions and thoughts about the bills.  I will

25   let him, as to the legislation that you've already



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

277

1    asked, I will let him answer the -- what the purpose of

2    those bills was.  He -- which he's -- which he's done.

3    And if you want to go through those bills and ask that

4    specific question, I think that -- that we would let him

5    do that.

6             He's also indicated he'd like to discuss,

7    so I think there may be some matters of privilege that

8    he's concerned about and wants to discuss with me, so

9    would ask for a short --

10             MS. WESTFALL:  Would you like a recess?

11             MR. SWEETEN:  Yeah, I'd like a recess.

12             MS. WESTFALL:  Before we you go off the

13    record, I do want to take objection with your accusation

14    that I'm harassing your witness.  I am trying to get

15    through the outline as rapidly as possible.  All the

16    questions are relevant under Arlington Heights,

17    Mr. Sweeten.  And I'm going through the bills, some of

18    the questions repeat from bill to bill, but this is all

19    within the scope of relevance.  And I don't think you

20    have taken objection to any of the relevance of the

21    questions that I have asked.

22             MR. SWEETEN:  Well, I've tried to make it

23    clear that I think we've -- I've -- we've had all day to

24    let you -- let him answer the question of purpose.  And

25    I think for you to continue to go back to the same issue



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

278

1      I think is causing difficulty here.

2              MS. WESTFALL:  Mr. Sweeten, I'm asking

3      about purposes for different bills.  We cannot assume

4      that purpose for each bill is different from year-to-

5      year, and I have a right to examine on different bills

6      and different -- and the purposes.  And now we're on

7      Senate Bill 14, which is the subject of this litigation.

8              MR. SWEETEN:  And he has completely

9      answered what the purpose is of Senate Bill 14.  I mean,

10     ad nauseam he's answered that question.

11             MS. WESTFALL:  Why don't you just take a

12     recess.

13             (Recess from 5:20 to 5:33 p.m.)

14     Q.    (By Ms. Westfall)  So I believe you testified

15     that the purpose of Senate Bill 14 was to restore

16     confidence or electoral integrity or something along

17     those lines; is that right?

18     A.    Restore the integrity of the ballot box or

19     protect the integrity of the ballot box.

20     Q.    Has Texas ever had a photo ID requirement prior

21     to the enactment of Senate Bill 14?

22     A.    No.

23     Q.    What do you mean by "restoring confidence" in

24     the system?

25     A.    Our goal --



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          MR. SWEETEN:  I'm going to object to the

2    extent you're now going into having him reveal thoughts,

3    mental impressions or opinions about legislation, and

4    that would be subject to legislative privilege.

5          A.   Privilege.

6          MR. SWEETEN:  It also misstates his

7    testimony.

8          Q.   (By Ms. Westfall)  Has anyone ever told you

9    they wouldn't vote because they were concerned that

10   voter fraud would cancel out their vote?

11         MR. SWEETEN:  Don't reveal matters of

12   legislative privilege.

13         A.   Privilege.

14         Q.   (By Ms. Westfall)  Are you aware of any

15   conversations regarding anyone saying they wouldn't vote

16   because they were concerned that voter fraud would

17   cancel out their vote?

18         A.   No.

19         Q.   Would a registered voter, who has voted in

20   previous elections who was refused a regular ballot

21   because of this law, still have confidence in the voting

22   system in Texas?

23         MR. SWEETEN:  Objection, you're asking him

24   to reveal his thoughts, mental impressions or opinions

25   about legislation.  Privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

280

1          A.    Privilege.

2          Q.    (By Ms. Westfall)  How about a student who has

3    an ID from the University of Texas, and that's the sole

4    ID that he or she has, would that person have a level of

5    confidence in Texas's voting system under this law?

6                MR. SWEETEN:   Objection, legislative

7    privilege.

8          A.    Privilege.

9          Q.    (By Ms. Westfall)  What about the person who

10   has to take time off from work and go to a DPS office,

11   Department of Public Safety office or driver's license

12   office, to get an election identification certificate,

13   would that person have confidence in the system?

14               MR. SWEETEN:   Same objection.

15         A.    Privilege.

16         Q.    (By Ms. Westfall)  What about a person who has

17   to wait to get a copy of a birth certificate or a copy

18   of a court order in order to get ID to vote under Senate

19   Bill 14, would that person have confidence in the

20   system?

21               MR. SWEETEN:   Again, you're asking him to

22   reveal his thoughts or mental impressions about

23   legislation.  Objection, privilege.

24         A.    Privilege.

25         Q.    (By Ms. Westfall)  Did you in any part intend



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    that SB 14 would be designed to increase voter turnout

2    in the state of Texas?

3             MR. SWEETEN:   The question was, did he

4    what?

5        Q.   (By Ms. Westfall)   Is SB 14 designed or does it

6    have any purpose to increase voter turnout in the state

7    of Texas?

8        A.   The purpose of the bill was to protect the

9    integrity of the ballot box.

10       Q.   So I take it the answer is no?

11       A.   The answer is that we designed the bill to

12   protect the integrity of the ballot box.

13       Q.   And that's the sole reason you testified about

14   today; is that correct?

15       A.   That was our -- yes, that's the reason, yes.

16       Q.   Thank you.

17            During -- do you remember Floor

18   consideration of Senate Bill 14?

19       A.   Floor consideration?

20       Q.   Yes.

21       A.   Do I remember?

22       Q.   Yes.

23       A.   Some month.

24       Q.   Yes.   Did you answer many, many, many questions

25   about the bill by saying you were not advised?  Is that



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1       right?  Do you remember that?

2                       MR. SWEETEN:  Objection,

3       argumentative.  Objection, vague.  Go ahead.

4            Q.   (By Ms. Westfall)  You may answer.

5                       MR. SWEETEN:  You can answer.  It's about

6       the public record.

7            A.   No, I did not answer many, many, many

8       questions.

