**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | **)** | |
| **STATE OF TEXAS,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Civil Action No. 12-cv-128** |
| | **)** | **(DST, RMC, RLW)** |
| **ERIC H. HOLDER, JR.,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

### ORDER ON TEXAS' MOTION TO COMPEL

Before the Court are Texas' Motion to Compel and Defendant-Intervenors' Cross Motion for a Protective Order. (Dkt. Nos. 130, 146, 147, 150, 159 & 160). Upon consideration of the submissions and the entire record, and for the following reasons, the Court **DENIES** Texas' Motion to Compel and **DENIES AS MOOT** Defendant-Intervenors' Cross Motion for a Protective Order.

1. Texas moves to compel the Attorney General to answer document requests and interrogatories seeking:

> (1) information on Texas residents who possess United States Passports, military identification, or citizenship certificates; (2) information on federal agency determinations of disability status that would allow certain registered voters to vote without showing a photo ID; and (3) information regarding the citizenship status of individuals registered to vote in Texas.

(Dkt. No. 130 at 1-2). Expedited discovery in this matter began on March 15, 2012. (Dkt. No. 17). Texas failed to raise its intention to seek this information at the parties' Rule 26(f) conference, their conferences regarding electronically-stored information, or during numerous

1

early status conferences with the Court.  (Dkt. No. 137 at 3; Dkt. No. 94 at 3).  In fact, it appears

that Texas waited until April 13, 2012, when it first propounded the discovery requests at issue:

> First Set of Requests for Production No. 3:
>
> Please produce all documents, electronically stored information, or databases that identify Texas residents who possess a United States military identification card.
>
> First Set of Requests for Production No. 4:
>
> Please produce all documents, electronically stored information, or databases that identify Texas residents who possess a United States passport or passport card.
>
> First Set of Requests for Production No. 6:
>
> Please produce all documents, electronically stored information, or databases that identify Texas residents who have been determined by the United States Social Security Administration to have a disability.
>
> First Set of Requests for Production No. 7:
>
> Please produce all documents, electronically stored information, or databases that identify Texas residents who have been determined by the United States Department of Veterans Affairs to have a disability rating of at least 50 percent.
>
> Plaintiff's First Set of Interrogatories No. 10:
>
> For all registered Texas voters who you contend lack a driver's license, a personal identification card, or a concealed handgun license, please identify each individual who has a United States passport or passport card, a United States military identification card, or a United States citizenship certificate with a photograph.

The Attorney General responded to these requests on April 20 and 21, 2012, objecting that the

requested documents were not in his possession, custody or control.  (Dkt. No. 130-6 at 9-11, 24;

Dkt. No. 130-7 at 14-16).

Texas followed those requests up with two additional interrogatories, which it propounded on May 9, 2012:

> Plaintiff's Second Set of Interrogatories No. 1:
>
> Identify every person in the State's voter registration database whose social security number is associated with a different name in Social Security Administration records.
>
> Plaintiff's Second Set of Interrogatories No. 2:
>
> Identify every person in the State's voter registration database who is not a United States citizen.

On May 16, 2012, the Attorney General objected to these interrogatories again on the basis that the requested information was outside his possession, custody or control. (Dkt. No. 130-8 at 3-7).

2.      There appears to be no dispute that the information Texas seeks is currently in the sole physical possession of at least five federal agencies outside the Department of Justice: 1) the Department of Defense; 2) the Department of Homeland Security; 3) the Department of State; 4) the Department of Veterans Affairs; and 5) the Social Security Administration. (Dkt. No. 94 at 3, n.1; Dkt. No. 147 at 2-3). In its Motion, Texas first argues that, because the United States is the real party in interest, the Attorney General has possession of data and documents maintained by the federal agencies. (Dkt. No. 130-1 at 8-9). In its Reply, Texas claims that:

> The central contention of the United States' response in opposition is that the federal agencies are not parties to the litigation. This contention is neither relevant nor responsive to the State's argument because the relief Texas seeks does not depend on the party status of federal agencies.

(Dkt. No. 159 at 1).  Texas argues that the Attorney General has "control" over the documents within the meaning of FRCP 33 and 34 because he "has the legal authority to obtain the requested documents and information."[1]  (Dkt. No. 159 at 1-2).

3.      Texas bears the burden of establishing that the Attorney General has control over the documents.  See 7 MOORE'S FEDERAL PRACTICE § 34.14(2)(b) (3d ed. 2004) ("The burden of establishing control over the documents sought is on the party seeking production.").  "It is well established that 'control,' which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether the production is required."  Alexander v. F.B.I., 194 F.R.D. 299, 301 (D.D.C. 2000) (citing Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984)).

4.      Texas has failed to meet its burden of establishing that the Attorney General has the legal right to obtain on demand the documents and databases from the federal agencies. Although Texas relies on United States v. American Telephone & Telegraph Co., 461 F. Supp. 1314, 1330-37 (D.D.C. 1978), that case is distinguishable.  The court in that case narrowed its ruling solely to the "peculiar facts" of that "peculiar action."  Id. at 1333-34.  That case involved the federal government, as plaintiff, prosecuting the federal antitrust laws.  Moreover, the government sought relief "national in scope," and the case implicated many agencies and their evidence.  Id.  Standing alone, the AT&T case fails to establish the Attorney General's control over the documents and databases at issue in this case.

5.      For the first time in its Reply, Texas argues that the Department of Justice has the right to obtain the information on demand under the applicable *Touhy* regulations.  As support,

---

[1]      Texas has failed to cite any authority for the proposition that, even if the United States is the real party in interest, an opposing party has the right to obtain without a Rule 45 subpoena any documents in the possession of any and all federal agencies, particularly where those agencies are not at all involved in the pending litigation.

