IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 1:12-cv-00128 |
| | § | RMC-DST-RLW |
| ERIC H. HOLDER, JR. in his | § | |
| Official capacity as Attorney General | § | |
| Of the United States, | § | |
| | § | |
| *Defendants*, | § | |
| | § | |
| ERIC KENNIE, *et al.*, | § | |
| | § | |
| Defendants-Intervenors. | § | |
| _____ | § | |

—

**<u>KENNIE DEFENDANT-INTERVENORS' MOTION</u>**
**<u>FOR ATTORNEYS' FEES, EXPENSES AND COSTS</u>**
**<u>WITH SUPPORTING POINTS AND AUTHORITIES</u>**

Pursuant to 28 U.S.C. § 1920, 42 U.S.C. § 1973l(e), 42 U.S.C. § 1988. Fed. R. Civ. P.

54(d), and this Court's Local Rule, LCvR 54.2(a), Defendant-Intervenors Eric Kennie, *et al.*,[1]

(hereafter "Kennie Intervenors") respectfully move this Court for an order granting attorneys'

fees, expenses, and costs to them, as prevailing parties in this Voting Rights Act case and their

successful defense in opposition to the Texas photo ID bill, SB 14, enacted by the Texas

Legislature in 2011.  Pursuant to LCvR 7(m), counsel for the Kennie Intervenors contacted

counsel for the Plaintiff State of Texas and was advised that Plaintiff opposes this motion.

---

[1] The movants include Defendant-Intervenors Eric Kennie, Anna Burns, Michael Montez, Penny Pope, Marc Veasey, Jane Hamilton, David de la Fuente, Lorraine Birabil, Daniel Clayton, and Sergio DeLeon.

The provision in the Voting Rights Act (42 U.S.C. § 1973l(e)) that is most relevant to this fee requests states: "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."

The Kennie Intervenors intervened in this action to protect and enforce their voting rights under the Fourteenth and Fifteenth Amendments to the United States Constitution.  The legislative history of section 1973l(e) makes clear that in suits under Section 5 of the Voting Rights Act, "the parties seeking to enforce such rights may be the defendants and/or defendant-intervenors." S. Rep. No. 94-295, at 40 n.42 (1975); *see also Donnell v. United States*, 682 F.2d 240 (D.C. Cir. 1982) (noting that Defendant Intervenors are entitled to attorney's fees in Section 5 preclearance cases such as this when intervenors "proposed different theories and arguments for the court's consideration and . . . the work performed was of important value to the court").

This motion may be decided by either a single judge of this Court or the entire three-judge court.[2]  Based on this motion, the attached supporting materials, and the record in this case, the Kennie Intervenors seek a total sum of $353,150.97 in attorneys' fees, expenses and costs.

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

On January 24, 2012, the State of Texas filed a complaint for declaratory judgment that SB 14, the Texas photo ID bill, complied with Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  One week later, on February 1, 2012, the Kennie Intervenors were the first parties to

---

[2] In either event, any appeal from an order awarding or denying attorneys' fees would lie to the U.S. Court of Appeals for the D.C. Circuit.  *See, e.g.*, *Castro Cnty., Tex. v. Crespin*, 101 F.3d 121, 124-26 (D.C. Cir. 1996); *Watkins v. Fordice*, 7 F.3d 453, 455 n.2 (5th Cir. 1993); *see also Comm'rs Court of Medina Cnty., Tex. v. United States*, 683 F.2d 435 (D.C. Cir. 1982).

seek intervention, opposing Section 5 preclearance of SB 14.[3]  The Kennie Intervenors

contended that SB 14 was not entitled to Section 5 preclearance because it was adopted with a

racially discriminatory intent and would have a racially discriminatory effect.  This Court

granted the Kennie Intervenors' Motion to Intervene on March 15, 2012.

> After various other groups sought and were granted intervention, this Court on April 13,

2012, issued an order which stated in part:

> All intervenors shall identify a single attorney to examine a deponent at any
> deposition.  The questioning at trial will likewise be limited.  Furthermore, the
> intervenors shall appoint a single attorney to be the administrative contact point
> with the Court and all briefing done by the intervenors shall be consolidated.  The
> intervenors are cautioned to avoid duplication of efforts. Should preclearance be
> denied, the Court will not grant fee requests for duplicative work.

Minute Order April 13, 2012.

## 1.   THE ROLE OF KENNIE INTERVENORS' COUNSEL IN THIS CASE

> Pursuant to this Order, counsel for the Kennie Intervenors, Mr. Hebert, served as co-

administrative counsel with counsel for the Defendant-Intervenors Mexican American

Legislative Caucus (MALC), *et al.*, Mr. Ezra Rosenberg, throughout this case.  As detailed

below and in the attached Declarations and time sheets, the Kennie Intervenors adhered to the

Court's admonition to avoid duplication of efforts.

> During discovery, a number of disputes arose, ranging from discovery of databases

maintained by the State of Texas, and various motions for protective orders and to compel

discovery relating to databases.  In addition, there were discovery disputes involving assertions

of legislative privilege by the State of Texas.  These disputes often required telephonic

conference calls with the Court and, in many instances, orders by the three-judge court were

---

[3] Other parties were subsequently granted intervention by this Court and opposed preclearance of
SB 14.

necessary to resolve them.  The Kennie Intervenors' counsel participated in all those telephonic conference calls.  The State also filed motions *in limine* to exclude expert testimony of various experts, including an expert witness designated by the Kennie Intervenors, Dr. Allan Lichtman.  See ECF Docs. 194, 225 and 251.  The Kennie Intervenors successfully defeated the State's motion *in limine*.[4]

Trial was held over a one-week period from July 9-13, 2012, with three and a half hours of closing arguments on July 13, 2012.  During the trial, the Court heard testimony from twenty witnesses, including several witnesses sponsored by the Kennie Intervenors: Texas State Senators Wendy Davis and Rodney Ellis; election lawyer and expert Buck Wood; and expert witness Dr. Allan Lichtman.  In addition, "[t]he parties . . . presented thousands of pages of deposition testimony, expert reports, scholarly articles, and other paper evidence."  ECF No. 340, at 12-13.  At trial, counsel for the Kennie Intervenors also performed the cross-examination of Keith Ingram, Secretary of State for the State of Texas.  Counsel for the Kennie Intervenors also was one of two Intervenors to participate in the closing arguments.