9            Q.   How about dozens of questions?

10           A.   Probably dozens of questions.

11           Q.   And what did you mean by "I am not advised"?

12                      MR. SWEETEN:  I'm going to object.  You're

13      asking what he meant by "I'm not advised," that he said

14      dozens of times.  So how would he possibly -- given the

15      context of that, there's no way he can answer that

16      question.

17           Q.   (By Ms. Westfall)  Do you understand the

18      question?

19           A.   Yes.

20           Q.   What did you mean by "I am not advised"?

21           A.   I'll be glad, if you've give me specific

22      examples of a question, and then I'll tell you, if it

23      applies, why I answered that way.

24           Q.   Okay.  Well, we can go through that maybe at a

25      later time.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

283

1           Janice McCoy testified yesterday that it

2    was her view that "I'm not advised" means "I don't

3    know."  Do you agree with that testimony by Ms. McCoy?

4           MR. SWEETEN:  Same objection to the

5    question.  You can answer to the extent you can.

6           A.   Privilege.

7                (Exhibit 47 marked for identification.)

8           Q.   (By Ms. Westfall)  You've just been handed

9    Exhibit 47.  Do you recognize this document?

10          A.   Appears to be the Senate Journal of the fifth

11   day, Wednesday, January the 26th.

12          Q.   Thank you.  And on this day, did the Senate

13   consider floor amendments to Senate Bill 14?

14          A.   I believe we did the second reading, which

15   would include the amendments.

16          Q.   Thank you.

17               And could I direct your attention to Page

18   119 of this document?

19          A.   Okay.

20          Q.   Turning your attention to Amendment 13, do you

21   recall that Senator Davis introduced an amendment to

22   include a provision in Senate Bill 14 that would allow

23   individuals to use an ID that is unexpired or has

24   expired at some time since the last general election?

25   Do you recall that amendment?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

284

1        A.    Yes.

2        Q.    Are you aware of whether the Indiana photo ID

3    law includes such a provision in its photo ID law?

4        A.    I don't know.

5        Q.    And did you move to table this amendment?

6        A.    Yes.

7        Q.    And why did you move to table this amendment?

8              MR. SWEETEN:  Objection, legislative

9    privilege.

10       Q.    (By Ms. Westfall)  Bear with me.  Could you

11   turn your attention to Page 130 at Floor Amendment

12   Number 30.

13       A.    I don't believe I have 130.

14       Q.    130.

15             MR. SWEETEN:  Page 130, it's up here on

16   the left of the page numbers here.

17             MS. WESTFALL:  Yeah.  You may want to take

18   off the clip.

19             MR. SWEETEN:  Yeah.  There's 130 right

20   there.

21             MS. WESTFALL:  Thank you, Mr. Sweeten.

22       Q.    (By Ms. Westfall)  Directing your attention to

23   Floor Amendment Number 30, do you recall that Senator

24   Ellis introduced an amendment or offered an amendment to

25   Senate Bill 14 that would have required the Secretary of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

285

1      State to conduct a study that would have included

2      information about the number of eligible voters who are

3      prevented from voting or had to vote provisionally

4      because of a lack of identification and an analysis of

5      this group by race?

6          A.   Is there a question there?

7          Q.   Yes.  Do you recall this amendment?

8          A.   Yes.

9          Q.   Did you vote to table this amendment introduced

10     by Senator Ellis?

11         A.   Yes.

12         Q.   Why would conducting a study have interfered

13     with the purpose that you have described in enacting

14     Senate Bill 14?

15              MR. SWEETEN:  Objection, legislative

16     privilege.

17         A.   Privilege.

18         Q.   (By Ms. Westfall)  Were you concerned that such

19     a study would show that minorities are

20     disproportionately impacted by Senate Bill 14?

21              MR. SWEETEN:  Objection, legislative

22     privilege.

23         A.   Privilege.

24         Q.   (By Ms. Westfall)  Turning your attention to

25     Page 118, turning your attention to Floor Amendment



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

1      Number 12 listed on Page 118, do you see that?

2          A.   Okay.

3          Q.   Do you recall that Senator Davis introduced an

4      amendment to prohibit state agencies from charging fees

5      for the issuance of any acceptable form of photo ID

6      under Senate Bill 14 or for the underlying documents

7      that may be required to obtain an acceptable form of ID?

8          A.   Yes.

9          Q.   Did you move to table this amendment?

10         A.   Yes.

11         Q.   How would this amendment have interfered with

12     the stated purpose of enacting Senate Bill 14, which was

13     to ensure integrity of the ballot box?

14              MR. SWEETEN:   Objection, legislative

15     privilege.

16         A.   Privilege.

17         Q.   (By Ms. Westfall)  Why did you vote to table

18     this amendment?

19              MR. SWEETEN:   Objection, legislative

20     privilege.

21         A.   Privilege.

22         Q.   (By Ms. Westfall)  Turning your attention to

23     Page 137.  Are you on Page 137, sir?

24         A.   Uh-huh.

25         Q.   Do you see Floor Amendment Number 40?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

287

1          A.    Uh-huh.

2          Q.    Did this amendment allow for the counting of

3    provisional ballots of voters who are indigent and

4    unable to obtain ID because of cost?  Do you recall this

5    amendment?

6          A.    I don't believe it is as you described it, no.

7          Q.    How would you describe it?

8          A.    It is as it's laid out.

9          Q.    Are you aware of whether the Indiana photo ID

10   requirement allows for the counting of provisional

11   ballots of someone who is indigent and unable to obtain

12   photo ID because of the cost of that ID?

13         A.    No.

14         Q.    Did you vote to table this amendment?  Sir, is

15   your vote on this amendment recorded in the Senate

16   Journal or no?

17         A.    You're a step ahead of yourself.

18         Q.    Oh?

19         A.    She offered an amendment to the deal, so the

20   motion was to table the amended motion.

21         Q.    And how did you vote on that motion?

22         A.    Voted to table.

23         Q.    Why did you do that?

24               MR. SWEETEN:  Oh.  Objection, legislative

25   privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1          A.    Privilege.