Texas cites as examples such regulations for four of the agencies. (Dkt. No. 159 at 4-5). Even assuming it were proper for this Court to consider an argument Texas raises for the first time in its Reply,[2] none of those regulations support the proposition that the Attorney General has the legal right to obtain the documents on demand. The regulations upon which Texas relies stand at most for the proposition that the Department of Justice need not go through the formal *Touhy* regulations when requesting information from an agency. Those regulations do not state that any particular agency is required to hand over documents to the Department of Justice in any litigation on demand, even where the particular agency's conduct, policies or regulations are not at issue in that litigation. Texas is likely aware of this, having brought these regulations to the Court's attention only in passing and only for the first time in its Reply. See id. (citing with a "see, e.g." signal and without discussion miscellaneous parts of the agencies' *Touhy* regulations).

6.      Any prejudice to Texas from the failure to obtain this information is assignable solely to Texas. Despite knowing by April 20—and at the latest by April 24, 2012—that the Attorney General would require the service of Rule 45 subpoenas, Texas has failed to serve any such subpoenas. (Dkt. No. 94 at 4). The matter was thereafter discussed in numerous filings and discussions with the Court, prompting the Court to note in its May 22 Order that "Texas has inexplicably failed to serve any such subpoena to commence the process of gathering the data." (Dkt. No. 137 at 4). Had Texas served those subpoenas, we would have had no need to

---

[2]      "As a general rule, courts should decline to consider arguments raised for the first time in reply." Huang v. Napolitano, 721 F. Supp. 2d 46, 51 (D.D.C. 2010); see, e.g., Am. Wildlands v. Kempthorne, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief."); McBride v. Merrell Dow & Pharm., 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (internal citation omitted). Consequently, the failure to raise an argument in the original motion constitutes waiver. See Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 37 (D.D.C. 2010) (applying Am. Wetlands and McBride).

determine any of the "possession" or "control" issues raised in this Motion and could, if appropriate, have enforced the subpoenas if the agencies failed to produce information relevant to Texas's defense of SB 14.

7.      Despite being warned on numerous occasions that it should join this issue in time for the data to be produced, Texas waited until May 21, 2012, the last day for filing a motion to compel in this case.  By that time, however, Texas had to know that the information would not be produced in time for it to be used in Texas' expert reports or by the close of fact discovery on June 15.  See Dkt. No. 137 at 3 ("At this point, the Court finds that it is doubtful that the federal database information sought by Texas can be produced in time for it to be incorporated into the parties' expert reports and expert testimony.").  Indeed, as the Attorney General contends—and as Texas does not dispute—"there is now no practical way that the non-party federal databases and other information could be produced in time to be analyzed by expert witnesses or presented at trial." (Dkt. No. 147 at 12-13).  Texas' allegation that it did not file a motion to compel sooner because the Court instructed it to refrain from taking further steps is directly contrary to the record because the Court never gave any such instruction.  See also 5/18/12 Tr. at 42:7-11 (Judge Wilkins: "Why haven't you filed a motion to compel, sir, if that's your position?  That's what you do in litigation.  If you get an objection that you think is an improper objection, you file a motion to compel."  Mr. Frederick: "Understood.  And the only, the only reason that we haven't [done] that is we've been trying to pursue the subpoena route and have pretty recently gotten enough information to determine that we don't think it's going to work.") (emphasis added).  Moreover, back on May 3, counsel for Texas expressly stated that Texas did not wish to delay the July 9, 2012 trial date if it were unable to obtain this data, and conceded that it could prove its case without the information.  See 5/3/12 Tr. at 107:24-108:5 (Mr. Frederick: "I don't want to

give the impression that if we can't get that, we don't think we can prove our case."  Judge Tatel: "In other words, if you have to you'll do without it."  Mr. Frederick: "Yes.  We're trying to figure out alternative ways to get the information.").

8.      We also think it significant that Texas failed to prosecute the Rule 30(b)(6) Notice of Deposition of the Social Security Administration that it served upon the Attorney General.  In that Notice, Texas sought much of the same information it currently seeks in this Motion.  (Dkt. No. 133-3).  In its Motion for Protective Order, the Attorney General argued that the SSA was not a party to the litigation and had not been properly subpoenaed under Rule 45.  (Dkt. No. 133-1 at 2-5).  The Attorney General further argued that the notice sought information beyond the possession, custody or control of the Attorney General.  (Id. at 6-8).  In other words, the issues raised in the Attorney General's Motion for Protective Order were the same issues raised in this Motion.  Despite this, however, Texas wholly failed to respond to the Attorney General's Motion.  Accordingly, this Court granted the SSA's motion as conceded.  See Court's Minute Entry dated May 25, 2012.  Texas never filed any motion for reconsideration of that Order.  In sum, despite the fact that Texas now claims that it needs the information in the federal agency databases, Texas' failure to obtain the information in time for trial is attributable solely to Texas' strategic decisions throughout discovery.

9.      Because we deny Texas' motion to compel, we deny as moot Defendant-Intervenors' motion for a protective order.

For the foregoing reasons, Texas' Motion to Compel is **DENIED** and Defendant-Intervenors' Cross Motion for a Protective Order is **DENIED AS MOOT**.

**SO ORDERED**.

Date:  June 8, 2012

/s/
DAVID S. TATEL
United States Circuit Judge

7

/s/

ROSEMARY M. COLLYER
United States District Judge


/s/

ROBERT L. WILKINS
United States District Judge