This Court issued its unanimous decision on August 30, 2012, denying preclearance to SB 14.  The voluminous trial record in this case includes evidence taken in open court, exhibits, expert reports, and post-trial briefing.  The Kennie Intervenors were actively involved throughout this entire case, including the discovery proceedings (including resolution of discovery disputes in telephonic conferences with the Court), the conduct of the trial, closing arguments, and post-trial briefing.  This active role is not surprising, especially given that counsel for the Kennie Intervenors served as co-administrator for the Defendant-Intervenor parties.  That role required Mr. Hebert to communicate regularly with Mr. Rosenberg, the co-administrative counsel, to

---

[4] By order entered July 3, 2012, this Court denied the motion *in limine* to exclude Dr. Lichtman's testimony.

manage the litigation for Intervenors and avoid duplication of tasks.  As the Court will note in

Mr. Hebert's Declaration (Exhibit A) and his attached timesheets (Exhibit B), Mr. Hebert spent

many, many hours communicating with Mr. Rosenberg and other Intervenors' counsel,

managing and coordinating the litigation on behalf of all Defendant Intervenors.  *Mr. Hebert has*

*not sought compensation for any of those hours in this fee motion.  See Exhibit B.*

Also, because the Kennie Intervenors were also represented by Chad W. Dunn from

Brazil & Dunn in Houston, Texas, the Kennie Intervenors attended many of the depositions in

Texas (and did not incur the time and expense of D.C.-based counsel, Mr. Hebert, travelling to

Texas to attend depositions).  Mr. Dunn represented several witnesses for deposition including

Eric Kennie, Marc Veasey, Senator Wendy Davis, Senator Rodney Ellis and Anna Burns.  Mr.

Dunn and his law partner, Mr. Brazil, also participated in and defended depositions too

numerous to list.  In fact, the Kennie Intervenors attended, on behalf of all intervenors, as many

or more depositions than any of the other Defendant Intervenors.

In sum, the Kennie Intervenors played a significant and important role in achieving the

judgment that this Court entered.  As we explain in detail below, this Court relied on testimony

offered at trial by the Kennie Intervenors in denying preclearance to SB 14.

## 2. <u>THE EVIDENCE OFFERED BY THE KENNIE INTERVENORS AT TRIAL AND THIS COURT'S AUGUST 30, 2012 DECISION DENYING PRECLEARANCE</u>

The Kennie Intervenors called four witnesses at trial and each provided important and

unique evidence about the adoption of SB 14.  Senator Wendy Davis, for example, testified

among other things about amendments to SB 14 that she had offered in the 2011 legislative

session which would have reduced some of the harmful effects of SB 14 and provided some

relief for indigent persons.  Sen. Davis's testimony on this point was as follows:

> Q. In the first category of amendments that you discussed
> indigency, why were you concerned about indigent impact for the
> bill?
> A. Well, we had had some testimony in both sessions from experts
> who had looked at the overall impact of voter ID laws. The
> concern that as much as 10 to 11 percent of persons who currently
> legally were exercising their right to vote would be impacted by
> such a bill because of their inability to get a new ID.
> Q. And in your district in your state have you looked into the types
> of folks that predominantly make up the indigent citizen rate?
> A. Yes.
> Q. What did you, what have you discovered?
> A. Well, what is the case in the State of Texas as I suppose it is
> elsewhere is that our indigent population is primarily made up of
> persons who are minority.

Trial Tr. 7/12/2012 (AM) 29:20-22.

Senator Davis's testimony about the various amendments she had offered to alleviate the

burdens that SB 14 would impose on the poor was reflected in this Court's decision on the merits.

As this Court observed in its August 30, 2012 opinion denying preclearance to the photo ID bill:

> Finally, during closing arguments, Texas's counsel complained that they had been
> shouldered with an 'impossible burden' in this litigation. Trial Tr. 7/13/2012
> 27:14. This may well be correct, but Texas's lawyers have only their client to
> blame. The State of Texas enacted a voter ID law that—at least to our
> knowledge—is the most stringent in the country. That law will almost certainly
> have retrogressive effect: it imposes strict, unforgiving burdens on the poor, and
> racial minorities in Texas are disproportionately likely to live in poverty. And
> crucially, the Texas legislature defeated several amendments that could have
> made this a far closer case.  Ignoring warnings that SB 14, as written, would
> disenfranchise minorities and the poor, *see, e.g.*, JA 1300-03; 1329, the legislature
> tabled or defeated amendments that would have:
>
> - waived all fees for indigent persons who needed the underlying documents to
>   obtain an EIC, Trial Tr. 7/12/2012 (AM) 30:17-31:7, 33:23-24;
>
> - reimbursed impoverished Texans for EIC-related travel costs, JA 2139-42;
>
> - expanded the range of identifications acceptable under SB 14 by allowing
>   voters to present student or Medicare ID cards at the polls, Trial Tr. 7/12/2012
>   (AM) 34:21-24; JA 1246-47;

- required DPS offices to remain open in the evening and on weekends, JA 1337; and

- allowed indigent persons to cast provisional ballots without photo ID. Trial Tr. 7/12/2012 (AM) 35:3-37:1.

Put another way, if counsel faced an "impossible burden," it was because of the law Texas enacted—nothing more, nothing less.

ECF No. 340 (Opinion, *Texas v. Holder*, Civil Action No. 12-cv-128) at 55-56.

Senator Wendy Davis also offered testimony about how the so-called "free ID" in Texas[5] was not really free at all; that in order to get a "free ID" under SB 14, a person had to produce underlying documents, such as a birth certificate, that cost money.  Trial Tr. 7/12/2012 (AM) 31-34.  She explained how she offered an amendment to alleviate this burden on would-be voters, but it was rejected.  *Id*. at 32:1-5, 34:23-24.

This testimony by Senator Davis about the cost of the so-called "free ID" is also reflected in this Court's decision denying preclearance to SB 14.  For example, this Court observed that "[a]lthough SB 14 prohibits DPS from 'collect[ing] a fee for an [EIC],' *id*. § 521A.001(b), EICs will not be costless. Not only will prospective voters have to expend time and resources traveling to a DPS office, but once there they will have to verify their identity by providing 'satisfactory' documentation to DPS officials."  ECF No. 340, at 3.  The Court's decision later observed: "In order to obtain an EIC, would-be voters will need to present one of several underlying documents, and as Texas concedes, the least expensive option for most prospective voters who lack supporting identification will be a certified copy of their birth certificate—which costs at least $22."  *Id*. at 46.