2          Q.    (By Ms. Westfall)   How would including this

3    provision in Senate Bill 14 have interfered with the

4    accomplishment of the goals of your legislation?

5               MR. SWEETEN:   Same objection, legislative

6    privilege.

7          A.    Privilege.

8          Q.    (By Ms. Westfall)   Turning your attention now

9    to Page 129, turning your attention to Floor Amendment

10   29, do you see that.

11         A.    Uh-huh.

12         Q.    Yes?

13         A.    Yes.

14         Q.    Did Senator Gallegos offer an amendment that

15   would have required driver license offices to be open

16   until 7 p.m. one week day and during four or more hours

17   on at least two Saturdays per month?

18         A.    Yes.

19         Q.    Did you move to table this amendment?

20         A.    Yes.

21         Q.    How would this amendment have harmed the

22   ability of Texas to deter and -- deter and detect a -- a

23   voter fraud?

24               MR. SWEETEN:   Objection, legislative

25   privilege.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

289

```
 1        A.   Privilege.

 2        Q.   (By Ms. Westfall)  Do you have any concern that

 3   individuals who work an hourly wage may have a difficult

 4   time in getting to a driver's license office during

 5   business hours?

 6             MR. SWEETEN:  Objection, legislative

 7   privilege.

 8        A.   Privilege.

 9             MS. WESTFALL:  Can we go off the record

10   for one moment?

11             MR. SWEETEN:  No objection.

12             (Discussion off the record.)

13        (Exhibit 48 marked for identification.)

14             MS. WESTFALL:  Back on the record.

15        Q.   (By Ms. Westfall)  I'm handing you what's been

16   -- oh, go ahead.

17             MR. SWEETEN:  I'm sorry.

18        Q.   (By Ms. Westfall)  I'm handing you what's been

19   marked as US Exhibit 48.  Do you recognize This

20   document?

21        A.   Appears to be from the Texas Tribune.

22        Q.   Have you seen this article before?

23        A.   I read it last night.

24        Q.   Wonderful.  Could you turn your attention to

25   the second page of the document?
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

290

1      A.   Okay.

2      Q.   And do you see at the top of the page that

3      there are some quotations from you, attributed to you,

4      concerning the Justice Department's rejection of Texas

5      voter ID law, as you phrase it?  Do you see that?

6      A.   Yes.

7      Q.   And do you see that you cite a Lighthouse

8      opinion, polling and research poll, in the middle of the

9      page?

10     A.   Yes.

11     Q.   In your view, does public support for Senate

12     Bill 14 have anything to do with its purpose, as you

13     stated and testified today?

14          MR. SWEETEN:  Don't reveal matters of

15     legislative privilege.  You can refer to matters of

16     public records and public statements.

17          MS. WESTFALL:  Mr. Sweeten, this is in the

18     public record.

19          MR. SWEETEN:  What are you specifically

20     asking him?

21          MS. WESTFALL:  Well, my question stands.

22          MR. SWEETEN:  Can you read the question

23     back, please?

24          (Record read back.)

25     Q.   (By Ms. Westfall)  Do you have a question about



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

291

1      the question, sir?

2                   MS. WESTFALL:  Or you, Mr. Sweeten?

3                   MR. SWEETEN:  Objection, calls for

4      speculation.  You can answer to the extent you know.

5          Q.   (By Ms. Westfall)  Do you know?

6          A.   The question -- repeat the question again.

7                   MS. WESTFALL:  Could you repeat the

8      question, court reporter.

9                   (Record read back again.)

10                  MR. SWEETEN:  Objection, vague.  Go ahead.

11         A.   The purpose of the bill still is to protect the

12     integrity of voting, and public support is certainly --

13     it's good that we have that.

14         Q.   (By Ms. Westfall)  If it was unpopular, would

15     you still have moved forward with Senate Bill 14?

16                  MR. SWEETEN:  Objection.  You're now

17     asking about his thoughts, mental impressions or

18     opinions about legislation.  It's legislatively

19     privileged.

20         A.   Privilege.

21         Q.   (By Ms. Westfall)  Are you invoking the

22     privilege?

23         A.   (Witness nods head yes.)  Privilege.

24         Q.   Do you see also in this article that you're

25     quoted as saying, "Polls show that people are less



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                              May 17, 2012

292

1    likely to vote if they believe their ballot will not be
2    fairly counted"?
3        A.   Yes.
4        Q.   Do you think that's a fair representation of
5    something that you've said?
6        A.   It's printed and I also said it on the record.
7        Q.   Can you identify any people who have indicated
8    to you that they were less likely to vote because they
9    believe their ballot will not be fairly counted?
10            MR. SWEETEN:  Don't reveal matters that
11   are privileged in answering the question.
12       A.   Privilege.
13       Q.   (By Ms. Westfall)  What polls were you
14   referring to in that statement, sir?  It's at the -- the
15   sentence that indicates, "Polls show that people are
16   less likely to vote if they believe their ballot will
17   not be fairly counted."  Do you see that?
18       A.   Uh-huh.
19       Q.   Could you tell me what polls you're referring
20   to?
21       A.   That is a quote that was taken from my opening
22   comments in 2009, and so no, I don't have the poll, but
23   it was a poll that I, you know, I had at that time.
24       Q.   So sitting here today, you don't recall the
25   particular poll; is that your testimony?


ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

293

1          A.    No, I do not.

2          Q.    Do you have a legislative ID as a member of the

3    Texas Senate?

4          A.    Yes, I do.

5          Q.    Does it have a photograph on it?

6          A.    Yes, it does.

7          Q.    Does it prove your identity?

8          A.    Yes.

9          Q.    Do other forms of photo ID, in addition to

10    legislative ID that have a picture on it, prove one's

11    identity in addition to the forms of ID listed in Senate

12    Bill 14?

13               MR. SWEETEN:  Objection, vague.

14          A.    If you want to narrow it down, I'll answer the

15    question.

16          Q.    (By Ms. Westfall)  Otherwise, are you refusing

17    to answer my question, sir?

18          A.    No.  I'm asking you to clarify your question.

19          Q.    Are any other photo IDs that we have referred

20    to today, including student IDs, employee IDs, expired

21    state licenses, out-of-state state licenses that have a

22    photograph, do those prove a person's identity?

23          A.    I'll be glad to address those one at a time if

24    you'd like.

25          Q.    We may have time to do that another day.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

294

1             MR. SWEETEN:  Okay.  And also, while

2     you're answering those, I want to caution you that when

3     you're answering a question, don't reveal thoughts,

4     impressions, matters about legislation when you're

5     answering that question.  It's legislatively privileged

6     if you do that.

7        Q.   (By Ms. Westfall)  At any time since --

8             MS. WESTFALL:  I'm sorry.  Are you done

9     with your instruction?

10            MR. SWEETEN:  I am.

11            MS. WESTFALL:  I was looking down at my

12    paper.

13            MR. SWEETEN:  That's okay.

14            MS. WESTFALL:  Thank you.

15       Q.   (By Ms. Westfall)  At any time since the

16    passage of Senate Bill 14, which -- strike that.

17            When was Senate Bill 14 signed into law

18    approximately?  Was it May 2011?

19       A.   May 2011.

20       Q.   At any time since the passage and signing into

21    law Senate Bill 14, have you come to believe that it was

22    passed with a discriminatory intent?

23       A.   No.

24       Q.   At any time since the passage of Senate Bill

25    14, have you come to believe that Senate Bill 14 will



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

295