In reaching its decision denying preclearance, this Court also cited the trial testimony of Senator Rodney Ellis.  The Court noted that "State Senator Rodney Ellis testified that in his

---

[5] The so-called "free ID" is referred to in SB 14 as an "election identification certificate" or EIC.

'inner city district' in Houston, DPS offices are not 'easily accessible by public transportation.' Trial Tr. 7/11/2012 (PM) 34:8-12." ECF No. 340, at 49. This Court then concluded: "If DPS offices are inaccessible by public transportation in Houston, Texas's largest city, we seriously doubt their accessibility in rural areas—which, presumably, are less likely to have public transportation infrastructure. Unfortunately, we are left to wonder. Texas, which bears the burden of proof, submitted absolutely nothing to counter this testimony or to show whether its DPS offices are reachable via public transportation." *Ibid.*

The Kennie Intervenors also presented the testimony at trial of an expert witness, Dr. Allan Lichtman. *See* Trial Tr. 07/12/2012 (AM) 40-81. Dr. Lichtman's testimony responded to claims by State of Texas experts (Dr. Thomas Sager and Dr. Daron R. Shaw) that the proposed Texas voter identification law (SB 14) did not have a disparate impact on the opportunities for minorities to vote in Texas elections.[6] Dr. Lichtman testified that there were serious flaws in Dr. Sager's analysis, including his effort to match registration lists with driver's license records. In particular, Dr. Lichtman testified that Dr. Sager erroneously excluded more than one million unmatched registrants from his analysis. Moreover, both Dr. Sager's initial analysis and his corrected analysis, according to Dr. Lichtman's testimony, showed racial disparities in the list of unmatched voters, indicating that, if implemented, SB 14 would have a retrogressive effect on minority voter opportunities. Dr. Lichtman's testimony also showed that Dr. Shaw's surveys failed to meet elementary reliability or reality checks that were crucial for surveys with only about a two percent response rate, far lower than the standard in the field. The failure to meet these reality checks showed that no reliable conclusions could be drawn from Dr. Sager's study. Trial Tr. 07/11/2012 (AM) 55-57.

_____

[6] Dr. Lichtman examined the reports of both experts and listened to their testimony in Court. He also read the report and listened to the testimony of plaintiffs' expert Dr. Stephen Ansolabehere.

Dr. Lichtman also challenged the claim of the State of Texas's other expert, Dr. Shaw, that social science studies fail to show turnout effects and in particular a disproportionate effect on minorities from voter identification laws.  Dr. Lichtman cited a study by Alvarez, Bailey, and Katz noting that such laws disproportionately reduce turnout among those of lower socio-economic standing and "given nationwide and particularly in Texas, a very high correlation between being minority and having low socioeconomic standing regardless of the causal relationship, the effect would be to have a disproportionate impact on the turnout of minorities." The State of Texas declined to cross-examine Dr. Lichtman.

Dr. Lichtman's testimony was significantly reflected in the opinion of this Court denying preclearance.  As Dr. Lichtman testified, the Court found that the State of Texas had failed to meet its burden of showing that SB 14 did not have a discriminatory effect on the ability of minorities to cast ballots in Texas.  Consistent with Dr. Lichtman's testimony, the Court also found that SB 14 "will likely have retrogressive effects."  ECF No. 340 (Opinion, *Texas v. Holder*, Civil Action No. 12-cv-128) at 1.  Specifically in accord with Dr. Lichtman's testimony, the Court rejected the State's claims that social science studies had found that voter ID laws had no negative impact on voter turnout.  *Id*. at 24-25.  The Court's decision was also consistent with Dr. Lichtman's testimony that analyses performed by Texas's experts failed to provide reliable results and conclusions regarding the impact of SB 14 on minority voter opportunities.  *Id*. at 29-32, 37-42.  Further, the Court's opinion also reflected Dr. Lichtman's testimony about the effects of voter ID laws on those of lower socio-economic standing and the correlation between race and socio-economic status.  *Id.* at 45-50.

The Kennie Intervenors also presented testimony from their state election law expert, Randall Buck Wood, who provided critical and un-rebutted testimony that the type of in-person voting fraud that SB 14 was claimed to prevent is rare or non-existent in Texas.

As we detail below, the Kennie Intervenors were prevailing parties in this case.  They obtained a valid judgment from this Court that provided them with substantial benefits (*e.g.*, the voter ID did not go into effect in the 2012 election cycle).  *See infra* pp. 11-15.  As we also explain below, that this Court's judgment was vacated (not reversed) by the Supreme Court does not preclude an award of attorneys' fees and expenses.  Accordingly, the Kennie Intervenors now seek attorneys' fees, expenses, and costs for their success in this action.

## ARGUMENT

The enforcement of federal civil rights laws depends upon "private litigation as a means of securing compliance with the law."  *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968).  The availability of fee awards for prevailing parties is critical if private parties are to undertake litigation to vindicate the civil rights laws.  *See id.*

The purpose of providing for an award of such fees and expenses to prevailing parties is to encourage "'private attorneys general [to] take it upon *themselves* to invoke and thereby invigorate federal constitutional and statutory rights . . . and . . . to insure that those who violate the Nation's fundamental laws do not proceed with impunity.'"  *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 412 (7th Cir. 2005) (quoting *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988)).

"In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation

expenses as part of the costs."  42 U.S.C. § 1973l(e).  Here, the Kennie Intervenors sought to

enforce and protect their Fourteenth and Fifteenth Amendment rights by opposing the photo ID

bill that was discriminatory and would have harmed their right to vote.

Ordinarily, in Section 5 declaratory judgment cases such as this one, "attorneys' fees are

to be awarded to a prevailing party," and should only be denied when the court "find[s] that

special circumstances exist that would render such an award unjust." *Comm'rs Court of Medina*

*Cnty., Texas v. United States*, 683 F.2d 435, 438 n.2 (D.C. Cir. 1982) (citing S. Rep. No. 94-295,

at 40 (1975)); *see also Newman v. Piggie Park Enterps.*, 390 U.S. 400 (1968) (noting that "the

prevailing party should ordinarily recover an attorney's fee unless special circumstances would

render such an award unjust").  This is because "Congress depends heavily upon private citizens

to enforce the fundamental rights involved.  The awards are a necessary means of enabling

private citizens to vindicate these Federal rights." S. Rep. No. 94-295, at 40 (1975).