```
1      have a harmful and retrogressive effect on minority
2      voters?
3          A.   No.
4          Q.   If you are called to trial in this action, will
5      you testify that Senate Bill 14 has no discriminatory
6      purpose?
7          A.   Yes.
8          Q.   If called to trial on this action, will you
9      testify that Senate Bill 14 does not have a
10     discriminatory effect upon minority voters?
11         A.   Does not.
12              MS. WESTFALL:  I would like to at this
13     time conclude the questioning of the witness.
14     Obviously we're leaving the deposition open pending
15     resolution of the motion to compel to be filed shortly.
16              I will turn over the questioning to
17     counsel for Defendant Interveners.
18                        EXAMINATION
19     BY MR. ROSENBERG:
20         Q.   I will ask your indulgence.  I will try not to
21     go too far over, although we're reserving our right to
22     ask, as is the DOJ, to continue this deposition, if
23     necessary, to bring back the Senator.  I'm Ezra
24     Rosenberg.  I'm going to ask you a few questions right
25     now.
```



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

296

1            Let me start very briefly with the 5.11,

2    which is in US 32.  Just very quickly, and I don't know

3    if you even have to look at it:  When is a special order

4    needed?

5        A.   I'm having a lot of trouble understanding you.

6        Q.   Okay.  I'm from New Jersey.  I'm going to slow

7    down.  Okay?

8        A.   You need to speak Texan if you're going to

9    talk.

10       Q.   I'll try, y'all.

11            When is a special order needed?  Under

12   what circumstances is a special order needed?

13       A.   There is not a definition of when a special

14   order is needed.

15       Q.   Is one of the times a special order is needed

16   when there's a blockage bill, to get around the blockage

17   bill?

18       A.   No.

19       Q.   Give me one example of when a special order is

20   needed.

21       A.   I don't -- I just said that there's not a -- a

22   circumstance where a special order.  There are special

23   orders that are put into the rules.

24       Q.   Give me an example of when a special order is

25   put into the rules.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

                                                            297

1        A.    A good example would be the bill we're looking
2    at.
3        Q.    Which says, "Any bill, resolution, or other
4    measure, may on any day be made a special order for a
5    future time of the session by an affirmative vote of
6    two-thirds of the members present," right?
7        A.    Yes.
8        Q.    Did I read that correctly?
9        A.    (Witness nods head yes.)
10       Q.    So that's not an example of a special order
11   being put in the rules, that's -- they talk about a bill
12   being made a special order, correct?
13       A.    Who is "they"?
14       Q.    The Senate, in this rule, talks about any bill
15   may on any day be made a special order, correct?
16       A.    Yes.
17       Q.    All right.  So there are certain times when
18   bills are made special orders, correct?
19       A.    That's what this reads, yes.
20       Q.    And when are those times that bills are made
21   special orders?
22       A.    I couldn't project that without knowing the
23   specific bill and the request of the bill.
24       Q.    Is one of the times that a bill is made a
25   special order when there is a blockage bill?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                          May 17, 2012

298

1        A.    No.

2        Q.    Okay.   Is -- does a blockage bill have anything

3    to do with special orders?

4        A.    No.

5        Q.    Okay.   The exception in 5.119(d) which carved

6    out from the two-thirds rule voter ID identification

7    requirements bills, right?

8        A.    No.

9        Q.    It did not?

10       A.    No.

11       Q.    Doesn't it say, "Notwithstanding Subsection A

12   of this rule, a bill or resolution relating to voter ID

13   indication requirements reported favorably from the

14   Committee of the Whole Senate may be set as a special

15   order for a time at least 24 hours after the motion is

16   adopted by a majority of the members of the Senate"?   Is

17   that what it says?

18       A.    Yes.

19       Q.    It says, "Notwithstanding the two-thirds rule,"

20   correct?

21       A.    No.

22       Q.    Well, can you tell me --

23       A.    You're making a reference that the two-thirds

24   rule and the blocker bill.

25       Q.    I didn't use "blocker bill."   I said -- I'm



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

299

1    using -- I'm looking right at 5.11D, that says

2    "Notwithstanding Subsection A of this rule," and

3    Subsection A of this rule is the two-thirds rule,

4    right?  So notwithstanding the two-thirds rule, a bill

5    relating to voter identification requirements may be

6    reported on the basis of a majority rule, a majority

7    vote, correct?  That's what that means?

8         A.   No.

9         Q.   Then tell me what that means.

10        A.   You're asking the questions.

11        Q.   That's right.  I'm asking the questions.  I

12   asked you to tell me what that means.

13        A.   What?

14        Q.   5.11D, what does that mean?

15        A.   It says "Notwithstanding Subsection A of this

16   rule, a bill or resolution relating to the voter

17   identification requirements reported favorably from the

18   Committee of the Whole, shall be set as a special order

19   at a time at least 24 hours after the motion is adopted

20   by the majority of the members of the Senate."

21        Q.   What relationship does 5.11D have to 5.11A?

22        A.   "Notwithstanding A."  It is not subject to A.

23        Q.   Okay, fine.  So voter identification

24   requirements are not subject to 5.11A, correct?

25        A.   Yes.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

300

1      Q.   Okay.  Can you think of any -- can you identify

2   any other category of legislation that is currently not

3   subject to 5.11A?

4      A.   I'm sorry.  I can't -- I don't know the answer

5   to that.

6      Q.   So sitting here today, you cannot identify any

7   other category of legislation, other than voter

8   identification requirements, that are not subject to

9   5.11A; is that right?

10     A.   I can't give you specific answers to a specific

11  bill.

12     Q.   You cannot give me a category of such

13  legislation, correct?

14     A.   You don't go into categories of legislation.

15     Q.   Well, can you name any other types of

16  legislation that are exempt from the requirements of

17  5.11A?

18     A.   It would only be exempt if it was put into the

19  legislation that session, and it would be in that -- in

20  that order until it was taken out the next session.

21     Q.   Can you identify any such examples such as

22  that, other than the voter identification bill?

23     A.   I cannot give you specific examples.

24     Q.   Do you recall -- by the way, the Shoe Horn, is

25  that is a newspaper?



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

301

1      A.   I have no idea.

2      Q.   Have you ever heard of anything -- anything in

3   the media called the "Shoe Horn"?

4      A.   No.

5      Q.   Do you recall making a public statement in