Defendant Intervenors should be awarded attorney's fees as there are no extraordinary

circumstances in the instant case that merit their denial.  Indeed, to the contrary, the Kennie

Intervenors received significant benefits as a result of this Court's judgment in their favor and

thus are prevailing parties entitling them to an award of attorneys' fees and expenses.

## I.     THE KENNIE INTERVENORS ARE PREVAILING PARTIES ENTITLED TO THE REQUESTED ATTORNEYS' FEES, EXPENSES AND COSTS.

### A.     The Kennie Intervenors Are Prevailing Parties.

There is no question that the Kennie Intervenors are prevailing parties.  They secured a

judgment that they had sought in this action: a denial of preclearance to SB 14.  That

preclearance denial not only had a beneficial effect on the Kennie Intervenors, it also changed

the legal relationship between the Kennie Intervenors and the State of Texas.

The judgment entered by this Court denying preclearance to SB 14 provided a substantial benefit to the Kennie Intervenors.  Having failed to obtain preclearance, the State of Texas was unable to impose the photo ID requirement on them and other Texas voters in the 2012 elections.

If imposed in 2012, the photo ID law would have resulted in some of the Kennie Intervenors being denied the right to vote.  For example, as Intervenor Kennie explained in his deposition testimony,[7] he lacks a valid photo ID that would permit him to cast a ballot under SB 14.  Kennie, who is indigent, cannot obtain a photo ID from any Texas DPS office because, in order to do so, he must present a birth certificate.  Kennie testified that he was born in an automobile and there is no record of his birth available. Kennie Dep. 9: 8-10.  Moreover, Kennie testified that even if a birth certificate was available for him, he could not afford to purchase one. *Id.* at 25-26. Kennie is unemployed, *id.* at 11:5-6, receives his food from local churches, *id.* at 59:16-18, and stays rent-free with friends, *id.* at 59:8-9; 60:7-13. When asked why he lacks the means to pay money and purchase a photo ID, Mr. Kennie made clear it was his poverty status: "Well, I ain't have no money. I ain't got no job[.]" *Id.* at 47:13-14.  Since he lacks a photo ID, this Court's decision provided Defendant Intervenor Kennie with a substantial benefit: he remained eligible to vote in the 2012 elections.

Moreover, this Court "conclude[d] that SB 14 is likely to lead to 'retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise.'" ECF No. 340 at 55 (quoting *Beer v. United States*, 425 U.S. 130, 141 (1976)).  As members of racial or language minority groups, the Kennie Intervenors were benefitted by this Court's decision denying preclearance to SB 14—a decision which prevented the State of Texas from implementing the photo ID law in the 2012 elections.  Moreover, all of the Kennie Intervenors

---

[7] See Defendant Intervenors' Proposed Findings of Fact, Document No. 240, at 2, ¶ 2.

(except one) are plaintiffs in a recently filed federal suit in a challenge to SB 14 in a Corpus

Christi federal court.  The record and Court findings developed in this case also provide them a

benefit and will be useful to them in that litigation.

The Supreme Court has determined that civil rights plaintiffs are prevailing parties "if

they succeed on any significant issue in litigation which achieves some of the benefit the parties

sought in bringing the suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S.

782, 789 (1989); *Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980).  In other words, "the

plaintiff must be able to point to a resolution of the dispute which changes the legal relationship

between [it] and the defendant." *Texas State Teachers Ass'n*, 489 U.S. at 792; *see also*

*Buckhannon Bd. &Care Home, Inc. v W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604

(2001) (recognizing that a party prevails and is entitled to attorney's fees when that party obtains

a "material alteration of the legal relationship of the parties").   We respectfully submit that the

Kennie Intervenors succeeded on a significant issue in this litigation which achieved some of the

benefit that the Kennie Intervenors sought when they intervened.  Accordingly, they are

prevailing parties entitled to an award of attorneys' fees.

> **B.     The Supreme Court's Order Vacating This Court's Judgment Does Not Affect the Kennie Intervenors' Entitlement to Attorneys' Fees.**

The State appealed this Court's December 17, 2012 judgment (ECF No. 365) to the

United States Supreme Court.  On June 27, 2013, the Supreme Court vacated the judgment and

remanded the case to this Court in light of the decision in *Shelby County v. Holder*, 570 U.S. __

(2013).  This Court, in turn, recently dismissed this case upon Plaintiff's unopposed motion.

ECF No. 387.

But the fact that this Court's 2012 judgment was vacated in June 2013 did not impact the

benefits that the Kennie Intervenors received in 2012 when, as a result of this Court's decision,

the photo ID bill was unable to be enforced.  Nor did the Supreme Court's June 27, 2013 Order

alter the change in the legal relationship between the Intervenors and the State of Texas that was

effectuated by the judgment this Court entered in 2012.

The Kennie Intervenors obtained a judgment from this Court in their favor.  That

judgment was not reversed by the Supreme Court on the merits.  Thus, this is not a situation

where a party obtained a favorable ruling on the merits in the lower court but lost on the merits

on appeal.  In that circumstance, attorneys' fees are not warranted.  *See Sole v. Wyner*, 551 U.S.

74 (2007).  Here, the judgment that the Kennie Intervenors obtained was beneficial to them at

least through the 2012 elections and thus they obtained some benefit from that judgment—

benefits which existed at least until the Supreme Court's decision vacating that judgment.[8]

A prevailing party is one who "confers an actual benefit or relief from a burden." *Grano*

*v. Barry*, 783 F.2d 1104, 1108-09 (D.C. Cir. 1986) (citation omitted).  The party seeking fees

need not have "prevailed on every claim or achieved all of the benefits he might have hoped for

in the litigation . . . the critical question in evaluating the availability of fees is whether fee

claimants have received any benefit at all." *Id.* at 1109 (citation omitted); *see also Hanrahan v.*

*Hampton*, 446 U.S. 754, 758 (1987) (quoting H. R. Rep. No. 94-1558, at 8 (1976)) ("[W]hen a

party has prevailed on the merits of at least some of his claims," there has "been a determination

of the 'substantial rights of the parties,' which Congress determined was a necessary foundation

for departing from the usual rule in this country that each party is to bear the expense of his own

attorney."); *Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988) (*per curiam*) ("At the end of the rainbow

lies not a judgment, but some action (or cessation of action) by the defendant that the judgment

---

[8] As noted above, the benefits that the Kennie Intervenors obtained as a result of this litigation
will continue, as the record developed in the case will be used to help establish that the photo ID
bill is unlawful in the pending lawsuit in Corpus Christi.

produces—the payment of damages, or some specific performance, *or the termination of some conduct.*"); *Comm'rs Court of Medina Cnty., Tex. v. United States*, 683 F.2d 435, 441 (D.C. Cir. 1982) (noting the critical question is whether the party has received any benefit at all).