6   January 2011, where you said that the number of Texas

7   citizens who would not have photo identification would

8   be very, very small?

9      A.   Made the statement to who?

10      Q.   To the public.

11      A.   No.

12      Q.   Do you believe that the number of Texas

13   citizens who would have photo identification would be

14   very, very -- who would not have photo identification

15   would be very, very small?

16           MR. SWEETEN:  Objection, legislative

17   privilege.

18      Q.   (By Mr. Rosenberg)  Sitting here today, do you

19   believe that the number of Texas citizens who do not

20   have photo identification is very, very small?

21           MR. SWEETEN:  Don't reveal thoughts,

22   mental impressions or opinions about legislation,

23   including Senate Bill 34.

24      A.   Privilege.

25      Q.   (By Mr. Rosenberg)  And I'm not asking you --


Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

302

1    I'm asking your present knowledge today, not related to

2    legislation that's pending.  I'm asking you for your

3    present knowledge today as to whether or not you believe

4    that the number of Texas citizens who do not have photo

5    identification is very, very small?

6             MR. SWEETEN:  If you can provide that

7    information without revealing thoughts, mental

8    impressions, opinions about legislation or in

9    furtherance to the legislative process, or not revealing

10   conversations you've had with the multiple agencies or

11   categories of individuals or entities that we've

12   discussed earlier, then you can answer the question.

13       A.   Privilege.

14       Q.   (By Mr. Rosenberg)  Did you have discussions

15   with anyone concerning the differences between SB 14 and

16   SB 362?

17             MR. SWEETEN:  You can answer whether you

18   had discussions with anyone.  You can answer that

19   factual question.  Don't reveal the substance of any

20   conversation.

21       A.   I need more clarification about when you're

22   talking about.

23       Q.   (By Mr. Rosenberg)  At any time -- any time.

24   It would have to be, obviously, at a time when SB 14 was

25   either being formulated or drafted.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

303

1       A.    Yes.

2       Q.    Okay.  With whom did you have such

3    conversations?

4       A.    Members of the Texas Senate.

5       Q.    With which members of the Texas Senate?

6       A.    Many.

7       Q.    Can you identify -- were these -- and I'd like

8    to focus on conversations that were off the floor and

9    not on the record.

10      A.    Okay.  Then there -- ask the question again.

11      Q.    Sure.  Did you have any discussions that were

12   not on the public record with any Texas legislators

13   concerning differences between SB 14 and SB 362?

14      A.    Yes.

15      Q.    With whom?

16      A.    I had conversations with Senator Van de Putte.

17   I had conversations with Senator Whitmire.

18      Q.    Anyone else?

19      A.    That would probably be it.

20      Q.    Did you have conversations with any

21   constituents concerning differences between SB 362 and

22   SB 14?

23      A.    No.

24      Q.    Did you have conversations with anyone in any

25   executive agency as to differences between SB 362 and SB



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

304

1     14?

2          A.   No.

3          Q.   And when did you have the conversations with

4     Senator Van de Putte?

5          A.   As we were starting, it was after the bill was

6     filed and we were starting session and we were probably

7     within a day or so it being heard.

8          Q.   And what was the substance of that

9     conversation?

10               MR. SWEETEN:  Objection, privilege.

11         Q.   (By Mr. Rosenberg)  And when did you have the

12    conversation with Senator Whitmire?

13               MR. SWEETEN:  You can answer.

14         A.   More than one conversation.  A conversation in

15    the last quarter of the year, and then another -- at

16    least one other conversation in about the time we

17    started session.

18         Q.   (By Mr. Rosenberg)  And what was the substance

19    of that conversation?

20               MR. SWEETEN:  Objection, privilege.

21         Q.   (By Mr. Rosenberg)  Did you have discussions

22    with anyone off the public record concerning the effect

23    of SB 14 on minorities?

24               MR. SWEETEN:  I think the question is

25    you're asking about specific -- the substance of



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

305

1     specific conversations that he's had.  I think -- I

2     don't think he has to reveal that.  That's beyond just a

3     general subject matter description.

4               MR. ROSENBERG:  I really disagree.

5     Q.   (By Mr. Rosenberg)  I'll change it to the

6     effect of, if any, of SB 14 on minorities?

7     A.   Ask the question again, please.

8     Q.   Sure.  Did you have any discussions, not on the

9     public record, as to the effect --

10    A.   I'm sorry.  I don't understand "not in the

11    public record."

12    Q.   Well, meaning, as I think your counsel has

13    advised, that they're taking the position that

14    legislative privilege applies to anything that's not on

15    the public record.  And I think that has been stated

16    over and over again.  So I'm using your counsel's

17    terminology.

18               And my question is:  At any time, did you

19    have discussions with anyone, that was not on the public

20    record, concerning the effect, if any, of SB 14 on

21    minorities?

22    A.   And you're including legislators in session?

23    Q.   No, no.  Off the public record.  During the

24    session, yes, so long as it's not on what your counsel

25    considers the public record.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

306

1              MR. SWEETEN:  As phrased, I'm going to let

2     you answer whether or not you had such conversations

3     with anyone, whether or not you did.  Don't reveal any

4     substance --

5         A.   I did not have conversations that were not

6     privileged.

7              MR. SWEETEN:  Okay.  And you're not going

8     to reveal any of the substance of any such conversations

9     but you can reveal whether or not you've had a

10    conversation with someone --

11        A.   I just --

12             MR. SWEETEN:  -- on the issue of that.

13        A.   The question before this, I disclosed

14    conversations I had with Van de Putte and --

15             MR. SWEETEN:  Whitmire.

16        A.   -- Whitmire, and I've also said earlier that I

17    had a conversation with Ellis.

18        Q.   (By Mr. Rosenberg)  Right.

19        A.   That sits next to me.  And so I've already

20    testified to those conversations.

21        Q.   Well, this is a different question.  My

22    question is specifically:  Conversations not on the

23    public record with anyone concerning the effect, if any,

24    of SB 14 on minorities?

25        A.   And I can't answer that because I'm saying I



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

307

1    have already answered that question of the three that

2    would be included.  So if you're going to qualify your

3    question, anyone other than the three that I have

4    mentioned.

5         Q.   Well, I -- when I first asked you the question

6    which resulted in you giving me the names of Senator Van