When a party has clearly succeeded in obtaining the relief sought in a district court and an intervening event renders the case moot on appeal, she is still a "prevailing party" and should be awarded attorney's fees. *See Nat'l Black Police Ass'n v. D.C. Bd. of Elections & Ethics*, 168 F.3d 525 (D.C. Cir. 1999) (affirming the district court's award of attorney's fees where plaintiffs won an injunction that was in place for 52 days before the decision was vacated as moot by new legislation); *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010) ("When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation."); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009) ("[A] 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness."); *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1197 & n.8 (9th Cir. 2007) (noting that when a party successfully obtains an injunction before a district court prior to an intervening act of mootness, that party remains the "prevailing party"); *Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1512-13 (10th Cir. 1990) (listing cases and holding that "[w]e are in accord with the courts which have held that a party which achieves the objective of its suit by means of an injunction issued by the district court is a prevailing party in that court, notwithstanding the fact that the case becomes moot . . . while the order is on appeal") (footnote omitted); *Palmer v. City of Chicago*, 806 F.2d 1316, 1321 (7th Cir. 1986) (assuming, though not holding, that a party is still a prevailing part[y] "if after some relief has been obtained the case becomes moot").

This rule is consistent with the purpose behind the statute providing for attorneys' fees. "To hold that mootness of a case pending appeal inherently deprives plaintiffs of their status as 'prevailing parties' would detract from § 1988's purposes.  Such a rule could result in disincentives for attorneys to bring civil rights actions when an event outside the parties' control might moot the case after the district court rendered a favorable judgment but before the judgment could be affirmed on appeal." *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 455 (1st Cir. 2009).

Although the decision handed down in *Shelby County* resulted in this Court's judgment being vacated, this does not make attorney's fees any less appropriate. *See Ctr. for Biological Diversity v. Marina Pont Dev. Co.*, 566 F.3d 794, 798-99 (9th Cir. 2009) (finding that even when the event mooting a judgment is contrary to plaintiff's interests, there is no "principled and persuasive reason to deviate" from the principle that conferring a real benefit justifies awarding attorney's fees). Several courts have upheld fee awards in similar situations. *See,* e.g., *id.* (upholding an attorney's fees award where plaintiffs won a permanent injunction that was vacated before the appeal when a statutory change rendered the case moot); *Grano v. Berry*, 783 F.2d 1104 (D.C. Cir. 1986) (finding plaintiffs were entitled to attorney's fees for winning an injunction prohibiting the demolition of a tavern, even though ultimately defendants were awarded a demolition permit and demolished the tavern).

The Kennie Intervenors were victimized by the State's 2011 photo ID bill and they (along with the Defendants and other Defendant Intervenors) blocked that law from taking effect in the 2012 election cycle.  That alone was a significant benefit.  Having obtained a judgment from this Court preventing the State of Texas from obstructing or interfering with their right to vote in a national presidential election is no small victory.  Because the Kennie Intervenors have

"obtain[ed] actual relief on the merits of [their] claim" that "materially alters the relationship between the parties by modifying the [Plaintiff's] behavior in a way that directly benefits the [Intervenors]," *Farrar v. Hobby*, 506 U.S. 103, 111 (1992), they are a "prevailing party." *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).

The Kennie Intervenors prevailed at trial and obtained a judgment from this Court under the law that existed at the time. Though the Supreme Court, many months thereafter, struck down a portion of the Voting Rights Act, the prevailing status of these Intervenors at trial and the benefit they received in the 2012 elections remained unchanged. Indeed, though the Supreme Court from time to time may adjust the applicability of statutes given what it perceives as changed circumstances, it simply cannot be the case that federal law requires parties to bear the burden of fees and expenses in a case they won based upon the clearly constitutional law in place at the time. Indeed, until *Shelby County*, the Supreme Court had affirmed the constitutionality of the preclearance provisions of the Voting Rights Act on at least three occasions. For these reasons, the Kennie Intervenors are prevailing parties and should be awarded attorneys' fees and expenses.

### C.  The Kennie Intervenors' Attorneys' Fees Are Reasonable.

Having prevailed on their claims, the only remaining question is whether the fees sought are reasonable. As explained below, the fees, expenses, and costs that the Kennie Intervenors seek are reasonable for litigation of this type and scope.

An award of attorneys' fees is calculated using the lodestar method, which is determined by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar "is presumed to be the reasonable fee," *Blum*, 465 U.S. at

888; *accord People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996), and

"includes most, if not all, of the relevant factors constituting a reasonable attorneys' fee,"

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986).

Two issues are addressed below demonstrating the reasonableness of the Kennie

Intervenors' requested fees: 1) the reasonable number of hours expended by Intervenors'

attorneys to litigate this case; and 2) the hourly rates sought by the Intervenors' counsel.  As

explained further below, both the hours incurred and the rates charged were reasonable for a case

of this nature.

### 1.    Kennie Intervenors Seek Compensation For A Reasonable Number of Hours.

This case involved important and difficult federal statutory claims. Texas's proposed

photo ID law was not only a case that drew national attention, it also was the first photo ID law

to go to trial in this Court under the Voting Rights Act.  In addition, although the Court

ultimately did not reach the issue of discriminatory purpose, that issue was necessarily litigated

and "[t]he task of assessing a jurisdiction's motivation . . . is not a simple matter; on the contrary,

it is an inherently complex endeavor, one requiring the trial court to perform a 'sensitive inquiry

into such circumstantial and direct evidence of intent as may be available.'" *Hunt v. Cromartie*,

526 U.S. 541, 546 (1999) (quoting *Village of Arlington Heights v. Metro. Hous. Auth.*, 429 U.S.

252, 266 (1977)).  Indeed, voting rights cases such as this one are among the most complex

federal cases, ranking fifth most difficult out of 42 categories of cases (more difficult than

antitrust and SEC/securities cases) according to the case weights last issued by the Federal

Judicial Center.  See Exhibit L.