7    de Putte and Whitmire, I didn't specify the effect, if

8    any, on minorities.  So now you're telling me that the

9    conversations that you had with Senator Van de Putte,

10   Senator Whitmire, and Senator Ellis had to do with the

11   effect, if any, of SB 14 on minorities; is that correct?

12        A.   I'm saying that it was part of the total

13   conversation.

14        Q.   Other than those conversations, did you have

15   discussions with any other legislators concerning the

16   effect, if any, of SB 14 on minorities?

17        A.   No.

18        Q.   Did you have discussions off the public record

19   with anyone from executive agencies as to the effect, if

20   any, of SB 14 on minorities?

21        A.   No.

22        Q.   Did you have discussions with any constituents

23   or lobbyists or public interest groups as to the effect,

24   if any, of SB 14 on minorities?

25        A.   No.



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

308

1          Q.    Did you have discussions with anyone concerning

2     the effect, if anything, if any, on election results of

3     SB 14?

4          A.    Not to my knowledge.

5          Q.    And that includes discussions with legislators,

6     with anyone from the executive agencies, Governor,

7     Lieutenant Governor, and constituents?

8          A.    Not to my knowledge.

9          Q.    I'd like you to take a look at United States

10    Exhibit -- Department of Justice Exhibit 46.

11         A.    Which is 46?

12         Q.    Should be in your batch there.  And turn to

13    Page 74, please.  And if you see, there's a quote from

14    you, and I'm going to focus your attention on the last

15    sentence where it says, last two sentences, you're

16    asking, "Have I done that?"  Oh, actually, we should

17    have to give context to this.

18                And I want you to turn a page back to

19    where Senator Watson says, "Well, and I'm looking

20    forward to that.  I'm saying to you, though, with regard

21    to your bill, Senate Bill 362, are you familiar with any

22    data or study that's been done with regard to some sort

23    of statistical analysis concerning the effect of the new

24    requirements of Senate Bill 362 on African-American

25    population, Hispanic, people making less than $35,000 a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

309

1     year," et cetera.

2                 MR. SWEETEN:  We -- Ezra, we've lost -- we

3     go from Page 74 to 89.

4          A.   We don't --

5                 MR. ROSENBERG:  No, no.  Go back to Page

6     73.  I'm sorry.  I was going back a page.

7                 MR. SWEETEN:  Okay.  He's going here.

8                 MR. ROSENBERG:  Right.  I was trying to

9     give context to this.

10                MR. SWEETEN:  Here, that's what he

11    read.  You can read that.

12         Q.   (By Mr. Rosenberg)  Have you had a chance to

13    read that, Senator?

14         A.   I have.

15         Q.   You see where on Page 74, where you're saying,

16    you're asking, "Have I done that?  The answer is no."

17    The phrase, "The answer is no," does that refer to doing

18    statistical analyses?

19                MR. SWEETEN:  You can -- don't reveal your

20    thoughts, mental impressions, opinions about

21    legislation.  You can reference the public record.

22         A.   The -- the statement speaks for itself.

23         Q.   (By Mr. Rosenberg)  Well, what does it mean?

24         A.   Privilege.

25         Q.   So you're telling me that you won't answer



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

310

1    under privilege the public statement that you made that,

2    quote, "The answer is no," end quote?

3         A.   (Conferring.)

4              MR. ROSENBERG:  Fine.  Let's move on.

5    Look, we don't have all night.  If that's your position,

6    that's --

7              MR. SWEETEN:  Ezra, you're already over.

8              MR. ROSENBERG:  I understand, but it would

9    be a lot easier if I was getting answers.

10             MR. SWEETEN:  I understand.  But I mean,

11   we're sitting here trying to analyze your question as to

12   whether or not we think it invades privilege.  Just give

13   us a second.

14        A.   I think it's clear what I'm saying, and I stand

15   by what I say.

16        Q.   (By Mr. Rosenberg)  Okay.  Let's just move on.

17             Next phrase, "But I am pulling data from

18   the academics that have done that and have delivered

19   back."  Did I read that correctly?

20        A.   Yes.

21        Q.   What data were you referring to?

22        A.   The testimony --

23             Is it all right for me to answer that?

24             MR. SWEETEN:  As to the testimony, yeah.

25        A.   The testimony was about to be delivered from



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                May 17, 2012

311

1    Indiana and Georgia on their voting results, and it came

2    from data that they had collected and that was about to

3    be delivered.

4         Q.   (By Mr. Rosenberg)  Okay.  And this will be the

5    one and only exhibit that I will mark.

6              (Exhibit 49 marked for identification.)

7         Q.   (By Mr. Rosenberg)  Senator, I'm showing you

8    what's been marked as Exhibit 49, and turning your

9    attention to the page number 48, which is the first page

10   with testimony on it, with discussion.  And the first

11   paragraph -- and I will represent, by the way, that this

12   is an excerpt from a statement by you and I think -- can

13   you verify that from your own memory?

14        A.   Yes.

15        Q.   Okay.  And you're quoting from the Baker-Carter

16   Commission that I think you talked about before.

17        A.   Yes.

18        Q.   And you say, "And regardless of whether one

19   believe that voter impersonation is widespread or

20   relatively rare, it can be no serious dispute that it is

21   a real effect that can be substantial, because in a

22   close election, even a small amount of fraud can make

23   the margin of difference."  Do you see that?

24        A.   Yes.

25        Q.   And is that a statement with which you agree?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                              May 17, 2012

312

1        A.    That is a statement that I pulled from the

2   Baker and Carter commission.

3        Q.    And did you quote it because you agreed with

4   it?

5        A.    Yes.

6        Q.    And what did you mean then by using the words

7   "can make a difference"?

8        A.    I repeated what they had quoted from their

9   quote.

10       Q.    And what did you understand the phrase "can

11  make a difference" to mean from their quote?

12       A.    I understood it can make a difference.

13       Q.    Do you -- are you -- were you taking it to

14  understand that a person who's not supposed to vote and

15  votes can make a difference in an election?

16       A.    I take it on its face for what it says.

17       Q.    Do you believe that a person who is eligible to

18  vote but can't because he doesn't have a photo ID can

19  make a difference in an election?

20            MR. SWEETEN:  Don't reveal your mental

21  processes in passing a legislation.  It's legislatively

22  privileged.

23       A.    Privilege.

24       Q.    (By Mr. Rosenberg)  Generally speaking, as a

25  matter of general practice, would you want to create a