The Kennie Intervenors appropriately hired experienced attorneys who have substantial

Voting Rights Act experience, including extensive experience with Texas voting rights lawsuits.

See Exhibit A, Declaration of J. Gerald Hebert ("Hebert Decl."); Exhibit C, Listing of Voting

Rights/Election Law Cases Handled by Hebert; Exhibit D, Declaration of Chad W. Dunn ("Dunn

Decl."); and Exhibit E, Dunn Curriculum Vitae.  For example, Kennie Intervenors' counsel Mr.

Hebert has represented clients in prior Texas voting rights or redistricting lawsuits going back

several decades, including several landmark cases that reached the United States Supreme Court

(e.g., *Bush v. Vera*, 517 U.S. 952 (1996); *Balderas v. State of Texas*, Civ. Action No. 6:01CV158

(E.D. Tex., Nov. 14, 2001) (per curiam), *summarily aff'd*, 536 U.S. 919 (2002), and *LULAC v.*

*Perry*, 548 U. S. 399 (2006)).  Furthermore, Mr. Hebert has served as lead counsel in many

redistricting and voting rights cases over the years throughout the United States and at all levels

of the federal system, including a number of Section 5 declaratory judgment cases in this Court.

As the listing of voting rights cases (Ex. C) shows, he has served as lead counsel for a party or

*amicus curiae* in over one hundred Voting Rights Act cases, and dozens of other election law

and campaign finance cases.  Moreover, the attached Declarations of experienced voting rights

attorneys Spiva, Wright and Pershing (Exhibits H, I, and J, respectively) identify Mr. Hebert as

one of our nation's foremost voting rights litigators.  The Kennie Intervenors' other counsel, Mr.

Dunn, also has extensive voting rights litigation experience in Texas, handling numerous voting

rights cases in the last decade.  *See* Ex. D; Ex. E.

    The extensive experience of the Kennie Intervenors' counsel, particularly in voting rights

cases, made them well-suited to these responsibilities.  Ex. A; Ex. D  Given the importance of

the issues presented in this case, and the fact that the Kennie Intervenors' lawyers had handled

numerous Voting Rights Act cases in the past (and thus could perform their duties more

efficiently than counsel with less experience in this area of law), the Kennie Intervenors were

quite reasonable in retaining attorneys Hebert and Dunn to advance their interests throughout the course of this litigation.

The Kennie Intervenors' lawyers also leanly staffed this case, avoiding any duplication of tasks and using only three attorneys with appropriate levels of experience to handle the various litigation tasks.  Ex. A, Hebert Decl. ¶¶ 13, 14, 16.  That this case was staffed leanly and without duplication of tasks was true not only among the Kennie Intervenors' counsel, but also between counsel for the Kennie Intervenors and counsel for the other Defendant-Intervenors.  Ex. A, Hebert Decl. ¶ 13).[9]

That Kennie Intervenors' lawyers leanly staffed this case is also demonstrated by the fact Mr. Hebert and Mr. Dunn performed <u>all</u> of the tasks at the trial court level, and the Kennie Intervenors let other counsel for Defendant Intervenors take the lead on other matters (including briefing to the U.S. Supreme Court) to avoid unnecessary or duplicative work or the inefficient use of resources.  Ex. A, Hebert Decl. ¶ 13.  As a result, neither Mr. Hebert nor Mr. Dunn has sought attorneys' fees for any of the work they performed on matters that were also handled by other Defendant-Intervenors counsel.  This allocation and division of labor was done throughout the litigation to avoid duplication of work and maximize efficiency, and best utilized the expertise of the attorneys involved. [10]

The Kennie Intervenors' attorneys are seeking compensation for the hours and legal work listed in the time sheets and invoices attached as Exhibit B (Hebert Time and Expense Records)

---

[9] The overall fees and disbursements sought in this case are reasonable and well within the range of what would be expected for this type of complex litigation.  That is especially true where, as here, the case implicated the important fundamental right to vote and the right to be free of discrimination with respect to voting.

[10] That Mr. Hebert and Mr. Dunn handled the vast majority of litigation tasks at the trial court level stands in sharp contrast to the State of Texas who listed a total of 13 different attorneys on various pleadings they filed in this Court:  Mitchell, Frederick, Sweeten, McKenzie, Mortara, Hughes, Spencer, Brissenden, Hodge, Aston, D'Andrea, Sullivan and Abbott.

and Exhibit F (Dunn and Brazil Time and Expense Records).  As noted above, these fees pertain

to work performed by the Kennie Intervenors' attorneys throughout the course of this intensive

litigation, which included, among other things:  preparing and filing a motion to intervene and

proposed answer; responding to the State of Texas's multiple motions for protective order,

motion to compel, motion *in limine* to exclude testimony of expert witness for Kennie

Intervenors, assertion of legislative privilege issues, and the State's failures to produce data in a

timely manner in discovery, including beyond deadlines set by the Court, *see*, *e.g*., Minute Order

May 9, 2012.  The Kennie Intervenors' counsel also participated actively in factual and expert

discovery, including participating in numerous depositions; responding to the factual and expert

discovery propounded by the State; and presenting trial testimony of four witnesses at trial,

participating in closing arguments, and ultimately obtaining a favorable final judgment.  Ex. A,

Hebert Decl. ¶ 15; Ex. D, Dunn Decl. ¶¶ 5-6.

Following entry of judgment by this Court on August 28, 2013, the Kennie Intervenors'

counsel continued to leanly staff the case, as Mr. Hebert prepared this fee motion in its entirety

with minor assistance from other attorneys, so as to minimize the amount of attorney time and

fees.  Ex. A, Hebert Decl. ¶ 18.