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

313

1   system that stopped more eligible persons from voting

2   than stopped ineligible persons from voting?

3              MR. SWEETEN:  Do not reveal your thoughts,

4   mental impressions, opinions about legislation,

5   including Senate Bill 14.  Legislatively privileged.  Or

6   any conversations because it's legislatively

7   privileged.  Objection.

8        A.    Privilege.

9        Q.    (By Mr. Rosenberg)  Are you aware, sitting

10  today, here today, of how many Texans don't have photo

11  ID?

12       A.    I do not have the exact number.

13       Q.    Do you have an approximate number?

14       A.    I have only the data that we received during

15  the testimony of the bill.

16       Q.    And what number is that?

17       A.    I don't have a number.

18       Q.    Is it more than 500,000?

19       A.    There's no way to know that.

20       Q.    Is it more than the number of voter

21  impersonations with which you're aware -- of which

22  you're aware?

23              MR. SWEETEN:  I'm going to object to the

24  extent it calls for his mental impressions, opinions

25  about legislation, including Senate Bill 14, or to the



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

314

1      extent that it reveals any conversations he's had with

2      any of the enumerated individuals or agencies we've

3      discussed.

4                  MR. ROSENBERG:  But to the extent that

5      it's in the public record and he has knowledge, he can

6      testify, even according to your theories.

7          A.    Please show me in the public record what's been

8      said.

9          Q.    (By Mr. Rosenberg)  Are you aware of assertions

10     on the public record that minorities are less likely to

11     have public identification -- photo identification?

12         A.    Ask the question again, please.

13         Q.    Sure.  Are you aware of assertions on the

14     public record that minorities are less likely to have

15     photo identification?

16         A.    I'm aware that it has been asserted.

17         Q.    Do you disagree with the assertion?

18         A.    I have no basis to know either way.

19         Q.    Okay.  Are you aware of assertions on the

20     public record that minorities are less likely to have

21     access to driver's license facilities in terms of having

22     cars or public transportation?

23         A.    I'm aware that assertions have been made.

24         Q.    Do you doubt the assertions?  Do you question

25     the assertions?



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                              May 17, 2012

                                                        315

1          A.   Yes, I do.

2               MR. SWEETEN:   In answering that question,

3     don't reveal your thought processes or discussions with

4     respect to this -- with respect to this legislation;

5     it's legislatively privileged.   You can answer

6     otherwise.

7          Q.   (By Mr. Rosenberg)   Have you answered?

8          A.   Ask the question again.

9          Q.   Sure.   Are you -- do you doubt the -- do you

10    deny the assertion that minorities have less access to

11    driver's license facilities, in terms of having motor

12    vehicles --

13         A.   "Deny" and "doubt" are different words.

14         Q.   Well, I'm going to rephrase the question, and

15    your attorney can object or counsel you.

16              Let me just say again.   Do you deny the

17    assertion that minorities have less access to driver's

18    license facilities in terms of motor vehicles or public

19    transportation?

20              MR. SWEETEN:   Don't reveal your thoughts,

21    your mental impressions, your opinions about legislation

22    or conversations that you've had.   Those are

23    legislatively privileged.

24         A.   Privilege.

25         Q.   (By Mr. Rosenberg)   Are you aware of assertions



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

Senator Troy Fraser                                    May 17, 2012

316

1       that minorities are more likely to be below the poverty

2       line and therefore would more difficulty for paying for

3       the underlying documents necessary to get photo

4       identifications than nonminorities?

5            A.   Am I aware of the assertion?

6            Q.   Yes.

7            A.   Yes.

8            Q.   Do you deny the assertion?

9                 MR. SWEETEN:  Don't reveal matters subject

10      to legislative privilege in answering the question.  If

11      you can answer the question without doing so, you can.

12           A.   Privilege.

13           Q.   (By Mr. Rosenberg)  Do you agree that a person

14      who doesn't have photo identification, doesn't have easy

15      access to driver's license facilities, may have to take

16      time off from work in order to go to the driver's

17      license facilities and doesn't have a spare $22 to pay

18      for underlying documents to get photo identification,

19      may be less likely to vote under SB 14 than people who

20      do have those things?

21                MR. SWEETEN:  Objection, compound.

22      Objection, calls for speculation.  Objection, vague.  In

23      answering that, don't reveal matters, thoughts, mental

24      impressions or opinions about legislation, including

25      Senate Bill 14 or matters communicated to you within --



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

1    by any legislators, legislative staff, or other

2    enumerated individuals or entities.  If you can answer

3    without doing so, you can attempt to answer his

4    question.

5         A.   Privilege.

6         Q.   (By Mr. Rosenberg)  And my last question:  Just

7    sitting here today, do you have a basis to disagree that

8    minorities will be disproportionately affected by SB

9    14?

10             MR. SWEETEN:  In answering this question,

11   do not reveal matters of legislative privilege,

12   including your thoughts, mental impressions about the

13   legislation, in furtherance of the legislative process,

14   or discussions you've had with legislators, legislative

15   staffs, state agencies, Texas Legislative Council, or

16   constituents.  You can refer to matters of the public

17   record in answering the question.

18        A.   Privilege.

19             MR. ROSENBERG:  Subject to our moving to

20   compel, I'm leaving this open after all the privilege

21   issues and documents are produced, et cetera, I think

22   we're through for the day.

23             MR. SWEETEN:  Okay.  I would like the time

24   total.  I would like the time total appended to the

25   deposition.  And we will reserve questions of Senator



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

318

1      Fraser to the time of trial.

2                (Deposition concluded at 6:30 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

319

1    CHANGES AND SIGNATURE

2           RE: TEXAS VS. HOLDER, ET AL

3    PAGE   LINE   CHANGE              REASON

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20       I, SENATOR TROY FRASER, have read the foregoing

21   deposition and hereby affix my signature that same is

22   true and correct, except as noted above.

23

24                       _____

25                       SENATOR TROY FRASER



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

Senator Troy Fraser                                    May 17, 2012

320