Based on contemporaneous time records, the Kennie Intervenors' attorneys and paralegal

and legal support staff spent the following hours working on this case (as verified and

substantiated in detail in the attached Declarations of Hebert, Dunn and Brazil):

| ATTORNEY | HOURS |
|----------|-------|
| J. Gerald Hebert | 182.4 |
| Chad Dunn | 436.9 |
| Scott Brazil | 47.2 |

The Kennie Intervenors' attorneys have reviewed the time records summarized above and reprinted them in the attached exhibits (Exhibits B and F).  These records show sound and reasonable billing judgment.  For example, Kennie Intervenors' counsel excluded substantial time to ensure that compensation was not sought for work that might be deemed as properly excluded from a court-ordered fee award.  *See* Ex. A; Ex. B; Ex. D; Ex. F.  For example, Kennie Intervenors do not request compensation for activity that, although necessary for client relations, did not directly contribute to the litigation itself.  *See, e.g.*, Ex. F.  Kennie Intervenors also do not seek any fee enhancement above the lodestar method, despite their considerable expertise and experience in this area.  The hours that remain after the attorneys' review of the time records were reasonably expended to accomplish the tasks necessary for the successful prosecution of this litigation.  *See* Ex. A, Hebert Decl. ¶¶ 12-13; Ex. D, Dunn Decl. ¶¶ 4-6.

## 2.     Kennie Intervenors Seek Reasonable Hourly Rates For Its Attorneys.

The hourly rates sought by the Kennie Intervenors' attorneys (Hebert, Dunn and Brazil), reflect their years of practice, litigation experience, and expertise. We explain below, for each attorney, the exceptionally high level of experience and expertise justifying their hourly rates.  In addition, we have also attached to this motion the declarations of highly qualified attorneys attesting to the reasonableness of the hours and the hourly rates being sought here.

### A.   J. Gerald Hebert's Hourly Rate:

Mr. Hebert, who seeks an hourly rate of $650 in this case, is now in his fortieth year of practicing law, having spent all but six years in the field of voting rights and redistricting.  He is widely recognized as one of the leading voting rights and redistricting litigators in the United States.  *See* Ex. H (Bruce Spiva Declaration); Ex. I (Brenda Wright Declaration); Ex. J (Stephen Pershing Declaration).

As detailed in his Declaration (Exhibit A) and the Listing of Voting/Election Law cases that Hebert has handled (Exhibit C), Mr. Hebert has handled over one hundred voting rights cases in his forty-year career, with a number of cases ultimately decided in the United States Supreme Court, including *Johnson v. DeGrandy*, *Pressley v. Etowah County*, *Shaw v. Reno*, and *LULAC v. Perry*.  In the vast majority of the voting rights or redistricting cases he has handled, Mr. Hebert has served as the lead trial attorney.  *See* Ex. C.

In addition to his vast litigation experience and expertise, Mr. Hebert also has published or co-authored articles on voting rights and redistricting in scholarly journals (e.g., Yale Journal of Law and Policy, George Mason University Law Review, and LaRaza Law Journal at the University of California at Berkeley).  He has given lectures or participated in conferences on voting rights issues at Harvard Law School, Yale Law School, and William and Mary Law School, among other law schools across the country.  Mr. Hebert has taught voting rights classes at Georgetown University Law Center (from 1994-2006, and 2013) and American University's Washington College of Law, and has co-taught a voting rights course in 1996 with legal scholar Pamela Karlan at the University of Virginia Law School.[11]  This semester, Mr. Hebert is co-teaching a course on election law at Georgetown University Law Center with Paul M. Smith, of the law firm Jenner and Block.

These hourly rates are similar to prevailing market rates charged by attorneys of comparable experience and expertise.  Mr. Hebert's hourly rate is also reasonable as indicated by the sworn declarations of two attorneys in the District of Columbia, Bruce Spiva (Exhibit H) and

---

[11] Mr. Hebert also has been quoted or cited in numerous articles or broadcasts as an authority on voting rights, and has appeared frequently as a panelist at conferences of the National Conference of State Legislature, where he has instructed state legislators from across the country on voting rights and redistricting law.  See Exhibit A, Hebert Decl. at ¶10.

Stephen Pershing (Exhibit J).  In addition, as indicated in the Adjusted Laffey Matrix,[12] for

attorneys with twenty years or more experience, the hourly rate is currently $753 per hour.  In

2012, when this case was litigated, the Laffey Matrix showed that the hourly rate for attorneys

with 20 or more years of experience was $734 per hour.  Thus, Mr. Hebert's hourly rate is

actually *lower* than the Laffey Matrix rate for an attorney with his years of experience, and that

does not take into account his knowledge, forty years of experience, expertise and specialization

in handling voting rights and redistricting cases.

### B.   Hourly Rate for Mr. Chad Dunn and Mr. Scott Brazil:

Attorneys Chad Dunn and Scott Brazil seek an hourly rate in this case of $375 an hour,

which is the rate they charge to other fee paying clients.  *See* Ex. D (Dunn Decl.); Ex. G (Brazil

Decl.).  The declarations of these two attorneys describe their expertise and experience in all

types of litigation, including voting rights cases.  Mr. Dunn has also submitted his curriculum

vitae (Exhibit E).

| ATTORNEY | RATE |
|---|---|
| J. Gerald Hebert | $650.00 |
| Chad Dunn | $375.00 |
| Scott Brazil | $375.00 |

---

[12] The methodology of calculation and benchmarking for the Laffey Matrix has been approved in
a number of cases. See, e.g., *McDowell v. District of Columbia*, Civ. A. No. 00-594 (RCL),
LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); *Salazar v. Dist. of Col.*, 123
F.Supp.2d 8 (D.D.C. 2000).  We attach the Adjusted Laffey Matrix as Exhibit K.  See also
Exhibit J (Pershing Decl. discussing Laffey Matrix).

## II.     KENNIE INTERVENORS' FEE AWARD SHOULD EQUAL $300,097.50.

Multiplying the time worked by each attorney by the hourly rates for each year yields the

following calculation:

| ATTORNEYS | HRS | RATE | TOTAL |
|-----------|-----|------|-------|
| J. Gerald Hebert | 182.4 | $650.00 | $118,560.00 |
| Chad Dunn | 436.9 | $375.00 | $163,837.50 |
| Scott Brazil | 47.2 | $375.00 | $17,700.00 |
| **ALL FEES SUBTOTAL:** | | | $300,097.50 |

## III.    KENNIE INTERVENORS ARE ENTITLED TO EXPENSES AND COSTS

With regard to expenses and costs, the invoices referenced in the Dunn Declaration

(Exhibit D) and the time and expense records of Brazil and Dunn (Exhibit F) detail the out-of-

pocket expenses incurred.  Verification and documentation of these expenses and costs are set

forth in Exhibits D and F.  These expenses were necessarily incurred and are the type of out-of-

pocket expenses normally billed to fee-paying clients.  As such, they are recoverable as part of

Defendant-Intervenors attorneys' fees.  *See W. Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87

n.3 (1991).  These "costs" are recoverable as defined by 28 U.S.C. § 1920 and Fed. R. Civ. P.

54(d).

### A. Expenses/Costs

It is also appropriate to require the Plaintiff State of Texas to reimburse the Kennie

Intervenors for reasonable costs.  An award of reasonable attorneys' fees pursuant to 42 U.S.C.

§ 1988, for example, includes an award of "reasonable out-of-pocket expenses incurred by the

attorney which are normally charged to a fee paying client."  *Neufeld v. Searle Labs.*, 884 F.2d

335, 342 (8th Cir. 1989) (citing *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984), *cert.*

*denied*, 472 U.S. 1021 (1985)); *see also Rendon v. AT&T Techs.*, 883 F.2d 388, 399 (5thCir.

1989) (timely request for fees and expenses is appropriate).  Here, the Kennie Intervenors have included in the supporting affidavits and invoices a detailed accounting requesting compensation for such out-of-pocket expenses as travel, deposition costs, conference calls, messenger fees, and the like.  Ex. D.  These out-of-pocket expenses totaled $12,038.47, and are the sorts of expenses generally charged to a fee-paying client and should be reimbursed fully.

### B. Expert Fees

The fee shifting provision authorizing an award of attorneys' fees in this case specifically authorizes the award of fees for expert costs. 42 U.S.C. § 1973l(e) ("In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.").

Here, the Kennie Intervenors hired only two expert witnesses (Dr. Allan Lichtman and Randall Buck Wood) who prepared reports and testified at trial.  Dr. Lichtman's report and testimony were important in establishing SB 14 was not entitled to preclearance and that the analysis performed by the State of Texas's expert should be rejected (which it was).[13]  Election expert Buck Wood offered testimony that the alleged justification for the photo ID bill, voter impersonation at the polls, was rare.  This contention was relevant to the inquiry into whether SB 14 was enacted with discriminatory purpose.  This Court did not reach the issue of discriminatory intent, however, because it found that SB 14 would have a racially discriminatory effect.[14]

---

[13] The Plaintiff State of Texas cannot be heard to argue that expert witnesses were not needed; after all, the State also employed experts who prepared reports in this case and testified at trial (as did the Defendant Attorney General).

[14] Nevertheless, this Court did recognize that "other evidence, such as the types of circumstantial evidence discussed in *Arlington Heights*, could nonetheless suggest that Texas invoked the specter of

The expert witness expenses of the Kennie Intervenors are set forth in the attached invoices of Dr. Allan Lichtman and Buck Wood.  Ex. F.  They were necessarily incurred in order for the Kennie Intervenors to defend this action.  Ex. D at ¶ 15.  Furthermore, those expenses are both modest and reasonable.  *Id*.

| | |
|---|---|
| Expert Witness Fee for Dr. Lichtman | $27,500.00 |
| Expert Witness Fee for Attorney Wood | $13,815.00 |
| Total Expert Witness fees: | $41,015.00 |

Thus, Kennie Intervenors seek reimbursement for associated expenses in this case in the amount of $53,053.47 (out-of-pocket expenses of $12,038.47 plus expert witness fees of $41,015.00 equals $53,053.47), an amount that encompasses all "costs" as defined by 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d).  Both the expert witness fees and the out-of pocket expenses have been verified in the attached Declarations of Dunn (Exhibit D) and Hebert (Exhibit A).

Adding fees and expenses, Kennie Intervenors request a total compensation of $353,150.97.  The fees and expenses are substantiated by the declarations of counsel and other documentary exhibits attached to this motion.

## CONCLUSION

The attorneys' fees sought here are reasonable and not excessive.  They are within the prevailing market rate charged by attorneys of comparable experience and expertise.   Likewise, the expenses and costs sought here are due to be recovered as they were necessarily incurred during the course of the lawsuit as out-of-pocket expenses or expert witness fees, and are of the same type as those ordinarily charged to clients by counsel.

---

voter fraud as pretext for racial discrimination. *See Bossier Parish I*, 520 U.S. at 489."  ECF No. 340 at 21.

Accordingly, for the reasons set forth above, this Court should award Kennie Intervenors the attorneys' fees, litigation expenses, and costs as requested.

Respectfully submitted,

 /s/ J. Gerald Hebert
J. Gerald Hebert
D.C. Bar No. 447676
Attorney at Law
191 Somerville Street, #405
Alexandria, VA 22304
Telephone: 703-628-4673
hebert@voterlaw.com

Chad W. Dunn
D.C. Bar No. 987454
Texas Bar No. 24036507
BRAZIL & DUNN LLP
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

ATTORNEYS FOR KENNIE
DEFENDANT-INTERVENORS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2013, I served a copy of the foregoing Kennie Intervenors' Motion for Attorneys' Fees, Expenses and Costs, attached Exhibits A-I on counsel who are registered to receive NEFs through the CM/ECF system. All attorneys who have not yet registered to receive NEFs have been served via first-class mail, postage prepaid.

/s/ J. Gerald Hebert
J. GERALD HEBERT

## <u>EXHIBITS TO KENNIE INTERVENORS' MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES</u>

EXHIBIT A—Declaration of J. GERALD HEBERT

EXHIBIT B—HEBERT Time and Expense Records

EXHIBIT C—Listing of Voting/Election Cases Handled by HEBERT

EXHIBIT D—Declaration of CHAD DUNN

EXHIBIT E—Curriculum Vitae of CHAD DUNN

EXHIBIT F—BRAZIL and DUNN Time and Expense Records

EXHIBIT G—Declaration of SCOTT BRAZIL

EXHIBIT H—Declaration of BRUCE V. SPIVA

EXHIBIT I—Declaration of BRENDA WRIGHT

EXHIBIT J—Declaration of STEPHEN B. PERSHING

EXHIBIT K—Updated Laffey Matrix on Attorneys' Fees

EXHIBIT L—Federal Judicial Center, Case Weighting Study