```
 1      THE STATE OF _____)

 2      COUNTY OF_____)

 3

 4           Before me,_____, on this day

 5      personally appeared SENATOR TROY FRASER, known to me (or

 6      proved to me under oath or through_____

 7      (description of identity card or other document) to be

 8      the person whose name is subscribed to the foregoing

 9      instrument and acknowledged to me that they executed the

10      same for the purposes and consideration therein

11      expressed.

12           Given under my hand and seal of office

13      this_____day of _____, 2012.

14

15

16           _____

             NOTARY PUBLIC IN AND FOR

17           THE STATE OF _____

18

19

20

21

22

23

24

25
```



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

321

1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2
    STATE OF TEXAS,                )
3                                  )
                  Plaintiff,       )
4                                  )
    VS.                            )
5                                  )
    ERIC H. HOLDER, JR. in his     )
6   official capacity as Attorney  )
    General of the United States,  )
7                                  )
                  Defendant,       )
8                                  )
    ERIC KENNIE, et al,            )
9                                  )
        Defendant-Intervenors,     )
10                                 )
    TEXAS STATE CONFERENCE OF      )   CASE NO. 1:12-CV-00128
11  NAACP BRANCHES,                )   (RMC-DST-RLW)
                                   )   Three-Judge Court
12      Defendant-Intervenors,     )
                                   )
13  TEXAS LEAGUE OF YOUNG VOTERS   )
    EDUCATION FUND, et al,         )
14                                 )
        Defendant-Intervenors,     )
15                                 )
    TEXAS LEGISLATIVE BLACK        )
16  CAUCUS, et al,                 )
                                   )
17      Defendant-Intervenors,     )
                                   )
18  VICTORIA RODRIGUEZ, et al.,    )
                                   )
19      Defendant-Intervenors.     )
20                  REPORTER'S CERTIFICATION
                  DEPOSITION OF SENATOR TROY FRASER
21                    MAY 17, 20112
22          I, Chris Carpenter, Certified Shorthand Reporter in
23  and for the State of Texas, hereby certify to the
24  following:
25          That the witness, SENATOR TROY FRASER, was duly



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

322

1    sworn by the officer and that the transcript of the oral
2    deposition is a true record of the testimony given by
3    the witness;
4        That the deposition transcript was submitted on the
5    _____day of _____, 2012, to the witness or to the
6    attorney for the witness for examination, signature and
7    return to_____, by
8    _____, 2012; and if returned, the original
9    transcript will forwarded to Elizabeth Westfall, the
10   custodial attorney;
11       That the amount of time used by each party at the
12   deposition is as follows:
13       Ms. Westfall: 6 hours, 30 minutes
14       Mr. Rosenberg:  30 minutes
15       I further certify that I am neither counsel for,
16   related to, nor employed by any of the parties or
17   attorneys in the action in which this proceeding was
18   taken, and further that I am not financially or
19   otherwise interested in the outcome of the action.
20       Certified to by me this 19th day of May, 2012.

22   Chris Carpenter, Texas CSR 1151
23   Expiration Date:  12/31/2012
     100 Congress Avenue, Suite 2000
24   Austin, TX  78701
     (512)328-5557
25   Firm Registration No. 283



Toll Free: 800.211.DEPO
Facsimile: 512.328.8139

Suite 220
3101 Bee Caves Road
Austin, TX 78746
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS